UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUTHORS GUILD, DAVID BALDACCI, MARY BLY, MICHAEL CONNELLY, SYLVIA DAY, JONATHAN FRANZEN, JOHN GRISHAM, ELIN HILDERBRAND, CHRISTINA BAKER KLINE, MAYA SHANBHAG LANG, VICTOR LAVALLE, GEORGE R.R. MARTIN, JODI PICOULT, DOUGLAS PRESTON, ROXANA ROBINSON, GEORGE SAUNDERS, SCOTT TUROW, and RACHEL VAIL, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OPENAI INC., OPENAI LP, OPENAI LLC, OPENAI GP LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI HOLDINGS LLC, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC, and OPENAI STARTUP FUND MANAGEMENT LLC,<br><br>Defendants. | No. 1:23-cv-8292-SHS<br><br>**RULE 26(f) REPORT AND PROPOSED CASE MANAGEMENT PLAN** |

The parties submit this report of their Rule 26(f) conference and proposed case management plan.

**I.      RULE 26(f) CONFERENCE**

1.      The parties met and conferred in person (in part) and over video (in part) as required by Rule 26(f) on Monday, November 6, 2023. The parties continued conferring by phone and email through Wednesday, November 8.

2.      The parties' Rule 26(f) report is thus due Wednesday, November 22. *See* Fed. R. Civ. P. 26(f)(2).

-1-

## II. SUMMARY OF CLAIMS AND DEFENSES

3. This is a putative class action for copyright infringement arising under the Copyright Act.

### A. PLAINTIFFS' STATEMENT

4. Plaintiffs are authors of and sole copyright holders in a broad array of written works of fiction available for purchase by the reading public. Plaintiffs allege Defendants unlawfully copied Plaintiffs' works to "train" their large language models, which underlie generative artificial intelligence (AI) applications such as ChatGPT that are capable of producing human-seeming text outputs in response to user inputs. Plaintiffs allege further that Defendants are therefore directly, contributorily, or vicariously liable for such infringement.

5. Plaintiffs seek actual damages, additional profits attributable to infringement, or, in the alternative, statutory damages. Plaintiffs also seek injunctive relief.[1]

6. Plaintiffs maintain that this dispute raises overwhelmingly common issues, including, for example, Defendants' common policies and practices of selecting and employing training data, as well as their categorical decision not to seek consent from or provide compensation to Plaintiffs or putative class members for the use of their written works of fiction for training purposes.

7. Plaintiffs submit that the principal facts and legal issues in dispute include:

   a. Whether Defendants reproduced Plaintiffs' copyrighted works of fiction and caused them to be ingested by Defendants' large language models for training purposes;

---

[1] Plaintiffs may seek Defendants' agreement to a "standstill order," under which Defendants would be prohibited from continuing their allegedly infringing conduct as to Plaintiffs' future works that have not already been used in AI "training," or using past works to "train" future iterations of their large language models while this litigation is pending. If Defendants do not agree, Plaintiffs may seek such an order from the Court.

b.  Whether the common interests of working professional fiction writers in the United States who are the sole owners of copyrights in written works of commercial fiction in protecting their works against unauthorized reproduction by Defendants are sufficiently similar to warrant class treatment;

c.  Whether Defendants' alleged reproduction of Plaintiffs' and putative class members' written works of fiction was willful;

d.  To what extent Defendants' have profited from their alleged infringement of Plaintiffs' and putative class members' copyrights; to what extent the market for Plaintiffs' works is harmed by the outputs of Defendants' generative AI applications; and how to value licenses for Plaintiffs' and putative class members' works for use in large language model training; and

e.  Whether Defendants can establish the elements of their anticipated fair use defense despite the uniform commercial purpose of Defendants' alleged copying, the common and uniform commercial nature of Plaintiffs' and putative class members' allegedly copied works of fiction, Defendants' alleged uniform copying of Plaintiffs' and putative class members' works in full, and the uniformly deleterious effects of Defendants' alleged copying on the market for Plaintiffs' and putative class members' works.

B.  **DEFENDANTS' STATEMENT**

8.  OpenAI is an artificial intelligence (AI) research and deployment company, with a mission to ensure that artificial general intelligence benefits all of humanity. OpenAI researches, develops, and releases cutting edge AI technology, including ChatGPT and its underlying large language models, as well as tools and best practices for the safety, alignment, and governance of AI.

9. Developing a large language model like the one underlying ChatGPT requires teaching it intelligence and language, such as the ability to predict, reason and solve problems, as well as aligning it to human values and preferences. This involves showing the model a vast amount of human knowledge over months: teaching language to a model involves showing the model a wide range of text, and having it try to predict the word that comes next in each of a huge range of sequences. This requires an enormous amount of computation, as models review, analyze, and learn from trillions of words. Through this extensive process, the model not only learns how words fit together grammatically, but also how words work together to form higher-level ideas, and ultimately how sequences of words form structured thoughts or pose coherent problems. For example, when we think of the word "cloud", we might also think of related words like "sky" and "rain"; when given a sentence like "The secret to happiness is", we might think of various philosophical ideas. In gaining fluency with predicting the next word, the model thereby learns concepts and the building blocks of intelligence.

10. Plaintiffs allege that their books were shown to OpenAI's large language models as part of their training; that those models learned from those books; and that this process infringed Plaintiffs' copyrights. Defendants deny that they have violated any of Plaintiffs' rights.

11. The principal facts in dispute include:

a. Whether each of the named Plaintiffs' copyrighted works at issue (the "Plaintiffs' Works") were actually used to train the large language models underlying ChatGPT.

b. Whether and how the alleged inclusion of each of the Plaintiffs' Works in the training data results in copying of those works.

   c. Whether and to what extent the alleged use of each of the Plaintiffs' Works served a new and different purpose from the original purpose of each of those works.

   d. Whether and to what extent the alleged use of each of the Plaintiffs' Works was inextricably bound with other creative expression to form a new work.

   e. Whether and to what extent there exists a licensing market to use Plaintiffs' Works in the manner alleged.

   f. Whether and to what extent any use of each of the Plaintiffs' Works by Defendants or their users affected any market for each of those works.

   g. Whether and to what extent ChatGPT serves as a substitute for each of Plaintiffs' Works.

   h. Whether and to what extent each Plaintiff was harmed by the alleged use of that Plaintiff's Works.

   i. Whether and to what extent the alleged use of each of Plaintiffs' Works serves the public interest.

   j. Whether Defendants derive a direct financial benefit from the alleged inclusion of each of Plaintiffs' Works in the training data.

   k. The extent to which Defendants have a right and ability to control acts of third-party infringement via ChatGPT.

  12. Defendants summarize the legal issues as follows:

   a. Whether Plaintiffs can meet their prima facie burden of establishing that Defendants directly infringed Plaintiffs' Works.

   b. Whether Defendants' alleged use of Plaintiffs' Works to train a large language model is a fair use under 17 U.S.C. § 107.

   c. Whether Plaintiffs are entitled to relief under a vicarious copyright infringement claim.

   d. Whether Plaintiffs are entitled to relief under a contributory copyright infringement claim.

   e. Whether Plaintiffs can meet their burden of establishing that any class can be certified.

**III.** **INITIAL DISCLOSURES**

 13. The parties agree to serve initial disclosures by Wednesday, December 13, 2023.

**IV.** **MOTION PRACTICE**

 **A.** **PLAINTIFFS' STATEMENT**

 14. Plaintiffs anticipate filing a motion for class certification and, as useful to narrow the issues in dispute, a motion for summary judgment on certain issues once the contours of the class are decided.

 15. If Defendants seeks to dismiss or transfer the case, Plaintiffs will oppose, showing the relevant differences between this case and those to which Defendants attempt to liken it and that this case should be litigated and tried in New York.

 **B.** **DEFENDANTS' STATEMENT**

 16. Defendants anticipate filing a motion to dismiss under the first-filed rule, or, in the alternative, to stay this action pending resolution of the three substantially similar putative class actions pending in the District Court for the Northern District of California,[2] or, in the further alternative, to transfer this matter to the Northern District of California either under the

---

[2] Those actions are: *Tremblay et al. v. OpenAI, Inc. et al.*, No. 3:23-cv-03223 (N.D. Cal.); *Silverman et al. v. OpenAI, Inc. et al.*, No. 3:23-cv-03416 (N.D. Cal.); and *Chabon et al. v. OpenAI, Inc. et al.*, No. 3:23-cv-04625 (N.D. Cal.) (collectively, the "California Actions").

first-filed rule or 28 U.S.C. § 1404(a). Any further motion practice will depend on the resolution of that motion.

## V. SCOPE OF DISCOVERY

17. The parties agree that discovery is presently governed by the Federal Rules of Civil Procedure, the Local Rules of United States District Courts for the Southern and Eastern Districts of New York, and this Court's Individual Practices.

18. **Plaintiffs anticipate** discovery will be needed on at least the following subjects:

    a. Defendants' development, "training" (including sources of training data), and deployment of its large language models, and the functioning of those models;

    b. Defendants' corporate structure;

    c. The impacts of Defendants' large language models on the market for Plaintiffs' and putative class members' works, including but not limited to the market for lawfully licensing works used to train generative AI systems and the appropriate terms of such licenses, and/or for lawfully licensing works that inform output;

    d. Defendants' efforts, if any, to obtain licenses for use of works other than Plaintiffs' and putative class members' in training their large language models;

    e. Defendants' knowledge of their allegedly infringing conduct; and

    f. Defendants' revenues and profits, and how Defendants earn them.

19. **Defendants anticipate** discovery will be needed on at least the following subjects:

    a. Plaintiffs' lack of harm.

    b. Plaintiffs' ownership of and copyright interest in the works that are the subject of their complaints.

    c. Plaintiffs' Works, and where and how they are published.

      d.      The licensing and distribution of all Plaintiffs' Works they assert form any basis for their claims, and all other facts concerning the market for such works.

      e.      Any copyright registrations or applications for registration of any of the Plaintiffs' Works they assert form any basis for their claims.

      f.      Use by Plaintiffs of ChatGPT or other generative AI technologies.

      g.      Efforts by Plaintiffs or anyone acting on their behalf to prompt ChatGPT to suggest outputs similar to Plaintiffs' works.

      h.      The availability of content that is similar to or describes Plaintiffs' Works.

## VI.   DISCOVERY ORDERS

20.    The parties will meet and confer in good faith regarding a proposed agreed protective order and a proposed agreed order regarding the production of Electronically Stored Information (ESI) as soon as is practicable.

21.    If the parties are unable to agree to one or more provisions of such orders, the parties anticipate submitting competing proposals to the Court.

22.    **Plaintiffs propose** that, in light of, among other things, the number of parties and the anticipated need for expert testimony on various issues, Plaintiffs foresee that more than ten depositions per side will be necessary. *See* Fed. R. Civ. P. 30(a)(2)(A)(i).

23.    **Defendants propose** that the parties meet and confer in good faith regarding the appropriate number of depositions for this case once the motion to dismiss, stay, or transfer is resolved.

24.    The parties do not currently anticipate that, other than Plaintiffs' proposal as to the number of depositions, further modifications of the defaults established by the Federal Rules of Civil Procedure will be necessary.

25. If circumstances change, the parties agree to work together in good faith to accommodate reasonable requests to modify these defaults to minimize the need for this Court's intervention.

## VII. DISCOVERY DISPUTES

26. The parties agree that discovery disputes are governed by Rule 2(G) of this Court's Individual Practices, as well as any applicable provisions of such orders regarding confidentiality, privilege, and ESI as the Court may enter.

## VIII. CASE SCHEDULE

27. The parties agree that discovery opened on Monday, November 6, 2023, and agree further that Friday, February 9, 2024, should be the last day to amend the pleadings and join other parties. The parties otherwise disagree about the appropriate scheduling and sequencing of the case.

    A.    **PLAINTIFFS' PROPOSED SCHEDULE**

28. Plaintiffs propose the following case schedule, starting with the two agreed-on dates:

| Case Event | Plaintiffs' Proposed Date |
|---|---|
| Discovery opens. | Monday, November 6, 2023. |
| Last day to amend pleadings and join other parties. | Friday, February 9, 2024. |
| Close of fact discovery. | Friday, June 28, 2024. |

| | |
|---|---|
| Plaintiffs' deadline to move for class certification and serve expert reports in support. | Friday, August 9, 2024. |
| Defendants' deadline to oppose class certification and serve expert reports in opposition. | Tuesday, October 8, 2024. |
| Plaintiffs' deadline to reply in support of class certification and serve expert reports in reply. | Friday, December 6, 2024. |
| Hearing on motion for class certification.[3] | *To be set by the Court.* |
| Parties' deadline to file motions for summary judgment and serve expert reports in support. | Friday, March 7, 2025. |
| Parties' deadline to oppose summary judgment and serve expert reports in opposition. | Tuesday, May 6, 2025. |
| Parties' deadline to reply in support of summary judgment and serve expert reports in reply. | Thursday, July 3, 2025. |
| Hearing on motions for summary judgment. | *To be set by the Court.* |
| Deadline to submit joint pretrial order under Rule 3(A) of the Court's Individual Practices. | Friday, August 8, 2025. |
| Deadline to submit documents required by Rule 3(B) of the Court's Individual Practices. | Friday, August 22, 2025. |

---

[3] In the alternative to Plaintiffs' proposed schedule, which goes through summary judgment and trial, Plaintiffs submit that the Court could set a schedule at least through class certification, after which the parties may meet and confer on the appropriate scope of any remaining discovery (including standard supplementation), summary judgment, and trial. *See* ¶¶ 29-30.

| Final pretrial conference. | Monday, September 8, 2025. |
|---|---|
| Trial. | Monday, September 22, 2025. |

29.     Plaintiffs propose that the Court accept the proposed date for the close of fact discovery, and schedule the major case events through class certification, summary judgment, and trial as soon as practicable. Such a schedule would appropriately focus the parties' efforts on driving this litigation to efficient resolution of this important matter affecting writers and the publishing industry. Defendants' proposal, by contrast, would leave all major case events after the close of expert discovery hanging in the air until the spring of 2025. A delay of a year and a half in setting even the basic contours of this litigation would in no way promote its just, speedy, and inexpensive determination, *see* Fed. R. Civ. P. 1, and would furthermore frustrate the Court's obligation to determine "[a]t an early practicable time" whether the action will proceed as a class action. Fed. R. Civ. P. 23(c)(1)(A).

30.     Indeed, for this reason, among various others, courts routinely determine class certification before the merits in class actions, including in copyright cases in this Court. *See, e.g.*, *Johansen v. Sony Music Entertainment, Inc.*, Case No. 1:19-cv-01094-ER (S.D.N.Y. Nov. 6, 2020) (ECF No. 98); *see generally* William B. Rubenstein et al., Newberg on Class Actions § 7:10 (6th ed. 2022) (discussing implication from the Federal Rules of Civil Procedure that "class certification motions ought to precede summary judgment motions"). Finally, as set forth in note 3 above, should the Court wish to defer consideration of the trial date, it could alternatively set dates through class certification only, and order the Parties to confer on remaining case steps with the contours of the class in front of them.

31. In seeking to deviate from common and logical sequencing, Defendants cite to a sole inapposite case, *Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132 (2d Cir. 2013).[4] As Plaintiffs will show at the appropriate time, *Google* involved different parties, different and non-analogous uses, and different and non-analogous technology in the inapposite context of providing access to un-copyrightable information about copyrightable works, all against the backdrop of a dramatically disparate proposed class.[5] Generally, Defendants elide the relevant issue: the issue is not, in the abstract, whether a court *may* reverse the usual and appropriate sequencing, it is that the usual and appropriate sequencing in complex class actions (where defendants always claim they can find individual issues) exists for good case management reasons, and nothing here justifies deviation, let alone at this time.

### B. DEFENDANTS' PROPOSED SCHEDULE

32. As an initial matter, the Court need not consider the parties' competing scheduling proposals until after Defendants' motion to dismiss, stay, or transfer is resolved. The parties already agree that fact discovery should continue at least through June of 2024. If the case is dismissed, stayed, or transferred, the scheduling questions the parties address herein will be moot.

33. Defendants propose that the parties meet and confer and submit proposals to the Court regarding a schedule for motions for class certification, motions for summary judgment (including any *Daubert* motions in connection therewith), and trial after the close of expert discovery, as the parties will be in a better position at that time to assess efficiencies to be gained

---

[4] Defendants also refer to cases in California where in fact the court *rejected* Defendants' attempt to set a schedule putting summary judgment before certification.
[5] *See, e.g., Indergit v. Rite Aid Corp.*, 52 F.Supp.3d 522, 525-26 (S.D.N.Y. 2014) (limiting *Google Books* to its facts).

by addressing class certification before summary judgment (or vice versa), and to propose a realistic schedule for trial.

34.     In particular, the Second Circuit vacated and remanded a class certification decision in another putative class action brought by the Authors Guild regarding a digital use of a large number of books on the basis that class certification should have been decided only after consideration of the defendant's fair-use argument.  The Court of Appeals held that "the resolution of Google's fair use defense in the first instance will necessarily inform and perhaps moot our analysis of many class certification issues, including those regarding the commonality of plaintiffs' injuries, the typicality of their claims, and the predominance of common questions of law or fact." *Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132, 134 (2d Cir. 2013).  In fact, in that case, the class certification issue was ultimately mooted by the determination that the use in question was not copyright infringement, but instead fair use.  *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) (affirming grant of summary judgment to defendant on fair-use grounds).

35.     This case raises the same considerations.  For that reason, setting a schedule now that places class certification immediately after the close of discovery would contravene the Second Circuit's guidance in the *Authors Guild* case regarding the sequencing of summary judgment and class certification in copyright cases involving alleged digital use of a large number of books.  Instead, the Court should set a schedule through the close of expert discovery and assess at that time how to sequence Plaintiffs' motion for class certification and Defendant's motion for summary judgment.

36.     The cases plaintiffs identify as sequencing class certification before summary judgment do not show deviation from the guidance of *Authors Guild*.  *Johansen* was not a case

involving digital use of a large number of works in which the application of the fair use doctrine would illuminate which issues were common and which were individualized; it was, instead, a dispute about the continuing validity of copyright licenses granted by the plaintiffs to the defendant.  In that case, neither party proposed summary judgment before class certification.  *See Johansen*, ECF Nos. 92-1 (defendant's proposed schedule), 93 (plaintiff's proposed schedule). So it does not provide a reason for this Court to depart from the guidance of *Authors Guild v. Google*.  *Indergit* does not, as Plaintiffs contend, limit *Authors Guild* "to its facts"; that employment-law case addresses a different question, regarding whether a motion for reconsideration of the outcome of a class-certification motion should await a decision on summary judgment.

37.     And the cited section of the Newberg treatise does not stand for the proposition for which Plaintiffs cite it.  Instead, it observes that "courts have been willing to rule on motions for summary judgment prior to class certification in circumstances in which it would facilitate efficient resolution of the case," and that courts "permit such motions to go forward so long as a defendant is willing to waive the 'protections' that certification could offer."  Newberg on Class Actions § 7:10 (6th ed. 2022).  *Authors Guild v. Google* was such a case, for the reasons discussed by the Second Circuit, and *Authors Guild v. OpenAI* is likewise such a case.

38.     Defendants propose the following schedule for the remainder of the case, which aligns with the schedule set in the consolidated California Actions.

| Case Event | Defendants' Proposed Date |
|---|---|
| Discovery opens. | Monday, November 6, 2023. |

| | |
|---|---|
| Last day to amend pleadings and join other parties. | Friday, February 9, 2024. |
| Close of fact discovery. | Tuesday, October 29, 2024. |
| Plaintiffs' deadline to serve expert reports. | Thursday, December 12, 2024 |
| Defendants' deadline to serve expert reports. | Monday, January 13, 2025. |
| Deadline to serve rebuttal expert reports. | Tuesday, February 11, 2025. |
| Close of expert discovery. | Thursday, March 13, 2025. |

### IX. TRIAL

39. This case is to be tried to a jury.

40. **Plaintiffs anticipate** trial will last three weeks, subject to later conferral and based on the Court's prior rulings.

41. **Defendants believe** the length of any trial will depend on whether any class is certified. Defendants anticipate a non-class trial will last no more than one week, and a class trial will last at least three weeks in view of the number of individualized issues that would need to be presented regarding individual class members, subject to later conferral and based on the Court's interlocutory rulings.

-16-

## X. ADR AND SETTLEMENT

42. The parties are mindful of the benefits of the negotiated resolution of claims, and will continue to look for opportunities to discuss settlement and ADR as appropriate.

## XI. RELATED CASE

43. On November 21, 2023, non-fiction author Julian Sancton filed *Sancton v. OpenAI, Inc., et al.*, No. 1:23-cv-10211, in this Court, as well as a statement of relatedness. *See* No. 1:23-cv-10211, ECF No. 3 (Plaintiff's Related Case Statement).

| | |
|---|---|
| Dated: November 22, 2023 | Respectfully submitted,<br><br>*/s/ Rachel Geman*<br>Rachel Geman<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>250 Hudson Street, 8th Floor<br>New York, NY  10013-1413<br>Telephone:  212.355.9500<br>rgeman@lchb.com<br><br>Ian R. Bensberg (*pro hac vice* forthcoming)<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA  94111-3339<br>Telephone:  415.956.1000<br>ibensberg@lchb.com<br><br>Wesley Dozier (*pro hac vice* forthcoming)<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>222 2nd Avenue, Suite 1640<br>Nashville, TN 37201<br>Telephone:  615.313.9000<br>wdozier@lchb.com<br><br>*/s/ Scott J. Sholder*<br>Scott J. Sholder<br>CeCe M. Cole<br>COWAN DEBAETS ABRAHAMS & SHEPPARD LLP<br>41 Madison Avenue, 38th Floor<br>New York, New York 10010<br>Telephone:  212.974.7474<br>ssholder@cdas.com<br>ccole@cdas.com<br><br>*Attorneys for Plaintiffs and the Proposed Class* |
| Dated: November 22, 2023 | MORRISON & FOERSTER LLP<br><br>By: */s/ Joseph C. Gratz*<br><br>JOSEPH C. GRATZ (*pro hac vice*)<br>JGratz@mofo.com<br>TIFFANY CHEUNG (*pro hac vice forthcoming*)<br>TCheung@mofo.com<br>JOYCE C. LI (*pro hac vice forthcoming*)<br>JoyceLi@mofo.com<br>MELODY E. WONG (*pro hac vice forthcoming*)<br>MelodyWong@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone:   (415) 268-7000 |

Facsimile:    (415) 268-7522

ALLYSON R. BENNETT (*pro hac vice forthcoming*)
ABennett@mofo.com
ROSE S. LEE (*pro hac vice forthcoming*)
RoseLee@mofo.com
ALEXANDRA M. WARD (*pro hac vice forthcoming*)
AlexandraWard@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile:   (213) 892-5454

ANDREW M. GASS (*pro hac vice forthcoming)*
Andrew.Gass@lw.com
JOSEPH R. WETZEL
Joe.Wetzel@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:   (415) 391-0600

SARANG VIJAY DAMLE
Sy.Damle@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200

ALLISON L. STILLMAN
Alli.Stillman@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 751-4864

*Attorneys for Defendants*
OPENAI INC., OPENAI LP, OPENAI LLC, OPENAI GP LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI HOLDINGS LLC, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC, and OPENAI STARTUP FUND MANAGEMENT LLC