NBTBAUTC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AUTHORS GUILD, *et al*,

                Plaintiffs,

        v.                     23 Civ. 8292 (SHS)

OPEN AI, INC.,

                Defendants.

                            Conference
------------------------------x

                            New York, N.Y.
                            November 29, 2023
                            3:45 p.m.

Before:

                 HON. SIDNEY H. STEIN,

                            District Judge

                    APPEARANCES

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
     Attorneys for Plaintiffs
BY:  RACHEL GEMAN
     IAN R. BENSBERG
     WESLEY DOZIER

COWAN, DeBAETS, ABRAHAMS & SHEPPARD, LLP
     Attorneys for Plaintiffs
BY:  SCOTT J. SHOLDER

SUSMAN GODFREY, LLP
     Attorneys for Plaintiff Julian Sancton
BY:  CRAIG SMYSER
     ROHIT NATH


MORRISON & FOERSTER, LLP
     Attorneys for Defendant
BY:  JOSEPH C. GRATZ

NBTBAUTC

1                                   APPEARANCES (Continued)

2    LATHAM & WATKINS, LLP
          Attorneys for Defendant
3    BY: ALLISON L. STILLMAN
          LUKE BUDIARJO

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NBTBAUTC

1              (Case called; appearances noted)

2              THE COURT:  Good afternoon to all of you.  Please be

3     seated.  All right.  Good afternoon.  I wanted to have a

4     discussion with the parties.  I anted to discuss with you the

5     status of this case, and also to talk a little about the

6     *Sancton* case.  The things are moving quickly.  I received a

7     supplemental report earlier today in which the plaintiff is

8     indicating that it intends to add Microsoft and to file an

9     amended complaint by next Monday.  Is that correct?

10             MS. GEMAN:  Yes, your Honor.

11             THE COURT:  Is there any opposition to that by the

12    defense?

13             MR. GRATZ:  No, your Honor.

14             THE COURT:  Okay.  So do that.  That will be the first

15    thing in the order that results from today which may change the

16    complexion of the case.  The defendants have also indicated

17    that they are considering -- I don't think you're actually

18    going to do it, but you're considering moving to dismiss or

19    stay the case under the first-to-file rule and/or move to

20    transfer under 1404(a).  Am I right?

21             MR. GRATZ:  Yes, your Honor.

22             THE COURT:  Does the addition of Microsoft change that

23    in any way?  I'm not binding anybody to the positions.  I'm

24    just trying to get a sense of it.

25             MR. GRATZ:  We don't think so, your Honor.

NBTBAUTC

1          THE COURT:  Okay.  How soon can you get that motion to

2     dismiss or stay, or in the alternative to transfer?

3          MR. GRATZ:  On behalf of Open AI, we are ready to go,

4     your Honor, and think that we would be happy to get it on file;

5     for example, well within the time to respond to the amended

6     complaint.  Which I think under the federal rules would be 14

7     days from its filing.  Obviously if parties are added by the

8     amended complaint, those parties may be involved, and I don't

9     have any news from them.

10          THE COURT:  Okay.  Plaintiff, you said your intention

11     in the amendment is to add Microsoft?

12          MS. GEMAN:  That's correct, your Honor.

13          THE COURT:  So you know you'll have Microsoft.  I

14     think 14 days from Monday would be a little too short for you

15     to be able to coordinate with Microsoft and decide how you want

16     to go forward.  So I'd be inclined to give you something like a

17     month from Monday it seems to me.  What's the position of

18     plaintiff on that?

19          MS. GEMAN:  Your Honor, that make senses with the

20     comment that we believe discovery should be of course going

21     forward during that time.

22          THE COURT:  Well, I think that that, as I understand

23     your proposals, they differ substantially at the back-end, but

24     the first two items there's no objection to.  One is that you

25     actually have November 9, commencement of discovery, and the

NBTBAUTC

1    defendants agree with that.  I'll make it today as the

2    commencement of discovery unless there's been discovery

3    already.

4              MS. GEMAN:  There has been, your Honor.

5              THE COURT:  Oh, good, excellent.  So then I'll keep it

6    that way.  As part of the resulting order here, we'll have that

7    discovery commencing on November 6.  And I'll also have that

8    the last day to amend the pleadings and join additional parties

9    is February 9, 2024.  Those are the only two agreed upon dates,

10   and that will be part of the resulting order here.

11             The back-end or the next stage you diverge

12   substantially in terms of the plaintiff seeking class

13   certification issues, discovery, and motions on class

14   certification, and then merits discovery.  And as I understand

15   the defense, or at least Open AI, if not also Microsoft, your

16   suggestion is that in light of cases such as *Authors Guild*

17   *against Google* in the Second Circuit, you think it's

18   appropriate to tee up the fair use defense before we go into

19   issue of class certification.  Am I right, sir?

20             MR. GRATZ:  Yes, your Honor.

21             THE COURT:  Is it position -- and I'll hear more about

22   it in the course of this, and I'll also want a submission on

23   it -- but is it your belief that the fair use defense would, if

24   you were successful in it, terminate the litigation, period?

25             MR. GRATZ:  Yes, your Honor.

NBTBAUTC

 1          THE COURT:  That it would cover everything?

 2          MR. GRATZ:  Yes, your Honor.

 3          THE COURT:  Okay.  Again, we'll talk about that in a

 4   moment.  The lawyers in *Sancton* have filed a paper here that

 5   says it's related, their case is related to this case.  And one

 6   of the, I think, they're two major differences.  You tell me if

 7   there are others.  One is that it deals with factual as opposed

 8   to novels matters.  And the other is that Microsoft is added,

 9   while here Microsoft is about to be added.  So I want the

10   position of each of the parties on whether you believe the

11   Court should accept *Sancton* as related to Authors Guild against

12   Open AI.  Plaintiff.

13          MS. GEMAN:  Thank you, your Honor.  We agree the

14   matters are related.  We note that of course there are some

15   other differences in the pleadings.  They're different cases,

16   and there's slightly different subsections of Rule 23 under

17   which the parties are moving.  However, in the main, these are

18   out-opt class actions.  Both of these cases phrase it that way,

19   and we agree that the rules for relatedness are generally

20   satisfied.

21          THE COURT:  Are you advocating -- perhaps you haven't

22   thought about it -- consolidation as opposed to related?

23          MS. GEMAN:  Your Honor, we're not ready to state our

24   position on that.  I will say that we are aware of the

25   obligations of working cooperatively, the benefits of working

NBTBAUTC

1    cooperatively, and that does, of course, are informing us.

2          THE COURT:  And you're aware of the benefits of not

3    overburdening the Court?

4          MS. GEMAN:  We are absolutely aware of those benefits,

5    your Honor.

6          THE COURT:  Defendant, what's your position on whether

7    *Sancton* should be accepted as related as they requested?

8          MR. GRATZ:  We think that *Sancton* should be accepted

9    as related.

10         THE COURT:  So nobody's opposing that then.  I'll get

11   an order out accepting *Sancton* as related, and we can look at

12   the issue of whether you're seeking consolidation or not, which

13   I think is relevant here. And I want the parties to think about

14   that and address it.  Certainly it's easiest for me if it goes

15   forward on a consolidated basis with the issuance of a

16   consolidated class action complaint.

17         Having said that, I really haven't thought it through,

18   so I do want the positions of the parties on that.  Ms. Blakely

19   if you let the clerk's office know I've accepted *Sancton* as

20   related.  Plaintiff, why don't you tell me in your view what

21   the case is about.  Tell me also what you know about the

22   California cases and the status of those cases.

23         MS. GEMAN:  Certainly, your Honor.  This case is about

24   systemic and unlawful infringement of plaintiffs' exclusive

25   rights to reproduce their own copyright protected works.  The

NBTBAUTC

plaintiffs are a broad array of fiction writers.  And then we
also have as the plaintiff the nation's oldest and largest
professional writers organization which owns some literary
estates.  This is a very tight and focused class action with a
plurality of New York plaintiffs with registered copyrights who
chose to sue here in the center of publishing involving a core
issue of vital importance to professional fiction writers now.

THE COURT:  Let me stop you for a moment.  Go ahead.

MS. GEMAN:  Thank you.  I think we'll hear a lot over
the next however long this case takes about AI and the science
and progress, but this is on some level about a company that
stole books and is disturbing the market for usurping and
ingested our clients' works without compensation, without
consent and deprived the plaintiffs of opportunities.

The discovery is, we brought a direct infringement
claim against the for-profit arm of Open AI, and we've also
brought vicarious claims against companies that have the right
to control the direct infringement as well as contributory
liability claims, notwithstanding the sort of number of
defendants of different Open AI entities.  This is a very
straightforward matter.  It's interesting, your Honor, that you
mention Google Books, because this case in some ways is the
opposite of Google Books.  Google Books was a case --

THE COURT:  Well, that case is cited in both of your
proposals.  That's why I raise it.  But on the issue of whether

NBTBAUTC

1   we do Rule 23 certification first or fair use.  Go ahead.

2          MS. GEMAN:  Correct.  I should also note that this

3   case is focused on those with registered copyrights.  Again,

4   we're really focusing on the professional fiction writers, and

5   we have very straightforward remedial theories.  We think this

6   case can move quickly and efficiently.  We disagree with the

7   premises of defendant's motions.  We understand those points

8   are premature.  I can speak briefly -- well, I'll start with

9   the cases in California.  So there are three cases as

10  defendants noted in the papers --

11         THE COURT:  Because what I'm doing, I assume you

12  realize is, I want to get a sense of the motion to dismiss

13  under the first- file rule or stay.

14         MS. GEMAN:  Correct.  So at a high level, we haven't

15  seen their motion.  We haven't seen what they've said.  And in

16  addition --

17         THE COURT:  What they'll say is that's the first filed

18  case, and they'll also say that they're none of the exceptions

19  that would apply to change the first file rule, which I don't

20  view as a hard and fast rule because it does have exceptions.

21  But you can bet if not your bottom dollar or one of your

22  dollars that they'll say the exceptions do not apply.  And they

23  will say that the issues are basically the same there.

24         MS. GEMAN:  Except that they're not, your Honor.  So

25  those cases have obviously a patina of similarity.  Open AI is

NBTBAUTC

1   the defendants.  There is a copyright claim out there.

2   However, those cases in California are not -- they have a much

3   broader set of plaintiffs.  But more relevantly, those cases

4   have a very different focus.  What appears to be the core

5   allegation in those cases is that defendant's large language

6   models are essentially themselves infringing machines.  And the

7   cases out there are focusing on a lot of really interesting and

8   important and challenging issues in and out of the copyright

9   law.  And there's already been a lot of motion practice about

10  everything there but the direct infringement claim.  There's

11  much broader classes out there which could make one say, well,

12  isn't our case just a subset of theirs, and the answer is no.

13  We have a very different targeted focus.

14       THE COURT:  But I thought your argument here is indeed

15  that the large language models are infringement machines; that

16  is, they're gobbling up -- let's take one of the authors --

17  Mr. Baldacci's work whole, and using it to train the algorithm

18  or whatever it may be to use human language.  Aren't you

19  alleging that's a violation of Mr. Baldacci's copyright in his

20  work?

21       MS. GEMAN:  So we are definitely alleging that when

22  Mr.  Baldacci's work was taken -- was reproduced wholesale, and

23  that there's paragraphs in the complaint talking not only about

24  summaries, but new works of his that the machines are putting

25  out.  That's obviously very upsetting to Mr. Baldacci.

NBTBAUTC

Mr. Baldacci is focusing on the fact that his exclusive right
to reproduction has been infringed.  The other cases are more
focused on a distinct, but right under the copyright law, which
is the right relating to derivative work.  And so this
difference does make the cases quite different in how they're
oriented and how they'll be focused.  We're more focused on
reproduction.

THE COURT:  Help me a little.  You're saying you don't
want -- you think it's a violation of your members' copyrights
to reproduce the work.  Does the large language model, which is
to use my phrase, gobbled up the Baldacci novel.  Are you
saying that the violation is if Open AI were to spit out
another copy of that novel, that's the violation of the
copyright law?

MS. GEMAN:  The violation of the copyright law is the
willful copying and reproduction of his books in their
entirety.  The other issues that your Honor mentions may well
be relevant to fair use or to damages, but the core issue is
the reproduction.

MR. SHOLDER:  Your Honor, if I may add.  I think just
to put a finer point on it.  The copying we're alleging as the
direct infringement at least then with other parties coming
into the picture in connection with the second infringement
claims is on the training side, it's on the input side.  We're
focusing on the mass copying of protective works for purposes

NBTBAUTC

1   of "training" the large language model.  The other cases in

2   California deal much more with the aspect of what's going on

3   inside, Is the large language model itself a derivative work?

4   Is the output derivative works?

5           Our concern with the output as my colleague suggested

6   could potentially relate to issues like fair use or damages.

7   But the copying itself as it is categorizes in our complaint is

8   with respect to the copying for purposes of training models.

9           THE COURT:  All right.  Go ahead.  Anything else?

10          MS. GEMAN:  Not with respect to the California cases.

11  I think your Honor asked about the procedural status of those

12  cases.

13          THE COURT:  Yes.

14          MS. GEMAN:  The three cases have been consolidated.

15  There is a motion to dismiss hearing that is happening I

16  believe around December 8.  Mr. Gratz can speak to that because

17  he'll be arguing it for defendants obviously.  And then I

18  believe it's anticipated that a consolidated complaint will be

19  filed sometime in early next year.

20          THE COURT:  What's the basis of the motion to dismiss?

21  Let me ask you, sir.

22          MR. GRATZ:  Your Honor, we are moving to dismiss the

23  claims that Ms. Geman described that are not present in this

24  case.  We did not move in that case to dismiss the claim for

25  reproduction, which is the one that overlaps with this case.

NBTBAUTC

1          THE COURT:  All right.  Thank you.

2          MS. GEMAN:  So that's essentially all I know about

3  procedural status with an important comment which is, the Court

4  there also heard this notion that those cases should deviate

5  from the usual practice of having class certification first.

6  And the Court has not accepted that.

7          THE COURT:  Did the Court reject that or it simply

8  hasn't ruled?

9          MS. GEMAN:  Again, subject to my being corrected, the

10  Court said that the Court wasn't going to do all those at the

11  same time; that defendants could tee it up again, but that

12  right now that's not the plan is to put summary judgment first.

13          THE COURT:  All right.  Thank you.  Anything else you

14  wanted to tell me about your case?

15          MS. GEMAN:  I can certainly address why we think the

16  sequencing should be the regular sequencing if your Honor would

17  like.

18          THE COURT:  We'll take that in a moment.  Defense.

19          MR. GRATZ:  This case, your Honor, is about the same

20  thing the California actions are about, the allegation that

21  these AI models learned from plaintiffs' books, plaintiffs'

22  published books.  Like anyone learning a language or learning

23  to reason, they are taking in things that other people have

24  written and learning from them, and using those things to form

25  their own sentencing and reason their own way.

NBTBAUTC

1          As in the Google Books case, reproduction when a

2     computer is involved is necessary to achieve that

3     non-infringing goal.  We're not talking about anyone getting

4     copies of Mr. Baldacci's books out of Chat GPT here.

5          So, your Honor, that's why in our view this is on all

6     fours with Google Books in that respect; as well in that to the

7     extent there was reproduction, which is alleged in the

8     complaint, that that is fair use because it was for a

9     non-infringing purpose.  Namely, teaching a model how to use

10    language and how to reason rather than how to output the

11    literal text of Mr. Baldacci.

12          THE COURT:  Are both counsel telling me that the

13    output issue is not at issue in this litigation because that

14    would simplify things greatly?

15          MS. GEMAN:  We think that the fact that we already

16    have evidence of very much unlikable books of output that is

17    infringing on the plaintiffs' rights is relevant to show the

18    commercial nature of the product, the issues that could inform

19    the sort of harm that we're looking at, and what this product

20    really is.  This product is not remotely analogous to something

21    like Google Books, not to focus and fetishize Google Books.  So

22    I think the output is relevant, but it is not core to the prima

23    facie proof of infringement.

24          THE COURT:  Go ahead, sir.

25          MR. GRATZ:  And with respect to how these claims

NBTBAUTC

1    relate to the claims in California, the claims as I've

2    mentioned are –– this claim is one of the claims in the

3    California action, that is the claim that reproduction for the

4    purpose of training is infringing is one of the claims going on

5    in the California actions.  The classes overlap entirely, and

6    indeed the named plaintiffs in those putative class actions are

7    also authors who have written published fiction and non-fiction

8    books, and are alleging that those books have been learned from

9    to make these AI marks.  And that's the basis for our thinking

10   that the first filed rule is a relevant one here.

11             MS. GEMAN:  Your Honor, if I may?

12             THE COURT:  Yeah.

13             MS. GEMAN:  Just to clarify.  While certainly there

14   are class members that overlap, it is certainly not the case

15   that there's this overlapping parties, in addition to being

16   literally different human beings.  That's not what we're

17   talking about.  Certainly not all of the named plaintiffs in

18   the California cases would meet our class definition, or rather

19   we wouldn't know if they did.

20             THE COURT:  How so?

21             MS. GEMAN:  We are focused on the professional fiction

22   markets. Some of the folks out there are non-fiction writers.

23   That's an easy one.

24             THE COURT:  That's in the Sancton case.

25             MS. GEMAN:  I understand, your Honor.  In addition, we

NBTBAUTC

1   have sort of limits.  And in the Sancton case there are limits

2   on what types of work qualify to focus the case a certain way.

3   So there are name plaintiffs -- I don't think that's the test

4   here, but there are named plaintiffs in the California case who

5   may or may not be in the classes here.

6          I would also note -- I don't want to speak for the

7   Sancton counsel, but I manage they might say that another

8   difference in parties is that Microsoft is only been sued in

9   the cases in New York.

10         THE COURT:  All right.  Have I set a date for the last

11  day to move to dismiss, transfer a stay?  I didn't set a

12  specific date, did I, Mr. Gratz. We talked about a month?

13         MR. GRATZ:  That's what you said, your Honor.

14         THE COURT:  So let's do that.  The last date for the

15  defense, assuming Microsoft is served on Monday to answer or

16  move in response to the complaint will be, I really need to

17  give Microsoft time.  Let's make it January 12.  Last date for

18  plaintiff to respond January 26.

19         Ms. Blakely, last date for the defendants to answer

20  move in response to the amended complaint is January 12.  Last

21  date for plaintiff to respond to the motion to dismiss or stay

22  or transfer is January 26.  Reply, February 2.  All right.

23         Now talk to me about, again, a preview of what I'll

24  call Google Books, whether we should handle certification first

25  or fair use.  Plaintiff.

NBTBAUTC

1        MS. GEMAN:  Thank you, your Honor.  So as your Honor

2    is aware the usual practice is -- and the practice supported by

3    treatises for logical reasons is that certification comes

4    first.  The reason being --

5        THE COURT:  The Second Circuit disagreed with that.

6        MS. GEMAN:  The Second Circuit in the context of a

7    totally inapposite case that had gone through a lot of

8    procedural shall we say difficulties determined in that

9    instance --

10       THE COURT:  Let me just think about that for a moment.

11   I think there was a proposed settlement which was rejected by

12   the judge, then there was certification discovery.  There was,

13   I think, the certification of a class.  And then that's

14   appealable, and that's the context in which the Second Circuit

15   had it, correct?

16       MS. GEMAN:  Correct.

17       THE COURT:  Okay.  Go ahead.

18       MS. GEMAN:  And your Honor before had mentioned

19   something about how summary judgment can get rid of the entire

20   case.  That's only true if the summary judgment is done on what

21   the scope of the class is.  Class actions can be accordions.

22   They can be the class that the plaintiffs have brought.  They

23   can be something smaller, and it just doesn't make sense to do

24   summary judgment before that.

25       But even if Google Books were sort of a north star

NBTBAUTC

here, which we don't agree with, Mr. Gratz's brief in Google

Books said that, that was a product that simply enables users

to find the books they want to read.  In so doing -- and then

the district court had approved this -- it enhanced the sale of

books to defendants that have copyright folders. It was really

just about -- not just, but really about a search function.

Chat GPT is -- and again, they were primarily

non-fiction books, and there was this idea of this sort of

fixed and unchanging snippets, and that folks were not using

those to read books or create derivative works and so on,

relying on what the courts basically said that case boiled down

to.

Chat GPT is, if anything, an even more expressly

commercial tool.  It's not supported by artists.  It's feared

by authors in the writing community.  It's not remotely about

allowing users to discovery new books.  But to the contrary,

it's unlawfully reproducing for so-called training in a hidden

and non-opaque way.  And so we could say a lot of things about

the way the case is different, but we also respectfully sort of

reject the idea that that one exception should govern things

here.

There's so many common issues in this case.  And to be

clear, sometimes we plaintiffs kick ourselves because we win on

class cert and then lose on summary judgment, and then we've

lost as to everyone.  But there are common issues here about

NBTBAUTC

1   how the reproduction works, perhaps how the book is memorized

2   or stored.  Not all of these may be so relevant, but the point

3   is there's really no difference between one author and another.

4           THE COURT:  But those go to certification.

5           MS. GEMAN:  Correct.  And I'm making the observation

6   that it doesn't make sense to have a summary judgment about one

7   person's issues or even 18 people's issues that just simply

8   doesn't apply to the others.  Maybe it's relevant.  Maybe it's

9   instructive, but I think it doesn't make sense in this case to

10  do that.

11          THE COURT:  Well, I gather Mr. Gratz is going to tell

12  us that it applies, that his motion fair use will apply to

13  everybody.  I assume that's what I'm about to hear, that is,

14  it's not an issue of one author or two authors.

15          MS. GEMAN:  I'm sure he'll say that.  Open AI has said

16  both that publicly that they respect creators, respect

17  creatives, but on the other hand it's all fair use.  So, yes, I

18  think your Honor is absolutely right.  They're categorically,

19  theoretically supportive, but categorically of the view that

20  fair use is an issue.  We think this underscores the benefits

21  of having certification come first.  It's the usual practice.

22  It's the usual practice for good reason.

23          THE COURT:  Help me with that a little bit.  It's the

24  usual practice because it seems to me it allows the parties to

25  know what the universe is of the dispute, and certainly

NBTBAUTC

1   settlement discussions often take place in earnest after

2   there's a certification of a class, so it has that aspect of it

3   from a standpoint of managing a case.  But it tells the parties

4   what the common issues are, and who the members of the class

5   are.  That I understand.

6        But if in response -- and I don't want to make the

7   defense's argument for it.  If in response, or if the response

8   is, it doesn't really matter who the class consist of if we

9   know what Chat GPT is doing with the materials that are shoved

10  into its maw.  And what it is doing with the materials that are

11  shoved into its maw is fair use, in a way it doesn't matter

12  what the exact contours of the class are.  Seems to me that

13  that's what the defense argument would be, and I think that's

14  aligned with Google Books.

15        MS. GEMAN:  I have to say, your Honor, that the

16  authors, the writing community is so upset and scared about

17  what's happening with these infringements of their copyrights,

18  their work, that I think if there were -- first of all, I think

19  we would win.  But even if there were a ruling that some

20  people's works were fair use, by definition that would not

21  apply to others.

22        I understand that to the extent the Court's spoken in

23  more general terms that to the extent other people sued one

24  after the other one after the other one after the other, that

25  there would be arguments about inclusiveness, and there'd be

NBTBAUTC

arguments about who decided that and the scope of it. And maybe

there'd be more information.  Obviously fair use is a mixed

question.  The facts matter.  I don't see that in this context,

in this really new and important context that even an adverse

ruling would be the end of the story.

          Now on the flip side of course, we could, like I said,

let's just say that the entire class had litigated the question

of fair use and lost as to the class.  Then that's a huge win

for the defendants.  But the sort of benefits that your Honor's

talking about where essentially one ruling, even in the worst

case scenario for us against a few people ends the discussion,

I just respectfully suggest and practically that I'm not sure I

see that here.

          THE COURT:  Okay.  This is what I want.  I want the

parties to submit to me, you can do it on the same date unless

you prefer something else, that's January 12, your positions on

whether fair use should come first or class certification

should come first.  You talked around that issue in your

proposal here, but you really didn't address it, so I want that

addressed.  It seems to me it makes sense to have simultaneous

exchange of those documents on the 12th.

          Did you want to respond, Mr. Gratz, in terms of what

the plaintiff has been telling me?

          MR. GRATZ:  Yes, your Honor.  We think that all of

this is fair use, that is the use of the works at issue to

NBTBAUTC

 1    train the model to learn language and to reason and to learn

 2    facts and otherwise to operate in a non-infringing manner and

 3    produce these non-infringing outputs is fair use across the

 4    board.

 5          We're hearing from the plaintiffs that they think,

 6    well, maybe fair use would apply to some people and not others.

 7    And maybe fair use is a mixed question and facts matter and

 8    they might prevail as to some plaintiffs, but not others, or

 9    some members of the class but not others.  Whether we prevail

10    across the board is going to be the question on summary

11    judgment, and it will be useful to get an answer to that

12    question going into the class certification question.  First,

13    because we may not need a class certification question if that

14    is resolved in the same way it was in Google Books.

15          And second because the substantive analysis of what

16    the facts are and which ones matter is going to necessarily

17    inform the class certification analysis.  In other words, if

18    our summary judgment is granted, well, it's moot.

19          If our summary judgment motion is not granted, if the

20    Court finds that there are disputed issues for example.  The

21    question will be, Are those disputed issues, all of them,

22    common issues that will such the common issue will predominate;

23    or are the disputed issues that are preventing summary judgment

24    individualized issues under the fair use factors, right; about,

25    for example, the nature of the work or about the effect on the

NBTBAUTC

 1    market for or value of particular works versus others.

 2              We think we win on this across the board on summary

 3    judgment.  But if we don't, how we don't is a really important

 4    input to the parties thinking about and litigating the question

 5    in particular of predominance.  I think there are a lot of

 6    other questions that may illuminate, but that's sort of the big

 7    ticket item on class certification, particularly in a copyright

 8    case where most of the time putative class actions on copyright

 9    grounds have been denied where they're denied on predominance.

10              THE COURT:  All right.  I tend to think I don't need

11    this at this point, but I throw it out there.  Does the Court

12    need a tutorial on how this thing works, or can the parties --

13    it's simple enough that anyone can understand it?  I'm thinking

14    about patent cases.  I just want to know whether I need to get

15    smart by the parties telling me how it works or whether it's

16    obvious once I get into the papers.

17              MS. GEMAN:  I think it's in between, your Honor.  In

18    other words, I think what we would anticipate is that likely in

19    connection with class certification, both sides may have

20    machine learning experts and so forth.  Certainly we're

21    always -- everyone I think in this room is interested in

22    learning and being educated, but I guess it's something that we

23    would want to think about.

24              THE COURT:  I happen to think it's premature.  I'm

25    just throwing it out.

NBTBAUTC

1          MR. GRATZ:  Your Honor, we think it may be premature

2     as well.  We think it might be very useful, and we think that

3     it would be useful to crystalize what all the experts'

4     positions are and where they do and don't disagree through the

5     process of expert discovery as our schedule proposes.  And then

6     based on that, have a further conference, set a tutorial, and

7     set summary judgment or class certification proceedings

8     thereafter.

9          THE COURT:  Was your proposal for expert discovery

10    prior to your proposed motion for summary judgment?

11         MR. GRATZ:  Yes, your Honor.

12         MS. GEMAN:  Your Honor, to be clear, our position was

13    consistent with many complex cases that we would anticipate

14    experts in connection with class certification.  As your Honor

15    is aware as with any other Rule 23 element that while the Court

16    can look to the merits to dissolve a disputed Rule 23 issue,

17    there's sometimes the expert work in class cert gets us a lot

18    of way there.  And it's a very efficient way to present the

19    issues, but sometimes there's expert supplements on common

20    merits, another reason it makes sense to do class cert first.

21         In other words, what we've proposed is -- and this

22    also saves the Court a lot of time, that when the plaintiffs

23    filed their -- when we file our opening class cert motion, we

24    include experts in support of class certification.  And then

25    likewise when defendants oppose class certification, they would

NBTBAUTC

1    have had the chance to grill our experts and so forth, and put

2    forth their own experts.  And so the entire Rule 23 record is

3    looked at together and efficiently.

4           THE COURT:  All right.  We have dates.  We have the

5    dates for the defense motion.  I'm sorry.  We have a date for

6    the service of the complaint, the amended complaint being

7    Monday.  We have dates for the motion to dismiss; January 12,

8    January 26, February 2nd.  We have a date for the exchange of

9    your positions on which comes first, class cert or fair use.  I

10   think that's as far as I ought to take it now, because I think

11   I need to determine the motion to dismiss stay or transfer

12   *ab initio*.  I'm reluctant to set any deadlines in Sancton

13   because I don't have Microsoft here. I mean, they may be in the

14   back there, but nobody's officially made a notice of

15   appearance.  So talk to Microsoft.  You've served them already?

16          MR. NATH:  Yes, your Honor.

17          THE COURT:  Talk to Microsoft.  What I'd like is that

18   you adhere to these dates, okay.  And I'm not going to

19   consolidate things right now. I've accepted it as related.  Is

20   there anything else I can do at this point for plaintiffs?

21          MS. GEMAN:  Thank you, your Honor.  Just a quick

22   housekeeping question.  How does your Honor prefer to get those

23   materials on January 12th in connection with fair use and class

24   cert?  Should each side submit a letter of five pages?  Did

25   your Honor want full briefing?

NBTBAUTC

```
 1            THE COURT:  Good question.

 2            MS. GEMAN:  I imagine a 25-page timeline on the

 3    subject, but whatever is helpful to your Honor obviously.

 4            THE COURT:  I don't know if you can do it in five

 5    pages.  I'm not going to set a limit.  Certainly 25 pages would

 6    be the absolute maximum, and I don't think I need 25 pages.

 7    I'm reluctant to set a particular number of pages.  Okay.  So

 8    let's leave it at that.

 9            Defense, anything else I can do for the defense?

10            MR. GRATZ:  No, your Honor, only to confirm --

11            THE COURT:  And I want, when you send it, send it in

12    hard copy and electronically filed.  Go ahead.

13            MR. GRATZ:  Your Honor has suggested that it would

14    probably be a good idea to extend the time to move in the

15    Sancton case to the 12th.  Obviously Microsoft isn't here.

16    Could we confirm that we will have at least until the 12th to

17    respond to that complaint?

18            THE COURT:  Let me just think about that.  You mean

19    they've already been served, and the time in which to respond

20    will have expired before the 12th?

21            MR. GRATZ:  Correct, your Honor.

22            THE COURT:  Well, at this point I'll unilaterally

23    extend the time of the defense in the Sancton case to respond,

24    to answer move in response to the Sancton complaint to January

25    12th.  All right, gentlemen?
```

NBTBAUTC

1          MR. NATH:  That's no problem at all, your Honor. I did

2     want to just apprise the Court that it's very possible that we

3     may amend as a matter of right in the next couple of weeks.

4     It's likely we'll add additional putative class

5     representatives, but we could confer with defense counsel about

6     that.

7          THE COURT:  Do that.  Something else.  Give me a

8     protective order and electronically stored information order as

9     well so we can handle that housekeeping.  All right.  I'm not

10    going to set another date for conference here because I'm going

11    to -- I want to look at this motion.  I may bring you in for

12    argument on the motion or I may not.  Anything else?  Thank you

13    very much.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25