# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUTHORS GUILD, DAVID BALDACCI, MARY BLY, MICHAEL CONNELLY, SYLVIA DAY, JONATHAN FRANZEN, JOHN GRISHAM, ELIN HILDERBRAND, CHRISTINA BAKER KLINE, MAYA SHANBHAG LANG, VICTOR LAVALLE, GEORGE R.R. MARTIN, JODI PICOULT, DOUGLAS PRESTON, ROXANA ROBINSON, GEORGE SAUNDERS, SCOTT TUROW, and RACHEL VAIL, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OPENAI INC., OPENAI OPCO LLC, OPENAI GP LLC, OPENAI LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI HOLDINGS LLC, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC,OPENAI STARTUP FUND MANAGEMENT LLC, and MICROSOFT CORPORATION,<br><br>Defendants. | Case No. 1:23-cv-08292-SHS; Case No. 1:23-cv-10211-SHS<br><br>**AUTHOR CLASS PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND DISMISS, STAY OR TRANSFER** |
| JONATHAN ALTER, KAI BIRD, TAYLOR BRANCH, RICH COHEN, EUGENE LINDEN, DANIEL OKRENT, JULIAN SANCTON, HAMPTON SIDES, STACY SCHIFF, JAMES SHAPIRO, JIA TOLENTINO, and SIMON WINCHESTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC, and MICROSOFT CORPORATION,<br><br>Defendants. | |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................... 1

II.     PROCEDURAL BACKGROUND......................................................................... 3

     A.      The Tremblay Action ................................................................................. 3

     B.      The Author Action ...................................................................................... 5

     C.      Case Management Order and Discovery .................................................... 6

     D.      Interim Co-Lead Counsel's Efforts to Coordinate Proceedings ............... 8

III.    ARGUMENT .......................................................................................................... 8

     A.      The Court Should Deny Intervention......................................................... 8

     B.      The First-to-File Rule Does Not Apply ..................................................... 8

     C.      Circumstances Warrant Exception to the First-to-File Rule.................... 14

     D.      Dismissal or Stay Is Procedurally Inefficient and Inappropriate ....................... 15

     E.      The Author Action Should Remain in SDNY ......................................... 17

IV.     CONCLUSION..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*,
No. 1:21-CV-04343-GHW, 2021 WL 3115125 (S.D.N.Y. July 20, 2021) ......................23, 24

*Adoma v. University of Phoenix, Inc.*,
711 F.Supp.2d 1142 (E.D. Cal. 2010)......................................................................................22

*AEI Life, LLC v. Lincoln Ben. Life Co.*,
305 F.R.D. 37 (E.D.N.Y. 2015) ..............................................................................................21

*Am. Geophysical Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994)................................................................................................12, 25

*Am. Steamship Owners Mut. Protection and Indem. Ass'n v. Lafarge N. Am. Inc.*,
474 F. Supp. 2d 474 (S.D.N.Y. 2007), *aff'd sub nom. New York Marine &*
*Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010)........................................20

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023)................................................................................................................20

*Authors Guild et al. v. OpenAI, Inc. et al.*,
No. 23-cv-8292-SHS (S.D.N.Y.) .............................................................................................3

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001)....................................................................................................12

*Calderon v. Clearview AI, Inc.*, No. 20-cv-1296-CM,
2020 WL 2792979 (S.D.N.Y. May 29, 2020) ................................................................. *passim*

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
386 U.S. 129 (1967)................................................................................................................10

*Chariot v. Ecolab, Inc.*,
97 F. Supp. 3d 40 (E.D.N.Y. 2015) .........................................................................................22

*City of Pontiac General Employees Retirement System v. Dell, Inc.*,
14-CV-3644 (VSB), 2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015)......................................23

*Connors v. Lexington Ins. Co.*,
666 F. Supp. 434 (E.D.N.Y. 1987) ..........................................................................................21

2947517.8

**TABLE OF AUTHORITIES**
(continued)

Page

*Davis v. Costa-Gavras*,
    580 F. Supp. 1082 (S.D.N.Y. 1984)..................................................................24

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
    522 F.3d 271 (2d Cir. 2008)..........................................................................15

*First City Nat. Bank & Trust Co. v. Simmons*,
    878 F.2d 76 (2d Cir. 1989)......................................................................15, 22

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019).................................................................................20

*Glover v. Ferrero USA, Inc.*,
    No. CIV.A. 11-1086 FLW, 2011 WL 5007805 (D.N.J. Oct. 20, 2011) ..................14

*H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*,
    797 F.2d 85 (2d Cir. 1986).............................................................................9

*In re Giant Eagle, Inc., Fair Lab. Standards Act Litig.*,
    330 F. Supp. 3d 1376 (U.S. Jud. Pan. Mult. Lit. 2018) .........................................23

*In re Jimmy John's Overtime Litigation*,
    877 F.3d 756 (7th Cir. 2017) ..........................................................................22

*In re Peloton Interactive, Inc. Sec. Litig.*,
    No. 21CV2369CBAPK, 2022 WL 1211516 (E.D.N.Y. Jan. 26, 2022) ..................22

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
    419 F. Supp. 2d 395 (S.D.N.Y. 2005)................................................................24

*Lau v. Wells Fargo & Co.*,
    No. 20-CV-03870 (AJN), 2021 WL 1198964 (S.D.N.Y. Mar. 30, 2021) .........14, 18

*Mejia v. Time Warner Cable Inc.*,
    No. 15-CV-6445 (JPO), 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) ..................10

*New York Marine and Generals Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010)..........................................................................24

*Orthmann v. Apple River Campground, Inc.*,
    765 F.2d 119 (8th Cir. 1985) ..........................................................................21

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Pike Co., Inc. v. Universal Concrete Products, Inc.*,
    284 F. Supp. 3d 376 (W.D.N.Y. 2018) ...................................................................14

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013).........................................................16, 17, 20

*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
    467 F.3d 238 (2d Cir. 2006).....................................................................................13

*Raniere v. Citigroup Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011) ....................................................................19

*Reliance Ins. Co. v. Six Star, Inc.*,
    155 F. Supp. 2d 49 (S.D.N.Y. 2001).............................................................2, 15, 16

*Robeson v. Howard University*,
    No. 00 CIV 7389, 2002 WL 122913 (S.D.N.Y. Jan. 30. 2002)...............................22

*Rothschild v. Gen. Motors LLC*,
    2020 WL 13581659 (E.D.N.Y. Sept. 30, 2020) ..........................................2, 16, 18

*Rudolph v. Hudsons Bay Co.*,
    No. 18 CV 8472 (PKC), 2019 WL 1416986 (S.D.N.Y. Mar. 29, 2019) ................10

*Sec. Pac. Mortg. & Real Est. Servs., Inc. v. Republic of Philippines*,
    962 F.2d 204 (2d Cir. 1992)......................................................................................8

*Shimon v. Equifax Info. Servs. LLC*,
    No. 18-CV-2959 (BMC), 2018 WL 4906245 (E.D.N.Y. Oct. 9, 2018), *aff'd*,
    994 F.3d 88 (2d Cir. 2021)........................................................................16, 17, 23

*Swinton v. SquareTrade, Inc.*,
    No. 4:18-CV-00144, 2018 WL 8458862 (S.D. Iowa Sept. 21, 2018) ....................22

*Tarazi v. Truehope Inc.*,
    958 F. Supp. 2d 428 (S.D.N.Y. 2013).....................................................................22

*Townes v. Trans Union, LLC*,
    No. CIV.A. 04-1488-JJF, 2007 WL 2457484 (D. Del. Aug. 30, 2007) .................10

*Travis v. Navient Corp.*,
    284 F. Supp. 3d 335 (E.D.N.Y. 2018) .......................................................10, 13, 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Tremblay v. OpenAI, Inc.*,
   No. 23-CV-03223-AMO, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024)...............................4, 6

*Trevino v. Golden State FC, LLC*,
   No.: 1:18-cv-00120, 2019 WL 2710662 (E.D. Cal. June 28, 2019)......................................22

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
   No. 10 CIV. 6457 SHS, 2014 WL 1087960 (S.D.N.Y. Mar. 19, 2014).................................18

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990).........................................................................................9, 11, 12

*Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*,
   No. 22-cv-2538 (LJL), 2022 WL 17067984 (S.D.N.Y. Nov. 17, 2022) ..............................25

**Statutes**

15 U.S.C. § 1681e(b) ............................................................................................................17

17 U.S.C. § 107....................................................................................................................12

31 U.S.C. § 3730(b)(5) .........................................................................................................19

Clayton Act ..........................................................................................................................10

Digital Millennium Copyright Act (DMCA).............................................................3, 10, 11, 19

False Claims Act...............................................................................................................18, 19

FLSA....................................................................................................................................18

**Court Rules**

Federal Rule of Procedure 12 ............................................................................................6, 15

Federal Rule of Procedure 24 ........................................................................................ *passim*

**Other Authorities**

Associated Press (July 13, 2023), *available at* https://apnews.com/article/openai-
   chatgpt-associated-press-ap-f86f84c5bcc2f3b98074b38521f5f75a (accessed
   Feb. 26, 2024) .................................................................................................................25

**TABLE OF AUTHORITIES**
(continued)

Page

Matt O'Brien, *ChatGPT-maker OpenAI signs deal with AP to license news stories* ...................25

Microsoft, *Microsoft Research Lab – New York City*,
https://www.microsoft.com/en-us/research/lab/microsoft-research-new-york/
(accessed Feb. 26, 2024) ........................................................................................................24

Motion to Enjoin Defendants and Their Counsel From Proceeding in Substantially
Similar Cases in the Southern District of New York" (hereinafter "Injunction
Motion") ...................................................................................................................................7

*New York City*, Axel Springer (Aug. 5, 2016), *available at*
https://www.axelspringer.com/en/ax-press-release/axel-springer-expands-us-
presence-with-establishment-of-headquarters-in-new-york-city (accessed Feb.
26, 2024) ................................................................................................................................25

## I.      <u>INTRODUCTION</u>

The Author Actions concern OpenAI and Microsoft's large-scale infringement of copyrighted works of fiction and nonfiction. Plaintiffs, authors and owners of registered copyrights in their work, seek to represent classes of fiction and nonfiction authors whose books were used to train Defendants' AI models. The Author Actions have progressed quickly and efficiently. The pleadings are settled, discovery is underway, and summary judgment will be fully briefed by this time next year, with class certification briefing completed within three months of a decision on summary judgment.

Proposed Intervenors seek to slow this progress—or end it—all so that they can exercise nationwide control over any case alleging copyright infringement against OpenAI. Proposed Intervenors are a different group of copyright owners who filed a separate action against OpenAI in the Northern District of California, the Tremblay Action. They have not sued Microsoft. The class they seek to represent consists of all owners of copyrights—registered or unregistered—whose content was  used to train OpenAI's models. Because no class has been certified in Tremblay, as of today the Proposed Intervenors represent only themselves.

The Motion before this Court is half of Proposed Intervenors' multi-jurisdictional strategy to exercise exclusive control over all copyright cases related to OpenAI. On February 8, 2024, Proposed Intervenors moved for an injunction in the *Tremblay* Action. The relief they request in the NDCA is so extraordinary that they cited no authority to support it: They ask the court to enjoin the OpenAI Defendants from defending themselves in—but not Plaintiffs from prosecuting—the Author Actions, the New York Times Action, and the *Basbanes* Action. Proposed Intervenors then filed this Motion, requesting equally meritless relief of intervention in this case for the limited purpose of delaying or terminating the Author Actions under the first-to-file rule. Proposed Intervenors are entitled to none of the relief they seek.

-1-

First, the threshold question is whether Proposed Intervenors can participate in the Author Actions under Federal Rule of Procedure 24. The answer is no. Courts in the Second Circuit hold that before any class is certified, a plaintiff in a putative class action has "no cognizable interest" and "no right to intervene in [other] pending cases," "even if all the actions in this district were identical to his." *Calderon v. Clearview AI, Inc.*, No. 20-cv-1296-CM, 2020 WL 2792979, at *3 (S.D.N.Y. May 29, 2020) (collecting cases). The Court's analysis should end here. Without a basis to intervene and participate in the Author Actions, all of Proposed Intervenors' requested relief—both its first-filed motion and request for a transfer—must also be denied.

Second, even if the Court gets past the motion to intervene, Proposed Intervenors fare no better on the first-to-file rule. This rule only applies to cases pending in different courts "involving the same parties and issues," and even then is merely discretionary. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001). The rule is inapplicable (and its purposes not served) in putative class actions, as here, with  no overlap between and among plaintiffs,  and significant differences between both the proposed class definitions (registered versus unregistered copyrighted works; books versus all works) and the defendants (Proposed Intervenors assert no claims against Microsoft). *See, e.g., Rothschild v. Gen. Motors LLC*, 2020 WL 13581659, at *8 (E.D.N.Y. Sept. 30, 2020). Proposed Intervenors' first-filed arguments fail for the independent reason that, even if the rule was triggered in the first place, the Tremblay Action has not progressed beyond the Author Actions.

Third, Proposed Intervenors' request to transfer this case to the Northern District of California also fails. Proposed Intervenors did not even attempt to meet their burden to show a

transfer is warranted by clear and convincing evidence. Nor could they under the facts here, given the location of the parties and third parties.

Thus, Proposed Intervenors' Motion should be rejected at the gate, and, if considered on the merits, denied.

## II.    PROCEDURAL BACKGROUND

Plaintiffs in these actions (the "Authors Actions") are legal or beneficial owners of registered fiction and nonfiction books. Dkt. 69 ¶ 393.[1] The Proposed Intervenors' action (the "*Tremblay* action") include everyone that own a copyright, either registered or unregistered, in any work that was used as training data for OpenAI's large language models.

### A.    Proposed Intervenors' *Tremblay* Action

On June 28, 2023, Proposed Intervenors Paul Tremblay and Mona Awad filed a putative class action against a number of the OpenAI Defendants in the Northern District of California. Hydal Decl. Ex. A. Proposed Intervenors' complaint asserts a variety of federal and state-law claims, including claims for direct copyright infringement, vicarious copyright infringement, and violations of the federal Digital Millennium Copyright Act (DMCA), as well as state-law claims for unfair competition, negligence, and unjust enrichment. The complaint alleges that OpenAI violated federal and state law by (a) using copyrighted works to train its large language models (LLMs), (b) creating LLMs that "are themselves infringing derivative works"; and (c) creating LLMs that generate infringing outputs. *See* Hydal Decl. Ex A ¶ 51-86. Proposed Interveners do not assert claims against Microsoft.

The class that Proposed Intervenors' seek to represent includes: "[a]ll persons or entities domiciled in the United States that own a United States copyright in any work that was used as

---

[1] All otherwise unspecified references to "Dkt. No." refer to docket numbers in *Authors Guild et al. v. OpenAI, Inc. et al.*, No. 23-cv-8292-SHS (S.D.N.Y.).

training data for the OpenAI Language Models during the Class Period." *Id.* at 8. If certified, this class will include millions of people, the vast majority of whom likely are holders of unregistered copyrights in a diverse array of textual material available on the internet, from Reddit posts to books to news articles to personal blogs. *See Tremblay* Dkt. No. 1 ¶ 23.

On February 12, 2024, the *Tremblay* court denied in part and granted in part Defendants' Motions to Dismiss. *See Tremblay v. OpenAI, Inc.*, No. 23-CV-03223-AMO, 2024 WL 557720, at *8 (N.D. Cal. Feb. 12, 2024). With the exception of the direct copyright infringement and unfair competition claims, the court dismissed all claims without prejudice and gave the Proposed Intervenors until March 13, 2024 to file an amended complaint. *Id.*[2]

Fact and expert discovery is ongoing in the *Tremblay* action. Fact discovery is scheduled to close on October 29, 2024, and expert discovery on March 13, 2025. No class has been certified, nor have the Proposed Intervenors moved for class certification. Class certification is scheduled to be completed by June 24, 2025. *Tremblay* Dkt. No. 51.

### B. The Author Actions

On September 19, 2023, after an extensive pre-filing investigation, and in the wake of the response of the author community to the issues in the case (including as shown by surveys), a the Authors Guild and seventeen fiction authors filed their action. *Authors Guild* Dkt. No. 1. On November 21, 2023, Julian Sancton brought an action against OpenAI and Microsoft on behalf of himself and similarly situated nonfiction authors. *Sancton* Dkt. 1.  On December 5, 2023, following revelations regarding Microsoft's relationship to OpenAI, the Author Plaintiffs filed an amended complaint, naming Microsoft as an additional defendant. *Authors Guild* Dkt. No. 40.

---

[2] The *Tremblay* court also consolidated the *Tremblay* action with other related actions and ordered that any other cases that come to the Northern District of California involving the same or substantially similar issues of law and fact be consolidated with the *Tremblay* action. *Tremblay* Dkt. No. 107 at ¶ 2.

2947517.8

On January 12, 2024, the Plaintiffs in the *Authors Guild* action and the Plaintiffs in the *Sancton* action filed a Motion for the Appointment of Interim Class Counsel for the Fiction and Nonfiction Authors Classes. *Authors Guild* Dkt. No. 54; *Sancton* Dkt. No. 29. Shortly thereafter, Plaintiffs from the *Authors Guild* and *Sancton* actions were consolidated. *Authors Guild* Dkt. No. 55 at 3; *Sancton* Dkt. No. 30 at 3.

The Court granted Plaintiffs' Motion for the Appointment of Interim Class Counsel for the Fiction and Nonfiction Authors Classes on February 6, 2024. *Authors Guild,* Dkt. No. 70; *Sancton* Dkt. No. 48. Subsequently, Plaintiffs filed the First Consolidated Class Action Complaint against OpenAI, its related entities, and Microsoft Corporation on February 2, 2024. *Authors Guild* Dkt. No. 69; *Sancton* Dkt. No. 46. Plaintiffs brought three discrete claims: (1) direct copyright infringement against OpenAI and Microsoft, (2) vicarious copyright infringement against OpenAI and its related entities, (3) and contributory infringement against Microsoft and related OpenAI entities. *Id.* Defendants filed their answers to the Consolidated Complaint on February 16, 2024. *Authors Guild* Dkt. Nos. 74, 75; *Sancton* Dkt. No. 51.

Plaintiffs also brought limited class definitions to focus the issues in this action:

> All natural persons in the United States who are the sole authors of, and legal or beneficial owners of Eligible Copyrights in, one or more Fiction Class Works; and all persons in the United States who are the legal or beneficial owners of Eligible Fiction Copyrights in one or more Fiction Class Works held by literary estates.

*Authors Guild* Dkt. No. 69 ¶ 393; *Sancton* Dkt. No. 46 ¶ 393. And:

> All natural persons, literary trusts, and literary estates in the United States who are legal or beneficial owners of Eligible Nonfiction Copyrights in one or more Nonfiction Class Works; and all persons in the United States who are the legal or beneficial owners of Eligible Nonfiction Copyrights in one or more Fiction Class Works held by literary estates.

2947517.8

*Authors Guild* Dkt. No. 69, ¶ 396; *Sancton* Dkt. No. 46, ¶ 396. Unlike in the *Tremblay* action, the Fiction and Nonfiction Class Works are limited to those registered with the U.S. Copyright Office. *Id.* at 394-95, 397-98.

      C.     **Case Management Order and Discovery.**

      Author Plaintiffs have secured a timetable for expeditious, efficient resolution of the copyright claims at issue for Plaintiffs the proposed Classes. Under the parties' negotiated stipulation, entered on January 29, 2024, fact discovery will be completed by September 17, 2024, and expert discovery by December 9, 2024. *Authors Guild Dkt. No. 64.*

      In exchange for an agreement that summary judgment be adjudicated before class certification, Interim Class Counsel obtained valuable concessions, and protected their proposed Class' interests.  They obtained (a) an agreement that neither Defendant will seek dismissals under Rule 12; (b) waiver of Defendants' rights to raise one-way intervention defenses; and (c) an expedited schedule of full, classwide discovery under which summary judgment briefing is completed by the end of February 2025. Defendants' waiver of their rights to dismiss claims under Rule 12 is especially valuable in light of the motion-to-dismiss order in the *Tremblay* Action, where Judge Martinez-Olguin dismissed contributory and vicarious infringement claims that will proceed into discovery in the instant Author Actions. *Tremblay*, 2024 WL 557720, at *1.

      Consistent with the expedited schedule, Author Plaintiffs have made significant progress in discovery. Interim Co-Lead Counsel Declaration, ¶¶ 11-27 ("Author Counsel Declaration"). Plaintiffs have served four sets of requests for production, three sets of requests for admission, and two sets of interrogatories. *Id.* Defendants have served requests for production on Plaintiffs, and Plaintiffs have responded. *Id.* The parties met and conferred about Defendants' discovery

responses several times concerning, among other things, the production and inspection of OpenAI's training data and the production of ESI. *Id.* OpenAI has started producing documents.

On February 23, 2024, Plaintiffs filed a letter motion to compel OpenAI to respond to requests for admission addressing whether Plaintiffs' works are within the training dataset. *Authors* Dkt. No.78.

### D.      **Attempts at Informal Coordination and Proposed Intervenors' Recent Motions.**

Author Plaintiffs, through Interim Class Counsel, collectively have made multiple attempts to contact Proposed Lead Counsel for the Proposed Interveners Joseph Saveri. Author Counsel Declaration ¶ 28. There has been one conversation only: on December 6, 2023, Interim Co-Lead Counsel Justin Nelson, Rohit Nath, and Alejandra Salinas had an initial call with Mr. Saveri and other members of his law firm to discuss the cases and the possibility of coordination briefly. *Id.* Other than that December call, Mr. Saveri and his law firm have not responded to subsequent or other reach outs. *Id.*

On February 6, 2024, six days after this Court appointed Interim Class Counsel, Proposed Intervenors filed a Notice of Pendency of Other Actions or Proceedings in the *Tremblay* Action. Two days later, Proposed Intervenors filed what they called a "Motion to Enjoin Defendants and Their Counsel From Proceeding in Substantially Similar Cases in the Southern District of New York" (hereinafter "Injunction Motion"). *Tremblay* Dkt. No. 98. The Injunction Motion asks Judge Martinez-Olguin to enjoin the OpenAI Defendants (and their counsel) from defending themselves in the Author Actions, the *Basbanes* Action, and the *New York Times* action. *Id.* The Injunction Motion was originally set to be heard on April 4, 2024. The Proposed Intervenors have recently moved to have their Injunction Motion heard earlier, on March 7, 2024, due to a

"flurry of docket activity in" the Author Actions. Tremblay Dkt. 109 at 3. The Injunction Motion has not been decided.

On February 12, 2024, Proposed Intervenors filed this Motion in the Author Actions and the *Basbanes* Action. The Proposed Intervenors filed the identical motion in the *New York Times* Action on February 23, 2024. *New York Times* Dkt. No. 47.

## III.   ARGUMENT

### A.   The Court Should Deny the Proposed Intervenors' Motion on the Threshold Question of Intervention Under Rule 24(a)(2) and (b).

Intervention is the threshold question. "Before [Proposed Intervenors] can seek the dismissal, transfer, or stay of the New York Cases, [they] must prevail on [their] motion to intervene." *Calderon v. Clearview AI, Inc.*, No. 20 CIV. 1296 (CM), 2020 WL 2792979, at *3 (S.D.N.Y. May 29, 2020) (denying motion for mandatory and permissive intervention and, in the alternative, motions under first-filed rule). Courts in the Second Circuit are clear: Absent a certified class, a plaintiff in a *putative* class action, like Proposed Intervenors here, cannot intervene in another case brought by different parties, even if the claims are similar. *Id.* Proposed Intervenors failure on this threshold issue is dispositive of their Motion in its entirety, including its requested relief under the first-filed rule and section 1404(a).

#### 1.   The Proposed Intervenors Cannot Satisfy the Requirements for Mandatory Intervention.

Under Rule 24(a)(2), intervention as of right may be granted only when four elements are satisfied: (1) the motion is "timely"; (2) the movant "claims an interest relating to the property or transaction that is the subject of the action"; (3) "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the movant's interest is not "adequately represent[ed]" by the "existing parties." Fed. R. Civ. P. 24(a)(2). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Sec. Pac.*

2947517.8

*Mortg. & Real Est. Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir. 1992) (internal quotations and emphasis omitted). Proposed Intervenors fail on the second, third, and fourth elements.

**_Proposed Intervenors Have No Cognizable Interest in the Author Actions._** To satisfy Rule 24(a)(2), "a would-be intervenor's interest must be direct and immediate, not remote or contingent." *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986) (cleaned up). An interest "that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).

Proposed Intervenors' purported interest in the Author Actions is entirely contingent and remote, and is too contingent to satisfy Rule 24(a)(2). Judge McMahon's recent decision in *Calderon* is instructive. In *Calderon*, as here, a purported first-filed plaintiff sought to intervene and dismiss under the first-to-file rule several other putative class actions, arguing his interest in the outcome of "competing class actions, with overlapping classes, claims, parties and legal and factual issues." *Calderon*, 2020 WL 2792979, at *4. In denying the motion to intervene, the Court explained:

> **[N]o class has been certified anywhere, so Mutnick has no right to control the litigation and disposition of any claim other than his own**. Prior to the certification of a class and the appointment of class counsel, Mutnick's (and his lawyer's) interest in being in control of the Clearview AI lawsuits is too attenuated to justify intervention as of right . . . .
>
> **Unless and until (1) a class is certified; (2) Mutnick is found to be an appropriate class representative, and (3) his counsel are deemed appropriate class counsel, the only legally cognizable interest he has is in his own claim**. That claim is not pending in the Southern District of New York (all the actions that are here, like Mutnick's in Illinois, being merely putative class actions, not certified class actions), **he has no right to intervene in any of the actions pending here – even if all the actions in this district were identical to his**.

*Id.* at *5 (emphasis added). Similarly, Proposed Intervenors' *only* interest here is as hypothetical representatives of an uncertified class.

The *Calderon* decision is but one of many cases endorsing this principle. In *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 342 (E.D.N.Y. 2018), the court denied a motion to intervene "because, before class certification, each action only involves individual claims asserted by individual plaintiffs" and therefore the "proposed intervenors' stated interests are insufficient to meet the requirements of Rule 24(a)." Other courts in the Second Circuit, and elsewhere, have reached the same result. *See Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at *18 (S.D.N.Y. Aug. 1, 2017) (denying motion to intervene because, *inter alia*, "prior to the certification of a class, any interest . . . is too remote to justify intervention"); *Rudolph v. Hudsons Bay Co.*, No. 18 CV 8472 (PKC), 2019 WL 1416986, at *3 (S.D.N.Y. Mar. 29, 2019) ("The proposed intervenors' case for intervention, as of right and permissively, is substantially overblown. No class has been certified in the instant action . . . ."); *Townes v. Trans Union, LLC*, No. CIV.A. 04-1488-JJF, 2007 WL 2457484, at *2 (D. Del. Aug. 30, 2007) ("[T]he Court finds the interest asserted by the Millets to be speculative at this juncture [because a] class has not been certified."). Proposed Intervenors do not even cite this authority, let alone explain why the Court should depart from it.[3]

Proposed Intervenors also fail the interest element of Rule 24(a)(2), as the differences between the cases substantially reduces any risk of "inconsistent rulings." Mot. at 10. Proposed Intervenors' assert a number of claims—state-law claims and federal DMCA claims—that are

---

[3] Proposed Intervenors rely on *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 133 (1967), which involved the State of California seeking to intervene in a Clayton Act action that impacted the California economy. Proposed Intervenors are not sovereigns acting on behalf of their constituents.

not at issue in the Author Actions, while the Author Plaintiffs assert claims against Microsoft, who is not a defendant in the *Tremblay* Action.[4] Because there is no risk of inconsistent rulings on the state-law and DMCA claims, as well as claims against Microsoft, Proposed Intervenors' so-called interest in avoiding inconsistent rulings is too speculative to warrant intervention as of right. *See, e.g., Calderon*, 2020 WL 2792979, at *6 (denying intervention in part because actions "raise different legal issues, have partially non-overlapping class definitions, and may require different discovery").

> ***Proposed Intervenors' Face No Impairment of Cognizable Interests.*** Proposed Intervenors also cannot satisfy that their asserted interest "would be impaired or impeded without intervention" *Calderon*, 2020 WL 2792979, at *6.

Proposed Intervenors argue that similar issues of copyright law may be decided in both actions. Mot.at 9-10. Setting aside the substantial differences between the two actions, addressed above, mere overlap in legal issues between pending lawsuits is insufficient to satisfy the impairment element because "[i]dentical issues of law arise in pending cases all the time." *Calderon*, 2020 WL 2792979, at *6. That the Author Plaintiffs seek to represent a putative class does not change the analysis. If the Author Classes are certified, the Proposed Intervenors would be "perfectly free to opt out and pursue [their] claim[s] on [their] own in the court of [their] choice." *Id.*

> ***Proposed Intervenors' Interests Are Adequately Represented.*** For intervention under Rule 24(a)(2), a movant must also show "there will be inadequate representation of its rights unless it is allowed to intervene." *Washington Elec. Co-op.*, 922 F.2d at 98. Courts demand "a

---

[4] Proposed Intervenors wrongly state that the defendants in the Author Actions "are all OpenAI affiliates." Mot. at 17 n.7. Defendant Microsoft is not an OpenAI affiliate.

more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective. Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001) (citations omitted).

Here, this presumption is unrebutted and unrebuttable.  The Author Plaintiffs and Proposed Intervenors both seek to hold OpenAI accountable for copyright infringement and maximize recovery. Proposed Intervenors offer no reason why the Author Plaintiffs "will not pursue [their] . . . claim[s] vigorously." *Washington Elec. Co-op., Inc.*, 922 F.2d at 98.

Instead, Proposed Intervenors assert that one of the plaintiffs, the Authors Guild (notwithstanding its advocacy and efforts to help writers) is a "promoter of generative AI," based on and disparaging its advocacy for a "collective licens[ing]" regime for artificial intelligence." That the Authors Guild is looking for a prospective collective licensing solutions that will or may be offered to all AI companies—in lieu of the unlicensed, uncontrolled and uncompensated use at issue in the case—if anything, *benefits* the Proposed Intervenors. These efforts, among other things, show that there is an existing or likely-to-develop sales and licensing market for the infringing use at issue, and thus why Defendants' unlicensed usurpation of Plaintiffs' and the Author Classes works is an unfair use under Factor 4 of 17 U.S.C. § 107. *See, e.g., Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994) ("impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets" is "legally cognizable" for fourth fair-use factor). In any event, the Author Actions will in no way  "forc[e] the [Proposed Intervenors] to commit to a licensing regime." Dkt. 71-1 at 10. If and when the

-12-

Author Classes are certified, the Proposed Intervenors can opt out. *Calderon*, 2020 WL 2792979, at *6.

Generally, if and to the extent Proposed Intervenors are raising disagreement over litigation strategy, this is not enough to rebut the presumption of adequate representation. *Travis*, 284 F. Supp. 3d at 346 ("evidence that the putative intervenor and the existing party have different views on . . . litigation strategy is insufficient").

### 2.   Permissive Intervention Should Be Denied.

Under Rule 24(b), the "court may permit anyone to intervene who" on a "timely motion" "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising its discretion, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3). "The court considers substantially the same factors whether the claim for intervention is 'of right' under Fed.R.Civ.P. 24(a)(2), or 'permissive' under Fed.R.Civ.P. 24(b)(2)." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

Proposed Intervenors' bid for permissive intervention fares no better than its bid for intervention under Rule 24(a)(2). At the outset, the reasons why Proposed Intervenors fail to meet the elements of Rule 24(a)(2)—the lack of cognizable interest, the lack of any impairment of its nonexistent interest, and the adequacy of representation—all weigh sharply against permissive intervention. *Supra* p. 7-10; *Travis*, 284 F. Supp. 3d at 346.

Permissive intervention here will also "unduly prejudice and delay the adjudication of the original parties' rights," as Proposed Intervenors admit that they seek to intervene only to get the Author Actions dismissed, stayed, or transferred. Mot. at 10. As the Court in *Travis* held in denying permissive intervention in nearly identical circumstances:

2947517.8

> [I]ntervention by proposed intervenors would, as a practical matter, delay or prejudice the adjudication of the rights of plaintiff and defendants. Proposed intervenors do not seek to intervene to participate in this case—instead, they seek to intervene for the purpose of moving to dismiss, stay, or transfer this action under the first-to-file rule.

284 F. Supp. 3d at 346–47. The *Travis* court is not alone. Courts in the Second Circuit and elsewhere routinely deny permissive intervention where a movant's sole interest is to cut short adjudication of the existing parties' claims, as opposed to participating in an adjudication on the merits. *See also Calderon*, 2020 WL 2792979, at *8 ("Courts have previously recognized that intervention for the sole cause of dismissing, staying, or transferring an action – the very action sought here – is prejudicial to the original parties' right to proceed before the court of their choosing."); *Glover v. Ferrero USA, Inc.*, No. CIV.A. 11-1086 FLW, 2011 WL 5007805, at *7 (D.N.J. Oct. 20, 2011) ( "Proposed Intervenors' stated interest in only having this action dismissed or transferred [is] an interest which will clearly prejudice the rights of the existing parties in this action.").

The one case Proposed Intervenors cite, *Pike Co., Inc. v. Universal Concrete Products, Inc.*, 284 F. Supp. 3d 376 (W.D.N.Y. 2018), cuts against their argument. In *Pike*, the court permitted the intervention of a party to the contract-in-suit who sought to participate in the merits adjudication of the asserted contract claims. *Id.* at 383. The *Pike* movant, unlike Proposed Intervenors here, did not seek to cut the merits adjudication short and, notably, *no party* in *Pike* even disputed whether "the intervention requested would 'unduly delay or prejudice the adjudication of the rights of the original parties.'" *Id.* at 397.[5]

---

[5] Proposed Intervenors also cite *Lau v. Wells Fargo & Co.*, but that case did not even involve a motion to intervene. No. 20-CV-03870 (AJN), 2021 WL 1198964, at *3 (S.D.N.Y. Mar. 30, 2021).

-14-

The other arguments that Proposed Intervenors raise do not move the needle. They claim that the *Tremblay* and Author Actions are "substantially similar." Mot. at 11. But because Proposed Intervenors do not assert claims against Microsoft, cutting the Author Actions short forces the Author Plaintiffs (and Author Classes) give up claims against Microsoft, a culpable defendant with a $3+ trillion market capitalization. Nor is it true (or relevant) that the Author Action is "well-behind" the *Tremblay* Action. *Id*. The *Tremblay* Action has been bogged down Rule 12 motions, a partial dismissal, another forthcoming amended pleading, and likely more motion practice. The Author Actions, by contrast, have bypassed Rule 12 motion practice by stipulation, are ahead in discovery, and have secured an efficient schedule for the adjudication of summary judgment and class certification in quick succession. *Supra* II.C. Permitting Proposed Intervenors to participate solely to interrupt this progress prejudices Author Plaintiffs and the proposed Authors Classes they will seek to represent. The Court should follow the great weight of authority in this Circuit and deny the motion for permissive intervention.

## B. The First-to-File Rule Does Not Apply.

"When two actions involving the *same parties and issues* are pending concurrently, courts in the Second Circuit follow the 'first-filed' rule whereby the court which first has possession of the action decides it." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001) (cleaned up, emphasis added). The rule focuses generally on so-called "mirror image" cases, where two identical cases are proceeding in different courts—often with one a declaratory judgment action—involving the same parties and underlying claims.[6] *Emps. Ins. of*

---

[6] Throughout their motion, rely on so-called "mirror image" cases. *See, e.g.,* Mot. at 13 (citing *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994); *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 77 (2d Cir. 1989). This authority is plainly inapposite, as this matter does not involve a preemptive declaratory judgment action, nor does it involve identical parties or claims. *Supra* Sec. II.

-15-

*Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). Although the "rule creates a general presumption that a first-filed suit has priority, that presumption is not applied in a rigid or mechanical way." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) "Rather, because the complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, the district court is instead required to consider the equities of the situation when exercising its discretion." *Id.*; *Reliance Ins. Co.*, 155 F. Supp. 2d at 54 (first-to-file rule "is not to be applied mechanically, but is . . . a 'presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action."

Here, the first-to-file rule does not apply because (1) the parties are different; (2) the Tremblay and Author actions advance different claims that will turn on different legal issues; (3) the Tremblay action has not advanced beyond the Author action; and (4) considerations of equity and efficiency weigh sharply against a dismissal, stay, or transfer of the Author Action.

### 1.  The *Tremblay* and *Authors* actions involve different plaintiffs.

While true that some courts have assessed proposed classes in the first-to-file context[7], courts in this circuit regularly decline to apply (and should decline to apply) the first-to-file rule to parallel putative class actions because—prior to certification—the plaintiffs and issues in the litigation are unsettled.  *See e.g., Shimon v. Equifax Info. Servs. LLC*, No. 18-CV-2959 (BMC), 2018 WL 4906245, at *2–3 (E.D.N.Y. Oct. 9, 2018), *aff'd*, 994 F.3d 88 (2d Cir. 2021); *Rothschild v. Gen. Motors LLC*, No. 19CV05240DLIRLM, 2020 WL 13581659, at *8 (E.D.N.Y. Sept. 30, 2020) ("[B]ecause a nationwide class has not been certified yet, neither the parties nor the issues substantially overlap."); *Quinn*, 958 F. Supp. 2d at 539.

---

[7] *See e.g., Travis*, 284 F. Supp. 3d at 346–47.

2947517.8

2947517.8

The court's reasoning in *Shimon* is instructive.  There, the court addressed two putative class actions filed against defendant Equifax alleging widespread violations of 15 U.S.C. § 1681e(b).  *Shimon*, 2018 WL 4906245, at *2.  The first case was filed in this district, and the second one filed five months later, in the Eastern District of New York.  *Id*.  Equifax moved to stay the second case under the first-filed.  *Id*.  The *Shimon* court denied the motion because the plaintiffs were in-flux and therefore insufficiently overlapping, explaining:

> In the putative class action context, *even assuming that the two complaints define identical classes,* the parties will rarely, if ever, actually be identical – the plaintiff in the second-filed action may opt-out if the class is certified or perhaps many members of the first putative class will opt out. The proposed class representative in the first action may also be found inadequate or the first case may settle before a class is certified.

*Id*. (emphasis added).

Here, far from being "identical," there is considerable difference both the named parties and the putative classes they propose to represent, as addressed in the previous sections.  No class has been certified in either the *Tremblay* or the *Authors* action and thus the plaintiffs and their claims remain in flux across both litigations.  *See generally* Rule 23(c)(1)(B) ("an order that certifies a class action must define the class and the class claims"). This uncertainty, by itself, is sufficient to decline application of the first-filed-rule.  *See generally Quinn*, 958 F. Supp. 2d at 539 (denying a first-to-file motion and explaining "no nationwide class has, in fact, been certified . . . [t]herefore, neither the parties nor the issues in this case are identical").

Notably, while undetermined at present, the *Tremblay* and *Authors* actions have not even alleged identical proposed classes.  *See supra* Sec. II.  The *Tremblay* action seeks to certify a broad class (of potentially millions) of owners of both registered and unregistered copyrights. *See id*.  By contrast, the *Authors* action seeks to certify a narrow class of professional authors who have registered their copyrights.  *See id*. Thus, even in the abstract, the proposed classes are

-17-

categorically distinct.  Further, looking to the plaintiffs that *are* certain at this stage reveals that none of the named plaintiffs are the same.

The *Tremblay* plaintiffs contend that all plaintiffs are overlapping because "each member of the class asserted in the S.D.N.Y. Actions are members of the *Tremblay* class."  Mot. at 16.  This argument is plainly incorrect: the *Tremblay* class has not been certified and therefore none of the *Author* plaintiffs falls within it.  *See generally Rothschild*, 2020 WL 13581659, at *8 ("[B]ecause a nationwide class has not been certified yet, neither the parties nor the issues substantially overlap.").  The *Tremblay* plaintiffs' reliance on *Lau v. Wells Fargo & Co.*, No. 20-CV-03870 (AJN), 2021 WL 1198964 (S.D.N.Y. Mar. 30, 2021), underscores the misleading conflation between a proposed and certified class in their argument.  In *Lau*, the court determined that the plaintiffs in a second-filed collective action sufficiently overlapped with the plaintiffs in the first-filed action because "[the first-filed class] ***has already been certified***, and therefore Plaintiff and the other putative members of the [second-filed] collective can opt-in to that action if they so choose."  *Id.* at *5 (emphasis added).  That is not the case here and *Lau*—cited throughout the *Tremblay* motion—is inapposite.[8]

The *Tremblay* plaintiffs' extensive reliance on this Court's order in *U.S. ex rel. Cestra v. Cephalon, Inc.*, No. 10 CIV. 6457 SHS, 2014 WL 1087960 (S.D.N.Y. Mar. 19, 2014), in support of dismissal is also misplaced.  At the threshold, in *Cephalon* the Court *did not dismiss the plaintiff's case,* but *transferred it at the plaintiff's request.  See id.* at *1.  Specifically, in *Cephalon*, a *qui tam* relator *himself* moved to transfer his False Claims Act case to the district

---

[8] *Lau* is also inapposite because it involved competing FLSA collective actions.  As explained in *Lau* (but omitted from the *Tremblay* brief), courts in the Second Circuit have instructed that the first-to-file doctrine is "particularly appropriate in the context of competing FLSA collective actions."  *Lau*, 2021 WL 1198964 at *3 (quoting *Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120 VEC, 2015 WL 505384, at *4 (S.D.N.Y. Feb. 5, 2015).

where a substantively similar case was first-filed.  *Id.*  Nowhere in *Cephalon* did the Court address the issue of undetermined class actions and claims; in fact, the case arose under the False Claims Act, where a specific statute governs first to file issues based on that statute's specific role in balancing the encouragement of whistleblower suites, but only when information is (loosely speaking) new and non-public.  *See* 31 U.S.C. § 3730(b)(5).

                    2.       **The *Tremblay* and *Author* actions involve different defendants.**

The defendants also differ between the actions.  While the *Tremblay* action exclusively names OpenAI entities as defendants, Hydal Decl. Ex. A, the Authors action brings claims against OpenAI and Microsoft. *Authors Guild* Dkt. No. 69.  The *Tremblay* plaintiffs assert that the only non-overlapping defendants are OpenAI LLC, OpenAI Global LLC, and OpenAI Holdings LLC. Mot. at 17 & n.7.  That is incorrect as the Authors include Defendant Microsoft and the attendant theory of contributory infringement further distinguishes the litigations and is fatal to the *Tremblay* plaintiffs' contention that the distinctions among the defendants are nominal, and supports denial of their motion.  *See Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 302 (S.D.N.Y. 2011).

                    3.       **The *Tremblay* and Author Actions involve different claims and issues.**

The first-to-file rule is inapplicable for another reason: The *Tremblay* and Author Actions involve different claims, as explained *supra* Sec. II. The variety of state-law claims in the *Tremblay* Action—unfair competition, unjust enrichment, and negligence—as well as the DMCA claim, includes different elements and require distinct discovery that is not at issue in the Author Actions. Likewise, Author Plaintiffs advance claims against Microsoft for contributory infringement. *Authors Guild* Dkt. No. 69 at ¶¶ 423-29.  Neither this theory of liability nor this defendant are present in the *Tremblay* action. While the Proposed Intervenors claim that these differences are of "no moment" because "all actions allege claims against OpenAI" for misuse of

copyrighted works, Mot. at 16, courts decline to apply the first-to-file rule where, as here, there is minimal overlap in the causes of action asserted.  *See Quinn*, 958 F. Supp. 2d at 539 ("[T]he court . . . must not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same," cleaned up.); *see also Am. Steamship Owners Mut. Protection and Indem. Ass'n v. Lafarge N. Am. Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010), (finding that "[t]he two actions are therefore not coextensive, although they overlap on one of the two issues at stake").

The *Tremblay* plaintiffs also overlook the differing legal *issues* that will arise as a result of the difference in the classes, should they be certified.  For example, because the *Tremblay* class is composed primarily of unregistered copyright holders the *Tremblay* action will—at some stage—need to address whether the lack of registration alters their plaintiffs' infringement claims or damages.  *See generally Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019) (holding that a copyright registrant's application must be processed before she can file a claim of copyright infringement). This issue does not exist in the *Authors* action, where the contemplated class have presently registered, enforceable copyrights. *See id.* at 887; *see also Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023) ("A use that shares the purpose of a copyrighted work, by contrast, is more likely to provide the public with a substantial substitute for matter protected by the copyright owner's interests in the original work or derivatives of it, which undermines the goal of copyright," citations and quotations omitted.).

4.      **Equitable Considerations Warrant Exception to the First-to-File Rule.**

Even if the Court determines that the first-to-file rule is applicable, it should deny

Proposed Intervenors' motion on equitable considerations. Proposed Intervenors cannot show

that the *Tremblay* Action has advanced beyond the *Authors* action. It is well-established that

courts do not apply the first-filed-rule unless the first-filed action has advanced beyond the

second-filed action. *See Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 455 (E.D.N.Y. 1987)

("The general rule of deference to the first-filed suit . . . has certain well-established exceptions

such as when the first filed action has not reached a more advanced stage than its counterpart,"

cleaned up.); *see also AEI Life, LLC v. Lincoln Ben. Life Co.*, 305 F.R.D. 37, 45 (E.D.N.Y. 2015)

("Courts ***reject*** the first-to-file rule when the second filed action has developed further than the

initial suit," emphasis added, citing *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119,

121 (8th Cir. 1985)).

The Authors Action is, in fact, ahead of the *Tremblay* Action. The pleadings in the

Author Actions are settled and discovery is well underway:  Plaintiffs have met and conferred on

myriad discovery requests, raised a discovery dispute, OpenAI has made an initial document

production, and Plaintiffs have served document requests, interrogatories, and RFAs.

Declaration, ¶¶ 11-24.  By contrast, the *Tremblay* Action is stuck in a cycle of pleading

amendments and motion, with an amended complaint due on March 13. *Tremblay* Dkt. No. 104

at 12. This is alone fatal to Proposed Intervenors' first-to-file motion.

The Author Plaintiffs have also secured a schedule that will most expeditiously and

efficiently resolve the claims at issue for Plaintiffs and the putative class. Under the Author

Actions' schedule, summary judgment will be fully briefed by the end of February 2025, and

class certification will be fully briefed within three months of the Court's order on summary

judgment. This timeline is efficient because it allows class certification to be adjudicated quickly

following (and informed by) the Court's orders on motions for summary judgment. Upsetting

this schedule simply for the sake of Proposed Intervenors' efforts to control all copyright actions

against OpenAI Defendants, nationwide, will be prejudicial to the Author Plaintiffs and members

of the putative Author Classes. *See In re Peloton Interactive, Inc. Sec. Litig.*, No.

21CV2369CBAPK, 2022 WL 1211516, at *4 (E.D.N.Y. Jan. 26, 2022) ("Judicial efficiency will

be best advanced by allowing the parties in this case to proceed to dispositive motion practice

and discovery now rather than by delaying for the sole purpose of transferring across the East

River."); *see also Chariot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 63 (E.D.N.Y. 2015) (transfer of

case inappropriate where case pending in Eastern District of New York was procedurally more

advanced than first-filed case pending in other court); *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d

428, 436 (S.D.N.Y. 2013) (consideration of which case was first is diminished "where the first-

filed action has not 'reached a more advanced stage' than the later action").

Thus, the Proposed Interveners' first-to-file motion should not apply here.[9]

### C.   Dismissal or Stay Is Procedurally Inefficient and Inappropriate.

The primary purpose of the first-filed rule is to conserve judicial resources. *See e.g.,*

*First City Nat'l Bank and Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) (noting the rule is

---

[9] Other courts are in accord. *See e.g., Trevino v. Golden State FC, LLC*, No.: 1:18-cv-00120, 2019 WL 2710662, at *7 (E.D. Cal. June 28, 2019) (denying motion to stay because dismissing subsequently filed cases would not promote judicial efficiency though requirements of first-to-file rule were met); *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144, 2018 WL 8458862, at *8 (S.D. Iowa Sept. 21, 2018) (denying first-to-file when second filed action moved faster than first filed action and tentative settlement agreement was reached in second-filed case); *In re Jimmy John's Overtime Litigation*, 877 F.3d 756, 766 (7th Cir. 2017) (reversing anti-suit injunction where parties to subsequently filed actions were different and rejecting movants' "fear that the district courts presiding over the [subsequently filed] cases might reach final decision on the merits before this case."); *Adoma v. University of Phoenix, Inc.*, 711 F.Supp.2d 1142, 1150 (E.D. Cal. 2010) (finding exception to first-to-file rule when first filed case had not advanced to certification and second filed case included state claim not present in first filed case); *Robeson v. Howard University*, No. 00 CIV 7389, 2002 WL 122913, at *3 (S.D.N.Y. Jan. 30. 2002) (finding special circumstances present overriding the first filed rule).

animated by "considerations of judicial administration and conservation of resources"). Naturally, courts therefore decline application of the first-filed rule if it would undermine judicial efficiency.

Here, as discussed, it would be inefficient to stay or dismiss the *Authors* action at this stage. *Supra* III.B.4. In a circumstance of two concurrently pending class actions, the proper and efficient procedure is informal coordination, ***not*** extinguishing one in favor of the other. *Shimon*, 2018 WL 4906245, at *3 ("[U]sing the first-filed rule to stay or dismiss a concurrently pending class action would undermine other efficiency-maximizing Congressional directives."); *see also generally In re Giant Eagle, Inc., Fair Lab. Standards Act Litig.*, 330 F. Supp. 3d 1376, 1377 (U.S. Jud. Pan. Mult. Lit. 2018) (denying MDL centralization and explaining that—where possible—the proper alternative is informal coordination among plaintiffs' counsel).

### D.  Proposed Intervenors' Motion to Transfer This Case to the Northern District of California Should be Denied.

Proposed Intervenors request for transfer of the Author Actions to the Northern District of California should be denied. Proposed Intervenors fall far short of their "burden of establishing that transfer is warranted by clear and convincing evidence." *1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*, No. 1:21-CV-04343-GHW, 2021 WL 3115125, at *2 (S.D.N.Y. July 20, 2021).[10] On review of that evidence, the Court exercises its "broad discretion," considering "convenience and fairness" on a "case-by-case basis." *Id.*

---

[10] Movant cites two cases, both inapposite. *City of Pontiac General Employees Retirement System v. Dell, Inc.*, 14-CV-3644 (VSB), 2015 WL 12659925, at *7 (S.D.N.Y. Apr. 30, 2015), was a "garden-variety federal securities fraud class action." Neither the plaintiff nor the action had a connection to the District, it was "undisputed" that "none" of the relevant conduct occurred in the District, and the movant (unlike here, and consistent with its burden) set forth the specific non-party witnesses and their location outside the District. *Id.* at *4-5. In *174982 Alberta*, the movant, unlike Proposed Intervenors here, presented a detailed factual record, and

-23-

The Court can deny the transfer motion for the simple fact that Proposed Intervenors have made no effort to present *any* evidence in favor of transfer, let alone "clear and convincing" evidence.[11] Nor do Proposed Intervenors grapple with the reasons why New York remains the center of gravity of the actions pending in this District:

- 14 Author Plaintiffs reside are in this District, and another 10 Author Plaintiffs reside closer to this District than the Northern District of California;

- Defendant Microsoft has a major research laboratory in New York City;[12]

- The publishing industry is in this District in the main, and, at minimum, the industry's historic location here means this District has substantial familiarity with governing law related to copyright issues and a local interest in the publishing context;

*See Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1092 (S.D.N.Y. 1984) (noting that New York is the "national center of the publishing industry."); *Authors* Compl. ¶¶ 18-59 .  Furthermore, one of the driving factors of the section 1404 analysis is the location of third-party witnesses. *See, e.g., Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (convenience of third-party witnesses accorded more weight than party witnesses). While Proposed Intervenor has not bothered to identify even one important third party witness located in San Francisco, the Associated Press—whose licensing agreement with OpenAI is relevant to

---

neither the plaintiff nor the defendant resided in the forum.  *174982 Alberta*, 2021 WL 3115125, at *5.

[11] *New York Marine and Generals Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) ("It is therefore appropriate that the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion.").

[12] Microsoft, *Microsoft Research Lab – New York City*, https://www.microsoft.com/en-us/research/lab/microsoft-research-new-york/ (accessed Feb. 26, 2024).

the fair use analysis under factor four (*supra* pg. 12)—is located in New York.[13] Similarly, media

conglomerate and Politico parent company Axel Springer, which has also inked a licensing deal

with OpenAI, has its U.S. headquarters in New York.[14] The testimony of both New York-based

witnesses will be relevant to show that there is an established licensing market for OpenAI's

infringing use of the copyrighted works at issue in the Author Action. *See, e.g., Am. Geophysical*

*Union*, 60 F.3d at 930.

      Given New York's substantial importance in this dispute, and Proposed Intervenors total

failure of proof, Plaintiffs' choice of forum should get the deference to which it is entitled.

*Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, No. 22-cv-2538 (LJL), 2022

WL 17067984, at *5 (S.D.N.Y. Nov. 17, 2022) ("Under the law of this Circuit, 'a plaintiff's

choice of forum is presumptively entitled to substantial deference' . . . '[u]nless the balance is

strongly in favor of the [moving party], the plaintiff's choice of forum should rarely be

disturbed.'").

## IV.    <u>CONCLUSION</u>

      For the reasons set forth above, Movants' motion should be denied.

---

[13] Matt O'Brien, *ChatGPT-maker OpenAI signs deal with AP to license news stories,* The Associated Press (July 13, 2023), *available at* https://apnews.com/article/openai-chatgpt-associated-press-ap-f86f84c5bcc2f3b98074b38521f5f75a (accessed Feb. 26, 2024).

[14] Bianca-Maria Dardon Mota, *Axel Springer expands US presence with establishment of headquarters in New York City*, Axel Springer (Aug. 5, 2016), *available at* https://www.axelspringer.com/en/ax-press-release/axel-springer-expands-us-presence-with-establishment-of-headquarters-in-new-york-city (accessed Feb. 26, 2024).

Dated:  February 26, 2024 Respectfully submitted,

*/s/ Rachel Geman*
Rachel Geman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
rgeman@lchb.com

Reilly T. Stoler (*pro hac vice forthcoming*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
rstoler@lchb.com
ibensberg@lchb.com

Wesley Dozier (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
222 2nd Avenue, Suite 1640
Nashville, TN 37201
Telephone:  615.313.9000
wdozier@lchb.com

*/s/ Rohit Nath*
Justin A. Nelson (*pro hac vice*)
Alejandra C. Salinas (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 713-651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: 310-789-3100
rnath@susmangodfrey.com

J. Craig Smyser
SUSMAN GODFREY L.L.P.
1901 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-8330
csmyser@susmangodfrey.com

*/s/ Scott Sholder*
Scott J. Sholder

CeCe M. Cole
COWAN DEBAETS ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone:  212.974.7474
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Plaintiffs and the Proposed Class*

2947517.8

## <u>PROOF OF SERVICE VIA ECF</u>

On February 26, 2024, I caused to be served the following document on all counsel of

record via ECF.

**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND DISMISS, STAY OR TRANSFER**

<u>/s/ Rachel J. Geman</u>
Rachel Geman