# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUTHORS GUILD, *et al*., individually and on behalf of others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>OPEN AI INC., OPENAI OPCO LLC, OPENAI GP LLC, OPENAI, LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI HOLDINGS LLC, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC, OPENAI STARTUP FUND MANAGEMENT LLC, and MICROSOFT CORPORATION,<br><br>     Defendants. | Case No. 1:23-cv-08292-SHS<br>Case No. 1:23-cv-10211-SHS<br>Case No. 1:23-cv-11195-SHS<br>Case No. 1:24-cv-00084-SHS<br><br><br>***TREMBLAY* PLAINTIFFS' REPLY TO *AUTHORS GUILD* PLAINTIFFS' AND DEFENDANT MICROSOFT CORPORATION'S OPPOSITION TO MOTION BY CALIFORNIA PLAINTIFFS TO INTERVENE AND DISMISS, STAY OR TRANSFER** |
| JONATHAN ALTER, *et al*., on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>OPEN AI INC., OPENAI OPCO LLC, OPENAI GP LLC, OPENAI, LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI HOLDINGS LLC, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC, OPENAI STARTUP FUND MANAGEMENT LLC, and MICROSOFT CORPORATION,<br><br>     Defendants. | |
| THE NEW YORK TIMES COMPANY<br><br>     Plaintiffs,<br><br>   v.<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC,<br><br>     Defendants. | |

NICHOLAS A. BASBANES and NICHOLAS NGAGOYEANES (professionally known as Nicholas Gage), individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MICROSOFT CORPORATION, OPENAI, INC., OPENAI GP, L.L.C., OPENAI HOLDINGS, LLC, OAI CORPORATION, LLC, OPENAI GLOBAL, LLC, OPENAI, L.L.C., and OPENAI OPCO, LLC,

Defendants.

## I.    INTRODUCTION[1]

The *Authors Guild* Plaintiffs and Defendant Microsoft Corp. ("Microsoft") fail to overcome the rebuttable presumption in favor of applying the first-to-file rule. *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (noting the first-to-file rule is a "'presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action.") (citation omitted); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) ("Generally, there is a strong presumption in favor of the forum of the first-filed suit."). That presumption has not been rebutted here, where the *Tremblay* Action is the first filed action and all the subsequent actions pending the Southern District of New York substantially relate and indeed mimic those at issue in the *Tremblay* Action. The gravamen of the complaints is identical. Each action alleges claims under federal copyright law arising out of OpenAI's unauthorized use of Plaintiffs' copyrighted material in connection with building, developing and operating OpenAI's generative AI product. The conduct and evidence relevant to the claims against Defendants are located in San Francisco, California—where OpenAI has its headquarters, where the *Tremblay* Plaintiffs filed their lawsuit months before the *Authors Guild* Plaintiffs did in New York, and where the direct copyright claim is at issue and discovery is well underway.

Microsoft has also filed a "conditional opposition" to the *Tremblay* Plaintiffs (or "California Plaintiffs") motion.[2] ECF No. 79. Microsoft argues that it "opposes the relief sought

---

[1] Prior to the filing their Motion, the *Tremblay* Plaintiffs filed, in the *In re OpenAI ChatGPT Litigation*, a motion to enjoin OpenAI and its counsel from proceeding in the S.D.N.Y. Actions under the first-to-file rule ("Motion to Enjoin"). *See Tremblay* Action, ECF No. 98. On March 1, 2024, the *Tremblay* Court denied the Motion to Enjoin, on the basis that it would be impractical to enjoin parties from defending an action in another jurisdiction. *See Tremblay* Action, ECF No. 118 at **2-3.

[2] The condition being Microsoft's dismissal with prejudice, relief that the *Tremblay* Plaintiffs do not seek.

by the California [*Tremblay*] Plaintiffs for the simple reason that it is defending the cases brought

against it in the jurisdiction where those cases were filed." *Id.* That is not the whole truth. As

Microsoft itself explains, Defendants Microsoft and OpenAI came to an agreement with the

*Authors Guild* Plaintiffs—or as Microsoft puts it, "cooperated to set a mutually agreeable plan

for the litigation of these case. . . ." Under this plan, Microsoft (and OpenAI) agreed not to

enforce the first-to-file rule as Defendants would be expected to do, as OpenAI previously

represented to the Court. In exchange for Plaintiffs agreement to accept Defendants' schedule,

Defendants agreed Defendants would answer the complaint, in exchange for a trial schedule in

New York that puts Summary Judgment before Class Certification. *Id.* at 3. This is not giving up

anything, because in the *Tremblay* action, defendants already have not sought to dismiss the

direct copyright infringement claim. *Tremblay v. OpenAI, Inc.,* No. 23-CV-03223-AMO, 2024

WL 557720, at *2 (N.D. Cal. Feb. 12, 2024) ("Defendants seek dismissal of all causes of action

except for the claim for direct copyright infringement.").

  Defendants' claims that Plaintiffs are somehow "jockeying . . . in two separate

jurisdictions," wrings hollow. The *Tremblay* Plaintiffs filed the first cases in the country alleging

these facts and raising these claims. Since then, they have undertaken to prosecute the case in an

orderly fashion. It was only when Judge Martínez-Olguín entered a schedule over OpenAI's

objection that OpenAI started shopping for a more favorable jurisdiction. Moreover, Plaintiffs'

efforts to obtain compliance with the first-to-file rule is intended, as is the rule, to prevent forum

shopping, inconsistent rulings and judicial inefficiency. *Id.* at 3. The Plaintiffs in the S.D.N.Y.

Actions who are members of the subsuming class asserted in the *Tremblay* Action will suffer no

prejudice from granting the motion.

  The *Tremblay* Plaintiffs satisfy the requirements for intervention, and their first-to-file

motion should be granted. Indeed, the Court should have had the opportunity to address these

first-to-file issues in January, by way of OpenAI's anticipated first-to-file motion, which, as

previously explained, was withheld due to OpenAI's gamesmanship. The Court should grant the present motion and transfer or stay the duplicative S.D.N.Y. Actions unnecessarily burdening the courts.

## II.     ARGUMENT

### A.     The Court Should Exercise its Broad Discretion to Allow Permissive Intervention Because the Requirements for Permissive Intervention Are Met

As part of their renewed effort to deprive the Court of an opportunity to hear a first-to-filed motion on these same issues, the *Authors Guild* Plaintiffs and Microsoft argue that the *Tremblay* Plaintiffs should not be allowed to intervene. As detailed below and in the *Tremblay* Plaintiffs' opening brief, the Court should dismiss these arguments and exercise its broad discretion here to allow permissive intervention. *See U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978) (noting the trial court has "very broad" discretion with respect to permitting intervention under Rule 24(b)). Microsoft also argues that Tremblay Plaintiffs have not met the standard to intervene. ECF No. 79 at 4.

The *Tremblay* Plaintiffs meet the requirements of Rule 24(b) because, as discussed in more detail in below, they "have a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In the class action context, this standard is easily satisfied where the intervenors assert the same claims as duplicative or overlapping classes and address issues regarding representation or other class issues. *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (quoting Herbert Newberg & Alba Conte, Newberg on Class Actions § 16:8 (4th ed.)) ("Courts appear to be particularly amenable to permissive intervention when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of the representation."); *see also Diduck v. Kaszycki & Sons Contractors, Inc.*, 147 F.R.D. 60, 62 (S.D.N.Y. 1993) ("Intervention should also be allowed

under Federal Rule of Civil Procedure 24(a) as of right whenever it appears that the named representative cannot adequately represent the interests of the class.") (internal citation and quotation omitted).[3]

The *Tremblay* Plaintiffs meet each of these requirements. As shown in the *Tremblay* Plaintiffs' Motion and section II.C.3. *infra*, the claims are sufficiently identical. Indeed, the core of all of the pending actions is the direct copyright infringement claim against OpenAI, Inc. for its AI training practices. *See* ECF 67 ¶¶ 168-180. The claims in the *Tremblay* Action and the S.D.N.Y. Actions arise from the same nucleus of operative facts. *Compare*, *Tremblay* Compl., ECF. No. 1 (Hydal Decl. Ex. A.) with *Authors Guild* Action, ECF No. 69; *Alter* Action, ECF No. 1; *Basbanes* Action, ECF No. 1; *N.Y. Times* Action, ECF No. 1. The complaints share a core common claim for direct copyright infringement. The claim for direct copyright infringement was included in the original *Tremblay* complaint, and Defendants have conceded its adequacy for pleading purposes. *See Tremblay v. OpenAI, Inc.,* No. 23-CV-03223-AMO, 2024 WL 557720, at *2 (N.D. Cal. Feb. 12, 2024).

The *Authors Guild* class overlaps with and is entirely subsumed by the *Tremblay* class. In addition to the overlapping classes, there are additional issues with the Authors Guild serving as a representative plaintiff. *See Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 89 (S.D.N.Y. 2018) ("the burden to demonstrate inadequacy of representation is generally speaking minimal, especially when the proposed intervenor and the existing parties do not have the same ultimate objective or when their interests are not aligned.") quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001) (internal quotations omitted). The Authors Guild has

---

[3] The *Authors Guild* Plaintiffs seem to argue that the *Tremblay* Plaintiffs' motion for permissive intervention fails because if does not satisfy the elements of Rule 24(a)(2). This is not so. Unlike intervention as of right under Rule 24(a), no legally protectible interest is necessary for permissive intervention under Rule 24(b). *See, e.g.*, Rutter Group Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 7-E.

its own longstanding institutional and financial imperatives that separate it from the class it proposes to represent. For many years, the Authors Guild has advocated for collective licensing of digital books, where a collective-management organization—presumably, the Authors Guild itself, or a new organization under its control—would "negotiate fees" for use of the works and "distribute those payment[s] to authors."[4] The Authors Guild has been pressing this argument with policymakers—unsuccessfully—for well over a decade.[5] But with generative AI, the Authors Guild has apparently detected an opportunity to pour old wine into new bottles. In a January 2024 interview, Authors Guild's CEO openly cozied up to OpenAI and similar companies, saying: "generative AI is here to stay … there's nothing wrong with the tech."[6] The *Tremblay* Plaintiffs disagree—there is a lot wrong with generative AI, including its direct and injurious violations of copyright law. The Authors Guild has a strong institutional bias in its own favor in potential resolutions. The *Tremblay* Plaintiffs have no such bias.[7]

From the perspective of class representation, another glaring problem with the Authors Guild is its unfair and biased perspective on who deserves to be compensated for AI training. As the Authors Guild sees it, fees collected through a collective-licensing system ought not be distributed equally and fairly to participating authors, but differentially based on "number of

---

[4] See https://authorsguild.org/advocacy/artificial-intelligence/faq/, § 3.

[5] See, e.g., https://www.copyright.gov/orphan/comments/Docket2012_12/Authors-Guild.pdf.

[6] See https://www.hollywoodreporter.com/business/business-news/authors-guild-exploring-blanket-license-artificial-intelligence-companies-1235785941/.

[7] Less often mentioned by the Authors Guild is that the collective-licensing scheme they prefer would amount is highly suspect under antitrust laws regarding price-fixing. For that reason, Authors Guild has perennially sought "an exemption from antitrust law," enacted by the U.S. Congress, to permit authors to "engage in collective licensing."  If this is what Authors Guild wants, then it should lobby Congress—and indeed it has (though again, unsuccessfully). See, e.g., https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/legacy_files/wp-content/uploads/2016/02/113-88-87423.pdf at p. 56. By participating in this case, Authors Guild seems to hope that the federal judiciary will enact its policy preferences after Congress would not.

works published, the length of those works, and **any available sales data**."[8] (Emphasis added.) This approach would appear to divide and separate the interests of the class, and unjustly favor high-selling authors, who would collect an apparently substantial part of the licensing fees generated by low-selling authors.

Indeed, this bias is demonstrated when the Authors Guild filed its original complaint, carefully and explicitly limiting the putative class only to those authors who sold works of fiction with at least 5,000 copies. See ECF No. 1, ¶ 312. For context, according to reporting in the *New York Times*, "about 98 percent of the books that publishers released in 2020 sold fewer than 5,000 copies."[9] The Authors Guild only entered this case to represent a small percentage of all authors, to the exclusion of others. No surprise that the other authors who joined Authors Guild as plaintiffs in that original filing were bestselling authors who stood to gain the most from the Authors Guild's preferred form of collective licensing, not rank-and-file authors who stood to gain the least. See ECF No. 1, p. 1. Such preference is not necessary in the class action given the substantial similarity of the members of the class asserted in *Tremblay*. The *Tremblay* Plaintiffs, by contrast, have no such bias or selfish interests or motives.[10]

Microsoft throws its hat in the ring and offers *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 345-46 (E.D.N.Y. 2018). But *Travis* is inapposite and Microsoft's reliance misplaced. ECF

---

[8] See https://authorsguild.org/advocacy/artificial-intelligence/faq/, § 8.

[9] See https://www.nytimes.com/2021/04/18/books/book-sales-publishing-pandemic-coronavirus.html.

[10] The Authors Guild attempts to justify its position asserting that the collective licensing scheme it advances actually benefits the *Tremblay* Plaintiffs. *Authors Guild* Opp., 12. This is not so. As explained above, the collective-licensing system that the Authors Guild advances calls for an unequal distribution based on "number of works published, the length of those works, and any available sales data." (*See* fn. 7.) This approach would appear to divide and separate the interests of the class, and unjustly favor high-selling authors, who would collect an apparently substantial part of the licensing fees generated by low-selling authors. The Plaintiffs in *Tremblay* see no need for the Authors Guild to use these cases to advance its agenda.

No. 79 at 4. First, *Travis* does not stand for the proposition that "posturing among plaintiffs class counsel does not meet the standard" for intervention. *Id.* Rather, it was a case where intervention was denied because the intervenor had substantively different claims and represented an entirely different class. *Travis*, 284 F. Supp. 3d at 342 ("this action does not implicate proposed intervenors' breach of contract claim. Whereas proposed intervenors claim in the Demyanenko–Todd action that the Navient entities breached the loan agreement, here, Travis claims that defendants breached the servicing agreement. Thus, proposed intervenors do not have an interest in protecting their rights or the rights of their putative class as to this claim, regardless of whether a class is ultimately certified."). That is not the case here because the first-filed claims of the *Tremblay* Plaintiffs encompass the *Authors Guild's* claims.  And further, as Microsoft recognizes, the first-filed rule "does not require identical parties." EFC No 79 at 6.

Intervention for purposes of addressing the first-filed motion would cause no undue prejudice to the parties to the *Authors Guild* Action or delay of the adjudication of any class member author's rights. Indeed, in response to the present Motion, OpenAI filed a two-page statement saying they "do not take a position" on the S.D.N.Y. Motion. And, the two plaintiffs who filed the *Basbanes* Action in the Southern District of New York (now consolidated with the *Authors Guild* Action) agree that the *Tremblay* Plaintiffs' Motion is meritorious and should be granted. *See* Declaration of Michael P. Richter ("Richter Decl."), ¶ 2. Moreover, OpenAI had originally indicated to the Court that there were issues present as a result of the overlapping and duplicative claims at issue in the S.D.N.Y. Action and intended to file a motion to transfer to stay under the first-to-file doctrine. At the initial pre-trial conference, the court expressed interest in OpenAI's anticipated first-to-file motion, asking OpenAI, at the outset of the conference, "[h]ow soon can you get that motion to dismiss or stay, or in the alternative to transfer?" ECF No. 44, Transcript at 3:22-25. The Court then set a hearing on OpenAI's anticipated first-to-file motion for one month out, noting it "need[ed] to determine the motion to dismiss stay or transfer *ab*

*initio*." *Id.*, 9:10-13. Indeed, this Motion should have been before this Court long ago if only for the interests of judicial economy. The only reason the issue was never filed is because OpenAI reversed its position on the first-to-file rule as a result of concessions made by the *Authors Guild* Plaintiffs regarding the schedule and sequencing in the case.

### B.    The *Authors Guild* Cannot Claim they are Unduly Prejudiced

The Authors Guild cannot claim they are unduly prejudiced because they must litigate a motion that was contemplated by all the parties, and this Court, just three months ago. OpenAI had every reason to anticipate filing a first-to-file motion aimed at reducing the duplicative proceedings it had to defend against. The instant motion provides the Court the opportunity to address these issues once and for all. Intervention as a matter of right is appropriate here. Moreover, the *Authors Guild* Plaintiffs will not be prejudiced were the motion to be granted. The Authors Guild, and each of the named Plaintiffs in the related actions are members of the class in the *Tremblay* Action. Their rights are entirely protected during the pendency of the classes. Once the class is certified, they will have the due process right to exclude themselves from the class.

The *Authors Guild* Plaintiffs claim that the *Tremblay* Plaintiffs' interest in the *Authors Guild* Actions is entirely contingent and remote, and fails to satisfy Rule 24(a)(2). *Authors Guild* Opp., 9. First, they overlook the fact that Rule 24(a), which governs intervention as of right, allows for intervention "whenever it appears that the named representative cannot adequately represent the interests of the class." *Eckert*, 227 F.R.D at 64 (citing *Diduck*, 147 F.R.D. at 62). Second, they overlook the entirely duplicative nature of the class actions they initiated.

Authors Guild relies on *Calderon v. Clearview AI, Inc.*, No. 20 CIV. 1296 (CM), 2020 WL 2792979, at *4 (S.D.N.Y. May 29, 2020). That reliance is misplaced. That case is readily distinguishable and in fact shows why intervention is proper. In *Calderon*, the proposed intervenor, a class representative who filed on behalf of a proposed class of Illinois residents, had no interest in claims that other plaintiffs asserted under the laws of Virginia and California. *Id.* at

*4. Here, in contrast, the plaintiff classes overlap, with the *Authors Guild* class subsumed by the class asserted in the *Tremblay* Action. On behalf of these overlapping classes, the same facts are asserted, giving rise to an identical claim under federal copyright law and the same federal statutory scheme.

### C.    The *Authors Guild* Plaintiffs and Microsoft Misapply the First-to-File Rule

####     1.    Plaintiffs Are Sufficiently Overlapping for Purposes of the First-to-File Rule

"The first-to-file rule is a principle of federal comity that permits a district court to decline to exercise jurisdiction when a complaint involving substantially similar parties and issues has been filed in another district court." *Samsung Elecs. Co. v. Solas Oled Ltd.,* No. 21 CIV. 5205 (LGS), 2022 WL 294631, at *2 (S.D.N.Y. Feb. 1, 2022) (cleaned up) (*citing Futurewei Techs., Inc. v. Acacia Rsch. Corp.,* 737 F.3d 704, 707 (Fed. Cir. 2013)). Authors Guild and Microsoft admit the claims and the classes are overlapping, the claims are substantially similar and the *Tremblay* actions were the first filed. In so doing, they admit the basic requirements of the first-to-file rule have been established.

But the *Authors Guild* Plaintiffs attempt to evade the rule, however, arguing that because the classes are not yet certified, the plaintiffs are not overlapping. There is no requirement that the classes must be certified for the rule to apply. As noted, the rule applies where there are separate actions filed in multiple federal courts involving substantially similar claims. The reasons for the rule include the avoidance of inconsistent rulings and salutary principles of judicial economy and comity. *Cephalon, Inc.*, No. 10 CIV. 6457 SHS, 2014 WL 1087960, at *5 (S.D.N.Y. Mar. 19, 2014); *see also* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Indeed, the first-to-file rule would apply if none of the cases involved class actions or purported classes. The rule applies to civil actions generally. *See, e.g.*, *Cephalon*, 2014 WL 1087960, at *5 (emphasis added). There, a plaintiff brought a *qui tam* action on behalf of the United States and twenty-eight states and the District of Columbia. *Id.* A separate plaintiff brought a separate *qui tam* action on behalf of the same entities. The Court found that the first-to-file rule applied, because the cases involved overlapping "parties of interest." *Id.* ("Although a different relator brought each of these qui tam actions, Cestra and Boise brought the actions on behalf of the federal and various state governments.").

The *Authors Guild* Plaintiffs attempt to distinguish *Cephalon* because the claims there were brought under the False Claims Act ("FCA"), arguing that first-to-file issues in FCA actions are governed by statute (31 U.S.C. section 3730(b)(5)). These distinctions are irrelevant. This Court's decision in *Cephalon* was not based on the federal statutory scheme. More generally, it was based on the equitable and common law principles upon which the first-to-file rule is based. Indeed, the *Cephalon* Court based its decisions not on FCA decisions but more broadly on the line of authorities applying the first-to-file rule. *See Cephalon* at **2-7 (citing *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 107 (2d Cir. 2010) and *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 276 (2d Cir. 2008)).

The *Authors Guild* Plaintiffs cite three inapposite district court cases suggesting that because a plaintiff in a second-filed action may opt-out of a class eventually certified in the second-filed action, the parties are non-overlapping. Each of those cases are distinguishable and provide no support for Authors Guild.[11] Moreover, the approach the Court followed in *Cephalon*

---

[11] In *Shimon v. Equifax Info. Servs. LLC*, 2018 WL 4906245, at *3 (E.D.N.Y. Oct. 9, 2018) the court observed that the first-filed class action was a "particularly poor candidate" for the application of the first-to-file rule "the time periods in the putative class definitions do not entirely overlap." Here, the class period are coextensive. The same applies with respect to *Rothschild v. Gen. Motors LLC*, 2020 WL 13581659, at *8 (E.D.N.Y. Sept. 30, 2020), where the

is more closely aligned with policy goals of the first-to-file rule, which "inform the analysis of the degree of similarity that is necessary for two actions to be considered competing lawsuits." *Id.* Indeed, Authors Guild has it backwards: its arguments counsel for the application of the first-to-file rule here. There is no dispute that the Authors Guild itself, all other named representatives, and all absent class members are members of the class set forth and at issue in the *Tremblay* Action. As a result, as noted above, their rights are entirely protected, and they suffer no prejudice during the advancement of the *Tremblay* Action.

At a minimum, the S.D.N.Y. Actions should be transferred to the Northern District of California to allow Judge Martínez-Olguín to manage and supervise the cases, consistent with sound principles of judicial economy and case management. Under the current schedule, class issues are set to be determined, consistent with the one-way intervention rule, as early as June 2025. *Tremblay* Action, ECF No. 51. Summary judgment is set to follow. In the event that the *Tremblay* action is certified as a class, at that time *Authors Guild* will be presented with the opportunity, consistent with Rule 23 and due process, to exercise its option to be bound by the

---

court likewise observed that time periods for the two putative class definitions did not overlap. Unlike in these two cases, there is no dispute here that the class asserted in the *Authors Guild* Action is completely subsumed by the proposed class asserted in the *Tremblay* Action. Indeed the Authors Guild complaint largely lifts these allegations from the *Tremblay* Action. The third case, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013), is even farther afield. There the court focused on the fact that the movant sought only a stay (as opposed to a dismissal or transfer) pending the disposition of a pending motion to dismiss in the second-filed action which, the court observed, would not be dispositive of the case before it. *Id.* at 540. The court noted the "considerations of judicial administration and conservation of resources" do not counsel in favor of granting a stay pending the disposition of that motion. *Id.* at 539. Here of course, the opposite is true. The concerns the *Quinn* court had regarding the motion to stay in that case are not present here. Instead, the *Tremblay* Plaintiffs are seeking a stay of the *Authors Guild* Action pending class certification in the *Tremblay* Action. In the alternative, the Motion seeks to dismiss or transfer the *Authors Guild* Action.

class action or to proceed on its own.[12] In the alternative, the S.D.N.Y. Action may be stayed pending the resolution of the class issues.

2.  The Defendants in the Two Actions are Sufficiently Overlapping

As Plaintiffs showed in their papers, the first-to-file rule does not require exact identicality of the parties or claims. The question is whether the parties are "substantially similar." (*Cephalon* 2014 WL 1087960, at *3; *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992) (holding the first-to-file rule requires parties that are "identical *or substantially similar*[.]") (emphasis added). In describing the common facts and central direct copyright claims, Defendants concede all of the actions are substantially similar to the first filed *Tremblay* Actions.

The *Authors Guild* Plaintiffs and Microsoft make much of the fact that Microsoft Corporation is not named in the *Tremblay* Action. The first-to-file rule does not require complete overlap of the parties. *Id.* Further, the core of all of the pending S.D.N.Y. Actions (and the *Tremblay* Action) is the direct copyright infringement claim against **OpenAI, Inc.** for its training practices. See ECF 67 ¶¶ 168-180. That is because OpenAI, without authorization, copied Plaintiffs' copyrighted work in connection with the creation, development, sale and marketing of its generative artificial intelligence products. Authors Guild adopts—and copies—these claims. In the *Authors Guild* Plaintiffs' direct infringement claim (Count I), the *Authors Guild* Plaintiffs name Microsoft based on an aiding-and-abetting-type theory arising from Microsoft's "creation,

---

[12] The suggestion by the Authors Guild and Defendants that the overlapping class actions proceed simultaneously is at odds with the orderly procedures established under Federal Rule of Civil Procedure 23, which provide for a Rule 23 determination following by an exercise of opt out rights. In so doing, it does damage to the principles of judicial economy underlying the Rule. *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348 (2d Cir. 1977) ("The district court's determination not to permit duplicative class actions, to avoid undue burdens on the parties and on judicial resources, and to eliminate the possibility of inconsistent results, cannot be overturned.").

development, and maintenance of the supercomputing systems that the OpenAI Defendants used to house and make copies of copyrighted material in the training set for OpenAI's large language models." ECF 67, ¶ 67. Notably, the *Authors Guild* Plaintiffs' contributory infringement claim against Microsoft is based on the cursory allegation that "Microsoft materially contributed and facilitated OpenAI's direct infringement alleged in Count I" (*id.*, ¶ 424), and that "Microsoft became aware of OpenAI's direct infringement and directly assisted the copying of copyrighted content owned by Plaintiffs and the proposed Class" (*id.*, ¶ 425). This does not show the claims are not substantially similar. In fact, a review of the claims in their entirety show virtual identity. Each of the S.D.N.Y. Actions bring claims based on the impermissible use of plaintiffs' copyrighted material in connection with the training of OpenAI's large language models and commercialized generative AI products.

   3. <u>The Presence of Some Non-Overlapping Claims and Issues is Inconsequential</u>

  The *Authors Guild* Plaintiffs argue that two actions assert non-overlapping claims. Even if that were true, it would be inconsequential. And any differences are minor given the overwhelming commonality of the facts asserted, the claims alleged and the overlapping classes.

  The purpose of the first-to-file rule is to promote "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). The first-to-file rule also protects against the risk of inconsistent judgments with respect to substantially similar claims. *Kellen Co. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999). Those interests—comprehensively disposing of litigation, conserving judicial resources, and avoiding inconsistent judgments—are best served by litigating these actions containing substantially similar claims (and parties) before a **single court** irrespective of whether the cases assert non-overlapping claims. *See Cephalon*, 2014 WL 1087960, at *4 ("[W]here two actions substantially

overlap but feature at least one non-overlapping claim, a failure to apply the first-filed rule would burden the parties with the vexation of simultaneously litigating substantially similar actions.").

There is no dispute that all Actions assert the same core theory of liability: that OpenAI, Inc. and its affiliated entities committed copyright infringement when they made and used copies of the plaintiffs' literary, journalistic, and other written works—without permission—during the process of training OpenAI's large language models. That theory of liability is the basic premise of "Count I" asserted in both the *Authors Guild* Action and the *Tremblay* Action.

In their attempt to distinguish their case from the *Tremblay* Action, the *Authors Guild* Plaintiffs point to several claims that were asserted in the *Tremblay* Plaintiffs' *original* complaint that have since been dismissed without prejudice by the *Tremblay* Court. This argument makes little sense. The fact that the *Tremblay* claims are broader, if sustained, than those in the *Authors Guild* Action supports, rather than undercuts, the application of the first-to-file rule here. The broader *Tremblay* Action also includes state law claims for unfair competition ("UCL claim"), unjust enrichment, and negligence as well as a DMCA claim. Even if these claims were dropped, or subsequently dismissed, it does not change the fact that the direct copyright claims, which entirely overlap, remain intact. In addition, the factual predicate of the additional theories of harm derive entirely from the same factual predicate of the direct copyright claim. Each of those claims were generally based on the same core theory that OpenAI and its affiliate entities impermissibly trained its artificial-intelligence products using Plaintiffs' copyrighted works.[13]

---

[13] *See Tremblay* Action, ECF No. 1 (Complaint) ¶¶ 68-72 (UCL claim based on OpenAI's use of Plaintiffs' copyrighted works to train their large language models, and now-dismissed DMCA violations, which is premised on OpenAI's removal of plaintiffs' copyright-management of information from training data as part of training process); *Id.*, 73-78 (now-dismissed negligence claim based on OpenAI's breach of duty by "negligently, carelessly, and recklessly collecting, maintaining and controlling Plaintiffs' and Class members' Infringed Works and engineering, designing, maintaining and controlling systems—including ChatGPT—which are trained on Plaintiffs' and Class members' Infringed Works without their authorization."); *Id.*, 79-86 (now-dismissed unjust enrichment claim based on OpenAI's use of Plaintiffs' works to train ChatGPT).

The UCL claim that survives OpenAI's motion to dismiss is based on the theory that OpenAI engaged in an unfair business practice when Defendants used Plaintiffs' copyrighted works to train their language models for commercial profit. *See Tremblay* Action, ECF No. 104 (Order on Mot. To Dismiss), 10:8-10. The DMCA claim is based on failure to preserve the Plaintiffs' copyright-management information when it copied the Plaintiffs' Infringed Works and used them as training data for the OpenAI Language Models. *See Tremblay* Action, ECF No. 1 (Complaint) ¶¶ 62-67.

The *Authors Guild* Plaintiffs fall back on generalized statements to the effect that a court should be careful in applying the first-to-file rule where there is only a "rough resemblance" between the two suits. A review of the facts in those cases show they provide little support for Authors Guild here. *See Quinn*, 958 F. Supp. 2d at 539 (observing that plaintiffs in one action raised claims under New York and Connecticut law while plaintiff in parallel action asserted claims under California law); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007) (noting overlap was limited to only one of two insurance coverage issues, entitlement to coverage for property loss, but no overlap with respect to issue of entitlement to coverage for defense costs).[14]

    4.    The "Equitable Considerations" that the *Authors Guild* Plaintiffs and Microsoft Cite do not Warrant Exception to the First-to-File Rule.

The *Authors Guild* Plaintiffs and Microsoft claim the equities here warrant the

---

[14] The Authors Guild Plaintiffs argue that the *Tremblay* Action includes all copyright holders, which could be construed to include unregistered copyright holders. Opp., 27. First, once again, this shows the *Tremblay* Action is more broad that the S.D.N.Y. Actions and, as the Authors Guild admits, their class is more narrow. Second, those class members may maintain other claims in addition to the copyright claims. Second, the *Tremblay* Plaintiffs acknowledge the general rule that a copyright holder's application must be processed before she can file a claim for copyright infringement in court. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). The *Tremblay* Plaintiffs have no intent to pursue copyright infringement claims on behalf of unregistered copyright holders.

multiplication of proceedings in spite of the first-to-file rule on the grounds the S.D.N.Y. Actions are ostensibly more advanced because "the pleadings are settled and discovery is well underway." The *Authors Guild* Plaintiffs also point to the schedule they secured as an additional basis for applying the "equitable considerations" warrant exception to the first-to-file rule.[15]

Microsoft's claim that it is "unfair to force Microsoft the schedule it negotiated when it gave up its opportunity to challenge the claims at the pleading stage of the lawsuit" is unavailing. ECF no. 79 at 7. Defendants in the *Tremblay* action have already conceded the direct copyright infringement, and Microsoft gave up nothing, even if and when the *Tremblay* Plaintiffs add Microsoft as a defendant at the appropriate time.

In a twist of irony, the *Authors Guild* Plaintiffs argue that the outcome of the very arrangement that has virtually ensured the multiplication of proceedings and resulting waste of judicial resources (by removing the threat of OpenAI's anticipated first-to-file motion) should warrant exception to the first-to-file rule due to "equitable considerations." The only reason why the *Authors Guild* pleadings are settled at this stage is because the parties in the *Authors Guild* Action skipped over OpenAI's anticipated first-to-file motion (and any 12(b)(6) motion practice) in exchange for the *Authors Guild* Plaintiffs' agreeing to sequence summary judgment before

---

[15] Counsel for the Basbanes and Gage Plaintiffs have reviewed the dockets in the S.D.N.Y. Actions and they reveal that other than filing complaints and commencing with limited discovery, the matters are not substantially advanced. Richter Decl., ¶ 4. Moreover, contrary to the Authors Guild's arguments, the Tremblay Action is not behind the Authors Guild Action. In Tremblay, the parties have also briefed and argued a Rule 12 motion, conducted a Rule 26(f) conference, and exchanged initial disclosures. Declaration of Christopher J. Hydal in Support of Motion, ECF No. 71-2 ("Hydal Decl."), ¶ 7. The parties have negotiated a protective order and are negotiating a discovery protocol which will cover the production of electronically stored information. Plaintiffs and OpenAI have each served requests for production and interrogatories. Id., ¶ 6. The parties have also prepared and served written objections and responses to the various discovery requests and met and conferred on discovery requests. Id. The Tremblay Plaintiffs are currently negotiating the scope of their respective discovery requests with OpenAI. Meanwhile, the Authors Guild Plaintiffs have propounded discovery requests on OpenAI that are inefficient and unmanageable. See ECF No. 83 (noting that the Authors Guild Plaintiffs propounded 939 requests for admission on OpenAI).

class certification in the jointly proposed schedule later entered by this Court. Had the parties actually litigated OpenAI's promised first-to-file motion, the Court may well have granted it and dismissed, transferred, or stayed the duplicative *Authors Guild* Action. Instead, the *Authors Guild* Plaintiffs struck a deal with OpenAI to further each one's interests—OpenAI got the case schedule it wanted, but did not obtain, in the *Tremblay* Action; and the *Authors Guild* Plaintiffs removed the threat of OpenAI's first-to-file and dismissal motions. In truth, the cumulative effect of this arrangement has almost ensured the unnecessary multiplication of proceedings. The *Authors Guild* Plaintiffs should not be entitled to tax the system for their own benefit and then argue the first-to-file rule does not apply for any reason, including "equitable considerations." The Court has the discretion to end to this under the first-to-file rule.

5. The *Authors Guild* Plaintiffs Have Not Shown How the Balance of Convenience Test Tips in Favor of Continuing Litigation in this Court; in any Event, there is Ample Support to Dismiss or Stay the Action

The *Authors Guild* Plaintiffs assert that *Tremblay* Plaintiffs have the burden of showing that first-to-file rule should be shown by "clear and convincing evidence." Incorrect. To the contrary, there is a "strong presumption in favor of the forum of the first-filed suit." *GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998). The Authors Guild fail to overcome it.

The *Tremblay* Plaintiffs enumerate several important reasons why the Northern District of California is a more convenient forum. Specifically, as the Motion points out that OpenAI's corporate headquarters is located in the Northern District of California at 3180 18th Street in San Francisco, within a stone's throw of the courthouse in which the *Tremblay* Action was filed and is being litigated. The technology and the commercial products at issue were created, developed, marketed, and sold from the heart of the Northern District of California. As a result, many of the relevant documents and sources of proof are located in the Northern District of California. In addition to party witnesses, third parties and former employees are likewise located in the

Northern District, well within 100 miles of the courthouse and therefore can only there be

compelled to appear at trial. *See* Fed. R. Civ. P. 45(c)(1) (100-mile rule). Substantial evidence is

located there, the precipitating conduct occurred there, and the vast majority of the witnesses

work and reside there.

In its opposition, OpenAI lists three reasons why it believes that New York remains the

center of gravity for the actions pending in this District:

- Proximity of *Authors Guild* Plaintiffs to the Southern District of New York: This

fact is of no moment. Authors Guild has not shown why the Northern District of California is

inconvenient to them. Indeed many of the other Plaintiffs are located somewhere else, spread

across the United States. The actions are about the Defendants' conduct in training their large

language models. The vast majority of the relevant witness testimony will derive from OpenAI

employees, many of whom are located in the Northern District of California. The Plaintiff

copyright holders are not anticipated to provide an inordinate amount of testimony and records

that favors venue in New York. Moreover, even the *Basbanes* Plaintiffs agree that the Northern

District of California would be a more convenient forum for the adjudication of their claims

against OpenAI. Richter Decl., ¶ 5.

- Defendant Microsoft has a research laboratory in New York City. The fact that

Microsoft has some operations in the Southern District of New York is also insubstantial.

Microsoft is one the largest corporations on the planet with offices virtually everywhere. In fact,

Microsoft's presence in the Southern District of New York is far outweighed by its presence in

the Northern District of California including its offices across Berkeley, San Francisco, and

Silicon Valley. Microsoft Corporation, *Microsoft's Growing Presence in the Bay Area* (Jan. 21,

2020), https://tinyurl.com/bdhxpjck. According to Microsoft, the San Francisco Bay Area region

"is home to more than 30 different teams developing strategic products in the intelligent cloud,

re-imagining hardware, empowering customers, and exploring new technologies like artificial intelligence." *Id.* Moreover, there is no showing that the acts of Microsoft relevant to this case have anything to do with its contacts in the Southern District of New York. In fact, the reverse is true. Microsoft's AI-focused activities are focused in California and on the West Coast.

- The publishing industry has a historic presence in New York: This carries no weight. Courts generally do not consider arguments that another district court is "more familiar" with a particular area of federal law and, thus, supposedly a more appropriate forum for the litigation. Rutter Group Practice Guide: Federal Civil Procedure Before Trial (Nat Ed.) "Convenience" Transfers Under 28 USC § 1404, Ch. 4-K citing *Cargill Inc. v. Prudential Ins. Co. of Am.*, 920 F. Supp. 144, 148 (D. Colo. 1996) ("[T]he suggestion that the District of Minnesota is a less appropriate forum for this action because it lacks the experience in ERISA matters of the courts in this circuit is both an affront to that court and an illusion to be ignored.").

D.    **The S.D.N.Y. Actions should be Stayed or Transferred to the Northern District of California**

Lastly, the *Authors Guild* Plaintiffs argue that it would be inefficient to dismiss or stay the case. Remarkably, they argue that informal coordination is between duplicative overlapping class actions better serves the interests of sound case management and judicial economy. This is exactly backwards. Principles of case management compel that these actions proceed before a single judge. *See* Manual for Complex Litigation, Fourth § 10.123 (2004) ("Assignment of related . . . civil cases to a single judge will improve efficiency and coordination, especially when the cases are pending at the same time). Separation of these cases only undercuts these principles.

Under the case schedule set by the *Tremblay* Court, certification of the *Tremblay* class should be determined prior to motions for summary judgment. Meanwhile, in the S.D.N.Y. Actions, class certification is sequenced after summary judgment. That sequence creates a host of

procedural and case management problems that would make case management between the S.D.N.Y. Actions and the Tremblay Action unworkable.

In fact, the *Tremblay* Plaintiffs proposed the idea of informal coordination to the *Authors Guild* Plaintiffs on the December 6, 2023 call with counsel for the *Alter* Plaintiffs. On that call, counsel for the *Tremblay* Plaintiffs asked their counterparts how they might envision collaboration on these cases. Counsel for the *Alter* Plaintiffs responded by saying that their team would "put on their thinking caps" and follow up. The *Tremblay* Plaintiffs did not receive any further communications from the *Alter* Plaintiffs on the topic of collaborating on these cases.[16] Informal coordination would not be necessary, and would not be likely to stem the waste of judicial resources that is likely to occur if the duplicative S.D.N.Y. Actions go forward. The S.D.N.Y. Actions should be dismissed, transferred, or stayed.

### III.    CONCLUSION

For the foregoing reasons, the *Tremblay* Plaintiffs respectfully request the Court grant this Motion to intervene and grant their Motion to dismiss or, in the alternative, stay or transfer the S.D.N.Y. Actions under the first-to-file rule.

---

[16] Since the December 6 call, the *Tremblay* Plaintiffs received only one communication from the counsel representing the *Alter* Plaintiffs—a request to file their Motion in the docket for the *The N.Y. Times Co. v. Microsoft Corp. et al.*, Case No. 1:23-cv-11195 (S.D.N.Y. Dec. 27, 2023). The *Tremblay* Plaintiffs honored their request by filing a copy of their Motion on that docket.

Dated: March 4, 2024                    By:     */s/ Christopher J. Hydal*
                                         Christopher J. Hydal

Christopher J. Hydal
**JOSEPH SAVERI LAW FIRM, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Telephone: (646) 527-7310
Facsimile:  (212) 202-7678
Email:      chydal@saverilawfirm.com

Joseph R. Saveri (pro hac vice forthcoming)
Cadio Zirpoli (pro hac vice forthcoming)
Christopher K. L. Young (pro hac vice forthcoming)
Holden Benon (pro hac vice forthcoming)
Aaron Cera (pro hac vice forthcoming)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:   jsaveri@saverilawfirm.com
         czirpoli@saverilawfirm.com
         cyoung@saverilawfirm.com
         hbenon@saverilawfirm.com
         acera@saverilawfirm.com

Matthew Butterick (pro hac vice forthcoming)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323)968-2632
Facsimile:  (415) 395-9940
Email:   mb@butericklaw.com

Bryan L. Clobes (pro hac vice)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:     215-864-2800
Email:         bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice anticipated)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:     312-782-4880
Email:         asweatman@caffertyclobes.com

Daniel J. Muller (State Bar No. 193396)
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email:       dmuller@venturahersey.com

*Counsel for Individual and Representative Plaintiffs*
*and the Proposed Class*