UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS A. BASBANES and NICHOLAS NGAGOYEANES (professionally known as Nicholas Gage), individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI GP, L.L.C., OPENAI HOLDINGS, LLC, OAI CORPORATION, LLC, OPENAI GLOBAL, LLC, OPENAI, L.L.C., and OPENAI OPCO, LLC,<br><br>Defendants. | Civil Action No. 1:24-cv-84-SHS |

**DECLARATION OF MICHAEL P. RICHTER IN SUPPORT OF MOTION TO INTERVENE AND DISMISS, STAY OR TRANSFER**

I, Michael P. Richter, declare:

1. I am a partner at Grant Herrmann Schwartz & Klinger LLP ("GHSK") and serve as counsel of record for Plaintiffs Nicholas Basbanes and Nicholas Gage in the above-captioned action (the "Basbanes-Gage Action"). I am admitted to practice before this Court.

2. On behalf of Messrs. Basbanes and Gage, I submit this declaration in support of the Motion To Intervene And Dismiss, Stay Or Transfer filed by the Joseph Saveri Law Firm, LLP on February 12, 2024 with respect to four Southern District of New York cases ("S.D.N.Y. Actions"). (*See* ECF No. 33, the "Motion".) Three of the S.D.N.Y. Actions are consolidated under *Authors Guild et al., v. OpenAI, Inc. et al.*, Case No. 1:23-cv-08292-SHS (S.D.N.Y. Sep. 19, 2023) ("*Authors Guild* Action"). The fourth S.D.N.Y. Action is *The N.Y. Times Co. v. Microsoft Corp. et al.*, Case No. 23-cv-11195 (S.D.N.Y. Dec. 27, 2023) ("*New York Times* Action").

3. I am familiar with the complaints filed in the S.D.N.Y. Actions. They are substantially identical to *Tremblay et al. v. OpenAI, Inc. et al.*, Case No. 3:23-cv-03223-AMO (N.D. Cal. June 28, 2023) ("*Tremblay* Action"). Each purport to represent proposed classes that are entirely subsumed by the class proposed in the *Tremblay* Action. Plaintiffs in the S.D.N.Y. Actions allege that Microsoft, OpenAI, Inc., and its affiliated entities committed direct copyright infringement when they made and used copies of Plaintiffs' books—without Plaintiffs' permission—during the process of training OpenAI's language models.

4. I have reviewed the dockets in the S.D.N.Y. Actions and they reveal that other than filing complaints and commencing with limited discovery, they are not substantially advanced.

5. Messrs. Basbanes and Gage agree that, in light of the nature of these proceedings, and the fact that OpenAI, Inc. and likely many of its employees and third parties are domiciled in or around San Francisco, California, the Northern District of California would be a more

convenient forum for the adjudication of the above-referenced claims against OpenAI.

6. Messrs. Basbanes and Gage initially supported the application of counsel in the *Authors Guild* Action (1:23-cv-08292-SHS) and *Alter* Action (1:23-cv-10211-SHS) to serve as interim co-lead counsel ("Other Counsel"). But that support was premised on an agreement that GHSK would be able to represent the interests of Messrs. Basbanes and Gage, and those like them, along with Other Counsel.

7. As set forth in my letter to the Court dated February 5, 2024 (the "Letter," at 1:23-cv-08292, ECF No. 68, and incorporated here by reference), Other Counsel continued to change the terms of GHSK's participation to the point where GHSK could not devote the resources necessary to ensure that its representation of Messrs. Basbanes and Gage, and those like them, was competent. As a result, I requested that the Court rule on GHSK's pending motion (at ECF No. 21) to, among other things, consolidate the actions and appoint GHSK to a steering committee to address the serious concerns Messrs. Basbanes and Gage had about this case.

8. Shortly after I filed the Letter, Other Counsel filed its opposition to that part of GHSK's motion for a steering committee (the "Opp." at ECF No. 31).

9. Contrary to Other Counsel's assertion that the Basbanes-Gage Action only set forth "vague allusions to 'serious concerns'" (Opp. 4), the Basbanes-Gage Action identified three specific and serious concerns.

10. *First*, the Basbanes-Gage Action highlighted that Defendants conduct monetized personal tragedies recounted in copyrighted works. Mr. Gage's masterpiece *Eleni*, which was made into a major motion picture starring John Malkovich, and which President Reagan cited as his inspiration to pursue arms control talks with the Soviet Union, documents the execution of his mother by Greek Communists during the Greek civil war. Mr. Gage never consented to

3

Defendants' decision to profit from the story of his mother's murder. It is essential that any fact-finder consider the impact Defendants' conduct had on members of the proposed class like Mr. Gage. (*See* ECF No. 22 at 3.)

11.     *Second*, the Basbanes-Gage Action felt it was unnecessary and inefficient to have one class for fiction authors and a separate class for non-fiction authors, as Other Counsel initially sought by virtue of their two separate actions. Accordingly, the Complaint filed by Messrs. Basbanes and Gage advocated for a class with no such distinction. (*See* ECF No. 22 at 4-6.)

12.     *Third*, the Complaint in the Basbanes-Gage Action emphasized that, in stark contrast to Defendants, individual authors like Messrs. Basbanes and Gage utilized their own resources to secure access to copyrighted works for use in their own works. (ECF No. 22 at 3-4.)

13.     The complaints filed by Other Counsel failed to address the three points identified above. This is precisely why Messrs. Basbanes and Gage filed their own Complaint and only supported Other Counsel's application to serve as interim co-lead counsel so long as their interests, and the interests of those like them, were represented.

14.     Other Counsel also asserted that my familial relationship with Mr. Basbanes constituted "red flags." (Opp. 4.) Nonsense.

15.     Other Counsel cited a single case in support of this purported concern, but omitted that there the Eastern District of New York ruled "that counsel's relationship with certain class members does not make the named class members inadequate." *Oliver v. Am. Express Co.*, No. 19CV566NGGSJB, 2024 WL 100848, at *17 (E.D.N.Y. Jan. 9, 2024), *amended in part*, No. 19CV566NGGSJB, 2024 WL 217711 (E.D.N.Y. Jan. 19, 2024) (*See* Opp. 4). Rather, the court was "convinced that these proposed representatives will adequately represent their classes despite their family connections to class counsel." *Id*.

16. Other Counsel also omitted that the court's "inquiry focuses on whether the class plaintiff is so closely allied with the class attorney that he or she might have an interest in the legal fees that the attorney may ultimately seek such that the named representative's interests are antagonistic to those of the rest of the class." *Id.* (quotation marks omitted). But Mr. Basbanes engagement agreement with GHSK does not entitle him to any legal fees.[1]

17. As my Letter details, GHSK agreed to every request made by Other Counsel. This initially included that GHSK's role would potentially be limited to defensive discovery pertaining to Messrs. Basbanes and Gage. GHSK agreed. Then Other Counsel moved the goal posts by insisting that they have the power to remove GHSK if it violated fiduciary duties. Offensive, but GHSK agreed. Then Other Counsel moved the goal posts again by proposing an agreement that, among other things, omitted any mention of GHSK's role representing Messrs. Basbanes and Gage, allowed Other Counsel not to include GHSK's time in any future fee application to the Court, and prohibited GHSK from submitting fees for time that would be necessary to be familiar with the case. (*See* Letter at 3.) GHSK did not agree because this could impair its ethical duty to act competently.[2]

18. Other Counsel also asserted that GHSK sought a "blank check" "to simply 'stay abreast'" of the case. (Opp. 5.) False. GHSK's email to Other Counsel regarding the parties' agreement—which Other Counsel never responded to—stated, in pertinent part, as follows:

> "One thing I did not raise yesterday, but should have (apologies), is that in order to ensure we have the necessary level of competence to act ethically on behalf of our clients--whether it is reviewing documents, preparing them

---

[1] Mr. Gage has no family relationship with anyone at GHSK.

[2] Ironically, Other Counsel was purportedly concerned, without any basis, that GHSK may violate fiduciary duties. Then, Other Counsel insisted on conditions that would impair GHSK's ability to competently represent Messrs. Basbanes or Gage, or those similarly situated. (*See* Letter at 3.)

for depositions, defending them at depositions, or otherwise--we must stay familiar with the case and take the time to stay abreast of filings and discovery. Of course, I don't see how us merely reading material to stay familiar with the case could ever cause a conflict with your fiduciary duties, but I do see how not staying abreast of the developments in the case could inhibit our ability to ethically represent our clients. *I am not suggesting that we must be included in every single aspect of discovery, far from it, but we must be sufficiently familiar with the case to act ethically.*" (emphasis added).

19. To fulfill the role Other Counsel suggested—*i.e.*, leading defensive discovery for Messrs. Basbanes and Gage—GHSK would have to be familiar with key aspects of the case, including, for example, the operative complaint, answer, document demands, interrogatories, pertinent rulings from the Court, and other developments so that it can act competently.

20. On behalf of Messrs. Basbanes and Gage, GHSK attempted, in good faith, to work cooperatively with Other Counsel, especially in light of Other Counsel's assertion that they "have the ability and willingness to work cooperatively with other law firms" and "understand that professional and courteous relations amongst joint counsel . . . are essential to the conduct and management of complex litigation such as this one." (*See Authors Guild* Action ECF No. 29-1 at 14-15.) However, Other Counsel ultimately insisted on conditions that would have precluded GHSK from competently representing the interests of Messrs. Basbanes and Gage, and those like them. GHSK could not agree to those conditions.

21. On February 6, 2024, the Court consolidated the Basbanes-Gage Action with the *Authors Guild* Action and *Alter* Action for pretrial purposes, denied the request to create a steering committee that included GHSK, and appointed Other Counsel as interim co-lead class counsel. (ECF No. 32.)

***

22. I have had an opportunity to speak with counsel at the Joseph Saveri Law Firm. In

6

contrast to Other Counsel, they have agreed to work collaboratively with GHSK to competently represent the interests of Messrs. Basbanes and Gage, and those like them, in the action now pending in the Northern District of California.

23.     Accordingly, it is in the best interests of those members of the class that are similar to Messrs. Basbanes and Gage for the Motion to be granted. Thus, Messrs. Basbanes and Gage support the Motion and respectfully request that the Court grant the relief requested therein.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge and belief.

DATED: March 4, 2024
        New York, New York

By: */s/ Michael P. Richter*
     Michael P. Richter, Esq.