EXHIBIT 1B

| | |
|---|---|
| **From:** | Geman, Rachel |
| **To:** | "openaicopyrightlitigation.lwteam@lw.com"; "OpenAICopyright@mofo.com"; Rohit Nath; Justin A. Nelson |
| **Cc:** | Dozier, Wesley; Delucchi, Ariana |
| **Subject:** | FW: Authors Guild v. OpenAI P.O. & ESI Order |
| **Date:** | Wednesday, December 20, 2023 1:23:29 PM |
| **Attachments:** | image001.gif |
| | Authors Guild v OpenAI Proposed ESI Protocol (2902810v1).DOCX |
| | LJL Liman Model Protective Order_updated 7.12.23.pdf |

EXTERNAL Email

Hello all - I am following-up on these two documents, and also, in the interests of efficiency, adding counsel for *Alter et al.* (fka *Sancton*) to this chain to see what comments/edits Rohit and Justin or their team may have.

Best, Rachel

---

**From:** Dozier, Wesley <wdozier@lchb.com>
**Sent:** Tuesday, December 12, 2023 10:40 AM
**To:** 'JGratz@mofo.com' <JGratz@mofo.com>; 'joe.wetzel@lw.com' <joe.wetzel@lw.com>; 'andrew.gass@lw.com' <andrew.gass@lw.com>; 'alli.stillman@lw.com' <alli.stillman@lw.com>; 'sy.damle@lw.com' <sy.damle@lw.com>
**Cc:** Bensberg, Ian R. <ibensberg@lchb.com>; Geman, Rachel <rgeman@lchb.com>; Scott Sholder <ssholder@cdas.com>; 'CeCe Cole' <CCole@cdas.com>
**Subject:** Authors Guild v. OpenAI P.O. & ESI Order

Counsel—

Attached is a draft Protective Order from another SDNY judge (Judge Liman) that was recently updated. We propose using that order here for that reason. A draft ESI Order is also attached.

Please let us know if these work for you or what edits you have.

Best,



**Wesley Dozier**
wdozier@lchb.com
t 615.313.9000
f 615.313.9965
Lieff Cabraser Heimann & Bernstein, LLP
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
www.lieffcabraser.com

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

# EXHIBIT 1B-1

1

2

**United States District Court**

**Southern District of New York**

3

4

AUTHORS GUILD, DAVID BALDACCI,
MARY BLY, MICHAEL CONNELLY,
SYLVIA DAY, JONATHAN FRANZEN,
JOHN GRISHAM, ELIN
HILDERBRAND, CHRISTINA BAKER
KLINE, MAYA SHANBHAG LANG,
VICTOR LAVALLE, GEORGE R.R.
MARTIN, JODI PICOULT, DOUGLAS
PRESTON, ROXANA ROBINSON,
GEORGE SAUNDERS, SCOTT TUROW,
and RACHEL VAIL, individually and on
behalf of others similarly situated,

No. 1:23-cv-8282-SHS

**JOINT STIPULATION AND [PROPOSED]
ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY
STORED INFORMATION ("ESI") AND
HARD COPY DOCUMENTS**

5

6

7

8

9

10

Plaintiffs,

11

v.

12

13

14

15

16

OPENAI INC., OPENAI OPCO LLC,
OPENAI GP LLC, OPENAI LLC,
OPENAI GLOBAL LLC, OAI
CORPORATION LLC, OPENAI
HOLDINGS LLC, OPENAI STARTUP
FUND I LP, OPENAI STARTUP FUND
GP I LLC, OPENAI STARTUP FUND
MANAGEMENT LLC, and MICROSOFT
CORPORATION,

17

Defendants.

18

19

20

## I.    **PURPOSE**

This Joint Stipulation and [Proposed] Order ("Order") regarding the production of

21

Electronically Stored Information ("ESI") and Hard Copy Documents (collectively, "Document"

22

or "Documents") shall govern discovery of Documents in this case as a supplement to the Federal

23

Rules of Civil Procedure, and any other applicable orders and rules. Nothing in this Order is

24

intended to expand or limit the Parties' obligations under the Federal Rules of Civil Procedure.

25

Any disputes arising out of the production of Documents subject to this Order shall be resolved

26

according to Federal Rules of Civil Procedure, Local Rule 26, and the Court's Standing Orders.

27

## II.    **COOPERATION**

28

The Parties are aware of the importance the Court places on cooperation and commit to

cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

### III.  LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

### IV.  PRESERVATION AND IDENTIFICATION OF ESI

**A.**    The Parties have discussed or, within a week of the issuance of this Order, will discuss their preservation obligations and needs and agree that preservation of potentially-relevant ESI will be reasonable and proportionate. The Parties have exchanged (or will within a week of this Order exchange) a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The Parties shall add or remove custodians as reasonably necessary. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

1.    Within 30 days following receipt of the Requesting Party's requests for production of Documents, or a later time if agreed to by the Parties, the receiving Party shall disclose the names of individuals and/or sources from which the Producing Party plans to collect Documents in response to the document requests.  The custodians shall be identified by name, title, and connection to the instant litigation.

2.    Where applicable, sources of Documents include but are not limited to desktop servers, computers, laptops, local hard drives, file servers, databases, SANs, NASs, email servers, web servers, network home or personal file shares, any shared drives, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces removable storage, email,

removable storage media, on-line data storage (e.g., Dropbox or Google Drive), messaging

phones, tablets social media, and physical or hard copy files and Documents.

3.      The Parties shall have a continuing obligation to take reasonable and

proportional steps to identify and preserve custodial and non-custodial data sources that may

contain information that is relevant to the claims and defenses in this litigation.

4.      If a Producing Party is aware of inaccessible data that is likely to contain

unique, discoverable ESI, it will identify the source from which it claims the data is not

reasonably accessible to the Receiving Party.

5.      Examples of data the Parties agree not to preserve are:

a.      Deleted, "slack," fragmented, or unallocated data only accessible by

forensics;

b.      Random access memory (RAM), temporary files, or other

ephemeral data that are difficult to preserve without disabling the

operating system; and

c.      Structural files not material to individual file contents (e.g. .CSS,

.XSL, .XML, .DTD, etc.).

## V.      **SEARCH & REVIEW**

1.      The Parties will meet and confer to discuss the use of search terms, filters and date

ranges or the use of advanced search and retrieval technologies. By [*], a Producing Party shall

specify the technique or techniques it will use to search for material it reasonably anticipates will

be responsive to Requests for Production.  If the Requesting Party objects to the particular

technique or techniques, the Parties will timely meet and confer regarding the matter and submit

any unresolved disputes to the Court for resolution:

2.      A Party who intends to use search terms will describe a Search Protocol that will

include: (a) the criteria to be used to identify the universe of Documents to which search terms

will be applied (e.g., date range), and (b) proposed search terms to be applied to that universe of

Documents, subject to revision based on, for example, meet and confer of the Parties and the

number of hits returned by each term. A Requesting Party may also suggest search terms to be

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

1    applied.  Any Search Protocol will include a requirement for the Producing Party to provide hit

2    reports for proposed search terms prior to utilizing the search terms to narrow the universe of

3    Documents to be searched.  Any Search Protocol shall include a requirement to review one

4    random sample of 2,000 distinct Documents that do not hit on the search terms that are agreed

5    upon by the Parties (the "Null Set"), and to produce to the Requesting Party any responsive, non-

6    privileged Documents identified.  The Null Set of 2000 distinct Documents shall be generated

7    after all document processing is substantially complete.  These 2,000 Documents should come

8    from each custodian and include Documents throughout the entire date range.  Producing Party

9    should then review the 2,000 Documents that do not hit on any terms and produce any responsive

10    Documents.  If more than 10% of these Documents are responsive (i.e., 200 Documents), then

11    Parties shall revisit the agreed-upon search terms by analyzing the Documents produced and

12    determining which additional terms are necessary. The Parties agree to meet and confer regarding

13    the Search Protocol and to raise any disputes regarding the Search Protocol for resolution by the

14    Court.

15          3.      A Producing Party electing to use search terms shall not use them in combination

16    with technology assisted review ("TAR") on the same set of Documents, whether to cull before or

17    after application of TAR, and vice versa.  If a Producing Party seeks to use search terms on one

18    set of Documents and TAR on a different set of Documents, the Producing Party will identify

19    each set of Documents and state the rationale for the difference in method applied.  The

20    Producing Party does not, in providing such a statement, waive any applicable privilege or work

21    product protections.  If the Requesting Party objects to such an approach, the Parties will timely

22    meet and confer regarding the matter and submit any unresolved disputes to the Court for

23    resolution.

24          4.      A Party who intends to use TAR will describe a TAR Protocol that will include:

25    (a) the TAR system to be used; (b) the criteria to be used to identify the universe of Documents to

26    which TAR is to be applied (the "TAR Universe"); (c) its methodology for training the TAR

27    model and identifying responsive Documents; (d) the methodology for validation testing to be

28    used; (e) the subject-matter expert who will oversee the implementation of the TAR Protocol; and

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

(f) the process by which Documents excluded as not conducive to categorization (e.g. multimedia files, primarily numerical spreadsheets, database files) will be reviewed for production.

5.      If a Party is using culling technology, criteria or methods, the Producing Party agrees to disclose details in advance to the Receiving Party along with the sources across which it plans to apply the culling techniques.  The Parties must also provide written information regarding the use of any other advanced culling techniques they employ in connection with their culling of the Documents if they are using such technology to exclude Documents from manual review.

6.      Documents which are reasonably believed to be responsive to discovery requests and not subject to objections and for which text-based search technologies are fundamentally ineffective must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

## VI.    **PRODUCTION FORMATS**

The Parties agree to produce Documents in the formats set forth in Appendix 1 and 2 hereto.

## VII.    **DOCUMENTS PROTECTED FROM DISCOVERY**

The production of Documents (including both paper Documents and electronically stored information) subject to protection by the attorney-client and/or protected by the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the Producing Party notifies the Receiving Party, in writing, of the production after its discovery of the same.

If the Producing Party notifies the Receiving Party after discovery that privileged materials (hereinafter referred to as the "Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the Producing Party or destroyed or deleted, on request of the Producing Party. The Receiving Party agrees to use reasonable efforts to segregate Identified Materials and any notes or work product (or portions of work product) reflecting the contents of any Identified Materials and the Receiving Party will not

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

review or use such segregated Identified Materials and/or work product unless the Court determines the Identified Materials to not be privileged.  The Identified Materials shall be deleted from any systems used to house the Documents, including document review databases, e-rooms and any other location that stores the Documents. The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made. The Party returning the Identified Materials may move the Court for an order compelling production of some or all of the material returned or destroyed, but the basis for such a motion may not be the fact or circumstances of the production.

If any Receiving Party is in receipt of a Document from a Producing Party which the Receiving Party has reason to believe is privileged, the Receiving Party shall in good faith take reasonable steps to promptly notify the Producing Party of the production of that Document so that the Producing Party may make a determination of whether it wishes to have the Documents returned or destroyed pursuant to this Stipulated Protective Order.

The Parties agree that this Order is an Order entered under Rule 502(d) of the Federal Rules of Evidence and thus the disclosure of Identified Materials is not a waiver of the privilege in any other federal or state proceeding.

This stipulated agreement set forth in this section and its subparts does not constitute a concession by any Party that any Documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine. This agreement also is not intended to waive or limit in any way either Party's right to contest any privilege claims that may be asserted with respect to any of the Documents produced except to the extent stated in the agreement.

**VIII.    <u>MODIFICATION</u>**

This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

**IX.    <u>MISCELLANEOUS PROVISIONS</u>**

    **A.    <u>Objections Preserved.</u>**

Nothing in this Order shall be interpreted to require disclosure of relevant information

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

1   protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable

2   privilege or immunity. Except as provided expressly herein, the Parties do not waive any

3   objections as to the production, discoverability, authenticity, admissibility, or confidentiality of

4   Documents and ESI.

5         **B.**     **Technical Variances.**

6         Recognizing that each Producing Party may experience production issues due to data

7   systems or files that may not be fully compatible with the technical specifications set forth herein,

8   any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in

9   writing, to accommodate such issues and/or where such variance is deemed appropriate to

10  facilitate the timely and economical production of Documents or ESI. No Party shall

11  unreasonably object to any such variance.

12        **C.**     **Privileged Documents and Privilege Log.**

13        To the extent that a Party reasonably determines that one or more responsive Documents

14  are not discoverable or a portion of a Document needs to be redacted because it is subject to the

15  attorney-client communication privilege or work product doctrine, or otherwise not discoverable

16  on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a

17  "Privilege"), the Party shall, within 30 days of the production from which Documents are

18  withheld or redacted for privilege, produce a log treating each Document withheld or redacted for

19  privilege from that production separately that sets forth: (a) the nature of the privilege(s) or other

20  protection claimed; (b) the date of the Document; (c) the name of the author(s)/addresser,

21  addressee(s) and all recipients of the Document (with respect to e-mail threads, the

22  author/addresser, addressee(s) and recipients of only the top e-mail in the chain will be set forth in

23  the author/addressee, addressee(s) and recipient fields of the log) and whether any person

24  identified is an attorney or an employee of any Defendants' legal department; (d) a description of

25  the general subject matter contained in the Document and the type of Document (e.g., letter,

26  memorandum, handwritten notes) sufficient to allow the Receiving Party to assess the claimed

27  Privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and

28  (e) the custodian and/or location of the Document. For redacted Documents with multiple

1  redactions, one log entry can be used to describe the multiple redactions, so long as a single entry

2  is sufficient to adequately identify the basis for all redactions, as described in this paragraph.

3  Names of counsel shall be designated with an asterisk.

4       Documents that are privileged and that post-date the filing of the original complaint need

5  not be placed on a privilege log.

6       **D.    Hard Copy Document Storage.**

7       During the pendency of this litigation, the Parties shall make reasonable efforts to

8  preserve the originals of all hard copy Documents as to which there may be issues of legibility of

9  all or any part of the production copy. Each Party reserves the right to request to inspect such

10  original Documents of the opposing Party or Parties, which request shall not be unreasonably

11  denied. If such request to inspect is denied, the Party may seek relief from the Court.

12       **E.    Reproduction as Natives.**

13       The Parties agree that to the extent any Party seeks production in native format of

14  specifically identified ESI produced originally in TIFF form, the Producing Party shall respond

15  reasonably and in good faith to any such request.

16

17       **IT IS SO STIPULATED**, through Counsel of Record

18    Dated: _____            _____

19                         Rachel Geman
                           **LIEFF CABRASER HEIMANN & BERNSTEIN,**
20                         **LLP**
                           250 Hudson Street, 8th Floor
21                         New York, NY  10013-1413
                           Telephone:  212.355.9500
22                         rgeman@lchb.com

23
                           Ian R. Bensberg (admitted *pro hac vice*)
24                         **LIEFF CABRASER HEIMANN & BERNSTEIN,**
                           **LLP**
25                         275 Battery Street, 29th Floor
                           San Francisco, CA  94111-3339
26                         Telephone:  415.956.1000
                           ibensberg@lchb.com
27

28

2902810.1

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wesley Dozier (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue, Suite 1640
Nashville, TN 37201
Telephone: 615.313.9000
wdozier@lchb.com

Scott J. Sholder
CeCe M. Cole
**COWAN DEBAETS ABRAHAMS & SHEPPARD LLP**
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: 212.974.7474
ssholder@cdas.com
ccole@cdas.com

*Attorney for Plaintiffs and the Proposed Class*

Dated: _____    _____

[Defendant's signature block]

*Attorney for Defendants*

   **IT IS SO ORDERED** that the foregoing Agreement is approved.

   Dated: _____    _____

Judge Sidney H. Stein
United States District Judge
Southern District of New York

- 9 -

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

**APPENDIX 1**
**PRODUCTION DELIVERY REQUIREMENTS**

**I.     GENERAL PRODUCTION PROVISIONS**

The Parties have agreed that ESI should be produced as TIFF images and in Native Format where applicable with accompanying data and image load files.

**A.     TIFF Image Files.**

The Parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

**B.     Text Files.**

Each Document produced under this Order shall be accompanied by a Document level text file containing all of the text for that Document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding Document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned Documents as applicable. The .DAT load file shall include a link to the corresponding text file.

**C.     OCR Text File.**

The Parties will provide searchable OCR text of any paper or imaged Documents, unless the Party determines that the utility of the OCR is outweighed by the expense. In that case, the Producing Party will produce the Documents as they are kept in the ordinary course of business.

**D.     Extracted Text Files from ESI.**

The Parties shall extract the text of each ESI item directly from the ESI native file, where extracted text is reasonably available. For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

**E.     OCR Text for Redacted Documents.**

The Parties will provide searchable OCR text for any redacted files.

**F.    Bates Numbering.**

1.    Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a Producing Party skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

2.    The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the Receiving Party believes that a Bates number obscures the content of a Document, then the Receiving Party may request that the Document be produced with the Bates number in a different position.

**G.    Re-Production of Prior or Other Litigation Documents.**

Where a Requesting Party seeks re-production of a set of Documents produced in a prior litigation or any other proceeding, or where a prior production of Documents or ESI by a Party in a prior litigation or any other proceeding is the only reasonably accessible source of those Documents or ESI to be produced by a Party in this litigation, the Producing Party may re-produce such Documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the Producing Party as part of the productions set. For any such re-production in accordance with this Paragraph, the Producing Party is not obligated to re-format the prior production in accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

**H.    Parent-Child Relationships.**

Parent-child relationships for all embedded ESI Documents (e.g., the association between

2902810.1

an attachment and its parent email, or a spreadsheet embedded within a word processing Document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a Party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email.

### I.    Color Documents.

If an original ESI Document contains color text, markings or graphics, and the Receiving Party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the Receiving Party may request that the ESI Document be produced in color format. The Producing Party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in Native Format. This section also applies to Documents that are produced as TIFF images.

### J.    Confidentiality Designations.

If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image.  If the Receiving Party believes that a confidentiality designation obscures the content of a Document, then the Receiving Party may request that the Document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third Party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document. For each Document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any Documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

## II.    PRODUCTION OF HARD COPY DOCUMENTS

All hard copy Documents that are scanned will be produced in electronic form. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color Documents will be provided in JPG file format.

### A.    Unitization of Paper Document.

To the extent practicable, hard copy Documents shall be unitized using logical document determinations or "LDD."

### B.    Identification.

Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

### C.    Custodian Identification.

The Parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

### D.    Metadata.

The metadata associated with each hard copy Document need only identify the Bates number, the custodian associated with that hard copy Document, and any Confidential Designation or Redaction applied to that Document.

## III.    PRODUCTION OF "ESI"

### A.    De-NISTING and System Files: ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced. The Parties may mutually agree upon any additional file types that can be excluded from review and production. A Producing Party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made following the date of this Order, and will utilize reasonable best efforts to do the same with

1  respect to any productions made prior to the date of this Order.

2      If a Party excludes from review a standard, readable, and reviewable file type not within

3  the industry standard, that Party must disclose such exclusion to the other Parties.

4      **B.**      Native Files: Certain files types, such as presentation-application files (e.g., MS

5  PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual

6  files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in Native

7  Format. For files produced in Native Format, the Producing Party shall provide a single-page

8  TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The

9  corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path

10  linking information for each native file that is produced.  In addition, the confidentiality

11  designation will be indicated in the name of the native file where reasonably feasible.

12      **C.**      <u>**Metadata Fields and Processing,**</u>

13      1.      ESI shall be processed in a manner that preserves the source native file and

14  relevant metadata without modification, including their existing time, date, and time-zone

15  metadata consistent with the requirements provided in this Order. The Producing Party will

16  provide information on the time zone the data was processed in to the Receiving Party.

17      2.      <u>**Hidden text.**</u> ESI shall be processed, to the extent practicable, in a manner

18  that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked

19  changes, redlines and comments. Upon request, a Producing Party will produce files with any

20  such information in Native Format.

21      3.      <u>**Compressed Files and Encrypted Files.**</u> Compressed file types (i.e.,

22  .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip

23  within a zip is decompressed into the lowest possible compression resulting in individual files.

24  The Producing Party will take reasonable steps, prior to production, to unencrypt any

25  discoverable electronically stored information that exists in encrypted format (e.g., because

26  password-protected) and that can be reasonably unencrypted.

27      4.      <u>**Metadata and Coded Fields.**</u>  ESI items shall be produced with all of the

28  metadata and coding fields set forth in Appendix 2.

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the Producing Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

**IV.    DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA**

1.    The Parties will produce Documents collected from databases or other structured databases in a reasonably useable format. If the data cannot be produced in a reasonably useable format, the Parties will meet and confer to address the production format. Prior to or during any such meet and confer, the Producing Party will provide sufficient information to enable the Receiving Party to evaluate the best method and format of production. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

**V.    RESPONSIVENESS, PRIVILEGE & REDACTIONS.**

A.    The Parties agree that if an attachment to an e-mail is wholly nonresponsive to the discovery requests, it will be produced along with any other Documents in the family.

B.    To the extent that a Defendant reasonably determines that e-mail or related attachments that are responsive to Plaintiff's document request are not discoverable because they are subject to a Privilege, Defendant shall produce a log treating each e-mail and attachment withheld separately.

C.    **Redactions:**

The parties agree that where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Any unaffected data fields shall be provided. The redaction of any material for privilege or other reason shall be governed by the applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in

this action. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video or very large spreadsheet), the producing party may produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file.  Also, the producing party will keep a pristine original copy of the native document.

**D.    Printing Specifications for Excel and PowerPoint files:**

For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

| Excel Print to TIFF Options |
| --- |
| • Unhide columns and rows |
| • Unhide worksheets |
| • Autofit columns and rows, settings to be over by columns first and, then down by rows |
| • Print gridlines |
| • Do not apply Autofilter |
| • Display headings |
| • Display comments |
| • Header and Footer filename field handling: Show field code |

| PowerPoint Print to TIFF Options |
| --- |
| • Print notes pages |
| • Print hidden slides |
| • Print comments |

1.    The Producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. A Document's status as redacted does not relieve the Producing Party from providing all of the metadata required herein.

**E.    De-duplication and Document Families:**

1     ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1

2     hash.  For emails, de-duplication may be performed using a hash calculated using combination of

3     metadata fields.  Such hash shall, at a minimum, account for all sender and recipient metadata

4     including BCC recipients, the email subject, date sent, and attachment names.

5     The Parties are permitted to produce the longest unique email chain and do not need to

6     separately produce the lesser-included emails unless those lesser-included emails have bcc

7     recipients or unique attachments not included in the longest chain.  If a lesser-included email has

8     a bcc recipient or unique attachment, then the lesser-included email must be separately produced

9     with the attachments

10     If a Party produces only inclusive email, the Parties agree to redact any privileged content

11     or message component and produce in full the rest of the conversation in the inclusives.

12     "Near duplicate" Documents shall be produced rather than removed. The Producing Party

13     need only produce a single copy of a particular ESI.

14     The hash value for each item shall be reflected in the .DAT load file in the HashValue

15     field specified in Appendix 2. If a Producing Party elects to de-duplicate globally, the Producing

16     Party shall identify custodians who were in possession of a de-duplicated Document in the

17     AllCustodian metadata field specified in Appendix 2. This means that the field "AllCustodian"

18     will be populated showing all custodians who had a copy of the same Document which is not

19     being produced because of de-duplication.

20     De-duplication shall not break apart families and shall be performed at a family

21     level. A Document and all other Documents in its attachment range, emails with attachments and

22     files with extracted embedded OLE Documents all constitute family groups.  If any member of a

23     family group is produced, all members of that group must be also be produced or else logged and

24     no such member shall be withheld from production as a duplicate. The Producing Party agrees

25     that the presence of a custodian's name contained in the "AllCustodian" field in the metadata for

26     a particular Document is evidence that the custodian possessed that Document in his/her custodial

27     file.

28     **F.**    **Load Files:**

- 8 -

1    The data load file should be in standard Concordance format (.DAT). The .DAT file shall

2    contain a relative path to the corresponding native file.

3    Concordance Data Load Files:

4    The data load file should use standard Concordance delimiters:

5        • Column - ¶ (ASCII 182);

6        • Quote - þ (ASCII 254);

7        • Newline - ® (ASCII 174).

8        • The first line of the .DAT file should contain the field names arranged in

9            the same order as the data is arranged in subsequent lines.

10       • All date fields should be produced in mm/dd/yyyy format, if possible.

11           Date fields may be combined date/time fields

12       • All produced attachments should sequentially follow the parent

13           Document/email.

14   Sample Concordance .DAT Load File:

15   þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative Pathþ¶þExtracted Textþ

16   þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\

17   001\ABC000001.t

18   tþþABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\AB

19   C000002.txtþ

20   The image load file must be in standard Option (.OPT) format and must reference each

21   TIFF file in the corresponding production, and the total number of TIFF files referenced in the

22   load file must match the total number of image files in the production. The total number of

23   Documents referenced in a production's data load file should match the total number of

24   designated document breaks in the corresponding image load file for that production. In any

25   deliverable volume, Documents should be organized in such a way that each folder in the volume

26   contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

27       • Every image in the delivery volume should be cross-referenced in the

28           image load file.

2902810.1

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

OCR/Extracted Text Files:

- OCR or Extracted Text files shall be provided in a separate directory containing Document-level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file:

PROD001\TEXT\001\ABC00015.txt

2902810.1

**APPENDIX 2: ESI METADATA AND CODING FIELDS**

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the Producing Party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the Receiving Party prior to processing the subject ESI for production.

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de- duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the Party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |

---

[1] This field may be excluded if the Producing Party determines it includes information protected by any applicable privilege or immunity.

| Field Name | Field Description |
|---|---|
| NativeFileLink | Relative path for Documents provided in Native Format only. **The linked file must be named per the BegBates value. |
| SourceParty | Name of entity or Party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| Parent Date/Sort Date | The date associated with a family's parent record, which is assigned as follows:<br><br>Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Date Last Modified**. Email attachments populated from the date above.<br><br>Outlook Appointments populated with 1st occurrence of **Start Date** or **Date Last Modified**.<br><br>Loose Edocs populated with 1st occurrence of **Date Last Modified** or **Date Created**. |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent  (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |

2902810.1

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

| Field Name | Field Description |
|---|---|
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| Date Last Printed | Date the Document was last printed. |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the Document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the Document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Redaction Reason | The reason for the redaction. If more than one reason, separate by semi-colons. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" applicable.  Otherwise, blank. |

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY