**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

**Susman Godfrey L.L.P.**
A REGISTERED LIMITED LIABILITY PARTNERSHIP



May 15, 2024

**VIA ECF**

Hon. Sidney H. Stein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

      RE:    *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.) and *Alter v. OpenAI Inc.*, 23-cv-10211 (S.D.N.Y.): Request for Biweekly Status Conferences

Dear Judge Stein:

      Pursuant to Rule 2(G) of Your Honor's Individual Practices, Plaintiffs seek a conference to address the status of discovery and measures to ensure that the parties can complete discovery in the expedited timetable to which they agreed and that this Court ordered.[1] Back in January of this year, OpenAI and Microsoft assured this Court that they were "moving expeditiously" to address the "discovery undertaking" for this case, and that "documents will be produced on a rolling basis" through the substantial completion deadline. *Authors Guild* Dkt. 64 at 4.[2] The opposite has occurred. To date, OpenAI has produced only **46 documents** and Microsoft has produced **0** documents.[3] Of the 46 documents produced, nearly all of them (78%) are documents that can be downloaded from the internet, like blogposts from OpenAI's website (*e.g.*, "How do I use ChatGPT . . ."), certificates of incorporation, or terms of use. *See* Ex. A (sample of documents produced).

      Despite Plaintiffs' efforts to comply with the case schedule, Defendants have resisted early depositions, refused to answer RFAs (Dkt. No. 78), refused to exchange (and delayed the exchange of) ESI information (Dkt. No. 138; *infra* pp.2-2 n.5), and only agreed to the Protective Order—the first draft of which Plaintiffs sent in December 2023—yesterday (Dkt. 146).

      With just four months remaining before the discovery cutoff, and less than a month before the June 14, 2024 substantial completion deadline, the Court's intervention is necessary to hold all parties accountable to the current schedule. To that end, Plaintiffs propose the following:

---

[1] Defendants agree with the need for a status conference, but disagree with the other relief Plaintiffs propose.

[2] All references to docket numbers are to the *Authors Guild* Action.

[3] Microsoft has refused to produce documents until entry of a protective order, and has assured Plaintiffs that it will make its first production this week.

May 15, 2024
Page 2

- A case management conference before Your Honor to address the status of discovery and measures proposed herein.

- Bi-weekly discovery conferences[4] to address the status of discovery and any discovery disputes among the parties.

- Bi-weekly status reports filed with the Court, in advance of any discovery conferences, identifying all issues that are the subject of the parties' meet and confer efforts and the status of those efforts.

These are tried and true measures to hold parties accountable in discovery and ensure that case deadlines are met. Courts regularly set recurring conferences where delays threaten the trial schedule. *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 105 n.3 (S.D.N.Y. 2018) (describing discovery process where magistrate judge "held regular, monthly telephone conferences with the parties," where, "[p]rior to each conference, the parties would submit a Joint Letter regarding any discovery disputes to be discussed during the conference."); *United States v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003, 2019 WL 1915795, at *1 (D. Minn. Apr. 30, 2019); *Amador v. Bully's Sports Bar & Grill*, No. 315CV0022HDMVPC, 2017 WL 627214, at *2 (D. Nev. Feb. 15, 2017) ("this court held regular case management conferences to oversee discovery to insure that the parties would complete discovery by the December 16, 2016 deadline").

Here, bi-weekly conferences and recurring status reports will accelerate the pace of discovery. From Plaintiffs' perspective, much of Defendants' delay can be attributed to meritless assertions during the meet-and-confer process that Defendants would not advance under the Court's direct supervision. *See, e.g.,* Ann. Manual Complex Lit. § 11.424 (4th ed.) ("The availability of a speedy resolution process, particularly during the course of a deposition, tends to deter unreasonable and obstructive conduct."). Two recent examples confirm this:

1. ***Microsoft's About-face on ESI:*** Microsoft categorically refused to negotiate with Plaintiffs over search terms and custodians, claiming that such information was attorney work product. Dkt. 138-4 (describing search terms and custodians as "work product information" that a party "is not otherwise required to disclose."). As explained in Plaintiffs' letter-motion requesting entry of an ESI protocol, this work product assertion was baseless, as courts routinely require the exchange of search terms and custodians. *See* Dkt. 138 at 2. Indeed, Microsoft abandoned the argument entirely in response to letter-motion. Dkt. 140 at 2-3. Nevertheless, Microsoft's initial position effectively delayed search terms negotiations for months, and, even now, neither Microsoft nor OpenAI have disclosed search terms or custodians.[5]

---

[4] Plaintiffs are open to bi-weekly conferences before either Your Honor, a Magistrate Judge, or an appointed special master.

[5] OpenAI's approach to search terms is an independent example of unreasonable delay. OpenAI previously promised that it "***will provide*** proposed search terms and custodians" by April 29, 2024. Ex. B (agreeing on April 17 to provide

May 15, 2024
Page 3

    2. ***OpenAI's Refusal to Disclose Basic Information on Books1 and Books1:*** On March 22, 2024, OpenAI disclosed in a letter that, in 2022, it deleted two major datasets used to train ChatGPT called "books1" and "books2." Dkt. 143-4 at 3. OpenAI refused to disclose the names of the two former OpenAI employees who created the dataset. After three weeks of unproductive efforts to meet and confer, Plaintiffs moved to compel. Dkt. 106, 143. Within two days of Plaintiffs' filing, OpenAI disclosed the researchers' names.[6]

These are examples of unsupportable positions in the meet and confer process that Defendants abandoned only when Plaintiffs sought judicial intervention. While it is not unusual for pre-filing letters to facilitate a recalcitrant party's cooperation in discovery, they should not be the only way to advance the ball in discovery.

    Defendants likely will argue that any delays are a consequence of complications specific or even unique to this action, for example, the need to collect for inspection large volumes of training data. Or, perhaps, Defendants will assert, as they have in recent meet and confer emails, that Plaintiffs have unnecessarily delayed the discovery process. (Plaintiffs dispute this; they have, to date, produced 440 documents, nearly 10 times the number of documents that Defendants have.) Whatever the case, and whoever shoulders blame, these positions only underscore the benefits of granting Plaintiffs' requested relief because it will ensure *all* parties are held accountable.

    This Court has ordered an expedited schedule, and Plaintiffs submit that the Court should hold the parties to that schedule without depriving Plaintiffs—or any party—of the discovery to which they are entitled. Plaintiffs' therefore respectfully request that the Court hold a case management conference to address the status of discovery and order recurring, bi-weekly discovery conferences and reports.

    Finally, Plaintiffs certify that they met and conferred with Defendants prior to filing this request. Defendants agree there should be a status conference, and would propose to address overall case management, including deposition coordination. Microsoft agrees to the appointment of a Magistrate Judge to handle discovery matters, but does not support recurring conferences or the appointment of a special master.

---

ESI information by the "next week"). April 29 came, went, and Plaintiffs followed up several times. Today, OpenAI changed course: "[W]e don't believe we firmly committed to providing search terms . . . by April 29," refusing to exchange search terms until there is a "global exchange of search terms and custodians" among all parties (presumably including Microsoft). Ex. C.

[6] OpenAI has claimed, incorrectly, that it agreed to disclose the former employees' names before Plaintiffs moved to compel. Dkt. 145 at 3. Not so. On April 3, more than a week after Plaintiffs first requested their disclosure, Plaintiffs asked for a response by April 7, noting that in the absence of any response, Plaintiffs would move to compel on the issue. Ex. D. OpenAI never responded to that email. In a separate email thread related to OpenAI's interrogatory responses, OpenAI on April 4 said: "[w]e . . . anticipate that we will provide a supplement to at least part of the interrogatories within the next several weeks." Ex. E. OpenAI claims that Plaintiffs should have read this cryptic statement—with no commitment to disclose the relevant former employees' names, or even a commitment to amend its interrogatory responses at all—as resolving the dispute. OpenAI did not amend its responses for another three weeks.

May 15, 2024
Page 4

Sincerely,

| LIEFF CABRASER HEIMANN & BERNSTEINS LLP | SUSMAN GODFREY LLP | COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP |
|---|---|---|
| */s/Rachel Geman* <br> Rachel Geman | */s/Rohit Nath* <br> Rohit Nath | */s/Scott Sholder* <br> Scott J. Sholder |