**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUTHORS GUILD, et al., | No. 23-cv-08292-SHS |
| Plaintiffs, | No. 23-cv-10211-SHS |
| | No. 24-cv-00084-SHS |
| v. | |
| | **OPENAI DEFENDANTS'** |
| OPENAI INC., et al., | **OPPOSITION TO MOTION** |
| | **FOR VOLUNTARY** |
| Defendants. | **DISMISSAL OF PLAINTIFF** |
| | **MAYA SHANBHAG LANG** |
| JONATHAN ALTER, et al., | |
| Plaintiffs, | |
| v. | |
| OPENAI INC., et al., | |
| Defendants. | |
| NICHOLAS A. BASBANES, et al., | |
| Plaintiffs, | |
| v. | |
| MICROSOFT CORPORATION, et al., | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   BACKGROUND .........................................................................................................2

III.  ARGUMENT ...............................................................................................................6

      A.    Unconditional Dismissal Is Inappropriate If Prejudicial .........................................7

      B.    OpenAI Will Be Prejudiced By Ms. Lang's Unconditional Withdrawal ...............9

      C.    Plaintiffs' Arguments Are Unavailing ...................................................................12

IV.   CONCLUSION...........................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alliance for Global Justice v. District of Columbia*,
  No. 01-cv-0811, 2005 WL 469593 (D.D.C. Feb. 7, 2005) ........................................ 8, 9, 10, 14

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994) ........................................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................... 9

*Click v. Gen. Motors LLC*,
  2:18-cv-455, 2021 WL 3634695 (S.D. Tex. Mar. 23, 2021)........................................... 8

*Corbett v. Pharmacare U.S., Inc.*,
  No. 21-cv-137, 2022 WL 283584 (S.D. Cal. July 20, 2022)....................................... 13

*Cross Westchester Dev. Corp. v. Chiulli*,
  887 F.2d 431 (2d Cir. 1989) ................................................................................... 7, 12

*D'Alto v. Dahon California, Inc.*
  100 F.3d 281 (2d Cir. 1996) ...................................................................................... 13

*Egan v. Safeway Constr. Enterprises, LLC*,
  No. 19-cv-02052, 2021 WL 5746350 (E.D.N.Y. Oct. 14, 2021) ............................... 11

*Gap, Inc. v. Stone Int'l Trading, Inc.*,
  169 F.R.D. 584 (S.D.N.Y. 1997)................................................................................. 12

*Gonzalez v. United States*,
  No. 17-cv-1093, 2019 WL 3408886 (S.D.N.Y. July 29, 2019) .................................. 8

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) .......................................................................................................... 9

*In re Actos End-Payor Antitrust Litig.*,
  No. 13-cv-9244, 2023 WL 3868511 (S.D.N.Y. June 7, 2023).................................. 8, 9, 10, 13

*In re Avon Anti-Aging Skincare Creams and Prods. Mkt'ing and Sales Pracs. Litig.*,
  No. 13-cv-0150, 2014 WL 12776747 (S.D.N.Y. Apr. 22, 2014)................................. 8

*In re Currency Conversion Fee Antitrust Litigation*,
  No. M 21-95, 2004 WL 2453927,
  (S.D.N.Y. Nov. 4, 2004)............................................................................................ 13

*In re Digital Music Antitrust Litig.*,
  No. 06-cv-1780, 2015 WL 13678846 (S.D.N.Y. Mar. 2, 2015) .................................... 8, 12, 13

*In re Wellbutrin XL*,
  268 F.R.D. 539 (E.D. Pa. 2010) ................................................................................... 8

*Muhammad v. Jenkins*,
  No. 12-cv-8525, 2013 WL 5225573 (S.D.N.Y. Sept. 13, 2013) ............................................ 11

*Nayfa v. Papa's Leatherbarn, LLC*,
  No. 10-cv-80, 2011 WL 13113321 (W.D. Okla. Jan. 10, 2011) ............................................. 11

*Patterson v. Cruz*,
  No. 15-cv-9405, 2016 WL 6583702 (S.D.N.Y. Nov. 3, 2016) ............................................ 11

*Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*,
  901 F.3d 105 (2d Cir. 2018) .................................................................................... 12

*Roberts v. Electrolux Home Prods., Inc.*,
  No. 12-cv-1644, 2013 WL 4239050 (C.D. Cal. Aug. 14, 2013) ............................................ 10

*Sherman v. Yahoo, Inc.*,
  No. 13-cv-0041, 2015 WL 473270 (N.D. Cal. Feb. 5, 2015) ............................................. 8

## RULES

Fed. R. Civ. P. 26 ................................................................................................. 6

Fed. R. Civ. P. 33 ................................................................................................. 6

Fed. R. Civ. P. 41 ................................................................................................ 12

Fed. R. Civ. P. 41(a)(2) ...................................................................................... 7, 11

Fed. R. Civ. P. 45 ................................................................................................. 6

## TREATISE

Wright & Miller, 9 Federal Practice & Procedure § 2366 ........................................... 7

## OTHER AUTHORITIES

*Announcing W. Ralph Eubanks as Interim Authors Guild President*, The Authors
  Guild (May 7, 2024) ........................................................................................... 4

*Authors Guild Members Elect Maya Shanbhag Lang President*, The Authors Guild
  (Apr. 5, 2023) ................................................................................................ 2, 5

*Authors Urge AI Companies to Pay Them for Using Their Work*, CNN (July 26, 2023) ............. 3

Emell Adolphus, *Authors Guild Meets with Legislators Over Generative AI Concerns*, Publishers Weekly (Apr. 5, 2023) ............................................................................. 2

Maya Lang, *Letter from Authors Guild President Maya Shanbhag Lang About Class-Action Suit Against OpenAI*, The Authors Guild (Sept. 20, 2023) ......................................... 2, 3

*More than 15,000 Authors Sign Authors Guild Letter Calling on AI Industry Leaders to Protect Writers*, The Authors Guild (Jul. 18, 2023) ............................................... 3

*Stop using our books to train AI without consent, say authors*, BBC Newshour (Jul. 21, 2023) ............................................................................................................. 3

## I.    INTRODUCTION

Named plaintiff Maya Shanbhag Lang—who now seeks to withdraw unconditionally from this lawsuit—served as the President of the Authors Guild during the five months that preceded this litigation and continued in that role for over seven months after its filing.  During that time, Ms. Lang served as the Guild's primary spokesperson and representative in its ongoing campaign against OpenAI.  Ms. Lang is thus uniquely situated among the named plaintiffs in this case.  And based on information revealed to date, Ms. Lang appears to have operated during her tenure using a personal email address, *see infra* 4—which means she is uniquely capable of providing evidence directly relevant to OpenAI's defense that, given the Authors Guild's position with respect to its custodians, no other party will provide.

Shortly before the court-ordered substantial completion deadline, Ms. Lang announced, without any explanation at the time, the resignation of her position at the Authors Guild, after which Plaintiffs' counsel stated their intention to withdraw her from this case.  OpenAI offered to consent to the withdrawal on the condition that Ms. Lang comply with pending discovery requests, some of which had then been pending for over six months.  Plaintiffs' counsel refused and stated, for the first time, that Ms. Lang had decided to withdraw due to family health issues.  When Plaintiffs eventually filed the instant motion, they did not include a declaration from Ms. Lang.

Plaintiffs' counsel has stated that, if Ms. Lang is permitted to unconditionally withdraw from this case, they will raise a litany of arguments in opposition to third-party discovery of her files.  Indeed, the apparent reason Plaintiffs refused to agree to OpenAI's proposed conditions and brought this motion is to avail themselves of those arguments—none of which would be available if Ms. Lang remains a party or is conditionally dismissed.  That would make it more difficult for OpenAI to obtain the evidence it needs to defend itself against the very organization Ms. Lang led. This is precisely the kind of prejudice that bars unconditional dismissal.

Ms. Lang chose to be a key player in both this litigation and the Authors Guild's campaign against OpenAI generally. And while OpenAI does not object to her decision to withdraw from this case, and has repeatedly offered to make accommodations for her personal circumstances, she should not be permitted to do so without complying with the basic discovery obligations that attached as soon as she chose to initiate and participate in this a lawsuit—*i.e.*, the obligation to produce discovery in response to requests OpenAI propounded over 8 months ago. The Court should dismiss Ms. Lang's claims on the condition that she comply with the discovery requests OpenAI served before May 28, 2024—the day Ms. Lang says she informed OpenAI of her intent to withdraw.

## II.    BACKGROUND

Maya Shanbhag Lang "t[ook] the helm as president of the Authors Guild" in April 2023, almost five months prior to the filing of this action.[1] At the time, the Authors Guild CEO enthusiastically commented that "the Guild is poised to do great work under [Ms. Lang's] leadership." *Id.* At the time, the Authors Guild was already engaged in a broad campaign against generative AI, which (in Ms. Lang's own words) involved "m[eeting] with tech executives, Congressional representatives, data scientists, and partner organizations."[2] Those efforts included outreach to high-ranking House members, senators, and the U.S. Copyright Office on issues relating to AI and copyright.[3]

---

[1] *See Authors Guild Members Elect Maya Shanbhag Lang President*, The Authors Guild (Apr. 5, 2023), https://authorsguild.org/news/ag-members-elect-maya-shanbhag-lang-president/.

[2] *See* Maya Lang, *Letter from Authors Guild President Maya Shanbhag Lang About Class-Action Suit Against OpenAI*, The Authors Guild (Sept. 20, 2023), https://authorsguild.org/news/letter-from-ag-president-maya-lang-about-openai-suit/.

[3] *See* Emell Adolphus, *Authors Guild Meets with Legislators Over Generative AI Concerns*, Publishers Weekly (Apr. 5, 2023), https://www.publishersweekly.com/pw/by-topic/industry-news/licensing/article/91920-authors-guild-meets-with-legislators-over-generative-ai-concerns.html;

As the Authors Guild's President, Ms. Lang appears to have had a leadership role in that coordinated effort. When the Authors Guild orchestrated an "open letter to the CEOs of prominent AI companies, including OpenAI," Ms. Lang spoke on the Guild's behalf in its subsequent July 18, 2023 press release.[4] The same month, Ms. Lang spoke on behalf of the Guild on a BBC *News Hour* podcast, in which she asserted, falsely, that the outputs of LLMs like ChatGPT are not "unique" but are instead just "regurgitation[s]" of copyrighted content.[5] She also appeared on CNN "represent[ing] the Authors Guild" and referred to AI as a "tremendous threat" to authors.[6]

After filing this lawsuit on September 20, 2023, Ms. Lang—in her capacity as "President, The Authors Guild"—published a letter stating that the Guild "has organized a class-action lawsuit against OpenAI" and promising to keep the Guild's members "updated on the case."[7] Indeed, Ms. Lang was so intimately invested in the Authors Guild's efforts that she made the decision to join the Guild as a co-plaintiff in her individual capacity. *See* Dkt. 1 at 1 (listing both "Authors Guild" and "Maya Shanbhag Lang" as "Plaintiffs").

Once the parties commenced discovery, however, Plaintiffs began resisting OpenAI's requests for discovery into Ms. Lang's activity. OpenAI served its first set of requests for production on Ms. Lang on November 13, 2023. Decl. of Allyson R. Bennett, ¶ 3. OpenAI

---

USCO Dkt. No. 2023-6, NOI Resp. Oct. 30, 2023, *available at* https://authorsguild.org/app/uploads/2023/10/Authors-Guild-Comments-AI-and-Copyright-October-30-2023.pdf.

[4] *See More than 15,000 Authors Sign Authors Guild Letter Calling on AI Industry Leaders to Protect Writers*, The Authors Guild (Jul. 18, 2023), https://authorsguild.org/news/thousands-sign-authors-guild-letter-calling-on-ai-industry-leaders-to-protect-writers/ (quoting Maya Lang).

[5] *Stop using our books to train AI without consent, say authors*, BBC Newshour (Jul. 21, 2023), https://www.bbc.co.uk/programmes/p0g24b4d.

[6] *Authors Urge AI Companies to Pay Them for Using Their Work*, CNN (July 26, 2023), https://www.cnn.com/videos/business/2023/07/26/exp-authors-guild-ai-intv-fst-072609aseg3-cnni-business.cnn.

[7] *See supra* note 2.

continued to serve discovery on Ms. Lang thereafter—serving a second set of requests for production on March 22, 2024, a third set on April 18, 2024, and a fourth set on May 14, 2024—just over two weeks before Ms. Lang informed OpenAI of her intent to withdraw. *Id* ¶¶ 4–6. OpenAI also served interrogatories on Ms. Lang on March 22, 2024 and May 14, 2024. *Id.* ¶¶ 4, 6.

Although Ms. Lang initially agreed to "search for and produce" documents in response to at least some of OpenAI's requests, Ms. Lang did not produce a single document by the June 14, 2024 substantial completion deadline. *See id.* ¶ 10. Nor has she served any verified interrogatory responses to date. *See id.* ¶ 11. Authors Guild—*i.e.*, the named plaintiff that claims to have organized this litigation—has also resisted discovery requests related to Ms. Lang, having taken the position that it is not obligated to produce large swaths of Authors Guild-related discovery, including documents relating to Ms. Lang's tenure as President. *See* Dkt. 164 at 1–2. And Authors Guild did not include Ms. Lang—whom Authors Guild says did not have an Authors Guild email address, Bennett Decl. Ex. E at 1—as one of its document custodians. *Id.* ¶ 14.

On May 7, 2024—roughly six weeks before the substantial completion deadline—the Authors Guild announced that Ms. Lang "resigned" from her post without any explanation of the circumstances of that resignation.[8] Three weeks later—and just over two weeks after OpenAI served its fourth set of requests for production—Plaintiffs' counsel informed counsel for OpenAI that Ms. Lang intended to withdraw from the lawsuit, again without any explanation. Bennett Decl. ¶ 7. OpenAI said it would not oppose dismissal so long as it did not affect OpenAI's ability to obtain discovery from her. *See* Dkt. 176-1 at 2. Plaintiffs' counsel refused and then asserted,

---

[8] *See Announcing W. Ralph Eubanks as Interim Authors Guild President*, The Authors Guild (May 7, 2024), https://authorsguild.org/news/announcing-w-ralph-eubanks-as-interim-president/.

for the first time, that Ms. Lang had decided to withdraw due to a family medical issue that required her attention.  Dkt. 176-2 at 2.

Plaintiffs' counsel also asserted that Ms. Lang's withdrawal would effectively shield from discovery from Ms. Lang any documents arising from her tenure at the Guild.  Dkt. 176-6 at 3–4.  According to Plaintiffs' counsel, OpenAI would have no choice but to seek through the rules of third-party discovery the documents that Ms. Lang would have otherwise been required to produce.  *Id.* at 2.  At the same time, however, Plaintiffs' counsel asserted that it would strenuously oppose any such attempts, either because Ms. Lang's withdrawal would render her an "absent class member," *see* Bennett Decl. Ex. D, or because she was "not part of AG staff," Dkt. 176-4 at 2.  Plaintiffs' counsel also attempted to minimize Ms. Lang's "leadership" position at the Guild, *see supra* 1 n.1, characterizing it as a "volunteer/non-staff role."  Dkt. 176-4 at 2.  Despite the Authors Guild's statements that Ms. Lang had "taken the helm" of the Guild's activities, *see supra* 1 n.1, Plaintiffs—including Authors Guild—now claim that Ms. Lang did not "set strategy for the [Authors Guild]," Dkt. 176-8 at 2.  Plaintiffs' counsel also refused to respond to discovery served on Ms. Lang in July 2024 on the basis that Ms. Lang "is withdrawing."  Dkt. 176-10 at 2.

Although Ms. Lang informed OpenAI in late May 2024 of her intention to voluntarily dismiss her claims, she waited almost two months before actually seeking to do so.  That is so despite Plaintiffs' counsel's representation that they would move for Ms. Lang's dismissal by early the week of July 1.  On June 25, 2024, Plaintiffs' counsel asked for OpenAI's final position on Ms. Lang's withdrawal because Plaintiffs would be moving for Ms. Lang's withdrawal early the following week, if not "sooner."  Dkt. 176-5 at 3.  OpenAI responded the next day, explaining that it was more than willing to work with Ms. Lang on the timing of her responses to the outstanding discovery requests to accommodate her personal circumstances, but that such compliance was

necessary.  *Id.* at 2.  OpenAI further stated that it would consider the arguments in Ms. Lang's motion, once filed, and respond to them accordingly.  *See id.*  Plaintiffs did not file the motion the next week, as stated, but instead continued to attempt to get OpenAI to change its position—waiting almost a month before bringing the issue to the Court.  *See* Dkt. 174.  In the meantime, all Plaintiffs—including Ms. Lang—continued to serve discovery requests on OpenAI.  Bennett Decl. ¶ 8, Exs. B & C.  And OpenAI has continued to produce documents in response to discovery requests served on Ms. Lang's behalf—totaling over 33,000 documents to date.  *Id.* ¶¶ 9, 12.

As of this date, Ms. Lang remains a plaintiff in this case.  Notwithstanding the court-ordered substantial completion deadline of June 14, *see* Dkt. 65 at 1, Plaintiffs have produced just one document with Ms. Lang listed as the custodian —and did so on August 5, 2024.  Bennett Decl. ¶ 10.

## III.    ARGUMENT

As OpenAI stated in correspondence with Plaintiffs' counsel, it has no objection to Ms. Lang's withdrawal from this case.  The parties' disagreement lies in the conditions of that withdrawal.  OpenAI's position is that Ms. Lang must comply with discovery requests that were served before she informed OpenAI of her intent to withdraw, many of which have been pending for months.  Plaintiffs' position is that the Court should overlook Ms. Lang's key role in this litigation and excuse her from any discovery obligations whatsoever.

Plaintiffs' position is an attempt to shield from discovery what OpenAI can only assume—given Ms. Lang's key role in relevant events—are highly probative documents.  At present, Ms. Lang is obligated to produce that discovery by Rules 26 and 34.  Through their motion, Plaintiffs seek to force OpenAI to start from the beginning and seek the discovery to which it is entitled via the more onerous requirements of Rule 45.  That will be burdensome, costly, and wasteful: Plaintiffs have made clear that, if the Court permits Ms. Lang to withdraw unconditionally, they

will raise a flurry of new arguments to resist production, *see, e.g.*, Dkt. 176-10 at 2–3, 6—none of which would be available to Ms. Lang as a party to this lawsuit.

The parties are more than halfway through fact discovery. And before deciding to withdraw, Ms. Lang agreed to fulfill her obligations with respect to many of OpenAI's requests. *See, e.g.*, Bennett Decl. Ex. A. Ms. Lang should not now be permitted to backtrack on that commitment, avoid the production of responsive, relevant documents at present, and force OpenAI to bear the burden of seeking that very same discovery again through more costly and time-consuming means.

### A.    Unconditional Dismissal Is Inappropriate If Prejudicial

A court may dismiss a plaintiff under Federal Rule of Civil Procedure 41(a)(2) pursuant to a "court order" under any "terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Where, as here, a plaintiff seeks dismissal under Rule 41(a)(2), the court may "specify on what conditions it will allow dismissal," including by "grant[ing] a dismissal on condition that the plaintiff produce documents." Wright & Miller, 9 Federal Practice & Procedure § 2366. "The purpose of authorizing terms and conditions on a voluntary dismissal is to protect the defendant from prejudice." *Cross Westchester Dev. Corp. v. Chiulli*, 887 F.2d 431, 432 (2d Cir. 1989). [9]

---

[9] The Second Circuit has also identified the following factors as relevant to whether a plaintiff should be permitted to voluntarily dismiss her claims: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *See In re Actos End-Payor Antitrust Litig.*, No. 13-cv-9244, 2023 WL 3868511, at *1 (S.D.N.Y. June 7, 2023) (citation omitted); *see id.* (noting two lines of authority in the Second Circuit on voluntary dismissal). This Court need not decide whether these factors apply here, however, because "an unconditional dismissal . . . [is] unwarranted" given the prejudice OpenAI will otherwise suffer. *Id.* Plaintiffs nod to these factors, but do not meaningfully engage with them, Dkt. 174 at 4 n.2, no doubt because each counsels against unconditional dismissal: (1) Plaintiffs were not diligent in filing this motion, *see supra* 5; (2) this motion appears to be part of a concerted effort to stonewall OpenAI's good-faith efforts to obtain discovery from and related

To demonstrate prejudice, OpenAI need "only [show] that some legal interest, claim, or argument would be 'impaired' by an unconditional dismissal." *In re Actos End-Payor Antitrust Litig.*, No. 13-cv-9244, 2023 WL 3868511, at *2 (S.D.N.Y. June 7, 2023) . "[T]he inability to conduct sufficient discovery for a defense can amount to legal prejudice." *Sherman v. Yahoo, Inc.*, No. 13-cv-0041, 2015 WL 473270, at *7 (N.D. Cal. Feb. 5, 2015*); see also Nayfa v. Papa's Leatherbarn, LLC*, No. 10-cv-80, 2011 WL 13113321, at *2 (W.D. Okla. Jan. 10, 2011) (noting concern for "prejudice" arising from plaintiff "prevent[ing] a defendant from obtaining relevant information" through withdrawal). To be sure, the mere fact that a defendant will have fewer opponents to depose is not enough.[10] But courts do find conditions appropriate where, *inter alia*, there is reason to believe that an unconditional dismissal would materially impact the defendant's ability to defend itself against the *remaining* claims. *See, e.g.*, *Actos*, 2023 WL 3868511, at *2 (denying unconditional withdrawal where it would deprive defendants of discovery that could "shed light on the commonality—or lack thereof—of the claims being litigated"); *In re Digital Music Antitrust Litig.*, No. 06-cv-1780, 2015 WL 13678846, at *2, 4 (S.D.N.Y. Mar. 2, 2015) (same).

Unconditional dismissal is particularly inappropriate when it would cause "the loss of

---

to Ms. Lang and Authors Guild, *see supra* 5; (3) Plaintiffs filed this motion nine months into discovery; (4) plaintiffs are seeking a dismissal without prejudice, which could allow for relitigation, and (5) plaintiffs did not provide any evidentiary support for their claimed basis for withdrawal, *see infra* 11. Any argument by Plaintiffs to the contrary has been waived. *See Gonzalez v. United States*, No. 17-cv-1093, 2019 WL 3408886, at *2, n.2 (S.D.N.Y. July 29, 2019) ("Arguments raised for the first time in reply briefs are waived.").

[10] *In re Avon Anti-Aging Skincare Creams and Prods. Mkt'ing and Sales Pracs. Litig.*, No. 13-cv-0150, 2014 WL 12776747, at *2 (S.D.N.Y. Apr. 22, 2014) (no conditions on dismissal where "[t]he most extreme possible prejudice to Avon is that Avon will have the benefit of three plaintiffs' depositions rather than four"); *see also Click v. Gen. Motors LLC*, 2:18-cv-455, 2021 WL 3634695, at *3, *5 (S.D. Tex. Mar. 23, 2021) (conditions not warranted where defendants "failed to identify any [] key fact issues in its discovery requests as being relevant" and "supplied no reason that [plaintiff] should be subjected to this additional discovery").

relevant information" "to which [the defendants] are entitled." *Alliance for Global Justice v. District of Columbia*, No. 01-cv-0811, 2005 WL 469593, at *2 (D.D.C. Feb. 7, 2005); *see also In re Wellbutrin XL*, 268 F.R.D. 539, 544 (E.D. Pa. 2010) (denying unconditional withdrawal because the discovery sought "go[es] to the heart of the defendants' anticipated defense" and because "defendants cannot obtain equivalent discovery from" the remaining parties); *Actos*, 2023 WL 3868511, at *2 (unconditional withdrawal inappropriate where it would deprive defendants of discovery that could "shed light on . . . the claims being litigated"). As one court explained: "It is simply unfair to allow [a] plaintiff[] to walk away from [its discovery] obligations when it appears that they have information pertinent to the case that they initiated and that defendants must continue to defend." *Global Justice*, 2005 WL 469593, at *3.

**B.      OpenAI Will Be Prejudiced By Ms. Lang's Unconditional Withdrawal**

OpenAI will be prejudiced by Ms. Lang's unconditional withdrawal because discovery from Ms. Lang is uniquely relevant to OpenAI's defenses. As noted above, Ms. Lang was at the "helm" of the Authors Guild—which "organized" this litigation—both before and after this action was filed, and during the Guild's ongoing campaign against OpenAI in the public sphere, in Congress, and before the Copyright Office. *See supra* 2.

It is virtually certain that Ms. Lang is in possession of documents relating to any number of relevant issues, including (1) her attempts to recruit plaintiffs for this case (including the extent to which those efforts failed);[11] (2) Guild members' reliance on OpenAI's services to create new creative works;[12] and (3) the Guild's attempts to manufacture the illusion of a "ready market or

---

[11] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("conflicts of interest between named parties and the class they seek to represent" can preclude certification).

[12] *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35 (2021) ("[W]e must take into account the public benefits the [alleged infringement] will likely produce.").

means for pay for the use" of copyrighted texts to train a large language model.[13]  And it is likely that Ms. Lang is uniquely positioned to provide that information.  *See supra* 4 (noting that Ms. Lang did not have a personal Authors Guild email address).  That alone is sufficient to establish prejudice.  *See Actos*, 2023 WL 3868511, at *2 (defendants "need not establish that the requested discovery would be necessary to prove their claims—only that some legal interest, claim, or argument would be 'impaired' by an unconditioned dismissal").

Allowing Ms. Lang to withdraw from the suit she helped organize without providing the discovery she is obligated to provide will leave OpenAI no choice but to seek the same material from her via third-party discovery.  But the possibility of obtaining the material through those burdensome means does not alleviate the prejudice OpenAI will suffer from an unconditioned dismissal.  To the contrary, courts have repeatedly held that it would be "unfair to place [the] burden upon defendants" to "seek . . . via other means" material that a current case party could provide.  *Global Justice*, 2005 WL 469593, at *3; *see id.* (denying conditional dismissal); *see also Actos,* 2023 WL 3868511, at *2 (possibility of "obtaining discovery from absent class member" does not justify withdrawal).  In any case, Plaintiffs have made abundantly clear their intention to strenuously oppose any such third-party discovery—which means that any attempt by OpenAI to obtain that material will lead to costly and burdensome motion practice, waste of judicial resources, and delays that are intolerable in light of this case's quickly approaching fact discovery deadline.  *See* Dkt. 65 at 1.  That, in fact, appears to be the entire purpose of Plaintiffs' strategy here: to place as many roadblocks as possible between OpenAI and the relevant evidence Ms. Lang

---

[13] *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 929–30 (2d Cir. 1994) ("[C]ourts have recognized limits on the concept of 'potential licensing revenues' by considering only traditional, reasonable, or likely to be developed markets when examining and assessing a secondary use's 'effect upon the potential market for or value of the copyrighted work.'").

possesses.

It is also notable that, despite the relevance of the "adequacy of the plaintiff's explanation for the need to dismiss," Dkt. 174 at 4 n.2, Plaintiffs provided no evidentiary support for the claimed basis for dismissal here. As one of the cases on which Plaintiffs rely illustrates, plaintiffs seeking to voluntarily dismiss their claims often support their requests with declarations explaining the basis for their desired withdrawal. *See, e.g.*, *Roberts v. Electrolux Home Prods., Inc.*, No. 12-cv-1644, 2013 WL 4239050, at *2 (C.D. Cal. Aug. 14, 2013) (noting that "the declarations submitted by Horton and Roberts demonstrate that their request to withdraw is made in good faith, and also evince compelling reasons to allow withdrawal"); *see also, e.g.*, *Patterson v. Cruz*, No. 15-cv-9405, 2016 WL 6583702, at *1 (S.D.N.Y. Nov. 3, 2016) (detailing and relying on declaration from plaintiff regarding, *inter alia*, car accident that gave rise to dismissal request); *Egan v. Safeway Constr. Enterprises, LLC*, No. 19-cv-02052, 2021 WL 5746350, at *1 (E.D.N.Y. Oct. 14, 2021), *report & rec. adopted sub nom. Egan v. Safeway Constr. Enterprises, Inc.*, No. 19-cv-2052, 2021 WL 5712142 (E.D.N.Y. Dec. 2, 2021) (discussing "declaration signed by [plaintiff seeking to withdraw]" in considering dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2)). Here, Plaintiffs contend that the Court should grant their motion without conditions because "[p]ersonal and family reasons preclude Ms. Lang's ongoing participation," Dkt. 174 at 1, and responding to discovery requests would be "especially" "burdensome" for Ms. Lang, *id*. at 6. But Plaintiffs provide no evidentiary support for those contentions. Not only did Plaintiffs fail to provide a declaration from Ms. Lang herself, they also failed to include *any* factual assertions regarding Ms. Lang's circumstances in the sworn attorney declaration they did include with their motion. *See generally* Dkt. 176.

These failures are even more glaring given that, during the parties' conferrals, Plaintiffs

took issue with what they described as "OpenAI's speculative suspicions about Ms. Lang's reasons for withdrawing," which they said were "misplaced." Dkt. 176-6 at 2. When filing their motion, Plaintiffs had every opportunity to provide evidence to support their contentions regarding Ms. Lang. They instead chose to offer up only attorney argument rather than evidence. *See, e.g.*, *Muhammad v. Jenkins*, No. 12-cv-8525, 2013 WL 5225573, at *12 (S.D.N.Y. Sept. 13, 2013) (observing that "lawyer's argument . . . is not evidence"). Plaintiffs' failure to provide this Court with any evidentiary support for Ms. Lang's asserted need for an unconditional dismissal further counsels against permitting such dismissal.[14]

### C.    Plaintiffs' Arguments Are Unavailing

Plaintiffs misstate both the law and the relevant facts in support of their motion.

First, Plaintiffs repeatedly say that "substantial prejudice" must be shown before a motion to withdraw can be denied. Dkt. 174 at 1, 4. But as Plaintiffs' case demonstrates, courts use the "substantial prejudice" standard to determine whether withdrawal should be permitted at all. *Gap, Inc. v. Stone Int'l Trading, Inc.*, 169 F.R.D. 584, 588 (S.D.N.Y. 1997) (discussing "substantial prejudice" in context of whether to grant dismissal). That, of course, is not the question here: all parties agree that Ms. Lang should be permitted to withdraw. The only question is whether Ms. Lang should fulfill her obligation to respond to the discovery requests that were pending when she informed OpenAI of her intention to withdraw from this case. Dkt. 174 at 1, 4.

Second, Plaintiffs suggest that they are entitled to unconditional dismissal absent a showing that Ms. Lang has engaged in "misconduct" or that this case is "extremely far along." Dkt. 174 at 5. But the cases on which Plaintiffs rely do not say that "misconduct" is required. Rather, because

---

[14] Plaintiffs were fully capable of providing evidentiary support with their moving papers and thus should not be permitted to rectify that failure on reply.

"[t]he purpose of authorizing terms and conditions on a voluntary dismissal is to *protect the defendant*," *Chiulli*, 887 F.2d at 432 (emphasis added), the analysis focuses on whether conditions are necessary to avoid "frustrat[ing]" the *defendant's* ability to mount a defense, *Digital Music*, 2015 WL 13678846, at *4; *see also Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*, 901 F.3d 105, 109 (2d Cir. 2018) (Rule 41 allows dismissal "on terms that will not prejudice the defendant."). Here, as explained above, the discovery OpenAI seeks is directly relevant to Plaintiffs' claims and OpenAI's defenses, *see supra* 9–10, and is thus discovery that OpenAI needs to mount its defense. *See Digital Music*, 2015 WL 13678846, at *4; *but see Actos*, 2023 WL 3868511, at *2 (defendants "need not establish that the requested discovery would be necessary to prove their claims" to establish prejudice). Nor do the cases to which Plaintiffs point support their claim that a case must be "extremely" advanced before conditions are appropriate.[15] But more importantly, this case is many months into discovery: OpenAI served its first discovery requests on November 13, 2023; the parties' substantial completion date for responses to those requests has already passed; and fact discovery is currently scheduled to close in just over a month.[16] *See* Dkt. 65 at 1; *see also Corbett v. Pharmacare U.S., Inc.*, No. 21-cv-137, 2022 WL 283584, at *7 (S.D. Cal. July 20, 2022) (conditioning dismissal on production of documents in response to discovery requests propounded six months prior, "before any intention to dismiss from this case").

Third, Plaintiffs argue that OpenAI can obtain all of its needed discovery from Authors

---

[15] Dkt. 174 at 5 (citing *In re Currency Conversion Antitrust Litig.* and *Dahon*). The cited page of *In re Currency Conversion Fee Antitrust Litigation* does not address the stage of litigation at all. *See* No. M 21-95, 2004 WL 2453927, at *2 (S.D.N.Y. Nov. 4, 2004). And *D'Alto v. Dahon California, Inc.*, addresses a different issue: whether the fact that the defendant would have to "start all over again" in state court is sufficient to constitute legal prejudice. 100 F.3d 281, 283 (2d Cir. 1996). That is obviously irrelevant here.

[16] Although the parties have agreed to stipulate to a three-month extension of fact discovery, that extension does not change the advanced nature of discovery in this case.

Guild custodians.  Dkt. 174 at 8.  But Plaintiffs have also made clear that "there is no Authors Guild email address for Maya Lang and never was," which suggests that Ms. Lang likely possesses materials from her tenure as the Authors Guild's President that the organization itself does not. Bennett Decl. Ex. E.  At no point during the parties' protracted negotiations over this issue have Plaintiffs assured OpenAI that any, let alone all of, Ms. Lang's responsive, relevant documents would be discoverable via requests to the Authors Guild—presumably because Plaintiffs have tried to distance Ms. Lang from the Authors Guild and the Authors Guild has not included Ms. Lang as a custodian.  Bennett Decl. ¶¶ 13–14.  In any case, as OpenAI has explained elsewhere, the Authors Guild is presently resisting any discovery into organizational documents that it *does* possess.  *See* Dkt. 164 at 1.

Fourth, Plaintiffs attempt to downplay Ms. Lang's role in this litigation by analogizing her situation to "untold numbers of plaintiffs before her" who reconsider their decision to participate as named plaintiffs in class action litigation.  Dkt. 174 at 7.  But Ms. Lang is not an ordinary plaintiff—she is the former leader of the Authors Guild, which "organized" this lawsuit, *see supra* 3, and is uniquely positioned to provide information that OpenAI needs to prosecute its defense. Given that unique position, Ms. Lang "surely had to appreciate when [she] began this lawsuit that [she] would have to undertake significant discovery obligations," and cannot simply "walk away from [them]" half-way through discovery.  *Global Justice*, 2005 WL 469593, at *3.

## IV.    CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that this Court deny the motion for unconditional withdrawal and indicate that any dismissal must be conditional on Ms. Lang's compliance with OpenAI's discovery requests.

Dated:  August 12, 2024          Respectfully Submitted,

By:  */s/ Elana Nightingale Dawson*      

**LATHAM & WATKINS LLP**
  Andrew M. Gass (*pro hac vice*)
   *andrew.gass@lw.com*
  Joseph R. Wetzel
   *joseph.wetzel@lw.com*
  505 Montgomery Street, Suite 2000
  San Francisco, CA 94111
  Telephone: 415.391.0600

  Sarang V. Damle
   *sy.damle@lw.com*
  Elana Nightingale Dawson (*pro hac vice*)
   *elana.nightingaledawson@lw.com*
  555 Eleventh Street, NW, Suite 1000
  Washington, D.C. 20004
  Telephone: 202.637.2200

  Allison L. Stillman
   *alli.stillman@lw.com*
  1271 Avenue of the Americas
  New York, NY 10020
  Telephone: 212.751.4864

By:  */s/ Allyson R. Bennett*       

**MORRISON & FOERSTER LLP**
  Joseph C. Gratz (*pro hac vice*)
   *jgratz@mofo.com*
  Vera Ranieri (*pro hac vice*)
   *vranieri@mofo.com*
  Andrew L. Perito (*pro hac vice*)
   *APerito@mofo.com*
  425 Market Street
  San Francisco, CA 94105
  Telephone: 415.268.7000

  Allyson R. Bennett (*pro hac vice*)[*]
   *abennett@mofo.com*
  Rose S. Lee (*pro hac vice*)
   *roselee@mofo.com*

---

[*] All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.

Eric K. Nikolaides
  *enikolaides@mofo.com*
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5200


By:  */s/ Katie Lynn Joyce*

**KEKER, VAN NEST & PETERS LLP**
  Robert A. Van Nest (*pro hac vice*)
    *rvannest@keker.com*
  Paven Malhotra
    *pmalhotra@keker.com*
  Michelle S. Ybarra (*pro hac vice*)
    *mybarra@keker.com*
  Nicholas S. Goldberg (*pro hac vice*)
    *ngoldberg@keker.com*
  Thomas E. Gorman (*pro hac vice*)
    *tgorman@keker.com*
  Katie Lynn Joyce (*pro hac vice*)*
    *kjoyce@keker.com*
  R. James Slaughter (pro hac vice)
    *rslaughter@keker.com*633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415.391.5400


*Attorneys for OpenAI Defendants*

16