KEKER VAN NEST & PETERS   LATHAM & WATKINS LLP   MORRISON FOERSTER

November 18, 2024

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

cc: All Counsel of Record Line (via ECF)

**Re:** *Authors Guild et al. v. OpenAI, Inc., et al., and Alter et al. v. OpenAI Inc., et al.*, Nos. 1:23-cv-08292-SHS-OTW & 1:23-cv-10211-SHS-OTW

Dear Magistrate Judge Wang:

Pursuant to Sections I(b) and II(b) of Your Honor's Individual Practices, OpenAI respectfully requests a pre-motion conference to address Plaintiffs' refusal to produce essential discovery relating to alleged markets for the works at issue.[1] Specifically, Plaintiffs have not agreed to produce discovery from their literary agents, assistants, publishers, and loan-out companies–entities and individuals whose responsive documents are unquestionably within Plaintiffs' control. OpenAI thus seeks an order compelling Plaintiffs to produce from those individuals and entities the critical discovery they almost certainly maintain on Plaintiffs' behalf: market-related discovery specific to Plaintiffs' works, which is sought in at least RFP Nos. 5, 37, 58, 59, 60, 74, and 75.[2] *See* Exs. 1–3.

OpenAI's statutory defense of fair use depends, in substantial part, on "the effect of the [defendants' alleged] use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4) ("fourth fair use factor")–a determination that is based on the existence or absence of "market harm" to Plaintiffs. *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (fourth fair use factor requires courts to consider, *inter alia*, "the extent of market harm" caused by the conduct at issue). Plaintiffs here allege two categories of market harm: (1) harm to traditional markets like book sales, *see, e.g.,* Dkt. 69 ¶¶ 2, 142–163, 168, and (2) the loss of a licensing fee to which Plaintiffs believe they were entitled, *see* Dkt. 69 ¶ 7.

"Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). That is why OpenAI sought discovery about

---

[1] The parties conferred in good faith regarding the disputes addressed herein by telephone conference on October 15, November 5, and November 18, 2024, as well as via written correspondence before and after those dates. The parties' conferral efforts were unsuccessful. *See* Nightingale Dawson Decl. ¶ 3.

[2] The RFP numbering herein refers to the numbering of the RFPs served on Plaintiff Authors Guild. OpenAI served identical requests on the individual author plaintiffs, with different numbering. OpenAI thus seeks relief as to the same RFPs served on the individual author plaintiffs as well.

1

both types of harm Plaintiffs allege. After initially refusing to produce *any* discovery related to harm to Plaintiffs' traditional market in connection with the above-referenced RFPs (*i.e.*, the first category of harm), Plaintiffs agreed to search *only* Authors Guild's files and the individual Plaintiffs' personal files. Plaintiffs would not agree to produce documents from other sources within Plaintiffs' control, even though Plaintiffs themselves said that at least their publishers were likely to have responsive documents. Nightingale Dawson Decl. ¶ 5. That limitation is untenable, and designed to avoid the most likely sources for this discovery.

Federal law is clear: Parties are obligated to produce documents within their "possession, custody, or control." *See* Fed. R. Civ. P. 34(a)(1). The Second Circuit, in turn, has explained that "'[c]ontrol' does not require 'actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents.'" *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023) (citation omitted). Plaintiffs cannot meaningfully dispute that they have the right, authority, *and* practical ability to obtain the documents at issue from their agents, assistants, publishers, and loan-out companies, as needed.

Plaintiffs' agents, assistants, and publishers act as Plaintiffs' agents, and "[a] principal is deemed in control of the documents held by its agents." *Mazzei v. Money Store*, No. 01-cv-5694, 2014 WL 3610894, at *4 (S.D.N.Y. July 21, 2014). Indeed, numerous courts have held that, "when a non-party was an agent of the party, the principal-agent relationship established the necessary control." *See Annunziato v. Collecto, Inc.*, 304 F.R.D. 360, 363 (E.D.N.Y. 2015) (citing *Hitachi, Ltd. v. AmTRAN Tech. Co. Ltd.*, No. 05-cv-2301, 2006 WL 2038248, at *2 (N.D. Cal. Jul. 18, 2006)); *see also id.* (holding that party had "practical ability to obtain" documents from its agent).

Plaintiffs' refusal to produce documents from their loan-out companies is equally indefensible, since these companies are simply single-member LLCs owned and controlled by individual Plaintiffs.[3] There is no basis for Plaintiffs to withhold discovery they purport is within the possession of companies they entirely control. As Plaintiff Jia Tolentino explained, her "one-person LLC is called 'My Large Adult LLC.'" *See* Ex. 4. Yet Plaintiffs have not agreed to produce documents from any of Plaintiffs' "one-person LLCs."

Plaintiffs' only substantive response to OpenAI's request is to argue that Plaintiffs' issuance of subpoenas to certain of their own publishers demonstrates that these documents are not within their possession, custody, or control. But Plaintiffs' decision to serve subpoenas on certain publishers for specific categories of documents (*e.g.*, all of a publisher's communications with Defendants) says nothing about whether Plaintiffs have the practical ability to obtain documents related to their *own* works from their *own* publishers. Of course, Plaintiffs do not have the right to all of their publishers' documents–including documents entirely unrelated to Plaintiffs'

---

[3] "A 'loan-out company' is an entity through which an individual offers his services or rights to others." *Columbus Rose Ltd. v. New Millennium Press*, No. 02-cv-2634, 2002 WL 1033560, at *1 (S.D.N.Y. May 20, 2002) (citing *Great Entertainment Merch., Inc. v. VN Merch., Inc.*, No. 95-cv-9333, 1996 WL 355377, at *1 n. 1 (S.D.N.Y. June 27, 1996)); *see also* LATimes, *What's going on with loan-out corporations? Hollywood workers seek answers*, https://www.latimes.com/entertainment-arts/business/story/2024-05-28/hollywood-iatse-sag-aftra-california-edd-loan-out-companies ("loan-out corporations, which are single-person companies through which they 'lend' their services").

works. That is irrelevant. OpenAI is seeking documents related to *Plaintiffs'* works–documents that Plaintiffs undoubtedly have the right to obtain from their own publishers given their principal-agent relationship. And Plaintiffs have never said they lack the practical ability to obtain such discovery, presumably because their publishing agreements show the exact opposite–that they do have the right to obtain exactly what OpenAI seeks.

Plaintiffs have, at times, suggested that OpenAI must identify evidence proving that Plaintiffs have control over the documents at issue. But that ignores two critical realities. *First*, Plaintiffs themselves know whether they have the practical ability to obtain the document at issue. *See Mirlis*, 80 F.4th at 382. To date, Plaintiffs have refused to confirm whether they have such an ability even though, given their agency relationship, they almost certainly do.[4] *Second*, Plaintiffs' productions to date are so paltry that it is clear Plaintiffs have delegated maintenance of their documents to their agents and publishers. For example, for Plaintiffs Alter, Bird, Linden, Shapiro, and Tolentino, Plaintiffs' productions do not appear to include publishing agreements for all of the works they have asserted. Nightingale Dawson Decl. ¶ 6. Likewise, for Plaintiffs Branch, LaValle, Linden, Martin, and Shapiro, Plaintiffs' productions do not appear to include the most basic sales and revenue data for all of the works they have asserted. *Id.* Clearly, these documents exist *somewhere*, and the most likely source is Plaintiffs' agents and publishers, from whom Plaintiffs surely have the practical ability to request copies in the ordinary course (even absent formal subpoenas).

For the foregoing reasons, OpenAI respectfully requests that the Court order Plaintiffs to produce all market-related discovery they have the practical ability to obtain, including but not limited to discovery related to the works at issue possessed by Plaintiffs' literary agents, assistants, publishers, and loan-out companies.

Respectfully,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Paven Malhotra\** | */s/ Elana Nightingale Dawson* | */s/ John Lanham*[*] |

---

[4] Plaintiffs' refusal to confirm whether they have the ability to obtain the discovery at issue is directly contrary to the positions Plaintiffs took in a motion they filed last month. *See* Dkt. 198. There, Plaintiffs took the position that OpenAI was required to ask its employees for access to their personal social media accounts, *id.* at 2, despite the provisions of the California Labor Code, and despite the absence of reason to believe the accounts contained responsive information, Dkt. 243 at 1-2. Here, in contrast, Plaintiffs have not disputed that these entities *do* possess responsive information. Nightingale Dawson Decl. ¶ 3. And they have not identified any reason they cannot ask for the document sought. Yet Plaintiffs appear not to have even *asked* any of these entities "for the documents"–the very step that Plaintiffs themselves said is required. *See* Dkt. 198 at 2; *see also Benthos Master Fund, Ltd. v. Etra*, No. 20-cv-3384, 2022 WL 17090848, at *1 (S.D.N.Y. Nov. 21, 2022) ("Generally, a party has the practical ability to obtain documents if he can ask a third party for the documents and receive them.").

\* All parties whose electronic signatures are included consented to the filing of this document.