**Lieff Cabraser Heimann & Bernstein** — Attorneys at Law

**SUSMAN GODFREY L.L.P.**
A REGISTERED LIMITED LIABILITY PARTNERSHIP



November 21, 2024

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re:   *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.) and *Alter v. OpenAI Inc.*, 23-cv-10211 (S.D.N.Y.): OpenAI's Motion for Assistant, Loan-Out Company, Agent, and Publisher Discovery

Dear Magistrate Judge Wang:

Plaintiffs respond to OpenAI's letter-motion, dated November 18, 2024 (Dkt. 264) ("Letter"), seeking to compel discovery in response to seven requests from Plaintiffs' agents, assistants, publishers, and loan-out companies. Aside from its failure to exhaust the meet and confer process, OpenAI's Letter should be denied for three reasons: (A) Plaintiffs already agreed to produce responsive documents; (B) Plaintiffs are willing to make certain limited requests to agents and publishers; and (C) OpenAI has offered no authority nor explanation to support any further collection from these ancillary entities.

A.   **Plaintiffs Already Agreed to Produce Responsive Documents.**

OpenAI's account of what Plaintiffs have previously agreed to is simply incorrect.

First, as the exhibits to OpenAI's own Letter plainly demonstrate, Plaintiffs *did not* "initially refus[e] to produce any discovery related to harm to Plaintiffs' traditional market in connection with the above-referenced RFPs." Dkt. 264 at 2. In response to RFP No. 5, which requests "All Documents and Communications relating to OpenAI's alleged use of Your Copyrighted Works," Plaintiffs stated: "Plaintiff will search for and produce responsive non-privileged documents, if any exist." Dkt. 264-1 at 4. In response to RFP No. 37, which requests, "All Documents and Communications relating to attempts to license Your Asserted Works," Plaintiffs similarly stated: "Plaintiff first acknowledges that it has already agreed to produce documents responsive to this Request in its Response to Defendant's First Set of Requests for Production and refers Defendant to those responses. Notwithstanding, Plaintiff is willing to meet and confer to discuss any non-duplicative documents that may be responsive to this Request." Dkt. 264-2 at 4.

Second, Plaintiffs have also agreed to produce documents in response to several other "harm" and "market-related" requests from OpenAI. For example, in response to OpenAI's RFP

November 21, 2024
Page 2

No. 21, the Authors Guild stated that they would produce non-privileged documents "relating to any injury or harm" arising from OpenAI's conduct. In addition, in response to OpenAI's RFP No. 34, the Non-Fiction Plaintiffs reiterated that Plaintiffs have already agreed to produce documents "relating to any injury or harm."

Third, despite Plaintiffs' concerns about overbreadth and undue burden, Plaintiffs have also recently agreed to produce documents and communications reflecting any valuation or market analysis of the works at issue in this case, including, but not limited to: revenue reports; market performance reports in both traditional and potential markets; market and valuation research and studies; documents and communications with licensing counterparties reflecting licensing negotiations for the works; and documents sufficient to identify each work that Plaintiffs contend both (i) was generated using any GPT Service, and (ii) competes in the market for the works. The review and production of these documents is ongoing.

Fourth, Plaintiffs agreement to produce the documents described above has never been limited to "the individual Plaintiffs' personal files." At the start of discovery, Plaintiffs conducted comprehensive interviews of each individual class representative to determine all potential sources in their possession, custody, and control. As a result of this comprehensive process, Plaintiffs collected and have been reviewing documents from numerous business and administrative accounts that the Plaintiffs have access to. This includes, among others, business accounts from George Saunders and Roxana Robinson.

**B.      Plaintiffs Are Willing to Request Certain Documents From Agents and Publishers.**

OpenAI has never asked Plaintiffs for the specific relief it seeks from the Court in the Letter. It was Plaintiffs who first proposed, on November 18, approaching agents and publishers with a reasonable set of requests for documents. OpenAI never responded to that request and has only demanded that Plaintiffs agree to collect documents from their literary agents, assistants, publishers, and loan-out companies for *all* 75 requests for production, most of which have nothing to do with these ancillary individuals and entities. For example, some of these 75 requests relate to individual class representative's personal use of artificial intelligence or the individual class representative's involvement in litigation. The instant letter-motion requests something different than OpenAI ever requested in any meet and confer: OpenAI now requests for Plaintiffs to ask only about seven particular requests. While Plaintiffs appreciate that OpenAI now acknowledges the overbreadth and undue burden of their initial requests, it is wholly improper for OpenAI to make its new request in the first instance to the Court.

Upon receiving OpenAI's Letter-Motion (and requested relief) for the first time late Monday night, Plaintiffs' counsel promptly contacted all 28 individual class representatives on Tuesday morning to determine whether a resolution could be reached regarding OpenAI's narrowed requests. Although counsel has not yet received confirmation from all class representatives, the response from most class representatives is that their assistants and loan-out companies do not have documents responsive to these seven requests that are not already in the individual class representatives' possession. Indeed, Plaintiffs' current collection of documents already includes files from assistant accounts and loan-out companies. Many individual class representatives also believe it is very unlikely that their agents and publishers will have responsive

November 21, 2024
Page 3

documents that are not already in their possession. However, in an effort to compromise, Plaintiffs are willing to make a request to their agents and publishers for a clearly defined list of documents related to these seven requests that Plaintiffs' counsel could negotiate with OpenAI's counsel.

### C. There is No Basis to Support Any Further Collection of Documents from Plaintiffs' Agents, Assistants, Publishers, and Loan-Out Companies.

To the extent OpenAI is seeking any further relief from the Court, such as a complete ESI collection from every agent and publisher to collect every potentially responsive email communication, there is no legal or factual basis to do so.

First, OpenAI has cited to no authority that suggests, much less states, that an author has possession, custody, or control over their agent or publisher's emails or other ESI communications. OpenAI's principal authority on the discoverability of an agent's documents narrowly held that a defendant was required to collect "certain bank records," not "all documents and communications" related to said records like the request at issue here would require. *See Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023).

Second, contrary to OpenAI's presumption that Plaintiffs' "publishing agreements show… that they do have the right to obtain exactly what OpenAI seeks," Dkt. 264 at 3, Plaintiffs' publishing agreements do not give Plaintiffs this right and Plaintiffs are unaware of any other basis that they would have to make such a demand for documents from their agents or publishers. That OpenAI fails to cite even one of the 70+ publishing agreements produced only confirms that the publishing agreements do not say what OpenAI claims they do.

Third, Defendants' contention that the parties' outstanding subpoenas to publishers are irrelevant is incorrect. For starters, contrary to OpenAI's misrepresentation, Plaintiffs *did* subpoena their publishers for documents "related to their own works from their own publishers." Dkt. 264 at 2. For example, among other requests, Plaintiffs' publisher subpoenas requested: "Text-searchable copies of the final, as-published version" of the class representative's own work being asserted in this case. *See, e. g.,* Ex. 1 at 7. Similarly, Plaintiffs requested, "Documents sufficient to demonstrate the BISAC code for each work detailed in Exhibit 1." *See id.* Plaintiffs made these requests to expedite the production of relevant documents in the case, and to date have obtained—and produced to the Defendants—over 800 documents from publishers.

Finally, OpenAI's letter-motion should be denied because it is largely moot. As discussed above, based on Plaintiffs' counsel's conversations with the individual class representatives, Plaintiffs are not aware of any substantive documents and/or communications responsive to these requests that are not already in the individual class representative's possession, custody, or control. Any potential concern about Plaintiffs' production should only be addressed once OpenAI has received the forthcoming production.

For these reasons, OpenAI's Letter should be denied.

November 21, 2024
Page 4

                                      Sincerely,

| LIEFF CABRASER HEIMANN & BERNSTEINS LLP | SUSMAN GODFREY LLP | COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP |
|---|---|---|
| /s/ Rachel Geman | /s/ Rohit Nath | /s/ Scott J. Sholder |
| Rachel Geman | Rohit Nath | Scott J. Sholder |

cc:    All Counsel of Record via the Court's ECF System