Lieff Cabraser Heimann & Bernstein
Attorneys at Law

SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP



November 21, 2024

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

      RE:    *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.) and *Alter v. OpenAI Inc.*, 23-cv-10211 (S.D.N.Y.): Microsoft's Motion for ChatGPT, Assistant, Loan-Out Company, Agent, and Publisher Discovery

Dear Magistrate Judge Wang:

Plaintiffs respond to Microsoft's letter-motion, dated November 18, 2024 (Dkt. 263) ("Letter"), seeking to compel discovery in response to one request regarding Plaintiffs' use of ChatGPT and three requests regarding market-related discovery from Plaintiffs' agents and publishers. Aside from its failure to exhaust the meet and confer process, Microsoft's Letter should be denied for three reasons: (A) Plaintiffs have already agreed to produce documents related to ChatGPT; (B) Microsoft's requested relief from the Authors Guild is inconsistent with its own document requests; and (C) the individual plaintiffs are willing to request certain documents from their agents and publishers.

**A.**     **<u>Plaintiffs Already Agreed to Produce Documents Related to ChatGPT and the Additional Relief Sought Is Not Proportional To The Needs Of The Case.</u>**

Microsoft contends that Plaintiffs "have refused to provide documents responsive to Microsoft's request" for all "Documents regarding Your use of ChatGPT, for any purpose." Dkt. 263 at 2; Dkt. 263-1 at 22-23. This is false. Pursuant to the parties' search term negotiations, Plaintiffs have produced and will continue to produce *all* non-privileged documents in our client's emails that contain the term OpenAI or ChatGPT. Plaintiffs have also produced all ChatGPT outputs cited in the Complaint. Microsoft offers no explanation as to why this production is insufficient.

Compelling Plaintiffs to produce records of using ChatGPT in ways entirely unrelated to this litigation or the works-in-suit (*e.g.*, asking ChatGPT about the weather) would not be proportional to the needs of the case. For starters, ChatGPT outputs unrelated to the works at issue are not relevant, or at best marginally relevant. Microsoft offers two reasons for why these documents are relevant. First, Microsoft says that any non-infringing use of ChatGPT is relevant to Plaintiffs' claims for contributory infringement, citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 417 (1984). This is wrong. Plaintiffs allege that Microsoft enabled OpenAI's largescale copyright infringement in training its large language models, not that end

November 19, 2024
Page 2

users of ChatGPT are generating infringing outputs. End users infringing or non-infringing use of ChatGPT is not at issue in this case. Second, Microsoft claims that Plaintiffs' use of ChatGPT to, for example, check the weather is relevant to what is apparently a free-ranging inquiry into the public benefits or risks from ChatGPT under a fair use analysis. Microsoft has the legal standard for fair use wrong, *see Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35 (2021), but in any event there are far better sources for assessing the general public's potential applications of ChatGPT and other LLMs than invading all Plaintiffs' uses of these tools.

Microsoft's sole authority on this issue, *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 261-62 (S.D.N.Y. 2008), does not support its argument. In that case, the court granted plaintiff's motion to compel the defendant YouTube to produce "all data from the Logging database concerning each time a YouTube video has been viewed on the YouTube website or through embedding on a third-party website." *See id.* The Court did not consider whether the plaintiff's own YouTube history was relevant to the case, much less whether it was relevant and proportional discovery on defendants' fair use and substantial non-infringing use defenses as Microsoft contends here.

Moreover, in an effort to resolve the matter, Plaintiffs have offered to identify each individual plaintiffs' ChatGPT username to OpenAI. Plaintiffs made this specific proposal after OpenAI expressly stated that doing so would resolve their nearly identical request for Plaintiffs' ChatGPT outputs. Ex. 1 at 3-4. To the extent Microsoft seeks discovery of relevant ChatGPT outputs, it should join Plaintiffs' outstanding requests to OpenAI for output records related to the asserted works. Microsoft ignored this proposal in its Letter and has yet to offer any specific explanation as to why it would be insufficient. To the extent the Court orders any relief on this issue, the relief should be limited to Plaintiffs' identification of the usernames for each individual plaintiff.

**B.      Plaintiffs Are Entitled To Thirty Days To Respond To Microsoft's New Request Pursuant to FRCP 30.**

In its Letter, Microsoft asks the Court to order the Authors Guild to "produce all fourth factor evidence in its possession without regard to the works of Mignon Eberhart." Dkt. 263 at 3. However, before filing this Letter, Microsoft had never served a request for these documents. The only document requests Microsoft cited to in its Letter in support of this issue are expressly limited to "Your Copyrighted Works," that is, the Copyrighted Works *owed by* the Authors Guild. Dkt No. 263-1 at 12-13. Accordingly, consistent with Microsoft's own requests, the Authors Guild appropriately limited their response to the copyrighted works it actually owns and is asserting in this lawsuit—the copyrighted works of Mignon Eberhart.

When Plaintiffs pointed out this apparent oversight to Microsoft on November 20, Microsoft served a new set of document requests *after this motion was filed* on November 20 at 10:05 pm Eastern time. Under FRCP 30, Plaintiffs responses are not due until December 20. As of this writing, Plaintiffs have had fewer than 24 hours to review the newly-served requests and respectfully request that Microsoft's motion be denied on this basis.

November 19, 2024
Page 3

### C. Plaintiffs Are Already Seeking Certain Documents from Agents and Publishers.

As Microsoft acknowledges in its Letter, Plaintiffs have never refused to request certain documents from their agents and publishers in response to the three market-related requests at issue in this Letter. Rather, because Microsoft first made the request on a meet and confer hours before Microsoft filed this Motion, Plaintiffs' counsel had not yet had a chance to discuss Microsoft's request with the individual plaintiffs and provide a response. Since receiving Microsoft's request and OpenAI's related letter-motion on the issue, Plaintiffs' counsel promptly followed up with the individual plaintiffs and confirmed that, in an effort to compromise, Plaintiffs are willing to make a request to their agents and publishers for a clearly defined list of documents that Plaintiffs' counsel could negotiate with Microsoft's counsel.

To the extent Microsoft is seeking anything more, such as a complete ESI collection from each agent and publisher to collect every potentially responsive email communication, there is no legal or factual basis to do so.

First, Microsoft has cited to no authority that suggests, much less states, that an author has possession, custody, or control over their agent or publisher's emails or other ESI communications. In *Bank of New York v. Meridien BIAO Bank Tanzania Ltd*., 171 F.R.D. 135, 147 (S.D.N.Y., 1997), the court considered whether an "assignee of a claim" had possession of the assignor's documents. Here, there is no suggestion that any of the claims at issue have been assigned from the agents or publishers to the individual plaintiffs. Similarly, in *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023), the court held that a defendant was required to collect "certain bank records," not "all documents and communications" related to said records like the request at issue here would require.

Second, there is nothing in the factual record to suggest Plaintiffs have sufficient custody, control, or possession to demand an ESI collection from their agents or publishers. Indeed, Plaintiffs subpoenas to their publishers for documents related to their own works demonstrates the opposite. For example, among other requests, Plaintiffs' publisher subpoenas requested: "Text-searchable copies of the final, as-published version" of the plaintiffs' own work being asserted in this case. *See, e.g.,* Ex. 2 at 7. Similarly, Plaintiffs requested, "Documents sufficient to demonstrate the BISAC code for each work detailed in Exhibit 1." *Id.* Plaintiffs made these requests to expedite the production of relevant documents in the case, and to date have obtained—and produced to the Defendants—over 800 documents from publishers.

Finally, Finally, Microsoft's letter-motion should be denied because it is largely moot. As discussed above, based on Plaintiffs' counsel preliminary conversation with the individual plaintiffs, Plaintiffs are not aware of substantive documents and communications responsive to these requests that are not already in the individual plaintiffs' possession. Any potential concern about Plaintiffs' production should only be addressed once Microsoft has received the forthcoming production. Moreover, contrary to Defendants contention that this case focuses on whether any and all ChatGPT outputs are transformative of the Plaintiffs work, Plaintiffs have repeatedly made clear that this case focuses on OpenAI's alleged unlawful downloading and reproduction of Plaintiffs' books. *See* Dkt. 69, at ¶¶ 96 et seq., ¶415.[1]

---

[1] Nov. 29, 2023 Hr'g Tr. at 11:24-12:1 (Dkt. 44) ("We're focusing on the mass copying of protective works for purposes of 'training' the large language model.").

November 19, 2024
Page 4

                                                Sincerely,

| LIEFF CABRASER HEIMANN & BERNSTEINS LLP | SUSMAN GODFREY LLP | COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP |
|---|---|---|
| /s/ Rachel Geman | /s/ Rohit Nath | /s/ Scott J. Sholder |
| Rachel Geman | Rohit Nath | Scott J. Sholder |