# EXHIBIT 1

**Subject:** Authors Guild / Alter -- Outstanding Discovery Issues
**Date:** Friday, May 24, 2024 at 10:06:23 PM Central Daylight Time
**From:** Aaron.Macris at lw.com (via Alter-AI-TT list)
**To:** Alter-AI-TT@simplelists.susmangodfrey.com, Alejandra Salinas, Dozier, Wesley
**CC:** openaicopyrightlitigation.lwteam@lw.com, OpenAICopyright@mofo.com, KVPOAI@keker.com

EXTERNAL Email
Counsel,

During last week's meet and confer concerning the fiction plaintiffs' discovery responses, plaintiffs' counsel asked to consolidate correspondence and calls between the fiction and non-fiction plaintiffs' discovery responses going forward. To that end, I have consolidated below various outstanding issues concerning the fiction and non-fiction plaintiffs' document production and responses to OpenAI's discovery requests below.

- **Overall Progress of Plaintiffs' Document Production**: As reflected in other recent correspondence, we are becoming increasingly concerned with the lack of progress plaintiffs have made in producing documents responsive to OpenAI's discovery requests. The fiction plaintiffs indicated that a significant production would be forthcoming last week. However, that production only includes documents from three additional named plaintiffs and is responsive to only a narrow subset of OpenAI's requests. Accordingly, 11 of the 18 named fiction plaintiffs have not yet produced any documents. Similarly, 7 of the 11 named non-fiction plaintiffs also have yet to produce any documents. Moreover, some of the plaintiffs who have produced documents have not provided much; for example, Authors Guild has only produced 14 documents, and David Baldacci has only produced 2 documents. Even where productions have been larger for some named plaintiffs, the contents of those productions have been minimally responsive to only a handful of requests; for example, Sylvia Day's entire production to date consists of auto-generated weekly update emails from an AI-automated content protection service. The substantial completion deadline for documents responsive to OpenAI's first set of requests for production is on June 14, which is approximately three weeks away.

- **Documents Relating to ChatGPT Outputs Described in Complaint**: The parties have discussed this issue at multiple meet and confers (including on April 18 and May 1) and in multiple written exchanges (*see, e.g.*, April 9 Letter from J. Wetzel; May 9 Email from A. Macris). Based on our discussions and the correspondence, we believe the parties are at an impasse, as both the fiction and non-fiction plaintiffs have refused to produce (a) all ChatGPT outputs that were generated in the course of plaintiffs' efforts to generate the outputs described in their complaint, as well as the corresponding prompts, and (b) related documents outlining plaintiffs' analysis and process for generating those outputs.

- **Documents and Communications Relating to OpenAI**: Although the fiction plaintiffs have agreed to produce documents and communications relating to OpenAI (*see, e.g.*, Authors Guild's Response to Request No. 9), the non-fiction plaintiffs have indicated that they are only willing to produce documents and communications that relate to OpenAI "<u>and</u> the Class Works." *See* May 5 Email from R. Havas. OpenAI and counsel for the non-fiction plaintiffs first met and conferred about this request on April 3, and then after plaintiffs' counsel took multiple weeks to respond to follow-up correspondence, the parties discussed this again on May 13. During that call, the

1 of 5

parties made no further progress toward reaching resolution on this issue, and plaintiffs have not offered any compromises that are acceptable. For the reasons described in our May 5 email and discussed on our May 13 meet and confer, documents and communications relating to OpenAI are material to the issues in this case. Moreover, particularly given that all the non-fiction plaintiffs are individuals instead of organizational plaintiffs, who presumably possess a narrow universe of documents and communications relating to OpenAI, this request imposes a low burden on plaintiffs. It appears the parties are at an impasse on this issue

- **Author's Guild's Purported Status as an Individual Plaintiff**: Authors Guild has asserted that it is not acting as an organizational plaintiff in this action and has refused to produce discovery about any works except for Mignon Eberhart's works. OpenAI first addressed this issue in correspondence sent on April 9, and the parties met and conferred about this on April 18. Authors Guild has yet to offer any authority or adequate explanation as to why it could properly withhold relevant discovery in its possession or can designate itself an individual plaintiff in the action. It appears the parties are at an impasse on this issue.

- **Documents Related to Ownership of the Asserted Works (Request for Production No. 2)**:

    - First, both the fiction and non-fiction plaintiffs have refused to produce various categories of documents related to ownership of the asserted works, including documents reflecting disputes over ownership and work-for-hire agreements. We have met and conferred about these documents with the fiction plaintiffs multiple times, including most recently on May 13, and it appears the parties are at an impasse. As to the non-fiction plaintiffs, after meeting and conferring about this, plaintiffs' counsel indicated in their May 10 email that plaintiffs were "reviewing the case law [OpenAI] provided and [would] respond with [plaintiffs'] position early next week." We did not hear back, and it appears we are at an impasse with non-fiction plaintiffs on this request as well.

    - Second, as a point of clarification, please confirm that the non-fiction plaintiffs intend to produce copies of deposits submitted to the U.S. Copyright Office in connection with the asserted works, as the fiction plaintiffs have confirmed they will do.

- **Enforcement of the Asserted Works**: OpenAI has requested documents relating to efforts to enforce the asserted works, including documents concerning efforts to monitor for infringement of the asserted works. Although the fiction plaintiffs have agreed to produce any non-privileged copyright monitoring records in their possession (*see* May 10 Email from W. Dozier), the non-fiction plaintiffs have not agreed to do the same. Instead, plaintiffs have agreed only to provide "documents sufficient to identify any infringement monitoring services that the plaintiffs have used for the class works." However, as discussed during our May 13 meet and confer, that apparently omits reports or other communications from such monitoring services identifying detections of potential infringement, as well as communications concerning plaintiffs' potential plans to address such potential infringement. Please confirm that the non-fiction plaintiffs will produce such materials or that the parties are at an impasse.

    The non-fiction plaintiffs have also refused to produce records of plaintiffs' own attempts to monitor for copyright infringement, if any. On that point, from our May 13 meet and confer, I understood the non-fiction plaintiffs are reluctant to agree to produce materials concerning their

own efforts to monitor for copyright information because they do not want to reconstruct such efforts that may not have been well documented. However, OpenAI is not requesting that they do so; instead, if plaintiffs possess records or documentation of their own copyright monitoring efforts, they should produce them. It appears the parties are at an impasse on this issue.

- **Attempts to License the Asserted Works (Nonfiction RFP No. 36; Fiction RFP No. 37)**: Both sets of plaintiffs have agreed to produce documents and communications relating to attempts to license the asserted works. However, we have not come across these types of documents in plaintiffs' productions so far. Please confirm that plaintiffs are searching for documents responsive to these requests and please provide an estimate of when plaintiffs anticipate they will begin producing them.

- **Total Revenue Broken Down by Source Monthly (Nonfiction RFP No. 35; Fiction RFP No. 36)**: When we met and conferred about these requests on May 3, plaintiffs asked for clarification as to what these requests sought that would not be reflected in licenses that plaintiffs had agreed to produce. I explained that licenses themselves may not reflect how much revenue is actually generated by an asserted work; for instance, it might only provide a per-sale royalty rate without any information about the number of sales. It was my understanding from the meet and confer that plaintiffs would evaluate this further and follow up if they would agree to produce documents responsive to this requests. Please confirm plaintiffs will produce responsive documents.

- **Documents Relating to Reviews of the Asserted Works (Nonfiction RFP No,. 18; Fiction RFP No. 19)**: When meeting and conferring on these requests, plaintiffs expressed concerns about vagueness of scope and what types of materials it would cover that is not already publicly available. As explained, one example would be private correspondence about reviews of the asserted works, such as correspondence between the named plaintiffs and their publishers about the critical reception of the asserted works. OpenAI will agree to narrow this request to private communications about reviews or other critical reception of the asserted works. Please confirm that plaintiffs will agree to produce such documents.

- **Licenses Acquired by Plaintiffs Providing Permission to Use Other Works in Asserted Works (Nonfiction RFP No. 19; Fiction RFP No. 21); Documents that Informed Preparation of the Asserted Works (Nonfiction RFP No. 24; Fiction RFP No. 25); and Documents Regarding Primary/Secondary Sources Underlying Asserted Works (Nonfiction RFP No. 25; Fiction RFP No. 26)**: When meeting and conferring on these requests, plaintiffs asked for clarification of the relevance and scope. As discussed, materials responsive to these requests are relevant, among other reasons, to protectability. For example, licenses to use other works in the asserted works may shed light on whether the asserted works are incorporating third parties' copyrighted material without authorization. Similarly, any bibliographies or other records outlining what sources were relied upon in creating the asserted works and how may shed light on what portions of the asserted works might constitute protectable original expression and what portions do not. Please confirm that plaintiffs will produce materials responsive to these requests.

- **OpenAI Accounts (Fiction RFP No. 25; Nonfiction RFP No. 30)**: Plaintiffs asked if OpenAI would be willing to accept an identification of the plaintiffs' handles for their OpenAI accounts in satisfaction of this request, without the other information mentioned in the request. OpenAI

==would agree to narrow this request to seek an identification of plaintiffs' OpenAI account handles, if plaintiffs would agree to produce that.==

- **Timeframe of Requests:** Plaintiffs productions to date have had a wide range of timeframes. *See e.g.,* FICTION-0001086 (agreement signed by Michael Connelly in 2007); FICTION-0005768 (agreement signed by Elin Hilderbrand in 2021). During our April 18 meet and confer, plaintiffs did not suggest a timeframe for its responses. In later correspondence, plaintiffs indicated that productions so far were not time limited but they "reserve [their] general rights to produce only relevant, non-privileged documents in [their] possession, custody, or control within a reasonable and proportionate timeframe. May 10 Email from W. Dozier. Please identify the timeframe that Plaintiffs are applying to their productions.

- **Priority Productions:** After waiting over two weeks for a response from plaintiffs regarding pending discovery requests, OpenAI identified five categories of relevant and responsive documents for priority production. *See* April 24 Email from A. Macris. When we met and conferred on May 13, plaintiffs indicated they were open to the idea of prioritizing production of certain categories of responsive documents assuming that OpenAI was willing to do the same. Plaintiffs, however, proceeded to resist every category of priority documents OpenAI proposed. As OpenAI has previously indicated, we are endeavoring to expedite our searches for documents you have identified as priorities. *See e.g.,* May 17 Email from E. Burgoon. Please confirm whether plaintiffs will also attempt to prioritize the requests we previously identified in our April 24 email and which plaintiffs have already agreed to produce.

Regards,
Aaron

**Aaron Macris**
*Pronouns: he/him/his*

**LATHAM & WATKINS LLP**
200 Clarendon Street | Boston, MA 02116
D: +1.617.880.4640

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

To unsubscribe from this list please go to https://simplelists.susmangodfrey.com/confirm/?

u=ywK4d7wMZ4ndcHsGv0J5iLtRxpQkslNO