# EXHIBIT C

**Key**: Green represents Plaintiffs' filing; Purple represents Defendants' filing

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| row: **Pending Motions – Topic** | | | | | | | |
| row: *SDNY*[1] | | | | | | | |
| Dkt. 344 (Sealed Filing) <br><br> Dkt. 345 (Public Filing) | 3/31/2025 | Dkt. 380 | Cross-production of OpenAI custodians | SDNY Class Plaintiffs | OpenAI | Plaintiffs and OpenAI have submitted letter briefing. | **Plaintiffs' Position:** Plaintiffs seek cross-production of documents from three relevant custodians, Michael Lampe, Brad Lightcap, and Wojciech Zaremba, which were already produced to the News Plaintiffs, and which impose no burden at all to produce, for the purpose of coordinating depositions. Especially in light of the MDL and OpenAI's requests that Plaintiffs coordinate depositions and discovery, OpenAI should produce these documents to the SDNY Class Plaintiffs without further delay. OpenAI's statement that Plaintiffs have refused to coordinate depositions is belied by the fact that the parties, including Plaintiffs, prepared a detailed deposition coordination term sheet during the March 7 settlement conference in court. <br><br> **OpenAI's Position:** Plaintiffs' demand for cross production of Messrs. Lampe, Lightcap, and Zaremba's files appears to be an attempt to leverage the discovery afforded to the News Plaintiffs to end run around the discovery limits the Court has imposed and to skirt the coordination that is necessary now that this case has been centralized. Although OpenAI has no objection in principle to cross-producing files from custodians—and, in fact, has already agreed to do so for multiple individuals—it cannot agree to the present demand, when Plaintiffs cannot identify any nonduplicative information any of them is likely to possess. Nor can Plaintiffs explain why they failed to request these individuals' files sooner. The Court should not sanction these tactics. Instead, to discourage Plaintiffs' seriatim demands and ensure discovery proceeds efficiently, the Court should require Plaintiffs to limit and coordinate their discovery requests with the other Plaintiffs to ensure that discovery proceeds efficiently. Plaintiffs' continued refusal to coordinate depositions or discovery and failure to prepare a single joint chart across these centralized cases underscores the need for reasonable limits. |

[1] All docket numbers of disputes listed in this section refer to the *Authors Guild* docket.

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 346 | 3/31/2025 | Dkt. 375 | Microsoft's Response to ROG 8 | SDNY Class Plaintiffs | Microsoft | Plaintiffs and Microsoft have submitted letter briefing | **Plaintiffs' Position:** Plaintiffs move to compel Microsoft to respond to Interrogatory No. 8, as narrowed by Plaintiffs, which asks Microsoft to identify anyone at Microsoft who had communications regarding LibGen. As part of its discovery obligations, Microsoft had an affirmative obligation to conduct a reasonable investigation into LibGen, which is of central relevance to the claims in this action. Microsoft's burden objection is meritless because Plaintiffs have already offered to accept a list of the individuals who Microsoft's investigation has revealed were communicating about LibGen. Microsoft refused to respond to even this narrowed Interrogatory.<br><br>**Microsoft's Position:** Plaintiffs' Interrogatory No. 8 is irrelevant, compound, overbroad and objectionable on its face, requiring Microsoft to query each of its 200,000+ employees whether they have ever communicated about a long list of topics—narrowed to LibGen for purposes of this motion. In improperly seeking such communications through interrogatory, Plaintiffs seek to upend the custodial document protocol. Worse, Microsoft already agreed to search for and produce such documents from the agreed custodians with respect to the training of OpenAI's models, which is what is at issue in these cases. This is a transparent attempt to circumvent the limitations of the pleadings and ESI protocol and should be denied. |
| Dkt. 348 | 3/31/25 | Dkt. 385 | OpenAI's Renewed Letter Brief Regarding Harm-Related Interrogatory Response | OpenAI | SDNY Class Plaintiffs | OpenAI raised the issue of Plaintiffs' refusal to respond fully to OpenAI's Interrogatory in connection with the October 30, 2024 discovery | **OpenAI's position:** OpenAI renews its motion (ECF 232) to compel Plaintiffs to respond fully to OpenAI's Interrogatory requesting identification of documents reflecting the purported harm they suffered from OpenAI's alleged use of their asserted works. OpenAI has reviewed all documents produced by 27 of the 30 Plaintiffs and is still unable to identify any documents reflecting Plaintiffs' purported harm; OpenAI is also in the process of reviewing the 525 documents recently produced by 3 Plaintiffs, but has not identified anything responsive in those documents either.   Plaintiffs are obligated to respond to this interrogatory in full because (i) the Interrogatory is permissible under Local Rule 33.3; (ii) having relied on FRCP 33(d), Plaintiffs are required to identify responsive documents given they represented that "the answer to [the] |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | conference. The Court denied the motion as premature but permitted OpenAI to renew its motion after reviewing the produced documents and meeting and conferring with Plaintiffs. OpenAI and Plaintiffs have now filed additional letter briefs on which the Court has not yet heard argument. | interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing" Plaintiffs' business records (FRCP 33(d)); and (iii) documents responsive to this Interrogatory are highly relevant to Plaintiffs' asserted damages, and "[w]aiting until the conclusion of fact discovery would unduly prejudice [OpenAI's] ability to prepare their defense." *Xinuos, Inc. v. IBM Corp.*, No. 22-cv-09777-CS-VR, 2025 WL 663064, at *2 (S.D.N.Y. Feb. 28, 2025).  If Plaintiffs have not produced documents reflecting their alleged harm, they should simply say so.<br><br>**Plaintiffs' position:**  OpenAI's Letter should be denied for three reasons: (1) OpenAI did not adhere to the Court's Order by reviewing Plaintiffs' documents before re-raising this issue. OpenAI admitted to this in its Letter. Letter at 2, n. 1. Discovery in this case is ongoing and additional productions are forthcoming. On this basis alone, the Court should deny OpenAI's request. (2) OpenAI's Interrogatories seeking identification of evidence of harm are premature under Local Rule 33.3. The Court implicitly held this in its Order at Dkt. 290, and it is no less true now. Courts routinely deny requests for parties to respond to contention interrogatories before the end of discovery. *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, No. 23-CV-01395, 2025 WL 252673, at *1 (S.D.N.Y. Jan. 21, 2025). OpenAI has sought and obtained extensive discovery, including Plaintiffs' computation of damages. OpenAI's Letter plays down this evidence, but under Local Rule 33.3, Plaintiffs' evidence cannot be overlooked in favor of premature contention interrogatories. (3) OpenAI's depositions of Plaintiffs will not be inhibited by denying its request. It is standard in this Court for depositions to be taken before responses to contention interrogatories are due. *See, e.g., Pratt v. Atalian Glob. Servs. Inc.*, No. 20 CIV. 3710 , 2021 WL 1234253, at *1 (S.D.N.Y. Apr. 2, 2021). OpenAI is free to ask Plaintiffs how it harmed them by allegedly using their books without permission or purchase to develop its highly profitable Generative AI products, and does not need premature responses to contention interrogatories to do this. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 349 (Sealed Filing) <br><br> Dkt 351 (Public Filing) | 3/31/2025 | Dkt. 379 | OpenAI's privilege assertions | SDNY Class Plaintiffs | OpenAI | Plaintiffs and OpenAI have submitted letter briefing. | **Plaintiffs' Position:** Plaintiffs move to compel OpenAI to produce three categories of documents that OpenAI is improperly redacting or withholding for privilege. <br><br> First, documents reflecting primarily business, technical, or policy advice are not privileged, and these documents should be produced in full. Second, OpenAI must produce documents it is withholding based on the attorney-client privilege because OpenAI has not demonstrated that these documents are communications with an attorney for the purpose of seeking primarily legal advice. Third, OpenAI must also produce documents it is withholding based on the common interest privilege because OpenAI has failed to demonstrate that it shares a common legal interest with Microsoft and that these communications were in furtherance of that shared legal interest. Lastly, this issue is ripe for adjudication now. Defendants' notion that Class Plaintiffs need to confer first to consolidate their challenges is merely an attempt to delay this challenge further. OpenAI is withholding documents on incorrect assertions of privilege, and the fact of the MDL does not impact OpenAI's responsibilities with respect to these documents or its ability to shield them from production. <br><br> **OpenAI's Position:** As with the N.D. Cal. Plaintiffs' request for *in camera* review, to allow the parties and Court to benefit from the efficiencies of MDL consolidation, the Court should deny this motion, order the MDL Plaintiffs to meet and confer to consolidate their privilege challenges, and reject Plaintiffs' request for in camera review and production of hundreds of privileged documents. Plaintiffs fail to make the prerequisite factual showing for in camera review required by *United States v. Zolin*, 491 U.S. 554, 572 (1989). First, OpenAI is not withholding business, technical or policy advice. Rather, OpenAI redacted attorney-client communications reflecting legal advice, leaving the business discussions unredacted. Second, OpenAI's privilege log entries comply with applicable standards for establishing a claim of privilege, and include at least the same level of, if not more, detail as Plaintiffs' logs. OpenAI has properly claimed privilege over and logged documents involving Adam Nace, a former member of OpenAI's legal |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | staff, and Cullen O'Keefe, Esq., a lawyer and former member of OpenAI's legal department. Third, OpenAI has properly claimed the common interest privilege as to Microsoft. The Court has denied a prior discovery motion challenging the common-interest privilege between OpenAI and Microsoft. (Dkt. 293 at 2.) Moreover, by Plaintiffs' own allegations, co-defendants OpenAI and Microsoft shared a common interest, among other things, regarding copyright compliance in the development of AI models that underpin products offered by both companies. (*See, e.g.*, Compl. ¶¶ 1, 4, 9, Dkt. 69.). |
| Dkt. 354 (Sealed Filing)

Dkt. 355 (Public Filing) | 3/31/2025 | Dkt. 389 (Sealed Filing)

Dkt. 382 (Public Filing) | OpenAI's Responses to Plaintiffs' RFAs | SDNY Class Plaintiffs | OpenAI | Plaintiffs and OpenAI have submitted letter briefing. | **Plaintiffs' Position:** Plaintiffs move to compel OpenAI's responses to Plaintiffs' RFAs asking OpenAI to admit or deny whether Plaintiffs' works are in OpenAI's training data. Rather than respond to these basic questions about OpenAI's own training data, OpenAI misconstrued Plaintiffs' RFAs and provided vague statements that neither admit nor deny that any work is present in the training data.

OpenAI cannot skirt its Rule 34 obligations in this way. The Court should compel OpenAI to provide full responses to Plaintiffs' RFAs for three reasons. First, Plaintiffs have given OpenAI more than enough information about OpenAI's own training data to allow OpenAI to respond to these RFAs. Second, OpenAI has waived its supplemental objections to Plaintiffs' RFAs because these objections could have been raised before. Third, even if the Court considers OpenAI's objections, the Court should overrule OpenAI's meritless objections. *See Kadrey et. al., v. Meta Platforms, Inc.*, No. 23-CV-03417, 2024 WL 5008065 at *1 (N.D. Cal. Dec. 6, 2024) (overruling Meta's objections to similar RFAs).

**OpenAI's Position:** OpenAI provided full and proper responses to Plaintiffs' RFAs based on an extensive review of the evidence. To answer each RFA, OpenAI reviewed hundreds of PDFs in Plaintiffs' deficient production, compared those PDFs to hundreds of dataset records, and admitted or denied each request appropriately based on a side-by-side comparison of those PDFs and records. Plaintiffs take issue only with the fact that OpenAI could not provide an unqualified admission based on its review of the evidence, but substantial technical issues encountered |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | during OpenAI's review preclude anything more certain. These technical issues stem from Plaintiffs' unwillingness to provide OpenAI with any search protocol to respond to the RFAs (as the Court instructed them to do last year), and Plaintiffs' refusal to provide error-free text copies of their works for the analysis. Even worse, Plaintiffs failed to properly meet and confer on OpenAI's supplemental responses before filing this motion, so OpenAI still has no idea what "full responses" Plaintiffs seek. Because OpenAI has fully responded to the RFAs, and admitted or denied Plaintiffs' RFAs based on its reasonable investigation into the data, the Court should deny this motion to compel. |
| Dkt. 356 (Sealed Filing) Dkt. 359 (Public Filing) | 3/31/2025 | Dkt. 374 | Microsoft's Response to RFP re: financials | SDNY Class Plaintiffs | Microsoft | Plaintiffs and Microsoft have submitted letter briefing | **Plaintiffs' Position:** Plaintiffs move to compel Microsoft to produce financial information regarding products that use OpenAI's LLMs in response to RFP Nos. 62, 63, 65, and Interrogatory No. 6. This material is relevant to the liability claims against Microsoft and Plaintiffs' remedies. Microsoft is improperly limiting its production to products (1) whose name refers to OpenAI GPT versus the complete (though limited) set of products into which OpenAI GPT is directly integrated, and (2) products that relate to GPT-3 and GPT-3.5, versus the later models in this case. Microsoft's position withholds relevant information about models that this Court already has determined to be in the scope of the complaint. <br><br>**Microsoft's Position:** Microsoft has agreed to produce all financial information that could possibly be relevant to disgorgement of profits, including revenue for all products named in the Complaint as well as other licenses specifically priced to add LLM capabilities. Plaintiffs go far beyond any established concept of direct or indirect profits, seeking full financial data about products such as Word and Excel. Authors ignore their burden to show some causal connection between the revenue they seek and the infringement and rely upon an attenuated chain of causation positing that one of their books in OpenAI's training data somehow caused an enterprise or individual consumer to purchase Microsoft Office. It's a frivolous proposition, which undoubtedly is why the Complaint also does not make such allegations. Microsoft's agreement to produce financial information for products named in the Complaint and priced specific to LLM capabilities is more than |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | sufficient and accounts for product revenues linked to all LLMs that the Court has stated are presently at issue: GPT-3, GPT-3.5, GPT-3.5 Turbo, GPT-4, and GPT-4 Turbo. The request should be denied. |
| Dkt. 366 (Sealed Filing)  Dkt. 361 (Public Filing) | 3/31/25 | Dkt. 373 | Whether Mr. Brockman should be subject to atypical deposition length due to his "apex" status | SDNY Class Plaintiffs | OpenAI | Plaintiffs and OpenAI have submitted letter briefing. | **Plaintiffs' Position:** The parties previously agreed that for coordinated 30(b)(1) depositions across the News, SDNY Class, and NDCA Class cases, witnesses should sit for 12 hours, at least for depositions that have occurred so far. OpenAI wants to deviate from this approach and have Mr. Brockman sit for 8 hours because he is an "apex" witness.  Depositions and discovery show Mr. Brockman was not an "apex" witness removed from the conduct here. Instead, he was intimately involved with the details of the challenged conduct (including the acquisition and use of challenged books data and partnerships for additional data). There is no basis to deviate from the parties' prior arrangements of 12 hours.  **OpenAI's Position:** This issue is premature for resolution and should be addressed in the parties' renewed discussions on a deposition protocol. There is no legitimate reason why Plaintiffs need Greg Brockman, co-founder and current President of OpenAI, to sit for twelve hours of deposition over two days. Mr. Brockman is an apex witness whose deposition is "disfavored" and given "special scrutiny" in this circuit. This is especially true where, as here, Plaintiffs seek information that is readily available through other means. For example, many of the issues Plaintiffs cite can be explored with other OpenAI fact witnesses or 30(b)(6) designees—Mr. Brockman has not been designated—including OpenAI's relationship with Microsoft and OpenAI's data acquisition and use.  OpenAI looks forward to continuing to meet and confer with Plaintiffs to reach agreement on a deposition protocol. Plaintiffs misstate the confidential discussions among the parties in connection with prior settlement conferences facilitated by this Court. No agreement on deposition coordination was reached, and OpenAI never agreed to present Mr. Brockman or any apex witness for 12 hours. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 368 (Sealed Filing)<br><br>Dkt. 364 (Public Filing) | 3/31/25 | Dkt. 390 (Sealed Filing)<br><br>Dkt. 381 (Public Filing) | OpenAI's Assertions of Privilege with respect to Books1/ Books2 | SDNY Class Plaintiffs | OpenAI | Plaintiffs and OpenAI have submitted letter briefing. | **Plaintiffs' Position:** Four datasets of torrented, pirated books are at the center of Plaintiffs' allegations in this case. OpenAI has represented to the court that it deleted them due to "non-use" and asserted an affirmative defense turning on its state of mind as to these datasets. Yet, OpenAI has improperly asserted privilege over the circumstances surrounding these datasets' acquisition, use, and deletion.<br><br>Plaintiffs are entitled to the documents and testimony on these datasets. "Non-use" is not a privileged reason. Even if privileged, it is waived as OpenAI has put the facts surrounding these datasets at issue through its "innocent, not willful" affirmative defense and affirmative factual representations to the court (they are also necessarily at issue for statutory damages and infringement). Even if privileged and not waived, the crime-fraud exception applies as torrenting pirated data and then deleting the datasets is criminal copyright infringement and/or misconduct which fundamentally undermines the litigation process.<br><br>**OpenAI's Position:** Plaintiffs ask this Court to eviscerate OpenAI's attorney-client privilege based on a single exchange at OpenAI's custodial 30(b)(6) deposition that established OpenAI's decision to delete two datasets well before these cases were filed involved company attorneys. The reasons for the deletion are privileged. Plaintiffs did not contest that privilege assertion at the deposition or challenge the testimony; instead, they immediately proceeded to another line of questioning. Plaintiffs insist that OpenAI has waived its privilege by allegedly putting these facts at issue. But OpenAI has never relied on legal advice regarding the deletion of the datasets to advance any claim or defense in this case. OpenAI is not using the privilege as a sword and a shield. As for Plaintiffs' equally baseless crime-fraud theory, there is no evidence for Plaintiffs' speculation that OpenAI's privileged communications intentionally furthered criminal conduct. The best support Plaintiffs can offer is a separate case where the court rejected the crime-fraud argument. There has been no crime or fraud; only fair use.<br><br>There are no grounds to re-open OpenAI's custodial 30(b)(6) deposition, much less to force OpenAI to produce privileged documents. The Court |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | should deny Plaintiffs' request. If the Court is inclined to consider granting Plaintiffs any relief, given the sanctity of OpenAI's attorney-client privilege, OpenAI requests the issue be briefed as a full motion. |
| [Dkt. 377 (Sealed Filing)](#) [Dkt. 365 (Public Filing)](#) | 3/31/2025 | [Dkt. 386 (Sealed Filing)](#) [Dkt. 388 (Public Filing)](#) | Microsoft's Response to RFP re: training data | SDNY Class Plaintiffs | Microsoft | Plaintiffs and Microsoft have submitted letter briefing | **Plaintiffs' Position:** Plaintiffs move to compel Microsoft to produce for inspection data that Microsoft downloaded and provided for training of OpenAI's models. In particular, Plaintiffs seek an inspection of any copy of LibGen—a pirated books dataset containing Plaintiffs' works—Microsoft may have made. This request is covered by RFP No. 41 and seeks information highly relevant to Plaintiffs' direct and contributory infringement claims against Microsoft. Microsoft's position that the data is not relevant to the models at issue contravenes this Court's prior rulings and ignores the scope of the operative complaint.<br><br>**Microsoft's Position:** RFP 41 does not cover the requested data because it was not used to train any of the OpenAI models at issue. OpenAI engaged Microsoft to scrape data from the internet in late 2023 for evaluation as potential use in training future models. Microsoft streamed the data directly to an Azure storage container controlled by OpenAI. Microsoft does not possess or control the data scraped for OpenAI, nor does that data have anything to do with the models at issue in this case. It was provided to OpenAI in late 2023 long after the models named in the Complaint were trained. Whatever that data may have contained and whatever, if anything, OpenAI did with it, it is not at issue in these cases. The request should be denied. |
| | | | | *N. D. CAL.*[2] | | | |
| [ECF 400](#) | March 18, 2025 | [ECF 400](#) | Joint letter brief requesting *in-camera* review of documents OpenAI | N.D. Cal. Class Plaintiffs | OpenAI | The issue has been fully briefed but remains undecided. | **Plaintiffs' Position:** In camera review of the 20 identified clawed-back documents is both warranted and required under Federal Rule of Civil Procedure 26(b)(5)(B), which expressly allows a party to present disputed documents to the Court under seal for a privilege determination without any prerequisite prima facie showing. Specifically, in camera review is the default next step when privilege is disputed following a clawback. *See In re Google RTB Consumer Privacy Litig.*, 2022 WL |

[2] All docket numbers of disputes listed in this section refer to *Tremblay et al v. OpenAI, Inc. et al*, 1:25-cv-03482-SHS-OTW (S.D.N.Y.) unless otherwise noted.

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | clawed back as privileged. | | | | 1316586, at *2 (N.D. Cal. May 3, 2022) (in the event of a disputed clawback, "generally the Court will require submission of the disputed document for in camera review"); *Great-West Life & Annuity Ins. Co. v. Am. Economy Ins. Co.*, 2013 WL 5332410, at *9 & n.4 (D. Nev. Sept. 23, 2013) (holding the challenging party's "request for leave," "[r]ather than provid[ing] the material under seal with the motion," "is not supported by . . . Rule 26(b)(5)(B)"). |

Even if a *prima facie* showing were required, Plaintiffs meet this low threshold because OpenAI's privilege claims are inadequate and implausible, including the assertion of privilege over technical business matters and documents with unclear legal involvement. OpenAI's clawback notices are procedurally deficient—merely listing Bates numbers—and its boilerplate log entries fail to provide detail necessary to substantiate privilege claims. The pattern of OpenAI's repeated, last-minute, and inconsistent clawbacks—often on the eve of depositions—calls OpenAI's "inadvertence" into question and demonstrates a lack of reasonable privilege review and supports a finding of waiver. OpenAI's conduct—stockpiling clawbacks, providing insufficient explanations, and making inconsistent redactions—has prejudiced Plaintiffs, waiving any privilege and justifying in camera review. Plaintiffs therefore respectfully request that the Court order OpenAI to submit the 20 disputed documents for in camera review to ensure a fair and accurate privilege determination. OpenAI's offer to provide evidence as an alternative form of a relief is not supported by Rule 26(b)(5)(B) and should be disregarded. Defendants' notion that Class Plaintiffs need to meet and confer first to consolidate their challenges is merely an attempt to delay this challenge. The challenges pertain to distinct documents and thus can be decided separately.

**OpenAI's Position:** Without making the required evidentiary showing to justify invading the attorney-client privilege with in camera review, the N.D. Cal Plaintiffs seek the Court's review of 20 documents that OpenAI clawed back in the normal course of discovery. Plaintiffs insist that they are entitled to automatic, in camera review of any clawed back documents—a position that misreads Rule 26 and could lead to a litany of requests for in camera review going forward. The Court should deny

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | the N.D. Cal Plaintiffs' current request, and instead, order them to consolidate their privilege challenges with the other MDL Plaintiffs and meet and confer with OpenAI to narrow the disputes.<br><br>The Court also should deny Plaintiffs' request on the merits for three reasons: (1) Plaintiffs fail to provide evidence justifying in camera review; (2) OpenAI's privilege log fully supports its privilege claims; and (3) OpenAI took reasonable steps to prevent disclosure—which Plaintiffs do not dispute was inadvertent—and to claw back the documents once discovered. OpenAI has been diligent in its review of over 900,000 documents and production of over 100,000 documents; the mere fact that OpenAI clawed back the twenty documents at issue in Plaintiffs' motion is insufficient to justify in camera review. Moreover, Plaintiffs have failed to provide timely privilege logs of their own (or privilege logs at all), and what logs they have provided often contain threadbare explanations of privilege or log documents that are not privileged or protected, as described in the parties' letter brief at Dkt. 424. If the Court is inclined to grant the motion, the Court should first grant OpenAI's request to submit non-privileged evidence that demonstrates the privileged status of the challenged documents. This evidence has not yet been submitted because the Magistrate Judge's rules in the Northern District of California require leave to do so, and the case was transferred before any ruling on this issue. OpenAI did, in fact, request leave to submit this evidence (Dkt. 400 at 5), as required by the Magistrate Judge's rules in the Northern District of California; the case was transferred before any ruling on the issue. |
| [ECF 424](#) | March 28, 2025 | [ECF 424](#) | OpenAI's Motion re Plaintiffs' Allegedly Improper Redactions and Alleged Failure to Log Privileged | OpenAI | N.D. Cal. Class Plaintiffs | The issue has been fully briefed but remains undecided. | **OpenAI's Position:** OpenAI respectfully requests this Court to (i) order Plaintiffs to properly log all documents withheld as privileged as required by the Federal Rules and pursuant to the parties' agreement at ECF 340 (Case No. 3:23-cv-03223 (N.D. Cal.)), and (ii) compel Plaintiffs to reproduce three improperly redacted documents without redaction.  As to the privilege logs, Plaintiffs have not logged communications between Plaintiffs' outside counsel and third parties. Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires parties to log responsive documents that are withheld on the basis of privilege.  The |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | Documents and Communications | | | | parties agreed to exclude from the logs a party's "privileged communications with outside litigation counsel," ECF No. 340 at 2, not communications between counsel and non-parties (i.e., third parties), or between parties and non-parties. The Federal Rules require that such communications be logged if withheld, and nothing in the parties' agreement contemplates otherwise.<br><br>As to the improper redactions, it is clear from the face of the documents that the redacted portions are not privileged and thus must be produced. Plaintiffs have the burden of establishing that the redacted content is privileged—they have not come close to satisfying that burden and the documents should therefore be reproduced without redactions.<br><br>**Plaintiffs' Position:** Plaintiffs' redactions are proper under both the attorney-client privilege and the attorney work product doctrine. The communications at issue—specifically, those between attorney Bryan Clobes and his client Ayelet Waldman, as well as legal advice and work product shared by Rachel Louise Snyder—are protected because they reflect confidential legal advice and strategy. Mr. Clobes's assertion of privilege over the communications with his client Mr. Waldman, is consistent with established law allowing attorneys to assert privilege on behalf of their clients. Furthermore, the sharing of these communications with other clients and prospective clients does not constitute a waiver of privilege, as the common-interest doctrine applies. Plaintiffs and the recipients of these communications shared a common legal interest in protecting their copyrighted works and were formulating a joint legal strategy in anticipation of litigation against a common adversary. It is well established in this circuit that a written agreement is not required for the common-interest doctrine to apply. *See, e.g., U.S. v. Zhu*, 77 F.Supp.3d 327, 330 (S.D.N.Y. 2014) (*citing HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 72 n.12 (S.D.N.Y. 2009)). With respect to the privilege log, Plaintiffs have complied with both the Federal Rules and the parties' negotiated agreement, which was designed to reduce unnecessary logging of clearly privileged documents. The agreement expressly provides that privileged communications with outside litigation counsel after June 28, 2023, need not be logged, and the redacted communications at issue fall within this category. OpenAI's |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | suggestion that Plaintiffs are not complying with the agreement is unfounded.  Specifically, the redacted portions at issue in LIPPMAN000017 and LIPPMAN000018 contain privileged communications between Mr. Clobes and his client from September 15, 2023, almost three months after the parties' agreed upon cut-off date. With respect to SNYDER004792, Plaintiffs logged this communication even though it postdated the agreed upon cut-off date because an attorney was not a party to the communication. Plaintiffs respectfully request that the Court deny OpenAI's request to compel disclosure of these protected communications and uphold the parties' agreement regarding privilege logs. |
| center **N.D. Cal.** **Rule 72 Motions[3]** ||||||||
| ECF 388  ECF 389 | March 13, 2025 | ECF 419  ECF 420 | Rule 72 objections challenging Magistrate Judge Illman's ruling on the inclusion of OpenAI employee Katie Mayer as an additional document custodian. | N.D. Cal. Class Plaintiffs | OpenAI | The issue has been fully briefed but remains undecided.[4] | **Plaintiffs' Position:** Magistrate Judge Illman erroneously denied Plaintiffs' request to add Katie Mayer as a document custodian, despite compelling evidence of her unique and central role in managing OpenAI's partnership with Microsoft. Discovery recently produced by OpenAI revealed Mayer was not merely involved in logistical communications, as previously represented by OpenAI, but was the manager of OpenAI's "Microsoft" team and played a substantive role in projects directly relevant to the litigation, including the facilitation and exchange of training data—some of which includes pirated LibGen datasets. Contrary to OpenAI's assertions, in their briefing and during the meet-and-confer process, Plaintiffs highlighted specific documents and testimony showing Mayer's direct involvement in negotiating and coordinating the sharing of sensitive datasets with Microsoft—conduct that is at the heart of their claims. And Plaintiffs demonstrated that Mayer is likely to possess unique, non-duplicative information |

---

[3] Plaintiffs include their Rule 72 Motions to certain orders by Magistrate Judge Illman because of the lack of guidance regarding how such motions are to be addressed after the MDL was ordered.  OpenAI's and Microsoft's position is that Plaintiffs' Rule 72 motions seeking reconsideration of Magistrate Judge Illman's orders must, per the plain language of the Rule, be addressed by the district court.  *See* Fed. R. Civ. P. 72(a) ("The ***district judge*** in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.") (emphasis added). To the extent the Court is going to address Rule 72 objections, for completeness OpenAI and Microsoft note that they have Rule 72 objections at ECF 298/ECF 299 and ECF 300/ECF 301 relating to the Court's order at ECF 344 in *The New York Times v. Microsoft Corp.*, No. 23-cv-11195.

[4] Judge Martínez-Olguín ordered Defendants to file an opposition, if any, to Plaintiffs' Rule 72 objections. ECF 396.

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | unavailable from other custodians (including Ms. Murati) because she was involved in the day-to-day back and forth with Microsoft in ways more senior custodians were not.<br><br>Magistrate Judge Illman erred in various ways. First, he erred by requiring Plaintiffs to identify specific, unique documents in the first instance. That is an impossible standard: parties seeking discovery cannot be expected to know the precise contents of a custodian's files before production. The correct legal standard requires only a showing that the proposed custodian is likely to have unique, relevant information. Plaintiffs met that standard. Second, denying Mayer as a custodian, especially after the court limited Plaintiffs' ability to obtain related discovery from Microsoft, effectively blocks access to critical information about the OpenAI-Microsoft relationship. Finally, the court erred in relying on the existing number of custodians as a basis for denial, as the complexity and scale of the case justify the inclusion of additional custodians that possess unique, relevant evidence, such as Katie Mayer.<br><br>**OpenAI's Position:**  This dispute concerns a motion for reconsideration of an order issued by Magistrate Judge Illman which was previously pending before District Judge Martínez-Olguín, and which now must be addressed by Judge Stein, not this Court. See Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections [to magistrate judge] order[s] . . . .").<br><br>In any event, Judge Illman previously presented Plaintiffs with a clear decision: designate either Ms. Mayer or another OpenAI employee, Jeff Wu, as a custodian. Plaintiffs chose Mr. Wu. But they returned just two months later asking Judge Illman to designate Ms. Mayer anyway—despite his prior ruling. Judge Illman properly declined.<br><br>While Plaintiffs assert that Ms. Mayer has knowledge of various issues, they fail to explain why those issues are relevant and Ms. Mayer's knowledge non-duplicative. Plaintiffs note Ms. Mayer's involvement in |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | a purported training data exchange and on a "Microsoft" team. But OpenAI has already designated Mira Murati, the person (1) to whom Ms. Mayer reported, (2) whom negotiated the data exchange in question, and (3) whom Microsoft identified as its primary point of contact at OpenAI. Plaintiffs' arguments to the contrary are either inapposite or verifiably false. First, Judge Illman never required Plaintiffs to identify specific, unique documents. Second, Plaintiffs cannot describe what supposedly critical information they were unable to obtain from Microsoft or why that information would be available from Ms. Mayer. Third, the law is clear that Judge Illman was entitled to consider the existing number of custodians when evaluating Plaintiffs' demand for Ms. Mayer. Fourth, the statements about Ms. Mayer's role are taken out of context. They concern the sufficiency of Plaintiffs' proffered evidence, not the overall nature of Ms. Mayer's role. Indeed, during the parties' meet and confers Plaintiffs never even asked about, and OpenAI made no representations regarding, the nature of Ms. Mayer's role. |
| ECF 390[5] ECF 391 | March 13, 2025 | ECF 421 | Rule 72 objections challenging Magistrate Judge Illman's ruling on a motion to compel regarding certain additional search terms proposed by Plaintiffs. | N.D. Cal. Class Plaintiffs | OpenAI | The issue has been fully briefed but remains undecided.[6] | **Plaintiffs' Position:** Magistrate Judge Illman denied Plaintiffs' motion to compel OpenAI to produce documents responsive to Plaintiffs' supplemental search terms because, in the court's view, Plaintiffs failed to make "a clear showing of prejudice stemming from gaps or deficiencies in the search terms disclosed by the producing Party." But the Order did not engage with Plaintiffs' proposed search strings, nor did the court even review the search terms before denying Plaintiffs' motion. The Order also ignored the new facts—key to Plaintiffs' copyright infringement claims and OpenAI's fair use defense—that Plaintiffs adduced in discovery warranting the additional search strings. *See* ECF 298 at 3. The failure to address these key issues is clear error. In response, OpenAI argues that Plaintiffs seek to revisit an issue that Magistrate Judge Illman decided multiple times. But Judge Illman rested these decisions on a fundamental error—that the requesting Party shall have no input in determining search terms. Meanwhile the ESI Order entered in the *Authors Guild* Actions strikes |

---

[5] Upon consolidation and access to cross productions, it is possible that the N.D. Cal. Class Plaintiffs may amend or withdraw their Rule 72 objections on this issue.

[6] Judge Martínez-Olguín ordered Defendants to file an opposition, if any, to Plaintiffs' Rule 72 objections. ECF 396.

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | the proper balance by providing a procedure by which a requesting party may request search terms for the other side to run. |

Magistrate Judge Illman also deviated from bedrock e-discovery practices when he ruled that allowing Plaintiffs to have input into OpenAI's search terms might lead to additional discovery disputes. But that is no justification at all, and the alternative is far worse: the court instead granted OpenAI unfettered discretion to run self-serving search terms for all of Plaintiffs' RFPs, and then once OpenAI disclosed its search terms, Plaintiffs had no remedy to address their limitations. That clearly erroneous holding creates the wrong incentive for litigants to run unduly narrow search terms and undermines the usual back-and-forth between the parties. This unilateral search terms approach has been rejected by courts nationwide. See, e.g., *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134-136 (S.D.N.Y. 2009) (issuing a "wake-up call to the Bar in this District about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms" and warning against the perils of "lawyers designing keyword searches in the dark" while citing The Sedona Conference Cooperation Proclamation for the proposition that "the best solution in the entire area of electronic discovery is cooperation among counsel."). Critically, Plaintiffs' proposed eight strings (e.g., torrent) map closely to served RFPs and fill in significant discovery gaps tied to willful infringement and fair-use defenses.

**OpenAI's Position**: Magistrate Judge Illman ruled on this discovery dispute on February 27, 2025 and denied Plaintiffs' request. (Dkt. 357 at 2-3.) Plaintiffs' current challenge is a motion for relief from that order, which needs to be directed to the district judge. (Dkt. 390; Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections [to magistrate judge] order[s] . . . .")). OpenAI has run over 600 search terms and produced over two millions pages of documents to N.D. Cal Plaintiffs. Judge Illman found that Plaintiffs' proposed search terms would "introduce hundreds of thousands of non-responsive documents into [OpenAI's] review queue [and] will only prolong fact discovery while failing to add to the substance of Plaintiffs' case." (Dkt. 357 at 2:21-23.) Judge Illman's reasoning is sound; he considered the search terms that Plaintiffs put at issue in their briefing and had no

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | obligation to consider other terms that Plaintiffs omitted. Further, such review was unnecessary because Plaintiffs failed to make the threshold showing of production deficiencies to justify additional terms.

Judge Illman's order was his third order denying Plaintiffs' requests to compel OpenAI to run Plaintiffs' proposed search terms. (Dkts. 166 at 3:6-9; 247 at 3:5-7; 357 at 1:19-3:2.)  The ESI Order in In re ChatGPT, to which Plaintiffs stipulated, does not permit Plaintiffs to negotiate OpenAI's search terms. Plaintiffs' motion for relief asks the Court to not only rewrite the ESI order but also to inject protracted search term negotiations at what was meant to be the close of fact discovery. Plaintiffs' newly manufactured argument that the ESI protocol that they stipulated to is contrary to law is both unsubstantiated and time-barred. Plaintiffs' motion for relief from Judge Illman's well-reasoned order should be denied. |
| [ECF 405](#)

[ECF 406](#) | March 19, 2025 | [ECF 432](#) | Rule 72 objections challenging Magistrate Judge Illman's ruling on a motion to compel the production of documents in response to a document subpoena issued to Reuters News Media Inc. ("Reuters"). | N.D. Cal. Class Plaintiffs | Reuters | The issue has been fully briefed but remains undecided.[7] | **Plaintiffs' Position:** Magistrate Judge Illman's order denying Plaintiffs' motion to compel production of documents from Reuters is clearly erroneous for two principal reasons. First, the order exceeded the scope of the dispute by quashing Plaintiffs' subpoena in its entirety, including as to executed license agreements that Reuters was already willing to produce. Reuters' willingness to produce these executed licenses demonstrates that compliance would not be unduly burdensome or disproportionate, and that the court's failure to recognize this agreement improperly deprived Plaintiffs of access to highly relevant evidence. The executed licensing agreements are directly relevant to the core issues in the case, particularly the existence and scope of a market for licensing text data for use in training large language models (LLMs), which is central to both the fair use analysis and the calculation of damages.

Second, the order fundamentally undervalues the relevance of the requested licensing evidence. After the Rule 72 briefs were filed, the Copyright Office made clear that "[l]ost revenue in actual or potential licensing markets can also be an element of market harm." U.S. Copyright Office, Copyright and Artificial Intelligence: Part 3: Generative AI Training, at 66 (May 2025) (Pre-Publication Version). News content licenses, such as those held by Reuters, |

---

[7] Judge Martínez-Olguín ordered Reuters to file an opposition, if any, to Plaintiffs' Rule 72 objections. ECF 413.

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | are highly probative of the market for high-quality text data used in LLM training, regardless of whether the content is classified as "news" or "non-news." To OpenAI, the volume of high-quality text data for us as LLM training data is critical; not the book versus non-book distinction. Moreover, OpenAI's primary defense is fair use, and the effect of the alleged infringement on the potential market for or value of the copyrighted work is considered the most important factor in the fair use analysis. *Harper & Row Publ'rs v. Nation Enters.*, 471 U.S. 539, 566 (1985). Furthermore, limiting discovery to party evidence and expert testimony, as the order suggests, is clearly erroneous because real-world licensing agreements from sophisticated market participants like Reuters are necessary to provide a comprehensive and reliable picture of the relevant market for an expert to assess and base their testimony on. Without access to such evidence, Plaintiffs ability to develop a robust damages methodology is unfairly hampered.<br><br>**Non-Party Reuters News & Media Inc.'s ("Reuters") Position:**<br>Plaintiffs' motion for relief from Magistrate Judge Illman's order denying their motion to compel was brought pursuant to Federal Rule of Civil Procedure 72(a), which expressly provides that a "district judge must consider timely objections" to a magistrate judge's non-dispositive pre-trial order.  Thus, plaintiffs' motion for relief is not a discovery motion and Reuters does not agree that it is properly included in response to the court's May 9, 2025 order relating to the May 27, 2025 discovery conference.<br><br>Regardless, as Judge Illman correctly found in denying plaintiffs' motion to compel, plaintiffs are not entitled to "undeniably confidential commercial information (if not trade secrets) from one non-party, Reuters, about its relationship with another non-party" simply because they served a subpoena and deemed the materials "relevant."  (ECF 378 at 4.)  Rather, Rule 45 required that plaintiffs make a "concrete, not speculative" showing of "substantial need" for the requested materials. Id.  Plaintiffs wholly failed to meet this burden and their motion was properly denied.  (Id. at 4-5 ("what Plaintiffs have not done is to even mention (let alone convincingly establish) why the essence of this information (i.e., its upshot or import, which is merely information about the existence of a market for licensing copyrighted 'textual data' |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | to train an AI model) cannot be either obtained from OpenAI, or by expert witness testimony, or by any other means that would not involve prying into the confidential commercial information of two non-parties").)  Plaintiffs' motion for relief – which relies on the same sweeping arguments underlying their motion to compel – does not establish any "clear error" in Judge Illman's order, and their objections should be overruled. |
| ECF 409[8]   ECF 410 | March 20, 2025 | ECF 434 | Rule 72 objections challenging Magistrate Judge Illman's ruling on a motion to compel regarding a document subpoena issued to Microsoft Corp. ("Microsoft") | N.D. Cal. Class Plaintiffs | Microsoft | The issue has been fully briefed but remains undecided.[9] | **Plaintiffs' Position:** Magistrate Judge Illman's order denying Plaintiffs' motion to compel Microsoft's compliance with the document subpoena is clearly erroneous and contrary to law. The order improperly disregards Microsoft's instrumental and deeply integrated partnership with OpenAI, which is central to the issues in this litigation. Plaintiffs have presented evidence that Microsoft not only invested billions into OpenAI but also actively collaborated in the training, development, and commercialization of the OpenAI language models at issue. Critically, discovery has revealed that Microsoft was aware of and approved OpenAI's use of copyrighted data it obtained by illegal means, including by torrenting from shadow libraries like LibGen. Microsoft and OpenAI even exchanged that copyrighted training data. Microsoft's knowledge, approval, and participation in these activities is not only highly relevant to the claims of copyright infringement and willfulness, but also essential to establishing the full scope of OpenAI's unlawful infringement.

Furthermore, Magistrate Judge Illman clearly erred by applying the wrong legal standard. Judge Illman applied a heightened "substantial need" showing for all requests, mischaracterizing the discovery as seeking only confidential commercial information. The proper standard under Rule 26(b)(1) is a balance of relevance, burden, and proportionality. The information Plaintiffs seek—particularly information regarding OpenAI's unlawful conduct—should not be granted any extra level of protection, whether due to Microsoft's current status as a non-party or due toto the purported status of the information as trade secrets or other confidential commercial information.. Microsoft is the only source for its own internal |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | documents, which would naturally include its own internal communications about assessments of OpenAI's use of training data as part of the Microsof-OpenAI relationship. The burden on Microsoft to produce responsive documents is minimal due to its participation as a co-defendant with OpenAI in related matters concerning the same subject matter and due to Microsoft's virtually limitless resources. Any concerns about confidentiality are adequately addressed by the existing protective order. Plaintiffs therefore request that the court set aside the magistrate judge's order and compel Microsoft to produce all responsive documents, as the discovery Plaintiffs seek is vital to the just and complete resolution of the case.<br><br>**Microsoft's Position**: Inclusion of this issue in this chart is improper because Plaintiffs' Rule 72 objections must be addressed by the district court judge. Microsoft maintains that Magistrate Judge Illman was correct in denying Plaintiffs' motion to compel, and Microsoft refers the Court to its Opposition to Plaintiffs' Rule 27 Objection (ECF 434). |