June 18, 2025                                                                                                    **VIA ECF**

Hon. Ona T. Wang
U.S. District Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   ***OpenAI's Response in Support of Request to Adopt Defendants' Proposed Protective Order (ECF 102-1),*** *In re OpenAI, Inc. Copyright Infringement Litigation*, No.1:25-md-03143; This Document Relates To: All Actions

In response to the Court's order, OpenAI addresses two remaining protective order issues: (1) cross-use of Plaintiffs' discovery, and (2) disclosure of AEO material to News Plaintiff executives. (ECF 203.) As applicable, the Court asked the parties to address competitive dynamics, why signing the undertaking would not sufficiently mitigate risk, and whether AEO documents at issue are logged or may require *in camera* review. (*Id.*)

Defendants' proposal balances all parties' ability to access discovery with their need to protect highly confidential and trade secret information. (ECF 102-1.) Plaintiffs' proposal does not.

### 1. OpenAI Needs to Use Plaintiffs' Discovery to Litigate the Actions Efficiently

Plaintiffs object to Defendants' use of their discovery except within the individual action in which discovery was produced. For the reasons discussed in OpenAI's supplemental letter regarding the Deposition Protocol, that means OpenAI will have to litigate the cases individually, for example, filing separate motions on common issues where the MDL Court could address an issue once. Under Plaintiffs' proposal, OpenAI would not be able to reference multiple Plaintiffs' documents in expert reports and would have to confer individually with Plaintiffs to address discovery disputes. The likelihood of overlapping dispositive motions, class certification motions, and shared experts was a key reason the JPML centralized the actions into this MDL to create efficiencies. (ECF 1 at 1-2.) The most appropriate and fair approach permits all parties to use discovery material, subject to the omnibus protective order. *See* Barbara J. Rothstein & Catherine R. Borden, Fed. Jud. Ctr., *Managing Multidistrict Litigation in Products Liability Cases* 21 (2011) ("You should also allow previously taken discovery to be used by all parties."); Protective Order, *In re Google Dig. Advert. Antitrust Litig.*, 1:21-md-03010, Dkt. 564 ¶ 2(e) (June 2, 2023 S.D.N.Y.) (providing for shared use of discovery produced in any individual action for any purpose otherwise permissible under applicable federal rules).

Regardless of any competitive dynamics motivating Plaintiffs' proposal, the omnibus protective order permits Plaintiffs to limit disclosure of highly confidential competitive information to attorneys (AEO and OCO designations), alleviating any concern that cross-use would be disclosed to competitors' decision-makers. Contrary to Plaintiffs' allegation, one plaintiff will not be forced "to share confidential information about its licensing strategy with" other Plaintiffs that it asserts are competitors under the agreed protective order terms. (ECF 97 at 3.)

### 2. Disclosure of OpenAI's AEO Material to News Plaintiffs' Executives Is Unwarranted

A year into discovery, News Plaintiffs want to depart from prior protective orders and disclose all of OpenAI's AEO material to their highest-ranking executives, including the Times' Chairman, the Executive Editor of various Daily News Plaintiffs, and four members of Ziff Davis's executive leadership team.[1]  Given their role in Plaintiffs' relevant strategic decision-making, the Court should not permit News Plaintiffs' executives to access OpenAI's AEO materials.  Permitting access creates undue risk that these executives—consciously or unconsciously—will leverage OpenAI's highly confidential information to develop competing products or to negotiate more favorable contracts with OpenAI or its competitors, to OpenAI's detriment.  Because Plaintiffs cannot establish that such disclosure is necessary, and because the parties can address the sharing of specific documents on an *ad hoc* basis, Plaintiffs' proposal should be denied.

#### a. Disclosure Is Unnecessary and Will Cause OpenAI Irreversible Competitive Harm

AEO designations exist precisely for situations where disclosures would cause commercial harm.  Allowing Plaintiffs' executives to access OpenAI's AEO materials would inflict irreversible competitive harm on OpenAI in two distinct ways.

First, Plaintiffs are actively developing their own internal AI technologies.  The Times has an "A.I. Initiatives" program engaged in "building prototypes of A.I. tools and product features."[2]  Ziff Davis has a "strategic partnership" with Xyla, Inc. to "drive [i]nnovation [u]sing [a]rtificial [i]ntelligence" in the healthcare sector by developing product offerings through Ziff Davis's Everyday Health Group subsidiary.[3]  Granting their executives access to OpenAI's AEO materials—which contain some of OpenAI's most sensitive technical information, including details about how its models operate—would give Plaintiffs an improper competitive advantage.  (Declaration of Michael Trinh ("Trinh Decl.") ¶¶ 3, 5-6.)  Such access could accelerate their product development efforts and diminish OpenAI's competitive edge in the AI market.  (*Id.* ¶ 7.)

---

[1] The individuals are, for the Times, (1) A.G. Salzburger, Chairman and Publisher, (2) Diane Brayton, Executive Vice President and Chief Legal Officer , and (3) Rebecca Grossman Cohen, Chief of Staff to the CEO; for Daily News, (4) Frank Pine, Executive Editor of MediaNews Group, Bay Area News Group, and Southern California News Group; and for Ziff Davis, (5) Vivek Shah, CEO (6) Jeremy Rossen, Executive Vice Present and General Counsel (7) Karen Oh, Chief of Staff and Strategic Planning and Operations, and (8) Joey Fortuna, Chief Technology Officer.  These executives are either business-people or in-house counsel who have competitive or editorial decision-making authority.  (ECF 102-1 ¶ 24(b); ECF 99-2 ¶ 24(b).)

[2] https://www.nytco.com/press/introducing-the-a-i-initiatives-team/

[3] https://investor.ziffdavis.com/news/news-details/2023/Ziff-Davis--Xyla-Partner-to-Drive-Innovation-Using-Artificial-Intelligence-Initial-Focus-in-Healthcare-Vertical/



Second, some Plaintiffs are OpenAI customers; others are customers of OpenAI's competitors.[4] Allowing Plaintiffs' executives to view AEO materials that include confidential financial data and sensitive pricing strategies would give them an unfair advantage in future business negotiations. (*Id.* ¶¶ 4, 5-6.) For instance, if a Plaintiff's executive learns OpenAI's strategies for negotiating contract terms and pricing on enterprise-level ChatGPT services, they could leverage that information to demand more favorable terms from OpenAI or in negotiations with OpenAI's competitors.

These concerns are not speculative. The job titles and responsibilities of the identified executives confirm they hold significant authority over decisions relating to AI technologies—such as selecting AI vendors, overseeing AI tool development, and negotiating licensing agreements. For example, one executive's company profile states that she "leads relationships and strategic partnerships with large tech partners."[5] Ziff Davis identified its Chief Technology Officer, whose responsibilities include "developing proprietary technology across" Ziff Davis' "media businesses."[6]

The likelihood that these executives would rely on, or be influenced by, OpenAI's highly confidential information is substantial. Courts repeatedly have recognized the difficulty of mentally compartmentalizing and suppressing information once it has been absorbed—no matter how well-intentioned the individual may be. As the Federal Circuit explained, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (citation omitted).

For that reason, "[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *In re The City of N.Y.*, 607 F.3d 923, 935 (2d Cir. 2010); *see also* Fed. R. Civ. P. 26(c)(1)(G). "Few circumstances can justify giving an adversary's employees access to a competitor's trade secret information." *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, No. 24-cv-2783, 2024 WL 2833114, at *4 (S.D.N.Y. June 3, 2024) (citation omitted). Even for in-house counsel, courts limit access to AEO materials where the individual's role involves competitive decision-making. *See, e.g.*, *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *Flores v. Stanford*, 18-cv-02468, 2021 WL 4441614, at *9 (S.D.N.Y. Sept. 28, 2021) (recognizing that parties with "competitive decision-making" roles and relationships with competitors are at heightened risk of inadvertent disclosure).

Thus, while signing the protective order's undertaking might be sufficient to prevent competitive harm where individuals who can access AEO materials are not involved in competitive decision-making, the order will be toothless if, as Plaintiffs propose, the executives who can leverage AEO material for competitive gain have access to that information.

---

[4] [redacted]

[5] https://www.nytco.com/person/rebecca-grossman-cohen/

[6] https://www.ziffdavis.com/about/leadership/joey-fortuna

### b. Plaintiffs Have Not Shown That Expanded Disclosure Is Necessary

Plaintiffs have not shown that their executives need to view **all** of OpenAI's AEO materials to litigate the actions. Each Plaintiff is represented by outside counsel who may view AEO materials. *See, e.g.*, *Infosint S.A. v. H. Lundbeck A.S.*, No. 06-cv-2869, 2007 WL 1467784, at *5 (S.D.N.Y. May 16, 2007) ("A confidentiality order . . . may be found to cause minimal prejudice when '[o]utside counsel has been involved in this litigation from the beginning and is fully familiar with the facts.'" (citation omitted)). Similarly, eligible in-house counsel and experts may view AEO materials. (ECF 102-2 ¶ 24(b)-(c).)

### c. Going Forward, the Parties Should Confer About Any AEO Material the News Plaintiffs Seek to Disclose to Non-Attorneys

Finally, consistent with the conduct of all parties, OpenAI has not logged every document it has designated AEO. Rather than imposing a logging requirement or *in camera* review, if Plaintiffs contend specific documents do not merit AEO protection, the parties should follow the protective order's dispute process.[7] (ECF 102-2 ¶ 31; ECF 99-2 ¶ 31.) Similarly, if News Plaintiffs have a good faith proposal concerning specific types of documents they want to show decision-makers, they should share them with OpenAI and the parties can confer to resolve it. Plaintiffs have done neither. Their effort to renegotiate how all AEO materials are handled a year into document discovery is overbroad and creates undue risk to OpenAI.

Sincerely,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Christopher S. Sun* | */s/ Elana Nightingale Dawson* | */s/ Tiffany Cheung* |
| Christopher S. Sun | Elana Nightingale Dawson | Tiffany Cheung |

---

[7] Plaintiffs complain that OpenAI designated a news article as AEO. OpenAI reviewed the document, confirmed it was inadvertently designated, and withdrew the designation. (Blythe Decl. ¶ 2.)

4