December 10, 2025

*Sent via ECF*

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    RE:    **Joint Status Letter [ECF 910]**, *In re OpenAI, Inc. Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW, This Document Relates To: All Related Cases

Dear Judge Wang:

The Parties write to apprise the Court of developments concerning the various outstanding issues addressed during the December 4 Discovery Conference for which the Court ordered the parties to provide an update on December 10. (ECF 910.)

**I.    Class Updates**

    **A. Status of OpenAI's Privilege Re-Review (ECFs 768, 806)**

**Class Plaintiffs' Statement.** It has been more than two months since the Court ruled that "the majority of the documents" in a sample of the documents OpenAI withheld as privileged "are not privileged in whole or in part," and OpenAI has not even completed the first phase of its promised privilege re-review. OpenAI committed to complete the first phase by "early December," but it has not done so. With respect to the ~200 documents in the second phase of OpenAI's privilege re-review, OpenAI has now committed to produce these documents by December 24 and to produce a log "sometime later," but that is insufficient because it constrains the time the parties have to confer on these issues ahead of the January 5 briefing deadline. Plaintiffs respectfully re-urge their request for Court-imposed deadlines on OpenAI's privilege re-review and ask the Court to order OpenAI to complete both phases of its re-review (including producing documents and serving an amended log) no later than December 22, 2025 and to confer on any issues arising out of OpenAI's ongoing re-review before the end of the year.

**OpenAI's Statement.** OpenAI has committed a tremendous amount of resources to the privilege re-review project and made significant progress on a tight time schedule.

- In the past month, OpenAI has reviewed approximately 2,200 of 2,645 documents logged prior to October 1, 2025. Consistent with what it told Plaintiffs was possible, OpenAI anticipates completing Plaintiffs' "first" priority set of documents on or before December 15, 2025, and Plaintiffs' "second" priority set on or before December 24, 2025.
    - Specifically, OpenAI has *completed* re-review of more than 1,600 logged documents, including:
        - Over 90% of Plaintiffs' "first priority" set;

Hon. Ona T. Wang
December 10, 2025
Page 2

- ■ Logged documents involving the eight OpenAI witnesses scheduled for depositions in November and December; and
- ■ Rolling productions of those documents where OpenAI's review resulted in modifications to redactions or to privilege assertions.

  - ○ OpenAI's re-review is *nearly complete* for the remaining logged documents from Plaintiffs' "first priority" set, meaning the documents have already been re-reviewed and are in a late, quality control check phase.

  - ○ Finally, OpenAI is in the process of re-reviewing the 554 logged documents from Plaintiffs' "second priority" set. While OpenAI hopes to complete this review before this date, it has shared with Plaintiffs that it expects to complete the review and make any productions on or before December 24.

- As to privilege logs, on December 4, OpenAI produced a privilege log identifying 11 privileged documents that are implicated by the Court's November 24, 2025 Order, ECF 846.

- As an agreed-upon part of the re-review process, OpenAI also is preparing an updated version of its privilege log to identify other documents on its privilege log that refer to a term identified by Plaintiffs as referring to a "shadow library," and anticipates serving this log on or before December 15.

- Otherwise, to the extent OpenAI produces a document that requires a modification to its privilege log, OpenAI will serve an amended log reflecting that change promptly.

### B. OpenAI Downloading and Output Discovery (ECFs 869, 875)

#### 1. Personal Azure Containers

**Class Plaintiffs' Statement.** Following witness testimony earlier today regarding the process for and burdens of searching OpenAI's Azure accounts, Class Plaintiffs made an additional proposal to OpenAI on Azure container searches and a 30(b) regarding the same. This proposal is proportional to the needs of case and supported by witness testimony. Because the details of the proposal and the supporting testimony are designated under the protective order, Class Plaintiffs are including them in their letter under seal filed separately. OpenAI shared its 676 word statement at 2:25 AM ET on December 11 so Class Plaintiffs cannot respond in full at this time. However, two points bear mentioning:

(1) Class Plaintiffs sent their proposal and understanding of Mr. Sohl's testimony as soon as Class Plaintiffs' portion of the deposition was over (and several hours before questioning finished). Counsel for OpenAI was present at the deposition of Mr. Sohl and had the opportunity to ask questions to clarify any purported misunderstanding. They did not do so. Plaintiffs also offered, in light of Mr. Sohl's testimony, to continue conferring and submit an update to the Court on Friday.

Hon. Ona T. Wang
December 10, 2025
Page 3

OpenAI refused and instead opted to share its position at 2:25 AM the morning after the filing was due.

(2) The representation in the position statement that Mr. Sohl used certain unique alphanumeric identifiers to locate these datasets is inconsistent with his testimony. Class Plaintiffs direct the Court to the excerpt of Mr. Sohl's testimony attached as Exhibit 5 to their sealed letter at Dkt. 945 at pages 12-13, in which Mr. Sohl denies using the unique alphanumeric identifiers which Class Plaintiffs understand OpenAI to be referencing.

**OpenAI's Statement.** After conferring with Plaintiffs for many weeks on the topic of download discovery–and the search of 24 so-called "personal Azure containers" specifically–OpenAI proposed a reasonable search for *exactly* the discovery Plaintiffs said they wanted. Specifically, Plaintiffs asked OpenAI to search the Azure storage containers for 24 employees, to locate (i) "data downloaded from the sources identified in Revised Interrogatory Nos. 21-25 and any resulting datasets," (ii) "datasets purposely downloaded" due to containing copyrighted books, and (iii) "datasets which OpenAI purposefully created via filtering larger datasets of, e.g., scraped materials, down to [copyrighted] books." Plaintiffs proposed that OpenAI apply a set of search terms they provided in November across Azure file names and review hits for responsiveness. OpenAI agreed and its offer stands.[1] OpenAI was—and remains—prepared to do exactly what Plaintiffs had requested up until this evening, to look for the information Plaintiffs claimed to need for their download claim, and in a manner that is feasible to complete before the close of fact discovery in February 2026.

At 5 pm ET on the night of the filing deadline for this letter, however, Plaintiffs abandoned the request that was briefed previously–the one that Interim Lead Counsel described at the hearing as focused on "narrow[ing] down" to "the highly relevant core of the case." (Dec. 4, 2025 Hr'g Tr. 104:25-105:1.) That was a search across roughly 15,000 terabytes of data in the containers associated with 24 individuals using a limited set of search terms. Now, for the first time, Plaintiffs are demanding that OpenAI search all Azure files *across the whole company.* Plaintiffs also abandoned the search terms they shared back in November and proposed new ones, which simply do not work for this type of search. And, without waiting to examine any data OpenAI produces, Plaintiffs also improperly insist that OpenAI share work product, disclose non-responsive and irrelevant file names, and agree to a 30(b)(6) deposition about how it conducts the search. Moreover, Plaintiffs did not share with OpenAI their full submission to the Court (ECF 946) until nearly an hour *after* the midnight ET deadline for this filing.

Ignoring everything OpenAI has told them about the amount of data at issue, and the complexity of the searches involved, Plaintiffs have suggested they will rely on a portion of deposition testimony that they misunderstand. Plaintiffs contend their new search demand would take "at most several hours of coding and less than a week to run." Plaintiffs are wrong. The search

---

[1] To the extent the parties had lingering disagreements, they concerned Plaintiffs' last-minute requests for discovery into the mechanics of OpenAI's work-product protected review procedure, including voluminous productions of non-responsive file names.

Hon. Ona T. Wang
December 10, 2025
Page 4

discussed in Mr. Sohl's deposition today was for a specific pair of datasets that bore unique alphanumeric identifiers that made it possible to more efficiently identify potential files. (And even then, Mr. Sohl handed the results of his broader initial search to counsel, who then invested far more time reviewing the results to identify the correct datasets.) Despite multiple depositions on this issue, Plaintiffs appear to misunderstand all the steps involved in this much more limited search for two specific datasets, including when and how unique identifying codes were used to help verify the results. That targeted search bears no resemblance to the new search that Plaintiffs have just requested for the very first time. If--during today's deposition--counsel had asked Mr. Sohl about their brand-new search proposal, he could have explained why it likely would not run successfully, but if it did, it could generate hundreds of millions or even billions of false positives that would then need to be reviewed for responsiveness. With fact discovery closing in February, there is no time for that kind of approach. That is especially true where OpenAI has offered Plaintiffs a reasonable and proportionate alternative to locate the same information - the very request Plaintiffs had demanded but abandoned hours ago.

The parties need to focus these last few months of discovery on core information relevant to the parties' claims and defenses. OpenAI agreed to do a reasonable search for exactly the data that Plaintiffs said they needed, in exactly the locations that Plaintiffs requested. That was the issue that was briefed in late November, heard on December 4, and it is fully resolved by OpenAI's proposal. Plaintiffs now need to stop expanding their unrealistic demands so that OpenAI and its data experts can complete this discovery on schedule.

### 2. Access Settings

**Class Plaintiffs' Statement.** On the parties' December 9 conferral, OpenAI represented that it located data access policies and had not identified any gaps in these policies. If OpenAI identifies any time periods for which there is no data access policy, Plaintiffs maintain their request that OpenAI search for any server access logs reflecting which individuals actually accessed the data in question, and if neither the data access settings nor the server access logs exist, that OpenAI state as much in a declaration that identifies the individuals who may have knowledge regarding these settings. *See* Dkt. 869.

**OpenAI's Statement.** As OpenAI represented during Thursday's hearing, OpenAI has agreed to perform a reasonable search for data access security policies applicable to the relevant repositories. Those repositories are the locations where materials downloaded from the shadow libraries identified in the *Tremblay* Compromise Interrogatories and any copies of those materials were stored.

The parties first conferred on Plaintiffs' request for access policies and similar materials on November 14, and OpenAI's search for applicable policies is ongoing. Since OpenAI's investigation is ongoing, it has not yet identified whether there are time periods for which there is no data access policy. Plaintiffs have also asked for production of server logs reflecting which individuals accessed the relevant data for periods not covered by available or security documents. In the interest of time, OpenAI is simultaneously investigating Plaintiffs' request and will update Plaintiffs before the holidays.

Hon. Ona T. Wang
December 10, 2025
Page 5

### 3. Downloads and Copies of the Relevant Datasets

**Class Plaintiffs' Statement.** As discussed at the hearing, the parties are largely agreed regarding production of training datasets, the initial download files, and the source code use for processing the latter into the former. The parties remain at an impasse on whether OpenAI must produce copies which were not used or created via the "ordinary" model training process and thus would not be captured by OpenAI's production of training datasets or source code which governs the same. Class Plaintiffs are submitting a separate, sealed letter reflecting these non-training uses as mentioned at the December 4 hearing. OpenAI's statement that Plaintiffs refused to share this information at the conferral is incorrect. Plaintiffs made clear on the meet and confer in advance of this filing what incidents they were referring to and counsel for OpenAI disputed the relevance of the incidents in question on that call.[2]

**OpenAI's Statement.** As discussed during the hearing, OpenAI has already produced or has agreed to produce datasets and source code for the full model training pipeline that relate to copyrighted book files (if any) purposely copied from shadow libraries and other sources. At Thursday's hearing, Plaintiffs vaguely referred to discrete topics they have in mind about which Plaintiffs claim not to already have discovery. Rather than share this evidence with OpenAI and discuss it in conferral, Plaintiffs indicated they would only present it in a separate filing (not shared with OpenAI until nearly an hour *after* the midnight ET deadline for this filing). (*See* ECF 946.) OpenAI will review Plaintiffs' filing and respectfully reserves the right to submit a supplemental statement once it has had a reasonable opportunity to review.

### 4. Review of LibGen Search Term Hits

**Class Plaintiffs' Statement.** At the December 4 hearing, OpenAI represented that it was producing "most to almost all" of the 659 documents that hit on LibGen. 12/4 Hearing Tr. 140:22-23. On the parties' December 9 conferral, OpenAI said it would substantially complete this production by next week. Plaintiffs maintain their request that OpenAI produce all 659 non-privileged documents that hit on LibGen given the importance of LibGen to this case.

**OpenAI's Statement.** Consistent with the representations made in OpenAI's November 24 letter, ECF 875, OpenAI has re-reviewed the non-responsive "hits" to a list of agreed-upon search terms associated with "Library Genesis" in a good faith effort to resolve a cabined dispute. OpenAI has nearly finished that review and is working to produce, if not all, then a substantial majority of responsive, non-privileged documents from that review by Friday, December 12. To the extent any documents within the review require additional time beyond Friday—for example, to complete privilege review—OpenAI will make rolling productions promptly thereafter.

---

[2] Plaintiffs also note that OpenAI first shared its position at 2:25 AM on December 11, nearly two hours *after* OpenAI was served with the filing and exhibits which its statement implies it does not have.

Hon. Ona T. Wang
December 10, 2025
Page 6

### 5. Technical Documents Related to the "Book Summarization" Projection

**Class Plaintiffs' Statement.** On the parties' December 9 conferral, OpenAI represented that it was re-reviewing documents and training data related to book summarization. Class Plaintiffs await the completion of this re-review and maintain their position that both the book summarization project and any follow-on projects are highly relevant uses of Class Plaintiffs' works.

**OpenAI's Statement.** OpenAI understands that Plaintiffs are seeking technical documents associated with a 2021 model alignment research project (which Plaintiffs refer to as the "book summarization" project) and any "follow on" projects. This project is expressly outside the scope of discovery as ordered by the Court. *See* ECF 707 (identifying specific models within the scope of Plaintiffs' claims). However, to avoid further disputes, OpenAI has produced technical material related to this project, and agreed to conduct a reasonable search for source code as well as similar material from any "follow on" projects (which Plaintiffs could not identify) that OpenAI identifies that are within the scope of discovery.

### C. Inspection of OpenAI's Base and Intermediate Models (ECF 787)

**Class Plaintiffs' Statement.** Class Plaintiffs stand by their position in their briefing and believe the Court's December 5, 2025 Order compelling inspection of the GPT-3.5 and GPT-4 base models was justified under Rule 26 and the materials Class Plaintiffs submitted in connection with their briefing. *See* Dkt. 910. Should the Court consider revisiting the matter, Class Plaintiffs request the opportunity to respond to OpenAI's submission.

**OpenAI's Statement.** OpenAI does not intend to seek reconsideration of the Court's order concerning ECF 787.

## II. News Updates

### A. CIR's Destruction of Slack Messages (ECF 779)

**CIR & OpenAI's Joint Statement.** On Monday, December 8, 2025, CIR provided the attached declaration to OpenAI in response to OpenAI's motion regarding CIR's deletion of Slack messages. OpenAI identified for CIR several questions in OpenAI's motion that OpenAI contended were not addressed in the declaration. OpenAI thus requested two hours of 30(b)(6) deposition time, not counted towards the hours cap, to address CIR's deletion of Slack messages. CIR agreed to the requested deposition and has stated that it will continue to provide information on this issue through counsel in the meantime.

### B. OpenAI's Responses to Ziff Davis's RFAs (ECF 788)

**Ziff Davis & OpenAI's Joint Statement.** The parties have reached a compromise with respect to the Ziff Davis-specific RFAs, resolving this dispute.

### C. Microsoft Click-through Rate Data (ECF 765)

**News Plaintiffs' Statement.** The parties are continuing to meet and confer, but the dispute is not yet resolved. Microsoft has agreed to produce data for a portion of the relevant time period by December 12. The data will not be the click-through rate data that News Plaintiffs requested, but Microsoft has represented that News Plaintiffs will be able to generate the requested click-through rate data from the data it produces. Dec. 4, 2025 Hearing Tr. 186:1-6. News Plaintiffs will review the production and confer with Microsoft about any follow-up questions or disputes.

However, News Plaintiffs remain concerned about Microsoft's failure to preserve click-through data for a substantial portion of the relevant time period. The December 12 production will only cover December 2, 2023 through September 30, 2024, omitting data from February 7, 2023 (when Bing Chat was released) through December 1, 2023. News Plaintiffs have repeatedly asked Microsoft for an explanation of whether Microsoft deleted this data and when that deletion occurred, including in emails sent on November 26, December 3, December 5, and December 9. Indeed, this was one of the four questions News Plaintiffs flagged for the Court during the December 4 hearing. Microsoft responded there was no need for the Court to enter an order requiring Microsoft to answer News Plaintiffs' questions, suggesting the parties could address these issues during the meet-and-confer process. Dec. 4, 2025 Hearing Tr. 185:7-10. News Plaintiffs reiterate their request for Microsoft to promptly answer this question, which addresses data that has been relevant since The Times filed suit (Compl. ¶¶ 109, 129, 157, 195) and which The Times expressly requested on May 22, 2024.

**Microsoft's Statement.** During the December 4 hearing, the Court directed the parties to continue meeting and conferring and to provide an update on Microsoft's production. Since that time, Microsoft has provided additional information to News Plaintiffs in response to several of their questions, and Microsoft remains on track to produce by this Friday, December 12, the data that it represented at the December 4 hearing that it would produce, namely disaggregated intermediate data for the websites included in the previously produced search performance data (NYT0000140424 - NYT0000140436) for the time period from December 2, 2023 through September 30, 2024. In addition, Microsoft has continued to investigate News Plaintiffs' questions related to retention and will provide additional information to address those questions, which were not part of News Plaintiffs' motion to compel.

### D. Microsoft Output Log Data (ECF 311)

**News Plaintiffs' & Microsoft's Joint Statement.** Microsoft and News Plaintiffs met and conferred and do not believe Court intervention is required at this time. On December 8 and December 10, Microsoft provided hit counts for thirteen of News Plaintiffs' domains (e.g., nytimes.com, nydailynews.com) and for fifteen keywords of News Plaintiffs' names (e.g., "nyt," "new york times"), which hit on approximately 8.1 million Bing Chat logs. Microsoft has agreed to make available for inspection the approximately 8.1 million Bing Chat logs in a manner yet to be decided, and has begun the process of collecting the responsive logs. Microsoft is working expeditiously and will provide News Plaintiffs with an estimate for completion as soon as it is able. Microsoft and News Plaintiffs will meet and confer to discuss News Plaintiffs' request for

additional keywords and the manner of production of the data. News Plaintiffs' position is that the data should be produced, not simply inspected. Microsoft's position is that access to the data should be provided in a controlled manner that meets News Plaintiffs' needs for data analysis while protecting third-party privacy interests. Microsoft and News Plaintiffs agree to keep lines of communication open and Microsoft will keep News Plaintiffs apprised of the status of the collection.

### III. Combined Class & News Cases Updates

#### A. Scope of Additional Microsoft Discovery Related to GPT-4o and GPT-4o mini (ECFs 856, 866)

**Plaintiffs' Statement.** The parties are meeting and conferring based on the Court's instructions at the December 4 hearing and in the December 5 Order (Dkt. 910). Plaintiffs on December 8 sent a narrowed proposal and list of questions concerning: (i) Custodial document productions for Refreshed Copilot, and (ii) go-get documents for Copilot Search.

Plaintiffs also (iii) requested that Microsoft on a meet-and-confer provide more information about the following "implementations" of GPT-4o and GPT-4o Mini: (1) recipe tips, (2) AI Overviews on Microsoft.com Search Results, (3) Bing Shopping, (4) Summarize top news from Sharepoint in Viva Connections, (5) GhostX and Ghostwriter, (6) a recently announced "News" product, and (7) any other implementations that Microsoft is aware of that are marketed towards or used to draft novels, stories, books, or news content. While the Court's order denied as moot "the parties' respective motions" on some of these implementations (Dkt. 910 at 6), the Court at the hearing instructed the parties to meet-and-confer about these implementations and suggested that Microsoft first provide more information to enable Plaintiffs to appropriately tailor their requests. Dec. 4 Tr. 78:22-79:19, 81:9-16, 95:10-13. During a December 10 meet-and-confer, Microsoft provided limited information about two of the above implementations and refused to provide any information about the others. That meet-and-confer also revealed the parties may have a dispute about another category of documents—(iv) limited go-get documents for Refreshed Copilot. Contrary to Microsoft's claim, Plaintiffs did not agree to Microsoft's proposal on this issue. To the contrary, Plaintiffs reiterated their request and Microsoft never raised any objection. Dec. 4, 2025 Hearing Tr. at 60:8-13.

The Court asked the parties to propose a briefing schedule to resolve these disputes. Dkt. 910 at 7. Plaintiffs propose the following:

- Disputes Regarding Microsoft Office, including financial data for Microsoft Office: Default January 5th through January 8th Briefing Schedule (default word limits apply)

- Disputes Regarding Issue (i) above: Default January 5th through January 8th Briefing Schedule (default word limits apply)

- Disputes Regarding Issues (ii) through (iv) above: Microsoft's Opening Letter Brief Due on December 16; Plaintiffs' Opposition Due on December 19 (default word limits apply)

Hon. Ona T. Wang
December 10, 2025
Page 9

For the third set of issues, Plaintiffs request this earlier briefing schedule so that the parties have more time to implement any rulings from the Court. It also makes more sense for Microsoft to file first, so Plaintiffs can evaluate any concrete burden arguments that Microsoft raises.

On the parties' December 10 conferral, Microsoft proposed that Plaintiffs file their opening briefs on December 19 and that Microsoft file its responses on January 8 (nearly three weeks later) because Microsoft intends to submit declarations in support of its motion and certain Microsoft employees will be unavailable over the holidays. To address this concern and allow Microsoft to prepare its declarations before the holidays, Plaintiffs will inform Microsoft of the scope of Plaintiffs' requests and the relief that Plaintiffs seek on Microsoft Office and Issues (ii), (iii), and (iv) above by Friday, December 12.

At 1:11am ET on December 11, Microsoft sent a 1,035-word position statement to Plaintiffs for the first time. Microsoft's statement is not a "proposed schedule for supplemental briefing" as the Court requested (*see* Dkt. 910 at 7), and Plaintiffs disagree with and object to Microsoft's statement.

**Microsoft's Statement.** Plaintiffs' bullet-point proposals for three separate rounds of briefing should be rejected. Plaintiffs are re-raising issues already resolved at the hearing as well as injecting new issues that don't belong in a proposal for supplemental briefing. On the two issues where the Court actually permitted supplemental briefing (Office LLM product implementations and Bing), Microsoft's proposal that Plaintiffs file their 5-page opening brief on December 19 and Microsoft file its 5-page response on January 8 is reasonable and should be adopted by the Court.

Plaintiffs' first and third bullet points are inconsistent with the Court's December 5, 2025 Order (ECF 910) both in scope and sequencing. The only two issues on which the Court permitted supplemental briefing are (1) the Microsoft Office LLM product implementations in addition to M365, and (2) the three Bing items – Copilot Search (released in June 2025), Recipe tips in recipe answer in Bing, and Bing Shopping Generative Results Page. Because Microsoft likely will need to obtain additional declarations on the burden of discovery associated with these products, and Microsoft's relevant personnel are unavailable the last two weeks of the year, Microsoft proposed that Plaintiffs file their 5-page brief on these two issues by December 19 and that Microsoft respond with its 5-page brief by January 8, 2026. That way, as the Court recognized at the hearing, Microsoft can see the specific scope of what Plaintiffs are requesting in these two categories and why, and can tailor any further declarations to those requests and what will be necessary to address them. *See* 12/4/25 Hrg. Tr. at 97-98 ("So is it sufficient to say that if there is a really big demarcation, that it's crossing the line from M365 to Microsoft Office discovery, and if there's going to be supplemental briefing, I think it's up to the plaintiffs to show me why you get — why the M365 discovery isn't sufficient, and why you need to cross that line into discovery about Microsoft Office products?").

In contrast, Plaintiffs' proposals to put the Office burden issue on a 3-day timetable in January and to add the already-denied financials back to that brief (their first bullet point), while also attempting to force Microsoft to go first on the Bing issue in a separate brief filed next week (their third bullet point), violate the Court's existing orders without explanation. There is no basis for Plaintiffs' attempt to get a third round of briefing on the issue of Office financials as proposed in their first

bullet point. The Court's Order granted Microsoft's protective order that its agreement to provide the M365 financials specific to LLM seat licensing revenue was sufficient, and denied Plaintiffs' motion to compel on all other product financial documents including the Office financial documents. ECF 910 at 7; *see also* 12/4/25 Hrg. Tr. at 90-91, 94, 97-98. If Plaintiffs are seeking reconsideration of that Order, they should file a separate motion for reconsideration. It does not belong in the supplemental briefing. Nor do Plaintiffs explain why Microsoft should now be forced to go first on the Bing issue despite the Court's order to the contrary. And, Plaintiffs do not justify their request for two separate supplemental briefing schedules, one in December and one in January, both with short turnaround. The only thing Plaintiffs said in meet and confer was that "Microsoft's schedule deviates from the norm." But this is not normal briefing—it is supplemental briefing involving significant burden issues that should be addressed with evidence. Three days simply is not enough time to gather additional witnesses and draft declarations to address those burdens once Plaintiffs' demands are set forth. With Microsoft's proposal, Plaintiffs get plenty of time to file their supplement and are done before the holidays, and Microsoft can organize its response and then work with its witnesses during the first week of January.

Finally, as for the remainder of Plaintiffs' insert (which Microsoft received for the first time at 11:27 p.m. ET), the Court should disregard it. The parties are meeting and conferring regarding the request for two custodians regarding New Consumer Copilot and there is no need to address that at this time. Plaintiffs' request for "go-get documents for Copilot Search" is subsumed entirely by the Bing supplemental briefing since that feature, released in June 2025, is part of Bing (as was already discussed at the December 4 hearing). Plaintiffs' repetition of the numbered list of products that was already discussed at great length at the December 4 hearing and was the subject of multiple compromises and orders has no proper place in this report other than as part of the two categories on which the Court permitted supplemental briefing. (Nor did Microsoft refuse to provide information. Microsoft provided exactly the information it promised at the hearing sufficient to eliminate two of the listed products because they are wholly irrelevant to this action—item 2 which is a chatbot that summarizes the content published by Microsoft on its own website, and item 6 which is a feature that sends out emails summarizing recent company events on internal company portals, also completely irrelevant).[3] As for the purported new dispute about go-get documents for New Consumer Copilot, Microsoft did object to providing other documents and the scope of non-custodial discovery regarding that product was resolved at the hearing as part of a global compromise whereby Microsoft added an additional 7 hours of 30(b)(6) witness time—more than 25% of the existing 25-hour cap—to its offer. The scope of non-custodial discovery regarding New Consumer Copilot was resolved.

Plaintiffs are inappropriately trying to relitigate multiple issues through this supplemental briefing process. Microsoft's proposal for 5-page briefs limited to (1) scope of any additional Office

---

[3] Microsoft notes that Plaintiffs also completely changed the description of item 6 from its original wording discussed at the hearing, which was "Summarize top news from Sharepoint in Viva Connections" (the company portal product) to the phrase "a recently announced "News" product." Either this is a misleading change to an existing request, or it is an entirely new and undefined request. Either way it has no business being in a request for supplemental briefing or in this joint report.

Hon. Ona T. Wang
December 10, 2025
Page 11

products and (2) Bing features, filed by Plaintiffs on December 19 and Microsoft on January 8, should be adopted by the Court.

Respectfully submitted,

*/s/ Caitlin S. Blythe*
Caitlin S. Blythe
*Counsel for OpenAI Defendants*

*/s/ Justin A. Nelson*
Justin A. Nelson
*Counsel for Class Plaintiffs*

*/s/ Annette Hurst*
Annette Hurst
*Counsel for Microsoft*

*/s/ Davida Brook*
Davida Brook
*On Behalf of News Plaintiffs*