SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

1000 LOUISIANA

SUITE 5100

HOUSTON, TX 77002-5096

(713) 651-9366

FAX (713) 654-6666

WWW.SUSMANGODFREY.COM

_____

| | | |
|---|---|---|
| 401 UNION STREET<br>SUITE 3000<br>SEATTLE, WA 98101-2668<br>(206) 516-3880 | ONE MANHATTAN WEST<br>NEW YORK, NY 10001-8602<br>(212) 336-8330 | 1900 AVENUE OF THE STARS<br>SUITE 1400<br>LOS ANGELES, CA 90067<br>(310) 789-3100 |

JUSTIN A. NELSON
DIRECT DIAL 713-653-7895

E-MAIL JNELSON@SUSMANGODFREY.COM

December 22, 2025

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

> RE: *In re OpenAI, Inc. Copyright Infringement Litigation* (No. 1:25-md-03143) This document relates to the following Class Cases: Case No. 1:23-cv-08292, Case No. 1:23-cv-10211, Case No. 1:24-cv-00084, Case No. 1:25-cv-03291, Case No. 1:25-cv-03482, Case No. 1:25-cv-03483.

Dear Judge Wang:

Class Plaintiffs ("Plaintiffs") move to compel limited financial and marketing documents related to Microsoft Office (now known as Microsoft 365). Ex. 1. Microsoft objects to providing the financial documents as not relevant and unduly burdensome and objects to providing the marketing documents as unduly burdensome. Microsoft's objections are wrong for two reasons. *First*, the Microsoft 365 financial documents Plaintiffs seek are relevant to disgorgement and statutory damages, and Microsoft has not articulated any burden associated with these documents. *Second*, the marketing documents are relevant to fair use factor four, and Microsoft has failed to articulate any burden associated with Plaintiffs' request for marketing documents related to Microsoft 365's ability to generate books and Microsoft 365's LLM capabilities.

December 22, 2025
Page 2

***Background.*** Microsoft 365 includes Copilot, Microsoft's "advanced AI assistant" powered by OpenAI's large language models ("LLMs"). Ex. 2. Customers can access Copilot in one of two ways in Microsoft 365—(1) by purchasing a Microsoft 365 subscription where Copilot is "embedded within Microsoft 365 apps like Word, Excel, Outlook, Teams, and more," [1] *see* Ex. 2, or (2) by buying an add-on license to Microsoft 365 Copilot, an advanced version of Copilot that interacts with both work and web data as illustrated below:



Ex. 4.

Both the Microsoft 365 eligible license *and* the Microsoft 365 Copilot add-on license incorporate the accused LLMs, and Class Plaintiffs specifically named Microsoft Office in their

---

[1] The three kinds of Microsoft 365 subscriptions are personal ($99.99/year), family ($125.99/year), or premium ($199.99/year). Ex. 3.

December 22, 2025
Page 3

complaint. *See* CCAC ¶¶ 164. Microsoft agreed to produce financials for add-on Microsoft 365 Copilot licenses but refused to produce similar documents for Microsoft 365 licenses.

In March 2025, Plaintiffs moved to compel revenues for Microsoft products incorporating OpenAI's LLMs. *See Authors Guild* Dkt. 356. The Court denied Plaintiffs' motion "pending filing of the proposed consolidated class action complaint," *Authors Guild* Dkt. 425 at 4. Plaintiffs filed the Consolidated Class Action Complaint on June 13, 2025. In Plaintiffs' November 24, 2025 letter on the scope of Microsoft discovery, Plaintiffs renewed their request for financials for Microsoft products. Dkt. 866 at 5.

At the December 4, 2025 hearing, Plaintiffs narrowed their request for financials to Microsoft 365. The Court denied Plaintiffs' request as premature and explained that additional financial discovery on Microsoft 365 is "damages discovery" that can be conducted later. 12/4/25 Tr. at 94:16-19. But given the February fact discovery deadline, Plaintiffs renew their request for the following documents for versions of Microsoft 365 incorporating GPT-3, GPT-3.5, GPT-3.5 Turbo, GPT-4, and GPT-4 Turbo:

- Documents sufficient to show gross revenues for Microsoft 365;
- Documents sufficient to show gross profits for Microsoft 365;
- Marketing materials for Microsoft 365 that advertise or market the ability to use Microsoft 365 for writing, including creative writing and generating books or news content;
- Internal presentations on Microsoft 365's writing abilities;
- Internal presentations on marketing Microsoft 365's LLM capabilities to consumers; and
- Documents sufficient to show the import of OpenAI's LLMs to the financial success of Microsoft 365, including any financial projections of the impact OpenAI's LLMs will have on Microsoft 365.[2]

I.    ***Microsoft must produce documents sufficient to show Microsoft 365 gross revenues and profits.***

***A.    Microsoft 365's gross revenues and profits are relevant.*** Microsoft 365's gross revenues and gross profits are relevant to both statutory damages and disgorgement. Courts in this district consider profits as a factor in statutory damages. *See, e.g., Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983) (listing "the expenses saved and profits reaped by the defendant in connection with the infringement" as one factor of statutory damages).

---

[2] For the first time on the parties' December 22 conferral, Microsoft suggested that it does not attribute additional value to the version of Copilot in Microsoft 365. Plaintiffs are evaluating this information and will continue to confer with Microsoft.

December 22, 2025
Page 4

Microsoft 365's gross revenues and gross profits are also relevant to Plaintiffs' disgorgement remedy. Plaintiffs allege that Microsoft "integrat[ed] ChatGPT and OpenAI's LLMs into Azure and Office 365 products" and seek "statutory damages, actual damages, disgorgement, and other remedies available under the Copyright Act." CCAC ¶¶ 164, 313.

Microsoft argues Microsoft 365's gross revenues and profits are not relevant because "they have no causal relationship" to Plaintiffs' infringement allegations. *Authors Guild* Dkt. 374 at 1-2. Microsoft's argument is a premature summary judgment argument that this Court should reject. At the discovery stage, Plaintiffs do not have to prove that Microsoft 365 gross revenues are related to the infringement during fact discovery. *See, e.g., Viktor v. Top Dawg Ent. LLC*, 2018 WL 5282886, at *3 (S.D.N.Y. Oct. 24, 2018) (denying motion for early summary judgment on disgorgement and explaining that motion was premature "without discovery, including expert discovery"); *see also Prolo v. Blackmon*, 2022 WL 2189643, at *9 (C.D. Cal. Mar. 25, 2022) (rejecting argument that a plaintiff must prove there is a causal link to obtain discovery on infringer's profits); *Kaseberg v. Conaco, LLC*, 2016 WL 3997600, at *7 (S.D. Cal. July 26, 2016) ("[T]he Court agrees with Defendants that Plaintiff must ultimately prove a causal nexus. However, this case is still at the discovery stage. … The question before the Court is therefore what is relevant for purposes of discovery, not whether Plaintiff has met his ultimate burden of proof on damages.").

All that Plaintiffs must do at the discovery stage is allege that the Asserted Works were used to train OpenAI's models,[3] that Microsoft incorporated these models into Microsoft 365 and thus Microsoft 365 infringes Plaintiffs' works,[4] and that Microsoft earned revenue from Microsoft 365.[5] *See* FRCP 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"). The consolidated complaint specifically references Microsoft Office, as did Judge Stein in denying Microsoft's motion to strike. CCAC ¶¶ 164; Dkt. 707 at 6. Microsoft has produced financials for its other products referenced in the complaint, and Microsoft Office/Microsoft 365 should be no exception.

None of the cases cited in Microsoft's briefing supports Microsoft's refusal to produce these documents during fact discovery. *On Davis and Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 2013 WL 5970065 (S.D.N.Y. Nov. 8, 2013) are inapposite because they relate to proof of *indirect profits* at the *summary judgment phase.* Here, Microsoft's profits from Microsoft 365 are *direct profits* because they are generated by "selling an infringing product" and Plaintiffs seek this information during *the discovery phase* of the case. *See Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) (explaining that "direct profits" are generated by selling an infringing product" and indirect profits are "revenues that ha[ve] a more attenuated nexus to the infringement."). Microsoft

---

[3] *See, e.g.*, CCAC ¶¶ 67, 166-295.

[4] *Id.* ¶ 164.

[5] *Id.*

December 22, 2025
Page 5

must promptly produce the requested financial documents so that Plaintiffs can take any additional discovery they need prior to expert discovery and summary judgment.

**B.    *Microsoft failed to substantiate its burden to Plaintiffs' financial requests.*** Microsoft also objects to providing documents sufficient to show Microsoft 365 gross revenues and profits as unduly burdensome. On the parties' December 22 conferral, Microsoft failed to articulate any particular burden associated with Plaintiffs' narrowed requests. Nonetheless, Plaintiffs have preemptively addressed Microsoft's burden arguments by narrowing their requests to "documents sufficient to show" and are willing to further narrowing by proposing search terms if needed. But these financial documents should be non-custodial in nature given the limited information Plaintiffs seek. Microsoft should produce the requested financial documents.

**II.    *Microsoft must produce marketing documents related to Microsoft 365's abilities to write books and news and marketing documents related to Microsoft 365's LLM capabilities.***

Plaintiffs seek marketing materials related to Microsoft 365's writing and LLM capabilities, internal presentations reflecting Microsoft 365's ability to be used for writing and LLM capabilities, and documents sufficient to show the value of OpenAI's LLMs to the financial success of Microsoft 365. These documents are relevant to fair use factor four, the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107(4). Microsoft 365's ability to write creative content and documents marketing these abilities are evidence of market substitution. *See NXIVM Corp. v. Ross Inst*., 364 F.3d 471, 481–82 (2d Cir. 2004) ("The focus here is on whether defendants are offering a market substitute for the original."). Marketing documents and internal presentations about Microsoft 365's writing capabilities and Copilot's impact in Microsoft 365 are relevant evidence of "widespread market harm" under factor four. *See Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 192 (2d Cir. 2024).

The requested marketing documents are highly relevant, and Microsoft has failed to articulate any burden associated with these documents. If Microsoft raises a cognizable burden, Plaintiffs are willing to confer further but respectfully request an order compelling Microsoft to conduct a reasonable investigation for these documents.

Sincerely,

*/s/ Justin A. Nelson*
Susman Godfrey, LLP
Interim Lead Class Counsel