**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates to:<br><br>No. 1:23-cv-08292<br>No. 1:23-cv-10211 | Civil Action No. 1:25-md-03143 |

# Memorandum Of Law In Support Of Defendant Microsoft Corporation's Motion For Judgment on The Pleadings On Books Plaintiffs' Contributory Infringement Claim

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

Count III Pleads Only A Foreclosed Material Contribution Claim ........ 4

CONCLUSION ........ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjmi v. DLT Ent. Ltd.*,
97 F. Supp. 3d 512 (S.D.N.Y. 2015) .......... 4

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011) .......... 3

*Brown v. Netflix, Inc.*,
462 F. Supp. 3d 453 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021) .......... 4

*Cox Communications, Inc. v. Sony Music Entertainment*,
146 S. Ct. 959 (2026) .......... *passim*

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 .......... 2, 5, 7

*Santora v. Hachette Book Grp., Inc.*,
2026 WL 1973634 (S.D.N.Y. July 8, 2026) .......... 7

**Statutes**

35 U.S.C. §271(c) .......... 5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......... 4

Fed. R. Civ. P. 12(c) .......... 4

## INTRODUCTION

As this Court has already recognized, *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026) has a direct impact on contributory infringement claims advanced in these cases. There, the Supreme Court eliminated material contribution as a viable basis for contributory copyright infringement claims. *Id.* at 967. To their credit, News Plaintiffs recognized this impact and sought to amend their claims to try to conform to post-*Cox* reality. The Court denied their attempt to plead tailored-to-infringement and inducement theories, holding that those theories were available from the start, and that there was no good cause to add them at this stage.

Books Plaintiffs did not bother asking the Court for leave to amend, opting instead to pretend that Count III of their Consolidated Class Action Complaint (Dkt. No. 183[1]) already pleads those theories. It does not.

Count III advances a paradigmatic material contribution theory, which, before *Cox* eliminated it, required pleading (1) a material contribution to an infringing act (2) with knowledge of that act. The Consolidated Complaint alleges that Microsoft "materially contributed and facilitated" OpenAI's alleged direct infringement by investing billions of dollars in OpenAI and "designing, creating, and maintaining the bespoke supercomputing system that OpenAI used to maintain and copy" Plaintiffs' Asserted Works. Consol. Compl. ¶ 322 (emphasis added). And it alleges that Microsoft "knew, or had reason to know," of OpenAI's alleged infringement. *Id.* ¶ 323. That is precisely the knowledge-plus-assistance theory *Cox* held insufficient to establish contributory liability. 146 S. Ct. at 967-69.

---

[1] Unless otherwise indicated, all docket citations refer to the MDL docket, 1:25-md-03143-SHS-OTW.

It is also the one and only theory the Complaint alleges. *First*, it does not allege inducement as it identifies no affirmative or purposeful act by Microsoft *encouraging* OpenAI to engage in infringing conduct. *Second*, the Complaint alleges only that Microsoft's Azure supercomputing infrastructure was tailored to OpenAI's LLM training—a technological process that is not alleged to be categorically infringing. This is insufficient to inject for the first time in this case a tailored-to-infringement theory, which requires an allegation that the technology provided is good for nothing else but infringement.

This Court should dismiss Count III with prejudice, just as the materially identical parallel claim has now been excised from the News cases.

**BACKGROUND**

Before *Cox*, copyright plaintiffs could pursue three different routes to contributory liability: inducement, a "tailored-to-infringement" theory, or material contribution. *See, e.g.,* Dkt. 1662 at 3-4 (recognizing the availability of the three theories prior to *Cox*). *Cox* confirms that a "provider induces infringement if it actively encourages infringement through specific acts." *Cox*, 146 S. Ct. at 967. The "tailored-to-infringement" theory applies when infringement is not just "the most conspicuous" or a "major" use of the product or service, but when the product or service is "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (Ginsburg, J. concurring)). And, prior to *Cox*, lower courts had also permitted contributory liability based on a material contribution theory, which required establishing that a defendant "had actual or constructive knowledge of the infringing activity" and "encouraged or assisted others' infringement, or provided machinery or goods that facilitated

infringement." *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011).

*Cox* squarely rejected that third route. It held that "[t]he provider of a service is contributorily liable for the user's infringement *only if* it intended that the provided service be used for infringement." *Cox*, 146 S. Ct. at 967 (emphasis added). And it made clear that the required intent can be shown in only one of two ways: "if the party induced the infringement or the provided service is tailored to that infringement." *Id.* Mere knowledge is not enough. *Id.* at 968. Nor may contributory liability rest on a provider's knowledge of infringement coupled with "insufficient action to stop it." *Id.* at 969.

This Court has already applied *Cox* to the claims in this MDL. In its August 6, 2026, Memorandum Order, the Court underscored *Cox*'s holding that material contribution "is not a valid theory of contributory liability for copyright infringement." Dkt. No. 1662 at 2. The Court then dismissed with prejudice The New York Times's and Daily News Plaintiffs' material contribution claims pertaining to alleged *end-user* infringement and denied their requests to add inducement and tailored-to-infringement theories against Microsoft. *Id.* at 3-4. *Cox*, the Court explained, "did not alter the viability of 'inducement' and 'services tailored to infringement' theories of contributory copyright infringement liability"; it "merely declared the invalidity of the [material contribution] theory of liability that the New York Times and Daily News" had pursued throughout this litigation. *Id.* at 3. The Court further reasoned that permitting News Plaintiffs to "switch their theories now would require reopening discovery into Microsoft's intent and whether the services Microsoft provided to OpenAI were tailored to infringement." Dkt. No. 1662 at 4.

In light of *Cox* and this Court's August 6th Order, on August 11, 2026, counsel for Microsoft requested that both Class and News Plaintiffs withdraw their contributory infringement claims against Microsoft. The New York Times and Daily News Plaintiffs subsequently filed amended complaints voluntarily dismissing their respective contributory infringement claims. *See* Dkt. No. 1677 (*NYT* Third Am. Compl.) at 64; *Daily News* Dkt. No. 777 (*Daily News* First Am. Compl.) at 88. But Books Plaintiffs refused, necessitating this motion.

**ARGUMENT**

**Count III Pleads Only A Foreclosed Material Contribution Claim.**

Rule 12(c) authorizes judgment where the pleadings, taken as true, fail to state a legally sufficient claim. Fed. R. Civ. P. 12(c). The governing standard is "identical to that for granting a Rule 12(b)(6) motion for failure to state a claim," and judgment should be entered when, accepting well-pleaded allegations as true, "the moving party is entitled to judgment as a matter of law" on the face of the pleadings. *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 459 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021) (citation omitted). Conclusory assertions and legally insufficient theories are not sufficient "to state a claim for relief that is plausible on its face," *Adjmi v. DLT Ent. Ltd.*, 97 F. Supp. 3d 512, 526 (S.D.N.Y. 2015), nor to satisfy the basic requirements of notice pleading under Rule 8. This Court should dismiss Count III because the only theory it alleges was rejected in *Cox*.

Count III's contributory infringement allegations against Microsoft track the pre-*Cox* material contribution formulation nearly word-for-word. Books Plaintiffs allege that Microsoft "materially contributed and facilitated" OpenAI's direct infringement by providing billions of dollars in investment and designing, creating, and maintaining the

"bespoke" supercomputing system OpenAI allegedly used in training its large language models. Consol. Compl. ¶ 322 (emphasis added); *see also id.* ¶ 54 (supercomputer was "tailored" to "OpenAI's needs"). They also allege that Microsoft "knew, or had reason to know," of that infringement and assisted OpenAI's copying. *Id.* ¶ 323; *see also id.* ¶ 133 (Microsoft "would have known" of OpenAI's conduct). That is what *Cox* rejected when it said a defendant cannot be held liable for "supplying a product with knowledge that the recipient will use it to infringe copyrights." 146 S. Ct. at 966.

This Court's August 6, 2026 Order described News Plaintiffs' claims as similarly alleging that Microsoft "knew of and 'materially contributed' to direct infringement by OpenAI." Dkt. No. 1662 at 2. And News Plaintiffs then withdrew the claim rather than maintaining that materially identical assertions about Microsoft's "bespoke" supercomputing systems could support a claim. *See, e.g., NYT* Second Am. Compl. (Dkt. No. 72) ¶ 67

Books Plaintiffs nevertheless appear poised to try a maneuver that News Plaintiffs recognized as a non-starter; in response to Microsoft's August 11 letter, they contended that their allegations of a "bespoke," "specialized," and "tailored" supercomputer suffice to state a tailored-to-infringement claim. *See, e.g.,* Consol. Compl. ¶ 130. They do not. *Cox*'s "tailored-to-infringement" theory is not triggered when a defendant customizes a product for a *customer* or a *task*. It applies only when the product or service is "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cox*, 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). In other words, it applies when a technology is "especially made" for or "adapted to" *infringement itself*. *Id.* at 968 (quoting 35 U.S.C. §271(c)).

Books Plaintiffs allege only that Microsoft's system was tailored to LLM training,

*not* to infringement. They allege that Microsoft designed "tailored supercomputing systems *for OpenAI's needs*" (Consol. Compl. ¶ 54); that OpenAI required a "specialized supercomputing system to *train*" its models (*id.* ¶127, emphasis added); that Microsoft designed that system "for the purpose of *training* OpenAI's LLMs (*id.* ¶128, emphasis added); and that Microsoft publicly described the infrastructure as "designed specifically to *train*" OpenAI's models. *Id.* ¶130 (emphasis added). And nowhere do they allege that *all* training *inherently* constitutes infringement.

In fact, the Consolidated Complaint *forecloses* any inference that Microsoft's infrastructure was tailored to infringement. The Consolidated Complaint identifies multiple potential sources of training data—including public-domain and licensed works—and alleges that OpenAI "could have 'trained' its LLMs on works in the public domain" or "paid a reasonable licensing fee to use copyrighted works." *Id.* ¶ 9. Those acts would have used the very same "tailored" and "bespoke" supercomputer Microsoft provided. The Consolidated Complaint thus confirms that LLM training infrastructure is agnostic as to the legal status of the training data and is capable of noninfringing uses. And again, News Plaintiffs, on materially identical allegations, never even tried to suggest that they had somehow already pled a tailored-to-infringement claim. In fact, The Times's Third Amended Complaint *still* contains allegations of a "complex, bespoke supercomputing system" (Dkt. No. 1677 ¶ 92), despite the withdrawal of a contributory infringement claim against Microsoft. Like News Plaintiffs, Books Plaintiffs also chose not to plead a tailored-to-infringement claim even though, as this Court observed, they "were free before *Cox*" to do so. *See* Dkt. No. 1662 at 3-4.

Nor could Books Plaintiffs recharacterize their theory as sounding in inducement, another theory that was well-recognized before *Cox*. Inducement is a demanding,

intent-based theory requiring both "specific acts" that "actively encourage[] infringement" and an "affirmative intent that the product be used to infringe." *Cox*, 146 S. Ct. at 967–68 (quoting *Grokster*, 545 U.S. at 936, 942). That standard demands purposeful efforts to foster infringement—such as "express promotion" or "marketing" of infringing uses—not merely conduct that may facilitate it. *Id.* at 968. A plaintiff therefore must plausibly allege "purposeful conduct" the defendant "undertook to encourage another to engage in copyright infringement." *Santora v. Hachette Book Grp., Inc.*, 2026 WL 1973634, at *5 (S.D.N.Y. July 8, 2026) (dismissing inducement claim where conclusory allegations failed to establish such purposeful conduct).

The Consolidated Complaint does not satisfy that standard. For one, nowhere does it even use the words "induce," "encourage," or any variation thereof. More importantly, it does not allege the conduct an inducement theory would require. The Microsoft-specific allegations concern investment, computing capacity, system design, testing, maintenance, engineering support, knowledge of OpenAI's training process, and alleged assistance after Microsoft became aware that OpenAI's dataset included copyrighted material. *See* Consol. Compl. ¶¶ 127-34, 322-23. Nowhere do Books Plaintiffs allege that Microsoft urged OpenAI to infringe copyrights.

The distinction between knowledge and active encouragement is all-important after *Cox*. The Consolidated Complaint is filled with attempts to satisfy a knowledge theory—for example, that Microsoft "would have known" through its technical work that OpenAI's data included "pirated and copyrighted material, *id.* ¶ 133, or that Microsoft "knew, or had reason to know" of OpenAI's alleged infringement, *id.* ¶ 323. But *Cox* holds that knowledge—even knowledge that a product or service will be used to infringe—is insufficient to establish the intent required for contributory liability. 146 S.

Ct. at 968. Continuing to provide infrastructure or technical assistance after obtaining such knowledge is the material-contribution theory *Cox* rejected, not inducement.

## CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court dismiss Count III of Books Plaintiffs' Consolidated Class Action Complaint with prejudice.

Dated: September 4, 2026

Respectfully Submitted,

*/s/ Annette L. Hurst*

ORRICK, HERRINGTON & SUTCLIFFE LLP
Annette L. Hurst (admitted pro hac vice)
Daniel Justice (admitted pro hac vice)
Robert Scott Shwarts
Catherine Lui (admitted pro hac vice)
Amanda H. Schwartz (admitted pro hac vice)
Ana Mendez-Villamil (admitted pro-hac vice)
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
ahurst@orrick.com
djustice@orrick.com
aschwartz@orrick.com
amendez-villamil@orrick.com

Christopher J. Cariello
Lisa T. Simpson
Marc Shapiro
Vanessa Sorrentino
Hilda Obeng
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
ccariello@orrick.com
lsimpson@orrick.com
mrshapiro@orrick.com
vsorrentino@orrick.com
hobeng@orrick.com

Sheryl Koval Garko (admitted pro hac vice)
Laura Brooks Najemy (admitted pro hac vice)
222 Berkley Street
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 880-1801
sgarko@orrick.com
lnajemy@orrick.com

Isaac Sawlih Behnawa (admitted pro hac vice)
Johnathan Vaknin (admitted pro hac vice)
355 S. Grand Ave. Suite 2700
Los Angeles, CA 90071
Telephone: (213) 612-2179
Facsimile: (213) 612-2499
ibehnawa@orrick.com
jvaknin@orrick.com

Monica Svetoslavov (admitted pro hac vice)
Louis Andrew Schreiber
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
msvetoslavov@orrick.com
aschreiber@orrick.com

FAEGRE DRINKER BIDDLE & REATH LLP
Jeffrey S. Jacobson
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 248-3191
jeffrey.jacobson@faegredrinker.com

Jared B. Briant (admitted pro hac vice)
Kirstin L. Stoll-DeBell (admitted pro hac vice)
Timothy Scull (admitted pro hac vice)
Shelby Pickar-Dennis (admitted pro hac vice)
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 607-3588
jared.briant@faegredrinker.com
kirstin.stolldebell@faegredrinker.com
timothy.scull@faegredrinker.com
shelby.pickar-dennis@faegredrinker.com

Lora A. Brzezynski (admitted pro hac vice)
Brianna Lynn Silverstein (admitted pro hac vice)
Faith Maggard (admitted pro hac vice)
1500 K Street NW, Suite 1100
Washington, DC 20005
Telephone: (202) 230-5000
Facsimile: (202) 842-8465
lora.brzezynski@faegredrinker.com
brianna.silverstein@faegredrinker.com
faith.maggard@faegredrinker.com

Carrie A. Beyer (admitted pro hac vice)
320 South Canal Street, Suite 3300
Chicago, IL 60606-5707
Telephone: (312) 569-1000
Facsimile: (312) 569-3000
carrie.beyer@faegredrinker.com

Elizabeth M.C. Scheibel (admitted pro hac vice)
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
elizabeth.scheibel@faegredrinker.com

Andrew Lawrence Van Houter
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7018
Facsimile: (973) 360-9831
Andrew.vanhouter@faegredrinker.com

*Attorneys for Defendant Microsoft Corporation*

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is **2,021** words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word-count feature of the word-processing system used to prepare this memorandum.

Dated: September 4, 2026

By: */s/ Annette L. Hurst*

Annette L. Hurst