UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>OpenAI, INC.,<br><br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>*All cases* | 25-md-3143 (SHS) (OTW) |

**MEMORANDUM OF DIGITAL CONTENT NEXT IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE IN SUPPORT OF NEWS PLAINTIFFS**

Pursuant to Federal Rule of Civil Procedure 7(b), the Court's inherent authority, and its Orders of August 7, 2026 (ECF 1663) and September 24, 2026 (ECF 2049), Digital Content Next ("DCN") hereby respectfully moves for leave to file the accompanying brief, filed concurrently as Exhibit A (the "Proposed Amicus Brief"),[1] and Declaration of Rande E. Price, dated October 29, 2026, filed concurrently as Exhibit B (the "Price Declaration")), each in support of News Plaintiffs' September 17, 2026 Motion for Summary Judgment, (the "Motion").[2]

[1] The Proposed Amicus Brief complies with the Court's Orders of August 7, 2026 (ECF 1663) and September 24, 2026 (ECF 2049), and Local Civil Rule 7.1(c) because the Proposed Amicus Brief contains 5,559 words. DCN is a non-profit, tax-exempt business association organized under Section 501(c)(6) of the Internal Revenue Code and based in New York, New York. DCN has no parent corporation, and no publicly held corporation has 10% or greater ownership in DCN. DCN affirms that no counsel for a party authored the Proposed Amicus Brief in whole or in part, and no person other than DCN contributed any money to fund its preparation or submission. DCN notes that plaintiff The New York Times is a member of DCN.

[2] Unless otherwise indicated, all defined terms take on the meaning given to them in News Plaintiffs' Combined Summary Judgment Brief. *See In re: OpenAI, Inc., Copyright Infringement Litigation*, 1:25-cv-04315-SHS-OTW, Docket No. 647-1 (Sept. 17, 2026).

## INTEREST OF *AMICUS CURIAE*

Founded in 2001, DCN is the only trade organization dedicated to serving the unique and diverse needs of high-quality digital content companies that enjoy trusted, direct relationships with consumers and advertisers. DCN's members[3] include many of the most trusted and well-respected publishing brands in the United States. Together, DCN's members have an unduplicated audience of 259 million unique visitors and reach 95 percent of the U.S. online population. Consumers seek out DCN member brands because they value trustworthy information that has gone through a rigorous editorial process, and publishers are held to account for the quality and trustworthiness of their news and entertainment by audiences who have high expectations.

The rise of generative AI tools that summarize and present publishers' original content poses an existential threat to the publishing industry. Web traffic, subscriptions, online advertising, and licensing are critical to publishers' operations, and the revenue from these workstreams funds the provision of valuable, expensive original content including investigative reporting. AI tools that copy content and present it to users without sending them directly to the source (or without other financial renumeration) strike at the heart of publishers' business models and deprive them of revenue necessary to produce new works.

AI companies' wholesale piracy of original content has already throttled publisher revenues and, if allowed to continue, could break the back of the free press on which society, including those same AI companies, depends. In this vicious cycle, Defendants are draining the life's blood from news and content providers every time they copy original content and present it as tool output. In this action, the Court has the opportunity to serve as a bulwark protecting creative expression and

[3] *See* https://digitalcontentnext.org/membership/members/ for a listing of current DCN members.

defending the rights of authors and publishers against an onslaught of copying by enormous, well-funded infringers the likes of which the world has never before seen.

DCN's membership, which includes a broad cross-section of leading news and digital media brands, places DCN in a unique position to advise the Court on the impact of Defendants' practices on DCN's members and, by extension, consumers of digital news and media. DCN regularly conducts private surveys of its members that provide perspective as to the toll Defendants' practices have taken across the news and media industries. The results of several of those surveys—which demonstrate that the rise of generative AI has had real, deleterious effects on revenue streams that are critical to the maintenance of a vibrant free press and information economy—are discussed in DCN's Proposed Amicus Brief.

* * *

DCN respectfully requests the Court grant DCN's motion for leave to file the Proposed Amicus Brief attached thereto as Exhibit A and Price Declaration attached thereto as Exhibit B.

Dated: October 29, 2026

Respectfully submitted,

HUTH REYNOLDS LLP

*/s/ Karl C. Huth*
Karl C. Huth
Matthew J. Reynolds
Jennifer Sturiale, Of Counsel
J. Lee Hill
huth@huthreynolds.com
reynolds@huthreynolds.com
jsturiale@huthreynolds.com
lhill@huthreynolds.com
41 Cannon Court
Huntington, NY 11743
Tel: (631) 263-3648
Fax: (646) 664-1512

*Attorneys for Digital Content Next*

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Civil Rule 7.1(c), I hereby certify that the foregoing Memorandum of Law complies with the word count limit because it contains 697 words, excluding the parts exempted by Local Civil Rule 7.1(c). The basis of my knowledge is the word count feature of the word-processing system used to prepare this Memorandum of Law.

Dated: October 29, 2026

By: */s/ Karl C. Huth*