HEARRON PLLC

NEW YORK
305 Broadway, Suite 700
New York, New York 10007
www.hearronlaw.com

October 29, 2026

**VIA ECF**

Hon. Sidney H. Stein
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: *In re OpenAI, Inc. Copyright Infringement Litigation*, No. 25-md-3143, Motion for Leave to File Brief Amici Curiae on behalf of Engine Advocacy, et al.**

Dear Judge Stein:

Pursuant to the Court's Order of August 7, 2026 (ECF 1663), Engine Advocacy, Developers Alliance, and Lazy Moose Co. respectfully move for leave to file the attached brief as amici curiae in support of Defendants' motions for summary judgment.

## I. Interests of Amici

Engine is a nonprofit technology policy, research, and advocacy organization that works with government officials and a community of thousands of high-technology, growth-oriented startups across the nation to support innovation and entrepreneurship through research, policy analysis, and advocacy. It has addressed the question now before the Court in comments filed with the U.S. Patent and Trademark Office and the U.S. Copyright Office. Developers Alliance advocates for software developers, the companies they lead, and the industries that depend on them. Lazy Moose Co. is a startup whose product is built on frontier large-language models, including OpenAI's. Amici share an interest in ensuring that startups can continue to use and build on foundation models at a cost they can bear.

## II. The Proposed Brief Offers Information and a Perspective the Parties Do Not

"An amicus brief should normally be allowed when," among other circumstances, "the amicus has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2022 WL 17326181, at *2 (S.D.N.Y. Nov. 29, 2022) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)). Leave is particularly appropriate where the issues are "likely to engender reasonable expressions

of public interest from a universe much larger than the adversaries" before the Court. *Weininger v. Castro*, 418 F. Supp. 2d 553, 554 (S.D.N.Y. 2006).

The proposed amicus brief of Engine, et al. meets that standard and would be helpful to the Court in deciding the issues in this case that will have far-reaching implications.

*First*, the proposed brief speaks to the interests of startups—a huge segment of the AI ecosystem that is not represented in this case. The parties are some of the largest AI technology companies and some of the largest rightsholders. But the AI ecosystem is much larger and more diverse than its largest players, and much smaller businesses will be directly affected by the outcome of this case. By volume, the vast majority of the AI ecosystem is comprised of startups that do not build or develop their own foundation models but that adapt existing models to build products of their own.

*Second*, the proposed brief grounds the fair-use factors in real products. The brief describes four startups from Engine's network that have developed AI-based products by adapting general-purpose foundation models. These products show concretely why using copyrighted material to train a large-language model is transformative and why it does not affect the market for the underlying those works.

*Third*, the proposed brief supplies information that both sides have said is missing. The United States "takes no position on whether a licensing regime would be financially or logistically feasible." ECF 1682 at 4 n.13. The News Plaintiffs argue that the need to pay copyright licensing fees would not impose "a significant barrier to entry for any hypothetical industry start-up," ECF 2071 at 7, and, focusing solely on the largest players, they argue that "licensing fees for copyrighted content are barely a footnote" for those companies, *id.* at 10. But the proposed brief explains that a licensing requirement would erect an insurmountable barrier to AI development among startups. The brief estimates that licensing the pretraining data for a single large-language model would cost about $10 trillion—roughly $1.4 million per commercial user if passed downstream, which is about the size of an average startup's entire first funding round. And large-language model developers that could not afford these exorbitant costs—especially makers of open-source models, which startups depend on—would need to reduce the amount of data used to train their models, resulting in models of severely degraded quality to the point of being unsuitable for use. The brief also explains why licensing at that scale is not realistically possible. The parties' briefs do not address these questions from the perspective of the startups that would bear those costs.

**III. Conclusion**

For the foregoing reasons, amici respectfully request that the Court grant leave to file the attached proposed brief. A proposed order granting leave to file the brief is also attached.

Respectfully submitted,



Marc Hearron
HEARRON PLLC

*Counsel for Amici Curiae Engine Advocacy, Developers Alliance, and Lazy Moose Co.*

cc: All counsel of record (via ECF)