**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: OPENAI, INC. COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To: All Cases | No. 25-md-3143 (SHS) (OTW) |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS

Proposed amici curiae the AI Coalition for Data Integrity; Writers Guild of America, West, Inc.; Writers Guild of America East, Inc.; National Association of Voice Actors; Microstocksolutions LLC; Digital Media Licensing Association, Inc. d/b/a Digital Media Leadership Alliance; Transparency Coalition AI; Association of Medical Illustrators; Association of Independent Music Publishers; and Music Workers Alliance, Inc. (collectively, "Amici") respectfully move for leave to file the accompanying Brief of Amici Curiae AI Coalition for Data Integrity et al. in Support of Plaintiffs' Motions for Summary Judgment and in Opposition to Defendants' Motions for Summary Judgment (the "Brief"), attached as Exhibit A to the Declaration of Tod Cohen (the "Cohen Declaration"), in connection with the pending motions for summary judgment.

## PRELIMINARY STATEMENT

The United States has asked the Court to weigh national security, and the competitive position of American developers, in the fair use balance. Statement of Interest of the United States (ECF No. 1682). Amici are rightsholders, the organizations that represent creators, and participants in the market for licensed artificial intelligence ("AI") training data that the parties dispute. They offer the Court three things the parties are not positioned to supply: the perspective of participants in that market who are not parties to this case; an account of how the security interests the United States invokes bear on the documentation of training data; and the legal context of recent rulings

and legislation in other jurisdictions. The Brief does not simply repeat the parties' arguments, and it is within the word limit the Court set.

## INTEREST OF AMICI CURIAE

The AI Coalition for Data Integrity ("AICDI") is a coalition of technology and content interests that supports transparency about AI training data and the licensing of copyrighted works used in training. AICDI has filed amicus briefs on these issues in *Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence Inc.*, No. 25-2153 (3d Cir.), and *X.AI LLC v. Bonta*, No. 26-1591 (9th Cir.). AICDI's interest is an AI training-data market that works: developers know what they are building on, creators are paid for what they supply, and a record of both exists.

Writers Guild of America, West, Inc. is a labor union representing approximately 11,000 professional writers who write literary material for television and streaming shows, movies, news programs, and documentaries.

Writers Guild of America East, Inc. is a union of more than 7,000 writers and other creative professionals working in film, television, and online media, including writers of theatrical features, episodic television, late night comedy, television and radio news, online journalism, and scripted podcasts. Through collective bargaining and policy advocacy, it works to protect the value and integrity of its members' written work by ensuring that generative artificial intelligence is not used to substitute for human creativity. Writers Guild of America, West, Inc. and Writers Guild of America East, Inc. have also joined a separate proposed amicus brief filed with Screen Actors Guild-American Federation of Television and Radio Artists and the American Federation of Musicians of the United States and Canada (ECF No. 2332).

The National Association of Voice Actors ("NAVA") is a trade association that represents voice actors in 47 states and 22 countries. Voice actors have historically earned their living by licensing their recorded performances. That licensing framework sustains the voice-over industry and the voice-data supply chain that technology companies rely on. Without this framework,

neither would survive. Licensing content for all uses, including AI training, is a proven model that has been trusted and refined over decades.

Microstocksolutions LLC has provided data licensing, content moderation, and metadata services to the visual media industry since 2008, and helps rightsholders prepare their work for licensing, including for AI training.

Founded in 1951, Digital Media Licensing Association, Inc. d/b/a Digital Media Leadership Alliance ("DMLA") is a not-for-profit trade association whose members license visual and other media content to editorial and commercial users worldwide, ranging from global platforms and large libraries to boutique collections and the individual creators they represent. DMLA's members sit on the licensor side of exactly the market at issue in this case. They negotiate and sign direct AI training licenses, and they participate in collective licensing for AI uses. Every unlicensed ingestion of their content is a sale that market would otherwise have made, and it undercuts the pricing of the deals DMLA's members are signing today.

Transparency Coalition AI is a 501(c)(3) nonprofit organization that advocates for transparency about the data used to train artificial intelligence and for policies that ensure AI technologies are developed and used safely and in the public interest. It has a direct stake in whether AI developers must account for the works on which their models are trained.

The Association of Medical Illustrators ("AMI") is the sole professional organization for biomedical illustrators and animators. Its members have a vested interest in the AI-licensing market for their creative works, which serve a critical role in the advancement of science and medicine in the United States and throughout the world, because that market is how they earn a living.

The Association of Independent Music Publishers ("AIMP") is a fifty-year-old organization with chapters in Los Angeles, New York, Nashville, and Atlanta. Its core mission is to educate and inform songwriters and independent music publishers on current industry events and best practices. Protecting copyright is the lifeblood of independent music publishers and

songwriters, and transparency into AI training, as well as fair compensation for rightsholders, is critical to the publishing industry.

Music Workers Alliance, Inc., a 501(c)(3) "workers' center," mobilizes independent musicians to confront AI exploitation, defend their livelihoods, and fight for control over their creative work.

Amici and their members create, license, or prepare works on which generative AI models are trained, or advocate for transparency about that use, and each has a direct stake in whether that use requires permission and payment.

## CORPORATE DISCLOSURE STATEMENT

The AI Coalition for Data Integrity is an unincorporated coalition. It has no parent corporation and issues no stock. Writers Guild of America, West, Inc. and Writers Guild of America East, Inc. have no parent corporations, and no publicly held corporation owns 10% or more of the stock of either. The National Association of Voice Actors has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Microstocksolutions LLC has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Digital Media Licensing Association, Inc. is a not-for-profit corporation and has no stock. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Transparency Coalition AI is a nonprofit organization. It has no parent corporation and issues no stock. The Association of Medical Illustrators is a nonprofit corporation. It has no parent corporation and issues no stock. The Association of Independent Music Publishers has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Music Workers Alliance, Inc. is an independent nonprofit corporation with no parent corporation. It has no publicly traded stock, and no publicly held corporation owns 10% or more of its stock.

## ARGUMENT

### I. THE COURT HAS BROAD DISCRETION TO ACCEPT AN AMICUS BRIEF THAT OFFERS A PERSPECTIVE THE PARTIES CANNOT.

The Federal Rules of Civil Procedure do not address amicus briefs, and the decision whether to accept one rests in the court's discretion. *See C & A Carbone, Inc. v. Cnty. of Rockland*, No. 08-cv-6459 (ER), 2014 WL 1202699, at *3 (S.D.N.Y. Mar. 24, 2014). Courts in this District have looked to the standard stated in *Ryan v. Commodity Futures Trading Commission*: "[a]n amicus brief should normally be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J., in chambers); *see C & A Carbone*, 2014 WL 1202699, at *3. The Court has provided for such submissions here by setting a procedure and a word limit for them. Order of Aug. 7, 2026, ECF No. 1663.

### II. THE PROPOSED BRIEF WILL ASSIST THE COURT.

*First*, the Brief responds to the Statement of Interest of the United States, from the perspective of participants outside the litigation. It shows that, if the Court weighs national security under the first and fourth factors, the government's own security agencies call for tracking the provenance of training data, because a corpus whose sources cannot be traced cannot be checked for poisoning or manipulation.

*Second*, the Brief places before the Court the recent decisions of the Munich Regional Court in *GEMA v. OpenAI* and *GEMA v. Suno*, Korea's 2026 guidance on fair use and AI training, and the training-data obligations of the EU Artificial Intelligence Act. Amici offer these as context, not as binding authority, bearing on the United States' contention that a licensing outcome would disadvantage American developers, and on whether a market for licensing training data is "traditional, reasonable, or likely to be developed." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994).

*Third*, Amici participate in the market for licensed training data as licensors, creators, and service providers. They describe from that experience how the market functions, why the

Defendants' lack of transparency about what they copied suppresses it, and why disclosure and licensing allow smaller developers and independent creators to compete. The parties litigate their own transactions; Amici can describe the market as a whole.

## III. THE MOTION COMPLIES WITH THE COURT'S ORDER.

This motion is filed within the deadline for amicus motions, which the Court extended to October 30, 2026. As the Court's Order of August 7, 2026 (ECF No. 1663) requires, the proposed Brief is included with this motion, and it contains 5,670 words, within the 6,000-word limit. No party's counsel authored the Brief in whole or in part, and no party or party's counsel contributed money intended to fund its preparation or submission.

## CONCLUSION

For the foregoing reasons, Amici respectfully request that the Court grant leave to file the Brief attached as Exhibit A to the Cohen Declaration.

Dated: San Francisco, California
October 30, 2026

Respectfully submitted,

/s/ Tod Cohen
Tod Cohen (*pro hac vice* motion pending, ECF No. 2115)
LAW OFFICE OF TOD COHEN
1159 Church Street
San Francisco, CA 94114
(408) 410-8329
tcohen@gmail.com

*Counsel for Proposed Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that this memorandum of law contains 1,676 words, excluding the caption, signature block, and this certificate, as counted by the word-processing program used to prepare it.

/s/ Tod Cohen
Tod Cohen