**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:**<br>**OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION**<br><br>This Document Relates To:<br>Case No. 1:23-cv-08292-SHS-OTW<br>Case No. 1:23-cv-10211-SHS-OTW | ECF CASE<br><br>**1:25-MD-03143-SHS-OTW**<br><br>PUBLIC REDACTED |

**CLASS PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS ON BOOKS PLAINTIFFS' CONTRIBUTORY INFRINGEMENT CLAIM**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

A. Plaintiffs' Contributory Infringement Claim .......... 3

B. Microsoft's Defenses to Contributory Infringement .......... 4

C. The Parties' Extensive and Fiercely Contested Discovery Process .......... 4

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 7

A. Plaintiffs Were Not Required to Plead the Legal Theories Underlying Their Contributory Infringement Claim .......... 7

B. Plaintiffs Pleaded Their Contributory Infringement Claim to Provide Microsoft with Sufficient Notice to Maintain a Defense .......... 8

C. Microsoft's Defenses Against Plaintiffs' Contributory Infringement Claim Confirm Microsoft Had Adequate Notice of the Inducement and Tailored-to-Infringement Theories of Contributory Liability .......... 11

D. In the Alternative, the Evidentiary Record Fills Any Supposed Gaps in the Complaint's Allegations .......... 12

E. Microsoft Cannot Submit New Evidence in Its Reply .......... 16

V. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

*Advance Local Media LLC v. Cohere Inc.*,
2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025) .......... 9

*Amazon Content Servs. LLC v. Weibley*,
2026 WL 1683119 (M.D. Pa. June 10, 2026) .......... 9

*Arista Records LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009) .......... 10, 15

*Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*,
513 F. Supp. 2d 18 (S.D.N.Y. 2007) .......... 16

*Bullock v. Montefiore Med. Ctr.*,
2026 WL 1882206 (S.D.N.Y. Apr. 3, 2026) .......... 5

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014) .......... 9

*Cox Commc'ns, Inc. v. Sony Music Entm't*,
607 U.S. 583 (2026) .......... *passim*

*Disney Enters., Inc. v. MiniMax*,
839 F. Supp. 3d 1264 (C.D. Cal. 2026) .......... 9

*Energy Intelligence Grp., Inc. v. Jefferies, LLC*,
101 F. Supp. 3d 332 (S.D.N.Y. 2015) .......... 9

*Est. of Smith v. Cash Money Records, Inc.*,
2018 WL 2224993 (S.D.N.Y. May 15, 2018) .......... 7, 12

*Fernandez v. Katie May, LLC*,
2025 WL 872114 (S.D.N.Y. Mar. 20, 2025) .......... 1, 7

*Ideal Steel Supply Corp. v. Anza*,
652 F.3d 310 (2d Cir. 2011) .......... 6, 16

*Lively v. Wayfarer Studios LLC*,
828 F. Supp. 3d 375 (S.D.N.Y. 2026) .......... 7

*Lugo v. City of Troy, N.Y.*,
114 F.4th 80 (2d Cir. 2024) .......... 6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
415 F. Supp. 2d 261 (S.D.N.Y. 2005) .......... 11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) (Ginsburg, J., concurring) ....................15

*Miller v. Lamanna*,
169 F.4th 118 (2d Cir. 2026) .................... *passim*

*Mt. Hawley Ins. Co. v. First St. Ocean Grille, Inc.*,
2024 WL 1364704 (S.D.N.Y. Apr. 1, 2024)....................5

*Nissan Motor Acceptance Corp. v. Nemet Motors, LLC*,
2022 WL 4651667 (E.D.N.Y. Sept. 29, 2022) ....................6, 7, 12

*Santora v. Hachette Book Grp., Inc.*,
2026 WL 1973634 (S.D.N.Y. July 8, 2026) ....................10

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*,
835 F. Supp. 3d 1026 (N.D. Cal. 2026) ....................9

Federal Rules

Fed. R. Civ. P. 12(c) .................... *passim*

Other Authorities

5 Fed. Prac. & Proc. Civ. § 1219 (4th ed.)....................6, 7

## I. INTRODUCTION

Microsoft's Rule 12(c) Motion for Judgment on the Pleadings fails for three independent reasons. **First**, as this Court already held, Plaintiffs had no obligation to plead the legal theories underlying their contributory infringement claim, which Microsoft now contends are missing from Plaintiffs' complaint. *See* Dkt. 707[1] (Order re: Motions to Strike), 2025 WL 3014376, at *3 ("Federal pleading is by statement of claim upon which relief may be based rather than by legal theory") (quoting *Baker v. Latham Sparrowbush Assocs.*, 808 F. Supp. 981, 989 (S.D.N.Y. 1992)); *see also Fernandez v. Katie May, LLC*, 2025 WL 872114, at *4 (S.D.N.Y. Mar. 20, 2025) ("A plaintiff is not required to 'plead the legal theory underlying his claim.'" (ellipses and internal citation omitted)).

**Second**, though not required to do so, Plaintiffs did, in fact, plead both inducement and tailored-to-infringement theories. *E.g.*, Dkt. 183 (Complaint) ¶¶ 122–39, 321–27. Plaintiffs pleaded, for example, that "Microsoft directly made unlicensed copies and provided critical assistance to OpenAI in making unlicensed copies of copyrighted material—including Plaintiffs' works and other copyrighted books—for the purpose of training the GPT models." *Id.* ¶ 133. Allegations like these show both "active[] encourage[ment] [of] infringement through specific acts" and "a service tailored to infringement." *Cox Commc'ns, Inc. v. Sony Music Entm't*, 607 U.S. 583, 588, 593 (2026).

Microsoft's own conduct confirms it had "fair notice of the claims alleged against [it]," which is all Plaintiffs needed to provide to "comply with Federal Rule of Civil Procedure 8." Dkt. 707 (Order re: Motions to Strike), 2025 WL 3014376, at *3. Microsoft answered Plaintiffs'

[1] Unless otherwise indicated, all docket citations refer to MDL docket, 1:25-md-03143-SHS-OTW.

inducement and tailored-to-infringement allegations with targeted affirmative defenses, like "Acts of Third Parties" and "Substantial Noninfringing Uses," seeking to disclaim responsibility for OpenAI's infringing conduct and undermine Plaintiffs' tailored-to-infringement theory. Dkt. 878 (MSFT Answer) at 41. The parties then spent years seeking evidence to support their positions through lengthy and hotly contested fact and expert discovery periods. *See, e.g.*, Dkt. 1974 (MSFT Rule 56.1 Stmt.) ¶¶ 30–34 (presenting evidence purporting to support Microsoft's supposed lack of active encouragement of OpenAI's infringement). Microsoft's own asserted defenses, discovery conduct, and proffered evidence thus show that it had sufficient notice of Plaintiffs' contributory infringement claim to maintain a defense.

**Third**, even if Microsoft had somehow lacked notice, the relevant question now, after fact and expert discovery, is whether the evidentiary record (not just the pleadings) supports Plaintiffs' claim. The Second Circuit recently reiterated that principle in *Miller v. Lamanna*, 169 F.4th 118, 130 (2d Cir. 2026): "once discovery has been completed, as here, 'we do not regard the pleading standard as requiring that defendants' Rule 12(c) motion be granted if evidence that had already been produced during discovery would fill the perceived gaps in the complaint.'" (brackets omitted) (quoting *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011)). Here, the evidentiary record bolsters Plaintiffs' already-sufficient contributory infringement allegations, with evidence showing, for example, that Microsoft downloaded Plaintiffs' copyrighted books data from pirate websites and then provided it to OpenAI for model training. Dkt. 1988 (Class Plaintiffs' Rule 56.1 Stmt.) ¶¶ 604, 680.

Microsoft ignores that evidence entirely and seeks to rewrite Plaintiffs' Complaint by lumping together, under a generic "supercomputing" label, a variety of services Microsoft provided to OpenAI. That some of those disparate services may have been non-infringing does not

insulate Microsoft from liability for its downloading and transmission of copyrighted works for OpenAI.

Microsoft also faults Plaintiffs for not seeking to amend their Complaint after *Cox*. But, given Plaintiffs' well-pleaded contributory infringement allegations, and both sides' subsequent fact and expert discovery on contributory infringement issues, amendment was not necessary. That News Plaintiffs opted to move for leave to amend based on different facts and allegations is irrelevant.

To dismiss Plaintiffs' contributory infringement claim now on a ***pleadings*** standard, after the parties already spent years conducting discovery on that claim, "would hardly serve the efficient or just resolution of disputes, which is the very foundation of the Federal Rules." *Miller*, 169 F.4th at 130 (citing Fed. R. Civ. P. 1). Plaintiffs therefore request that the Court deny Microsoft's Motion.

## II. BACKGROUND

### A. Plaintiffs' Contributory Infringement Claim

In their Consolidated Class Action Complaint, Plaintiffs asserted, among other claims, contributory infringement against Microsoft. Dkt. 183 (Complaint) ¶¶ 321–27. In support, Plaintiffs alleged numerous facts relating to Microsoft's extensive operational and financial partnership with OpenAI. *E.g., id.* ¶¶ 122–39. Among the various services Microsoft provided in connection with that partnership, it "directly made unlicensed copies and provided critical assistance to OpenAI in making unlicensed copies of copyrighted material." *Id.* ¶ 133. Such copyrighted material "includ[ed] Plaintiffs' works and other copyrighted books." *Id.* Microsoft provided those illicit data-acquisition services "for the purpose of training the GPT models." *Id.* As a result of those services, Microsoft "*ha[d] the data*" and was deeply ingrained in OpenAI's operations. *Id.* ¶ 136. Indeed, Microsoft "embedded several software engineers at OpenAI." *Id.*

¶ 132. Microsoft's partnership with OpenAI was so extensive its CEO described it as follows: "*We are in there. We are below them, above them, around them.*" *Id.* ¶ 136. That immersive level of coordination and access unavoidably made Microsoft "aware of OpenAI's largescale copyright infringement." *Id.* ¶ 134.

B. Microsoft's Defenses to Contributory Infringement

Microsoft responded to Plaintiffs' well-pleaded contributory infringement allegations by asserting several defenses. For example, to counter Plaintiffs' inducement allegations, Microsoft asserted an "Acts of Third Parties" defense, purporting to disclaim responsibility for "the acts or omissions of other persons or entities for whose conduct Microsoft is not legally responsible." Dkt. 878 (MSFT Answer) at 41. Likewise, to counter Plaintiffs' tailored-to-infringement allegations, Microsoft asserted a "Substantial Noninfringing Uses" defense. Id. In connection with that defense, Microsoft contends that its "products, services, or actions in connection with [OpenAI's] models that are accused of infringement, have commercially significant noninfringing uses." Id.

C. The Parties' Extensive and Fiercely Contested Discovery Process

Plaintiffs and Microsoft have been litigating the merits of Plaintiffs' allegations and Microsoft's defenses for years, with both sides seeking evidence during lengthy, hard-fought fact and expert discovery periods. As a result of those efforts, Plaintiffs uncovered reams of evidence detailing the nature and extent of Microsoft's partnership and data acquisition services for OpenAI. *E.g.*, Dkt. 1988 (Class Plaintiffs' Rule 56.1 Stmt.) ¶¶ 121–25, 183, 185–91, 460, 573–606, 612–14, 617–705, 751–56, 775–78, 783–801, 811–13, 824. Plaintiffs discovered, for example, that Microsoft downloaded for OpenAI at least 27 of Plaintiffs' copyrighted books. *Id.* ¶ 939. Microsoft did so as part of a large-scale web crawling initiative dubbed "Project Mango," which targeted, among others, pirate websites like "libgen.ee," "thepiratebay.ee," and "zlibrary.cc." *Id.* ¶ 604. Microsoft understood well at that time [redacted]

[redacted] *Id.* ¶ 665. Microsoft also knew well in advance, "before the release of GPT-3 that OpenAI used Library Genesis or LibGen to train GPT-3." *Id.* ¶ 659. That information was detailed in documents and presentations made to Bill Gates and other high-level Microsoft executives. *Id.* ¶¶ 187–91.

Plaintiffs were not the only ones to seek discovery related to their contributory infringement claim, as Microsoft actively sought evidence to support its defenses to that claim. Microsoft has put forward evidence, for example, purporting to support the company's supposed lack of active encouragement of OpenAI's infringement. *E.g.*, Dkt. 1974 (MSFT Rule 56.1 Stmt.) ¶¶ 30–34. Microsoft also proffered expert testimony claiming that its supercomputing services provided to OpenAI supposedly had non-infringing uses. Nelson Decl. Ex. 972.[2] Similarly, another Microsoft expert claims to have conducted a survey that supposedly identifies non-infringing uses of Microsoft's Copilot product. Dkt. 1716 (Amir Declaration) ¶¶ 41–54.

## III. LEGAL STANDARD

"In evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Bullock v. Montefiore Med. Ctr.*, 2026 WL 1882206, at *4 (S.D.N.Y. Apr. 3, 2026) (citing *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989)). "Judgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Mt. Hawley Ins. Co. v. First St. Ocean Grille, Inc.*, 2024 WL 1364704, at *2 (S.D.N.Y. Apr. 1, 2024) (brackets omitted) (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021)); *see also Miller*, 169 F.4th at

---

[2] All citations to the Nelson Declaration correspond to the Declarations of Justin Nelson in support of Class Plaintiffs' Summary Judgment filings.

130 ("[W]here a question of fact is in dispute, it is improper for the district court to answer it on a motion for dismissal on the pleadings.").

As this Court explained previously, "[i]t is well settled that 'a complaint need not pin plaintiff's claims for relief to a precise legal theory.'" Dkt. 707 (Order re: Motions to Strike), 2025 WL 3014376, at *3 (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)); *see also Nissan Motor Acceptance Corp. v. Nemet Motors, LLC*, 2022 WL 4651667, at *6 (E.D.N.Y. Sept. 29, 2022) ("[I]nitial pleadings need not lay out the ultimately victorious ***theory of liability***, so long as they state a ***claim*** upon which relief can be granted and provide the other party with sufficient notice to maintain a defense." (emphasis added)); 5 Fed. Prac. & Proc. Civ. § 1219 (4th ed.) ("[T]he theory of the pleadings mentality has no place under federal practice."). "'[T]he essence of a cause of action is found in the facts alleged and proven by the plaintiff, not the particular legal theories articulated' in the complaint." Dkt. 707 (Order re: Motions to Strike), 2025 WL 3014376, at *3 (quoting *Oneida Indian Nation N.Y. v. Cnty. of Oneida*, 617 F.3d 114, 139 (2d Cir. 2010)).

This "pleading standard acts as a 'screening mechanism' in the early stages of the litigation." *Lugo v. City of Troy, N.Y.*, 114 F.4th 80, 89 (2d Cir. 2024). Its purpose is "to allow the parties and the court to avoid the expense of discovery and other pretrial motion practice when the complaint states no plausible claim on which relief can be granted." *Ideal Steel*, 652 F.3d at 325 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

"But once the parties 'have already incurred the expense of discovery,' that objective becomes inapposite." *Lugo*, 114 F.4th at 89 (quoting *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023)). Accordingly, "once discovery has been completed," courts "do not regard the pleading standard as requiring that [a] Rule 12(c) motion be granted if evidence that had already been produced during discovery would fill the perceived gaps in the complaint." *Miller*, 169 F.4th

at 130 (brackets omitted) (quoting *Ideal Steel*, 652 F.3d at 325); *see also Est. of Smith v. Cash Money Records, Inc.*, 2018 WL 2224993, at *4 (S.D.N.Y. May 15, 2018) (holding that pleading deficiency was "much ado about nothing" because intervening discovery corrected the deficiency).

Thus, in cases like this one, where "the parties have completed an extensive and fiercely contested discovery process," courts do not "limit [their] analysis solely to the pleadings rather than the entire record on summary judgment." *Lively v. Wayfarer Studios LLC*, 828 F. Supp. 3d 375, 402 (S.D.N.Y. 2026) (citing *Ideal Steel*, 652 F.3d at 325). To do otherwise, ignoring "evidence adduced in discovery [that] may have been sufficient to survive a summary judgment motion, would hardly serve the efficient or just resolution of disputes, which is the very foundation of the Federal Rules." *Miller*, 169 F.4th at 130 (citing Fed. R. Civ. P. 1).

## IV. ARGUMENT

### A. Plaintiffs Were Not Required to Plead the Legal Theories Underlying Their Contributory Infringement Claim

Microsoft faults Plaintiffs for supposedly failing to allege "inducement and tailored-to-infringement theories against Microsoft." Dkt. 1695 (MSFT Br.) at 3. But Plaintiffs were not required to plead those or any other legal theories underlying their contributory infringement claim. Dkt. 707 (Order re: Motions to Strike), 2025 WL 3014376, at *3; *Fernandez*, 2025 WL 872114, at *4; *Nissan*, 2022 WL 4651667, at *6. Microsoft's argument to the contrary invokes a "theory of the pleadings mentality [that] has no place under federal practice." 5 Fed. Prac. & Proc. Civ. § 1219 (4th ed.).

It also contradicts this Court's Order denying a motion to strike what OpenAI "characterize[d] as a new 'download claim' for copyright infringement." Dkt. 707 (Order re: Motions to Strike), 2025 WL 3014376, at *2. In that Order, the Court held that Plaintiffs' "new" legal theory—*i.e.*, that downloading Plaintiffs' books is a copyright infringement distinct from

LLM training—need not be stricken. *Id.* at *3. The Court reasoned that, under "well settled" precedent, Plaintiffs "need not broadcast [their] strategy at the pleading stage, and need not spell out each legal theory on which [they] might rely to prove [their] claims, when varying theories can be supported by [their] factual allegations." *Id.* (quoting *Davis v. Rumsey Hall Sch., Inc.*, 2023 WL 6379305, at *9 (D. Conn. Sept. 29, 2023)). That reasoning applies with equal force here.

B. Plaintiffs Pleaded Their Contributory Infringement Claim to Provide Microsoft with Sufficient Notice to Maintain a Defense

Even if Plaintiffs were held to a non-existent "theory of the pleadings" standard, the complaint plausibly states a claim on both the inducement and tailored-to-infringement theories of contributory liability.

**Inducement**. Plaintiffs' allegations explain how Microsoft "actively encourage[d] infringement through specific acts." *Cox*, 607 U.S. at 593 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (2005) (Ginsburg, J., concurring)). For example, Plaintiffs allege that Microsoft knew "that OpenAI's training data . . . included a massive quantity of pirated and copyrighted material, including a trove of copyrighted books." Dkt. 183 (Complaint) ¶ 133. Microsoft not only knew about that data and its unlawful character, but the company also possessed the data for itself. *See id.* ¶ 136 (quoting Microsoft CEO Satya Nadella as stating, "*we have the data, we have everything*"). Microsoft also "directly made unlicensed copies and provided critical assistance to OpenAI in making unlicensed copies of copyrighted material—including Plaintiffs' works and other copyrighted books—for the purpose of training the GPT models." *Id.* ¶ 133. Indeed, Microsoft was anything but "hands off" as part of its "joint project between Microsoft and OpenAI." *Id.* ¶ 136. Instead, Microsoft was "*in there*," "*below [OpenAI], above them, around them*," without qualification. *Id.* Microsoft achieved that deep level of involvement by, for example, "embedd[ing] several software engineers at OpenAI" who "worked closely with OpenAI

personnel," including with respect to "the training process and training dataset used for OpenAI's GPT models." *Id.* ¶ 132. Microsoft's "personnel were involved in the creation and maintenance of the supercomputing systems that powered OpenAI's widespread infringement." *Id.* ¶ 18. Microsoft's inducement went beyond just embedding personnel into OpenAI's unlawful training processes and included billions of dollars invested in OpenAI's infringing products with tens of billions more committed. *Id.* ¶¶ 54, 78, 134, 139. Microsoft also actively marketed those infringing products by integrating them into its own products. *Id.* ¶ 138.

Microsoft's alleged acts of inducement are far more substantial and immersive than the alleged conduct other courts have deemed sufficient at the pleadings stage, including after *Cox*. *See, e.g.*, *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, 835 F. Supp. 3d 1026, 1042 (N.D. Cal. 2026) (holding that "Plaintiffs plausibly alleged that Defendant took active steps to encourage [infringement] by implementing an algorithm and establishing [Virtual Private Clouds]"); *Disney Enters., Inc. v. MiniMax*, 839 F. Supp. 3d 1264, 1274–75 (C.D. Cal. 2026) (denying motion to dismiss based on alleged advertisements of AI-generated videos featuring protected characters); *Amazon Content Servs. LLC v. Weibley*, 2026 WL 1683119, at *7 (M.D. Pa. June 10, 2026) (granting default judgment on contributory infringement claim premised on alleged promotion of infringing services); *Advance Local Media LLC v. Cohere Inc.*, 2025 WL 3171892, at *6–7 (S.D.N.Y. Nov. 13, 2025) (denying motion to dismiss contributory infringement claim based on allegations that defendant advertised "a tool to access news"); *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 341 (S.D.N.Y. 2015) (denying motion to dismiss contributory infringement based on allegations that defendant shared login credentials); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 357 (S.D.N.Y. 2014) (denying motion to dismiss contributory infringement where defendants gave "detailed instructions" regarding infringing

conduct). Microsoft's affirmative steps are also far more substantial than those at issue in *Santora v. Hachette Book Grp., Inc.*, 2026 WL 1973634, at *5 (S.D.N.Y. July 8, 2026), where the plaintiff failed to "identify a third-party infringer, a specific act of infringement by a third party, or any facts showing that Hachette knowingly encouraged, materially contributed to, or had the right and ability to control such infringement."

**Tailored to Infringement**. Plaintiffs' allegations also demonstrate that Microsoft provided services that were not "capable of substantial noninfringing uses." *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009) (quoting *Sony Corp. of Am. v. Universal Studios*, 464 U.S. 417, 442 (1984)). Such services were therefore "tailored to infringement." *Cox*, 607 U.S. at 593 (citing *Grokster*, 545 U.S. at 942). Indeed, in providing its services, Microsoft "maintain[ed] an ongoing relationship with [OpenAI]," making its services "quite unlike *Sony*, where the defendants had no contact with the product or user once the device was released into the stream of commerce." *Id.* (citing *Sony*, 464 U.S. at 438).

For example, Microsoft developed "Azure, 'one of the top five publicly disclosed supercomputers in the world' which was '[b]uilt in collaboration with and exclusively for OpenAI,' and 'designed specifically to train that company's AI models.'" Dkt. 183 (Complaint) ¶ 123. That system was "bespoke" and custom-built "for the purpose of training OpenAI's LLMs." *Id.* ¶¶ 128–30. Microsoft understood how to tailor its supercomputing services for OpenAI's infringing "training process and training dataset" because "Microsoft employees"—including several "embedded . . . software engineers"—"worked closely with OpenAI personnel." *Id.* ¶ 132. The resulting "supercomputing system . . . ***directly made unlicensed copies*** and provided critical assistance to OpenAI in making unlicensed copies of copyrighted material—including Plaintiffs'

works and other copyrighted books—for the purpose of training the GPT models." *Id.* ¶ 133 (emphasis added).

That Microsoft also may have provided other services that did not result in making unlicensed copies does not somehow excuse its services that were tailored for that unlawful purpose. Microsoft's arguments to the contrary are premised on trying to lump together disparate services under a single "supercomputing" label. But that label oversimplifies the variety of alleged services provided, including those that resulted in directly making unlicensed copies of copyrighted books.

C. Microsoft's Defenses Against Plaintiffs' Contributory Infringement Claim Confirm Microsoft Had Adequate Notice of the Inducement and Tailored-to-Infringement Theories of Contributory Liability

Plaintiffs' pleadings were sufficient to prompt Microsoft to mount a defense to Plaintiffs' contributory infringement claim. As this Court already held, that is all that was required. *See* Dkt. 707 (Order re: Motions to Strike), 2025 WL 3014376, at *3 ("A complaint need only provide defendants with fair notice of the claims alleged against them to comply with Federal Rule of Civil Procedure 8.").

For example, in its answer, Microsoft asserted a "Substantial Noninfringing Uses" defense, in which the company claimed that all its "products, services, or actions . . . that are accused of infringement, have commercially significant noninfringing uses." Dkt. 878 (MSFT Answer) at 41. Microsoft would have had no reason to assert that defense if Plaintiffs had failed to provide sufficient notice of a contributory infringement claim based on tailored-to-infringement allegations. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 415 F. Supp. 2d 261, 270 (S.D.N.Y. 2005) ("To comply with Rule 8, plaintiffs need not provide anything more than sufficient notice to permit defendant to file an answer."). Microsoft also asserted an "Acts of Third Parties" defense, claiming that the company is "not legally responsible" for OpenAI's

"reproduction, distribution, or display of infringing outputs." Dkt. 878 (MSFT Answer) at 41. That defense is also directly responsive to Plaintiffs' contributory infringement allegations described above.

In addition to asserting those defenses in its answer, Microsoft also conducted extensive factual and expert discovery to try to support those defenses and defeat Plaintiffs' contributory infringement claim. For example, in its Rule 56.1 Statement, Microsoft cited expert and fact witness testimony and documents purporting to support the company's supposed lack of active encouragement of OpenAI's infringement. *E.g.*, Dkt. 1974 (MSFT Rule 56.1 Stmt.) ¶¶ 30–34. In addition, Microsoft's expert Dr. Mohan Rao claims in his report that Microsoft's supercomputing services provided to OpenAI supposedly had non-infringing uses. Nelson Decl. Ex. 972 ¶ 55. Likewise, Microsoft's expert Dr. On Amir claims to have conducted a survey that supposedly identifies non-infringing uses of Microsoft's Copilot product. Dkt. 1716 (Amir Declaration) ¶¶ 41–54. Such evidence is unpersuasive and cannot possibly negate, on a Rule 12(c) motion, Plaintiffs' well-pleaded contributory infringement claim. However, the fact that Microsoft asserted its contributory infringement defenses and assembled (purportedly) supportive evidence shows that Plaintiffs' complaint provided Microsoft "with sufficient notice to maintain a defense." *Nissan*, 2022 WL 4651667, at *6.

D. <u>In the Alternative, the Evidentiary Record Fills Any Supposed Gaps in the Complaint's Allegations</u>

For all the reasons explained above, Plaintiffs adequately pleaded their contributory infringement claim. But even if they hadn't, evidence produced during discovery would "fill [any] perceived gaps in the complaint." *Miller*, 169 F.4th at 130. That makes Plaintiffs' supposed pleading deficiencies "much ado about nothing." *Est. of Smith*, 2018 WL 2224993, at *4.

**Inducement**. The evidence shows that Microsoft "actively encourage[d] infringement through specific acts." *Cox*, 607 U.S. at 593 (citing *Grokster*, 545 U.S. at 942). For example, Microsoft actively sourced OpenAI's copyrighted training data as early as 2019. [redacted] Dkt. 1988 (Class Plaintiffs' Rule 56.1 Stmt.) ¶ 680. [redacted] *Id.* Microsoft went on to transfer full copies of the Bing Index to OpenAI. *Id.* ¶ 593. In 2023, after Microsoft declined to let OpenAI train its public models on the Bing Index, OpenAI decided to crawl the internet itself. *Id.* ¶¶ 597, 602. OpenAI "lacked the crawling infrastructure and search-engine experience Microsoft had developed for Bing, and the seeding URLs Microsoft supplied were necessary for OpenAI's crawl to be effective." *Id.* ¶ 599. Microsoft transferred to OpenAI a list of URLs to guide OpenAI's crawler. *Id.* ¶ 598. Microsoft then signed a [redacted] contract under which "OpenAI would crawl half of the web on its own servers and Microsoft would crawl the other half and transfer the downloaded content to OpenAI," as part of "Project Mango." *Id.* ¶¶ 600–01. Microsoft crawled the internet to "collect data for the purposes of OpenAI to train LLM models," *id.* ¶ 601, and did so under OpenAI's own "GPTBot" user agent, *id.* ¶ 603. Microsoft began crawling in August 2023 and transferring the data to OpenAI in September 2023. *Id.* ¶ 604. Microsoft drew the list of "50k top domains to be crawled by MSFT" from its own Bing Index. *Id.* The list included the LibGen domain "libgen.ee," along with "thepiratebay.ee" and "zlibrary.cc." *Id.* Microsoft intended to keep the project "secret," and at least one of its employees objected to Microsoft's role

in the project. *Id.* ¶ 606. OpenAI trained GPT-4o on datasets derived from the so-called "Project Mango" crawl. *Id.* ¶ 533. And Plaintiffs' expert has since identified 27 of Plaintiffs' copyrighted books originating from URLs Microsoft downloaded for Project Mango. *Id.* ¶ 939.

Microsoft did all this even though it knew the copyrighted data it procured for OpenAI was, at best, problematic. Indeed, Microsoft's own Rule 30(b)(6) witness admitted that "Microsoft was aware before the release of GPT-3 that OpenAI used Library Genesis or LibGen to train GPT-3." *Id.* ¶ 659. [redacted] *Id.* ¶ 665. And Microsoft CEO Satya Nadella testified that he "wished that OpenAI had not gone to a pirated site" and that he "would regret using a pirated site." *Id.* ¶ 384 (brackets omitted). [redacted] *Id.* ¶ 666 (emphasis in original). [redacted] *Id.* ¶ 667. The U.S. Trade Representative has listed LibGen as a notorious market for piracy since 2017. *Id.* ¶ 133. And Microsoft publicly states that it does not train its own Copilot product on data from USTR-listed domains. *Id.* ¶ 663. [redacted] *id.* ¶ 662, [redacted] *id.* ¶ 594. Microsoft then created the Project Mango domain list from that "risk[y]" index, which included "libgen.ee." *Id.* ¶ 604. Asked whether Microsoft had "any processes at all" to determine whether copyrighted works were in the data it downloaded or shared with third parties, its designee answered: "No." *Id.* ¶ 605. Asked whether Microsoft "care[s]"

whether copyrighted books were in the data it shares, he again answered: "No." *Id.* Taken together, these are exactly the types of "affirmative steps taken to foster infringement" that Microsoft claims are missing from the Complaint. *Grokster*, 545 U.S. at 936–37.

**Tailored to Infringement**. The evidentiary record also shows that Microsoft provided data-acquisition services to OpenAI that were not "capable of substantial noninfringing uses." *Arista*, 633 F. Supp. 2d at 156 (quoting *Sony*, 464 U.S. at 442). Specifically, Microsoft took the code base for its Bing search crawler and used it to create the "Mango crawler." Dkt. 1985-1 (NYT Rule 56.1 Stmt.) ¶ 717. Microsoft ran that crawler as a service "on behalf of OpenAI," "per OpenAI request." *Id.* ¶¶ 715–16. The crawling "was performed on Microsoft servers and maintained by Microsoft employees," *id.* ¶ 719, but Microsoft "externally disclosed" the crawler "as GPTBot," OpenAI's crawler, not as its own, *id.* ¶ 716; Dkt. 1988 (Class Plaintiffs' Rule 56.1 Stmt.) ¶ 603. Microsoft's Rule 30(b)(6) witness described the project as "an effort to help OpenAI bootstrap [the] ability to collect as many of the documents as possible for their training—training the large language models." Dkt. 1985-1 (NYT Rule 56.1 Stmt.) ¶ 712. As explained above, that crawler ran against a list of "50k top domains to be crawled by MSFT" that included libgen.ee, thepiratebay.ee, and zlibrary.cc. Dkt. 1988 (Class Plaintiffs' Rule 56.1 Stmt.) ¶ 604. Microsoft did not check whether its crawled data contained copyrighted works. *Id.* ¶ 605. And Microsoft delivered the infringing data it downloaded to OpenAI, *id.* ¶¶ 601, 604, which then used that data to train GPT-4o, *id.* ¶ 533.

By downloading infringing books data and delivering it to OpenAI for training, Microsoft provided a service tailored to infringement. Microsoft cannot unravel that tailoring by bundling all its various services under a generic "supercomputing" label. The specific services at issue go far beyond "a provider's knowledge of infringement and insufficient action to prevent it." *Cox*, 607

U.S. at 596. Instead, to analogize to *Cox*, Microsoft's conduct would be like if Cox had gone online itself, downloaded pirated music, and then delivered that content directly to its subscribers. *Cf. id.* at 589, 595.

### E. Microsoft Cannot Submit New Evidence in Its Reply

Microsoft cannot, on reply, try to paint a different evidentiary picture. Microsoft tellingly failed to move for summary judgment by claiming that Plaintiffs' contributory infringement claim lacks evidentiary support. As the record above shows, to do so would have been futile. Microsoft likewise failed to present any evidence to support its Motion despite controlling Second Circuit case law providing that doing so is permissible. *E.g.*, *Miller*, 169 F.4th at 130–31; *Ideal Steel*, 652 F.3d at 325–26. "In short, [Microsoft] had the initial burden . . . and may not add new materials simply because [Plaintiffs] pointed out that it has not met its burden." *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 513 F. Supp. 2d 18, 20 (S.D.N.Y. 2007).

## V. CONCLUSION

For these reasons, Plaintiffs ask the Court to deny Microsoft's Rule 12(c) Motion for Judgment on the Pleadings.

Date: October 30, 2026

Respectfully submitted,

*/s/ Justin A. Nelson*

SUSMAN GODFREY L.L.P.
Justin A. Nelson
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 713.651.9366
jnelson@susmangodfrey.com

**Interim Lead Counsel for Class Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Southern District of New York using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Justin A. Nelson*
Justin A. Nelson