**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:**<br><br>**OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION**<br><br>**This Document Relates To:** ***All Cases*** | **MDL No. 1:25-md-03143 (SHS) (OTW)**<br><br>**Hon. Sidney H. Stein** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE* BY HUMAN CONSENT FOUNDATION, CREATIVE ARTISTS AGENCY, LLC, MUSIC ARTISTS COALITION, NATIONAL ASSOCIATION OF VOICE ACTORS, INC., WRITER, INC., CREATORS COALITION ON ARTIFICIAL INTELLIGENCE, CATE BLANCHETT, NICK HEXUM & STEVEN SODERBERGH**

The proposed *amici curiae*, Human Consent Foundation ("HCF"), Creative Artists Agency, LLC ("CAA"), Music Artists Coalition ("MAC"), National Association of Voice Actors, Inc. ("NAVA"), Writer, Inc. ("WRITER"), Creators Coalition on Artificial Intelligence ("CCAI"), Cate Blanchett, Nick Hexum, and Steven Soderbergh (collectively, "*Amici*") respectfully submit this Memorandum of Law in support of their motion for leave to file the accompanying *amicus* brief. The proposed brief addresses a discrete issue raised by Defendants' motions for summary judgment: the practical feasibility of identifying, clearing, and licensing rights for the use of creative works in artificial-intelligence systems. Drawing on their experience with creative-rights licensing, representation, and machine-readable consent infrastructure, the proposed *Amici* offer information and perspective concerning the operational realities of the AI data licensing market that may assist the Court in evaluating the parties' arguments.

## I. INTEREST OF THE PROPOSED *AMICI CURIAE*

***HCF*** is a nonprofit organization that "develops and maintains the Human Consent Standard ("HCS"), an openly published, XML-based technical specification developed with

industry stakeholders that allows individuals and rights holders to identify how artificial intelligence systems may process their creative works and likenesses.[1] To operationalize this standard, HCF runs the Human Consent Registry, the centralized infrastructure where these machine-readable declarations are published and made discoverable and queryable to AI systems at web scale.[2]

HCF does not license works, collect royalties, operate a marketplace, or sell data.[3] Rather, it develops and maintains technical infrastructure intended to facilitate the communication of rights holders' permissions concerning AI uses. HCF has no commercial interest in the outcome of this litigation.

***CAA*** is a talent agency serving clients across film, television, music, sports, brands, and Creator Economy.[4] Through its representation of creators and rights holders, CAA has experience with the licensing and clearance of creative rights, including issues arising from emerging technologies. CAA has no commercial interest in the outcome of this litigation.

***MAC*** advocates for artists in the music industry.[5] MAC focuses on "protecting the rights, financial security, and creative freedoms of musicians."[6] Its work gives MAC a perspective on

---

[1] *See* Human Consent Found., *Human Consent Standard 1.0 Draft Specification* §§ 1–3 (Draft, Aug. 8, 2026), https://humanconsent.org/hcs (last visited Oct. 28, 2026); *see also* Mondaq, *A New Framework for AI Permissions in Entertainment* (July 14, 2026), https://www.mondaq.com/unitedstates/trademark/1817008/a-new-framework-for-ai-permissions-in-entertainment-rsl-medias-human-consent-standard (describing HCS as a machine-readable protocol covering creative works, identity, likeness, voice, characters, and marks).

[2] *See* Human Consent Found., *supra* note 2, §§ 2, 3.1.1 (defining "Registry" and "Registry-Wide Default Policies"); *see also* JD Supra, *RSL Media's Human Consent Standard* (June 16, 2026), https://www.jdsupra.com/legalnews/rsl-media-s-human-consent-standard-a-5809993 (describing the free public registry that AI platforms can query).

[3] *See* Human Consent Found., *supra* note 2, § 1.

[4] *See About Us*, Creative Artists Agency, https://www.caa.com/about-us (last visited Oct. 28, 2026).

[5] *See About*, Music Artists Coal., https://www.musicartistscoalition.com/about (last visited Oct. 28, 2026).

[6] *Id.*

the rights and licensing interests of music creators affected by emerging uses of creative works. MAC has no commercial interest in the outcome of this litigation.

***NAVA*** is "a social impact non-profit association created to advocate and promote the advancement of the voice acting industry through action, education, inclusion, and benefits."[7] It represents voice actors in approximately 47 states and 22 countries. NAVA brings the perspective of professional voice actors whose industry is actively being implicated by emerging AI technologies. NAVA has no commercial interest in the outcome of this litigation.

***WRITER*** is an enterprise AI platform built for the world's leading marketing and revenue teams.[8] It has developed and built its own family of models, Palmyra, which has informed its perspective on how to respect third party rights while likewise creating highly performant models. WRITER has no commercial interest in the outcome of this litigation.

***CCAI*** is a nonprofit 501(c)(3) organization founded by film, television and digital content professionals to address the effects of artificial intelligence on creative work.[9] More than 6,000 creators have signed on to its mission, across eleven profession groups ranging from writers, performers and directors to post-production, visual effects, craft workers, studio staff and independent creators.[10] CCAI is technology-agnostic. It takes no position for or against AI and instead works to establish shared, community-led standards for its use in creative industries. CCAI has no commercial interest in the outcome of this litigation.

***Cate Blanchett*** is an actor and producer, a co-founder of HCF, and a co-author of the

---

[7] *See Nat'l Ass'n of Actors,* https://navavoices.org/ (last visited Oct. 28, 2026).

[8] *See About*, Writer, https://writer.com/company/about/ (last visited Oct. 28, 2026).

[9] *See Who We Are*, Creators Coalition on A.I., https://www.creatorscoalitionai.com/#who-we-are (last visited Oct. 28, 2026).

[10] *See id.*

HCS.[11] Her experience as both a creator and producer provides a practical perspective on consent and rights-clearance practices in the creative industries. She has no commercial interest in the outcome of this litigation.

***Nick Hexum*** is a singer, songwriter and producer, and a co-author of the HCS.[12] His work as both a creator and with HCF provides a perspective on the development of consent infrastructure for creative works in the AI context. He has no commercial interest in the outcome of this litigation.

***Steven Soderbergh*** is a filmmaker, cinematographer and editor, and a founding board member of HCF.[13] His experience in filmmaking and production provides a practical perspective on rights clearance and licensing in the creative industries. He has no commercial interest in the outcome of this litigation.

## II. THE PROPOSED BRIEF SATISFIES THE STANDARD FOR LEAVE

"[T]he decision to grant leave to file a brief as *amicus curiae* is in the firm discretion of the court." *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 17326181, at *1 (S.D.N.Y. Nov. 29, 2022). In exercising that discretion, the Southern District of New York looks to Rule 29 of the Federal Rules of Appellate Procedure for guidance and considers whether the proposed *amicus* brief "serves a laudable, rather than distractive, purpose." *Id.* An *amicus* brief serves such a purpose and should be allowed when "the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Id.* (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)); *see Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 2011 WL 5865296, at *2 (S.D.N.Y. Nov. 22, 2011) (granting residents of Staten Island who regularly used Port Authority bridges leave to file *amicus*

[11] *See* Human Consent Found., supra note 2.

[12] *See id.*

[13] *See id.*

brief in case involving toll increases); *see also* Dkt. No. 440. Proposed *amici curiae* meet that standard.

**A. The Proposed *Amici Curiae* Have Unique Information or Perspective**

Defendants' motions for summary judgment raise questions concerning whether rights for AI data ingestion, training, and grounding can practically be identified, cleared, and licensed at scale, and whether a functioning market exists for those uses. The proposed *Amici* offer information directly relevant to those questions from perspectives distinct from those of the parties.

Collectively, the proposed *Amici* have experience with the infrastructure through which creative rights are identified, represented, licensed, and cleared; the development of machine-readable mechanisms for communicating consent and permissions; and the practical operation of emerging markets involving creative works and AI. Their proposed brief places those developments in the broader context of established rights-clearance practices in the creative industries and describes technological and market mechanisms relevant to the feasibility of licensing at scale.

That perspective may assist the Court in evaluating the factual premises underlying the parties' arguments without requiring the proposed *Amici* to take a position on how those arguments ultimately should be resolved. The proposed brief therefore provides precisely the type of "unique information or perspective" that warrants amicus participation. *In re Terrorist Attacks*, 2022 WL 17326181, at *2.

**B. The Proposed Brief Is Not Duplicative and Advocates No Outcome**

The proposed brief will not duplicate the parties' advocacy. Rather than address the ultimate merits of Plaintiffs' or Defendants' motions, the proposed *Amici* offer information concerning licensing practices, market infrastructure, and technological mechanisms relevant to issues raised in the parties' summary-judgment briefing. The proposed brief expressly states that

the *Amici* take no position on the ultimate disposition of those motions. Its purpose is thus limited: to provide the Court with industry and operational context that the parties, litigating their respective positions, may not otherwise provide.

## III. THE PROPOSED BRIEF COMPLIES WITH THE COURT'S ORDER.

The proposed brief also complies with the requirements governing its submission. It contains fewer than 6,000 words, as required by Dkt. No. 1663, includes the certification required by Local Civil Rule 7.1(c), and complies with Judge Sidney H. Stein's Individual Practices governing memoranda of law.

In addition, no party or party's counsel authored the proposed brief in whole or in part, and no party, party's counsel, or person other than the proposed *Amici* contributed money intended to fund the preparation or submission of the brief.

## CONCLUSION

For the foregoing reasons, the Court should grant the *Amici* leave to file the proposed brief attached as Exhibit A to the Notice of Motion.

Dated: October 30, 2026

Respectfully submitted,

*/s/ Marc E. Ackerman*
Marc E. Ackerman (NY #2540136)
**BASS, BERRY & SIMS PLC**
230 Park Avenue
3rd Floor, West Office 417
New York, NY 10169
646-502-9678
marc.ackerman@bassberry.com

Kathryn Hannen Walker (TN #20794)
(*pro hac vice pending*)
Robert L. Brewer (TN #020640)
(*pro hac vice pending*)
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, TN 37203
(615) 742-6200
kwalker@bassberry.com
rbrewer@bassberry.com

*Attorneys for [Proposed] Amici Curiae Human Consent Foundation, Creative Artists Agency, Music Artists Coalition, National Association of Voice Actors, Inc., Writer, Inc., Creators Coalition on Artificial Intelligence, Cate Blanchett, Nick Hexum, and Steven Soderbergh*