UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: OpenAI, nc. Copyright Infringement Litigation<br><br>This Document Relates To:<br><br>Case No. 1:23-cv-08292-SHS-OTW<br>Case No. 1:23-cv-10211-SHS-OTW | Case No. 1:25-md-3143 (SHS) (OTW)<br><br>**REDACTED - PUBLIC VERSION** |

**MICROSOFT'S RESPONSE TO BOOKS PLAINTIFFS' COUNTERSTATEMENT OF MATERIAL FACTS IN OPPOSITION TO MICROSOFT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

A. 2016 to 2018: The Early Days of the OpenAI-Microsoft Relationship ........... 5

B. July 2018-January 2019: OpenAI and Microsoft Contemplate Combining Microsoft's Compute with OpenAI's Technology to Beat Google in the AI Race ........... 7

C. February to July 2019: OpenAI Demonstrates a LibGen-Trained Model to Microsoft and the Parties Formally Collaborate ........... 10

D. Project Taxi ........... 17

E. Project Mango ........... 28

F. Harm ........... 35

G. Books4 ........... 37

H. Microsoft's Board of Directors Approved Microsoft's 2019 Investment in OpenAI ........... 41

Pursuant to Local Civil Rule 56.1, Defendant Microsoft respectfully submits this Response to Books Plaintiffs' Counterstatement of Material Facts in Opposition to Microsoft's Motion for Summary Judgment, ECF No. 2241 (the "Statement").

Pursuant to this Court's Order dated October 7, 2026 (ECF No. 2092), Defendant Microsoft provided its response in column format and has attempted to streamline its response for the benefit of the Court as follows:

**Undisputed/Disputed/Disputed in Part.** Every fact includes one of these responses, to make clear Microsoft's position under Local Rule 56.1(b). Facts designated "Undisputed" are facts that Microsoft has elected not to dispute solely for purposes of Books Plaintiffs' Statement in Opposition to Microsoft's Motion for Summary Judgment in this matter, but does not constitute a binding admission for any other purpose. Facts designated "Disputed" or "Disputed in Part" are facts that Microsoft is disputing.

In addition, Microsoft has included certain objections and other responses to Plaintiffs' facts where appropriate. Those additional responses and the authority supporting those responses are identified below. For the Court's convenience and to avoid further lengthening this response, Microsoft does not repeat its supporting authority for these issues in every response. Instead, Microsoft states these objections plainly for ease of review and incorporate the below authority into each of those responses. Where warranted and helpful for the Court, Microsoft also provides additional, paragraph-specific information to assist the Court's assessment.

**Immaterial.** Facts designated "Immaterial" are facts that, even if true, do not help resolve any question currently before the Court on summary judgment, i.e., they do not "affect the outcome of the suit under the governing law." *I.M. v. United States*, 362 F. Supp. 3d 161, 190 (S.D.N.Y. 2019). Rule 56.1 statements are "immaterial" if they "do not provide any basis to rule in favor of either party for summary judgment even if they are disputed." *See Parks v. Lebhar-Friedman, Inc.*, No. 04-cv-7133-DCP-KNF, 2008 WL 3833802, at *4 (S.D.N.Y. Aug. 11, 2008). Facts designated as "Immaterial" below thus reflect facts that are not legally significant because it does not impact an element of any claim or defense at issue in Microsoft's summary judgment motion. Microsoft's designation of certain facts as "immaterial" does not concede that any fact not designated as such is material for purposes of adjudicating Microsoft's Motion, or for any other purpose.

**Not Supported by Cited Evidence.** Facts designated as "Not Supported by Cited Evidence" are facts with incorrect citations or where the cited evidence does not support the stated fact. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) (A "Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record. Where … the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently.").

**Not Supported by Admissible Evidence.** Facts designated as "Not Supported by Admissible Evidence" are facts that are not supported by admissible evidence as required by Local Rule 56.1, and therefore are not properly before the Court. S.D.N.Y. Local Rule 56.1 (d) ("Each statement by the movant … must be followed by citation to evidence that would be admissible[.]"); *Epstein v. Kemper Ins. Companies*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (statements in a Rule 56.1

statement "are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, ... or do not cite to supporting evidence").

**Improper Legal Argument.** Facts designated as an "Improper Legal Argument" are facts where the assertion therein constitutes improper attorney argument and/or is conclusory. These facts require no response. *Epstein v. Kemper Ins. Companies*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (statements in a Rule 56.1 statement "are inappropriate if they are conclusory or argumentative[.]"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 801 F. Supp. 3d 330, 369 (S.D.N.Y. 2025) (quoting *Kesner v. Buhl*, 590 F. Supp. 3d 680, 691 (S.D.N.Y. 2022)) (the Court sets aside "[t]he portions of [a responding party's] 56.1 Statement that contain legal argument bereft of factual matter[.]").

**Incomplete.** Facts designated as "Incomplete" are facts where Plaintiffs have "introduce[d] all or part of a statement" and Microsoft introduces "any other part—or any other statement—that in fairness ought to be considered at the same time" pursuant to Federal Rule of Evidence 106.

This response also uses the following abbreviations and citations for briefs, Rule 56.1 statements, and record materials filed in connection with the parties' cross-motions for summary judgment in the Books Plaintiffs' case.

| Citation | Document |
|---|---|
| Blythe Opp. Decl. | Declaration of Caitlin Sinclaire Blythe in Support of Defendants' Joint Response to Books Plaintiffs' Corrected Rule 56.1 Statement of Undisputed Material Facts in Support of Books Plaintiffs' Motion for Partial Summary Judgment |
| BP SUMF ¶ | Books Plaintiffs' 56.1 Statement of Undisputed Material Facts in Support of Books Plaintiffs' Partial Motion for Summary Judgment (ECF 1988) |

| | |
|---|---|
| BP Counter-SUMF ¶ | Book Plaintiffs' Counterstatement of Material Facts in Opposition to Microsoft's Motion for Summary Judgment (ECF 2241) |
| Hurst Decl. | Declaration of Annette L. Hurst in Support of Defendant Microsoft's Motions for Summary Judgment<br><br>Declaration of Annette L. Hurst in Support of Defendant Microsoft's Reply in Support of Microsoft's Motions for Summary Judgment (*filed herewith*) |
| MSFT Books SUMF ¶ | Rule 56.1 Statement of Undisputed Material Facts in Support of Microsoft's Books Motion for Summary Judgment (ECF 1694) |
| Nelson Decl. | Declaration of Justin Nelson in Support of Books Plaintiffs' Motion for Partial Summary Judgment<br><br>Declaration of Justin Nelson in Support of Books Plaintiffs' Opposition to Defendants Microsoft's and OpenAI's Motions for Summary Judgment |
| Simpson Decl. | Declaration of Lisa T. Simpson in Support of Defendant Microsoft's Oppositions to the Books and News Plaintiffs' Motions for Partial Summary Judgment |

## A. 2016 to 2018: The Early Days of the OpenAI-Microsoft Relationship

| | |
|---|---|
| 1. In 2016, OpenAI purchased [redacted] in compute from Microsoft Azure and migrated its projects from Amazon Web Services to Azure. Nelson Decl. Ex. 850. | 1. **Undisputed — Immaterial.** Microsoft does not dispute Paragraph 1. But Microsoft further responds that the facts set forth in Paragraph 1 are immaterial because the fact that OpenAI purchased [redacted] in compute from Microsoft Azure in 2016 is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 2. By January 2018, OpenAI had consumed all the discounted computing capacity that Microsoft provided to them. OpenAI then acquired additional compute from Google and moved from Azure to Google. *Id.* | 2. **Undisputed — Immaterial.** Microsoft does not dispute Paragraph 2. But Microsoft further responds that the facts set forth in Paragraph 2 are immaterial because the fact that OpenAI consumed the compute power purchased from Microsoft then acquired additional compute from Google and moved from Azure to Google is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 3. [redacted] *Id.* | 3. **Disputed in Part — Not Supported by Admissible Evidence; Immaterial.** Microsoft does not dispute that the meeting occurred. However, the cited portion of Ex. 850 in which [redacted] is inadmissible hearsay because it is an out-of-court statement offered for the truth of its contents. Fed. R. Evid. 801, 802.<br><br>Microsoft further responds that the fact set forth in Paragraph 3 is immaterial because is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 4. [redacted] | 4. **Disputed in Part — Not Supported by Admissible Evidence; Immaterial.** Microsoft does not |

| | |
|---|---|
| [redacted] Nelson Decl. Ex. 851. [redacted] Nelson Decl. Ex. 851 at -370; Nelson Decl. Ex. 661 at 25:10-20. [redacted] Nelson Decl. Ex. 851 at 370. [redacted] *Id.* (emphasis in original). [redacted] Nelson Decl. Ex. 850. | dispute that the meeting occurred or that Umesh Madan made notes during the meeting. Microsoft disputes the portions of Paragraph 4 that recount what Mssrs. Gates, Radford, and Scott said while in attendance at the meeting because it is inadmissible hearsay. Nelson Decl. Ex. 851 are the written notes of a Microsoft employee's recollection of what those individuals said at the meeting.<br><br>Microsoft further responds that the facts set forth in Paragraph 4 are immaterial because the fact that OpenAI, Microsoft, and Mr. Gates attended a demo of an early LLM and that [redacted] (facts which are inadmissible) is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 5. In 2018, Craig Mundie, former Microsoft Chief Research & Strategy Officer, realized that there might be an opportunity for a potential collaboration between OpenAI and Microsoft. Nelson Decl. Ex. 852 at 18:8–19:8. Mundie thought that Microsoft "might find it interesting to explore a relationship" around providing hardware infrastructure to OpenAI. *Id.* | 5. **Undisputed — Immaterial.** Microsoft does not dispute Paragraph 5. But Microsoft further responds that the facts set forth in Paragraph 5 are immaterial because the fact that Mr. Mundie realized there might be an opportunity for a potential collaboration and wanted to explore providing hardware to OpenAI is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |

## B. July 2018-January 2019: OpenAI and Microsoft Contemplate Combining Microsoft's Compute with OpenAI's Technology to Beat Google in the AI Race[1]

| | |
|---|---|
| 6. In 2014, Google acquired DeepMind, an AI startup that aimed "to develop computers that think like humans." Nelson Decl. Ex. 853. | 6. **Disputed — Not Supported by Admissible Evidence; Immaterial.** Microsoft disputes Paragraph 6 because it is not supported by admissible evidence. The cited evidence is a third-party article and thus is inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. P. 56(c)(2).<br><br>Microsoft also responds that the facts in Paragraph 6 are immaterial because Google's standing in artificial intelligence is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 7. By July 2018, the opportunity to partner with OpenAI had gained the attention of Microsoft's most senior leadership. Mundie, Gates, Hoffman, Scott, Harry Shum (former Vice President of Microsoft's Artificial Intelligence and Research Group), and Satya Nadella (Chief Executive Officer) discussed a potential investment in OpenAI. Nelson Decl. Ex. 854 at -551-552. | 7. **Undisputed — Immaterial.** Microsoft does not dispute Paragraph 7. But Microsoft further responds that the facts set forth in Paragraph 7 are immaterial because the fact that Microsoft leadership and Mr. Gates discussed investing in OpenAI is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 8. The discussions then moved toward concrete terms. On August 16, 2018, Mundie, Scott, and Umesh Madan met with Altman to hammer out an [redacted] Nelson Decl. Ex. 855. | 8. **Undisputed — Immaterial.** Microsoft does not dispute Paragraph 8. But Microsoft further responds that the facts set forth in Paragraph 8 are immaterial because the fact that Microsoft executives met with Sam Altman to begin to hammer out a deal is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |

[1] **Disputed – Not Supported by Cited Evidence.** Microsoft disputes Heading (B) because it contains a factual assertion without any citation to supporting evidence. To the extent that Books Plaintiffs rely on Paragraphs 6-12 *infra* to support this assertion, Microsoft incorporates its responses and objections to those same paragraphs.

| | |
|---|---|
| 9. [redacted] Nelson Decl. Ex. 856; Nelson Decl. Ex. 857. [redacted] Nelson Decl. Ex. 856 at -089-090. | 9. **Disputed in Part – Not Supported by Cited Evidence; Not Supported by Admissible Evidence; Immaterial.** Microsoft does not dispute that Mssrs. Madan and Mundie created a [redacted] Microsoft otherwise disputes Paragraph 9 because it is not supported by the cited evidence. Neither Exhibit 856 or 857 are [redacted] Additionally, Microsoft also disputes Paragraph 9 to the extent it relies on Exhibit 856 as not supported by admissible evidence. Exhibit 856 is a draft document that Mr. Mundie could not remember when questioned about it (*see* Hurst Decl. Ex. 357 (C. Mundie Tr.) at 37:25-43:15) and therefore cannot be substantiated as containing correct information and is thus not admissible evidence, as required by Local Rule 56.1.<br><br>Microsoft further responds that the facts set forth in Paragraph 9 are immaterial because the fact is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 10. [redacted] Nelson Decl. Ex. 858. [redacted] *Id.* at -865. | 10. **Disputed in Part – Incomplete; Immaterial.** Microsoft does not dispute that the listed individuals [redacted] Disputed that [redacted] as incomplete. Pursuant to FRE 106, the full statement reads, [redacted] |

| | |
|---|---|
| | [redacted] Nelson Decl. Ex. 858.<br><br>Microsoft further responds that the facts set forth in Paragraph 10 are immaterial because the fact that the listed individuals [redacted] is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 11. [redacted] Nelson Decl. Ex. 859. [redacted] *Id.* at -376-377. | 11. **Disputed in Part – Not Supported by Admissible Evidence; Immaterial.** Microsoft does not dispute that Mundie and Scott attended a dinner with Altman, but Mr. Scott's recitation to Mr. Satya of statements made by Mr. Altman or others at OpenAI (i.e., [redacted] are inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. P. 56(c)(2).<br><br>Microsoft further responds that the facts set forth in Paragraph 11 are immaterial because the fact is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 12. [redacted] | 12. **Undisputed – Immaterial.** Microsoft does not dispute that Scott made the statements quoted in Paragraph 12. But Microsoft further responds that the facts in Paragraph 12 are immaterial because Google's standing |

| | |
|---|---|
| [redacted] Nelson Decl. Ex. 860. | in artificial intelligence is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |

## C. February to July 2019: OpenAI Demonstrates a LibGen-Trained Model to Microsoft and the Parties Formally Collaborate[2]

| | |
|---|---|
| 13. On February 14, 2019, OpenAI announced that it trained the GPT-2 model. Nelson Decl. Ex. 861. | 13. **Undisputed – Not Supported by Cited Evidence; Not Supported by Admissible Evidence; Immaterial.** Microsoft does not dispute the fact stated in Paragraph 13. But Microsoft responds that the fact stated is not supported by the cited evidence. While Nelson Decl. Ex. 861 reflects OpenAI's announcement of the GPT-2 model, the cited evidence is dated January 16, 2024, and does not reflect the date on which the announcement was first published. Nelson Decl. Ex. 861 at 1. Additionally, Paragraph 13 is not supported by admissible evidence. Specifically, the evidence cited is inadmissible hearsay and lacks foundation because it is a document posted on OpenAI's website.<br><br>Microsoft further responds that this fact is immaterial and therefore disputed to the extent that Books Plaintiffs purport to encompass OpenAI's GPT-2 model within the scope of models at issue as to the claims asserted against Microsoft. "There is no claim against Microsoft based on … GPT-2" and facts purporting to establish Microsoft's liability for allegations related to GPT-2 are therefore immaterial to the determination of the merits of |

[2] **Disputed – Not Supported by Cited Evidence.** Microsoft disputes Heading (C) because it contains a factual assertion without any citation to supporting evidence. To the extent that Books Plaintiffs rely on Paragraphs 13-24 *infra* to support this assertion, Microsoft incorporates its responses and objections to those same paragraphs.

| | |
|---|---|
| | Microsoft's Motion for Summary Judgment. *See* MDL ECF 707 at 5. |
| 14. [redacted] Nelson Decl. Ex. 862 at -842. | 14. **Disputed in Part – Incomplete.** Microsoft does not dispute that Nelson Decl. Ex. 862 contains the quoted language. Microsoft disputes any implication that Microsoft's decision to engage in discussions with OpenAI related to [redacted] Pursuant to FRE 106, Mr. Scott's complete statement was as follows: [redacted] Nelson Decl. Ex. 862 at -842. |
| 15. [redacted] *Id.* at -841. | 15. **Undisputed.** |
| 16. [redacted] Nelson Decl. Ex. 863 at -144. [redacted] *Id.* | 16. **Undisputed – Immaterial.** Microsoft does not dispute that Mr. Scott and Mr. Nadella planned to meet with Sam Altman in late February 2019. Microsoft also does not dispute that Nelson Decl. Ex. 863 contains the statement quoted in the second sentence of Paragraph 16. But Microsoft responds that the facts stated in Paragraph 16 are immaterial because these facts are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. Google's technology, knowledge, and standing in artificial intelligence has no bearing on the merits of Microsoft's Motion for Summary Judgment. |
| 17. At the meeting with Scott and Nadella, OpenAI demonstrated further advances of its 1.5 billion | 17. **Undisputed – Immaterial.** Microsoft does not dispute that after OpenAI announced the GPT-2 model (1.5 |

| | |
|---|---|
| parameter GPT-2 model. Nelson Decl. Ex. 864 at -925; Nelson Decl. Ex. 865 at slide 8. | billion parameters), OpenAI demonstrated "further advances [OpenAI] had made." Nelson Decl. Ex. 864 at -925. But Microsoft responds that this fact is immaterial to the extent that Books Plaintiffs purport to encompass OpenAI's GPT-2 model within the scope of models at issue as to the claims asserted against Microsoft. "There is no claim against Microsoft based on … GPT-2" and facts purporting to establish Microsoft's liability for allegations related to GPT-2 are therefore immaterial to the determination of the merits of Microsoft's Motion for Summary Judgment. *See* MDL ECF 707 at 5. |
| 18. A February 2019 draft OpenAI-Microsoft presentation says the goal of OpenAI and Microsoft partnership is to "create a true counterweight to Google/Deepmind partnership and build a positive AI future for the world." Nelson Decl. Ex. 790 at slide 2. | 18. **Disputed in Part – Not Supported by Admissible Evidence; Immaterial.** Microsoft does not dispute that Nelson Decl. Ex. 790 contains the statement quoted in Paragraph 18. But Microsoft disputes Paragraph 18 on the grounds that the fact stated is not supported by admissible evidence. Specifically, the evidence cited is inadmissible hearsay and lacks foundation because it is a draft presentation created by OpenAI, and the OpenAI witness shown this document as a deposition exhibit was not familiar with this document and could not confirm that this "draft" was the final version shared with Microsoft. *See* Hurst Decl. Ex. 358 (J. Korovesis 30(b)(6) Tr.) at 47:25-49:6. Plaintiffs have not presented evidence establishing that Microsoft ever received this document or endorsed the "goal" stated therein. The statements contained in Nelson Decl. Ex. 790 are therefore not attributable to Microsoft and cannot be used as proof of these assertions.<br><br>Microsoft further responds that OpenAI's description of itself as a "counterweight" to Google and |

| | |
|---|---|
| | DeepMind is immaterial and therefore disputed because these facts are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 19. At Altman's deposition, Altman was asked the following question regarding OpenAI's April 2019 demonstration to Microsoft: "And Bill, in general, likes to read stuff, so any White Papers that you have is something that he wanted you to send ahead of time for his reading." Nelson Decl. Ex. 944 at 214:5– 217:6. Altman answered: "Yes. … I don't think I knew either way." *Id.* | 19. **Disputed in Part – Incomplete; Not Supported by Admissible Evidence; Immaterial.** Microsoft does not dispute that Mr. Altman was asked the statement quoted in the first sentence at his deposition and answered "Yes" in response to that question. But, pursuant to FRE 106, the complete testimony was: "And Bill, in general, likes to read stuff, so any White Papers that you have is something that he wanted you to send ahead of time for his reading – **A. Yes.** Q. – correct?...Q. Was it your understanding that he had read it ahead of time, the material that you sent? **A. I don't think I knew either way.**" Nelson Decl. Ex. 944 (S. Altman 30(b)(1) Tr.) at 216:19-217:6.<br><br>Microsoft disputes any implication that Gates was a Microsoft executive with decision-making authority over Microsoft's decision to invest in OpenAI. Mr. Gates did not have authority over Microsoft's decision to invest in OpenAI. *See* Blythe Opp. Decl. Ex. 14 (W. Gates 30(b)(1) Tr.) at 109:3-110:2.<br><br>Microsoft also responds that whether Bill Gates "in general, likes to read stuff" is immaterial and therefore disputed because these facts are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 20. [redacted] Nelson Decl. Ex. 702. | 20. **Disputed in Part – Not Supported by Cited Evidence; Not Supported by Admissible Evidence; Immaterial.** Microsoft does not dispute that Nelson Decl. |

| | |
|---|---|
| | Ex. 702 contains the quoted language in Paragraph 20. But Microsoft disputes the claim that [redacted] because that claim is not supported by the cited evidence. Nelson Decl. Ex. 702 reflects an email in which Umesh Madan, not Bill Gates, stated: [redacted] Nelson Decl. Ex. 702 at -979. Microsoft further disputes Paragraph 20 on the grounds that the facts stated are not supported by admissible evidence. Specifically, the claims that [redacted] is inadmissible hearsay because the email reflects only Mr. Madan's account of an alleged statement by Mr. Gates, and Mr. Gates neither authored or received the email or testified as to the truth of its contents. *Id*. Mr. Madan also declined to corroborate the truth of these statements at his deposition: "My notes -- what I recall is that the audio was sort of -- well, I would use a different technical word, but it wasn't good. So I tried to capture what I heard best, but it often wasn't necessarily clear. And as usual, I may have slipped in some editorial -- slipped in some editorial." Nelson Decl. Ex. 661 (U. Madan 30(b)(6) Tr.) at 49:13-23; *see also* Blythe Opp. Decl. Ex. 15 (U. Madan 30(b)(6) Tr.) at 15:7-23. Additionally, Mr. Gates himself testified that he "advised Satya against doing the deal" and stated, "if I was in charge, I would go the internal route." Blythe Opp. Decl. Ex. 14 (W. Gates 30(b)(1) Tr.) at 109:10-13. Gates further testified that "Satya made the choice to do a deal with OpenAI, which I, without trying to be too tough about it, said was not a deal that I would do." *Id*. at 94:10-12. |

| | |
|---|---|
| | Microsoft also responds that the opinions of any attendee concerning OpenAI's April 2019 demonstration are immaterial and therefore disputed because these facts are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. In addition, Mr. Gates's impressions related to OpenAI's April 2019 demonstration have no bearing on the business relationship between Microsoft and OpenAI because Bill Gates was no longer a Microsoft executive in April 2019 and did not have decision-making authority over Microsoft's investment in OpenAI. *See* Blythe Opp. Decl. Ex. 14 (W. Gates 30(b)(1) Tr.) at 65:6-67:13, 109:3-110:2. These facts are therefore immaterial to the issues before the Court. |
| 21. [redacted] Nelson Decl. Ex. 160 at -906. | 21. **Undisputed – Immaterial.** Microsoft does not dispute that Nelson Decl. Ex. 160 contains the quoted statement. But Microsoft also responds that Mr. Gates's opinions concerning Microsoft's internal AI innovation efforts are immaterial because these opinions are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 22. [redacted] Nelson Decl. Ex. 206. | 22. **Undisputed.** |
| 23. Despite being repeatedly told that OpenAI trained its models on LibGen, and despite participating in conversations about Library Genesis, numerous Microsoft executives professed ignorance in their depositions as to both what LibGen is and whether OpenAI used it. *See, e.g.*, Nelson Decl. Ex. 866 at 303:13-15 (Q: "Does Microsoft know | 23. **Disputed in Part – Not Supported by Cited Evidence; Immaterial.** Microsoft does not dispute that the cited evidence establishes that Microsoft's witnesses consistently testified that they did not have knowledge of the sources of data in or contents of LibGen. But Microsoft disputes the claim that Microsoft's witnesses were |

| | |
|---|---|
| whether LibGen or Library Genesis was used to train GPT-3.5?" A: "I don't know the answer to that."); Nelson Decl. Ex. 867 at 60:8-19 ("I have no clue what is LibGen before this [case] started to surface. I did basic five minutes research about what is LibGen and that's it."); Nelson Decl. Ex. 868 at 46:7-22 (despite receiving and sending a document describing LibGen as a source of training data for OpenAI, Madan claimed he first became aware of LibGen when "Counsel showed [me] this term" during deposition preparation); Nelson Decl. Ex. 869 at 68:8-13 (Parakhin testified that "[u]ntil yesterday . . . I didn't remember ever hearing that name before. So I . . . personally don't know what Library Gensis is."); Nelson Decl. Ex. 870 at 110:3-18; (Allison testified that she had "[n]ever heard the term 'LibGen' or 'Library Genesis'" before); Nelson Decl. Ex. 871 at 90:2-17 (despite possessing a list of OpenAI datasets that include LibGen, Song "did not register" either Library Genesis or LibGen.). One Microsoft Vice President, Dee Templeton, claimed that she had not heard of LibGen or Library Genesis until the day of her deposition, [redacted] *Compare* Nelson Decl. Ex. 866 at 285:13-286:4, *with* Nelson Decl. Ex. 59(c) at 12:25–14:25. | "repeatedly told that OpenAI trained its models on LibGen" or had "participat[ed] in conversations about Library Genesis" because the cited evidence does not support that assertion.<br><br>Microsoft further responds that the facts set forth in Paragraph 23 are immaterial because Microsoft's alleged "knowledge" is not an element of any claim or defense at issue in Microsoft's Motion for Summary Judgment. |
| 24. Bill Gates, too, despite receiving a pre-read from OpenAI about its use of Library Genesis, testified that he learned about LibGen in the course of being deposed. Nelson Decl. Ex. 872 at 115:4–116:20 (Q: "So when you say you learned about [Library Gensis] in this document, you learned about it either right now or in preparation for your deposition; is that fair?" A: "Yes."). | 24. **Disputed in Part.** Microsoft does not dispute that Mr. Gates first "learned about [Library Genesis]" during his deposition. *See* Nelson Decl. Ex. 872 at 115:11-116:14. Microsoft does not dispute that OpenAI sent Mr. Gates a "pre-read" document before the April 2019 demonstration, but Microsoft disputes the claim that the "pre-read" document Bill Gates received from OpenAI was "about [OpenAI's] use of Library Genesis." [redacted] |

| | |
|---|---|
| | [redacted] *See* Nelson Decl. Ex. 812; BP SUMF ¶ 188. |

## D. Project Taxi

| | |
|---|---|
| 25. Fabrice Canel stated that he "collect[ed] the Internet" and "download[ed] the Internet" on behalf of Microsoft during a project with OpenAI. Nelson Decl. Ex. 866 at 25:15–26:23. | 25. **Disputed in Part – Not Supported by Cited Evidence.** Microsoft does not dispute Mr. Canel's responsibilities included collecting webpages from the internet on behalf of Microsoft to build Microsoft's Bing Index. ECF 1711 (Canel Decl.) ¶ 4. Microsoft also does not dispute that it provided portions of the Bing Index to OpenAI. But Microsoft disputes any implication that Mr. Canel "collect[ed]" or "download[ed]" the Internet solely in connection with "a project with OpenAI." Rather, Mr. Canel testified that his "*Microsoft* responsibilities" included "to collect the internet, to crawl the Internet" and separately testified that he "*share[d]* … what [he] downloaded with OpenAI." Nelson Decl. Ex. 867 (F. Canel 30(b)(6) Tr.) at 25:6-26:22 (emphasis added).<br><br>Microsoft also responds that the facts set forth in Paragraph 25 are disputed because the cited evidence is incorrect. Specifically, Nelson Decl. Ex. 866 is a transcript of the deposition of Dee Templeton that does not mention Mr. Canel and does not contain the quoted language. |
| 26. [redacted] Nelson Decl. Ex. 171 at slides 2, 17. | 26. **Disputed in Part – Not Supported by Cited Evidence.** Microsoft does not dispute that Nelson Decl. Ex. 171 contains the quoted language. But Microsoft disputes Paragraph 26 to the extent Books Plaintiffs represent that any portion of this statement concerns the Bing Index data that was transferred in "Project Taxi" because it is not |

| | |
|---|---|
| | supported by the cited evidence. Nelson Decl. Ex. 171 is an internal presentation dated in October 2023 and describes prospective "goals," Nelson Decl. Ex. 171 at slide 2, whereas Project Taxi concluded around May 2023. *See* Nelson Decl. Ex. 874 (P. Gaggara 30(b)(6) Tr. (Jan 27, 2026)) at 230:8-10. Mr. Usdan, Microsoft's corporate designee concerning Microsoft's data acquisition efforts with OpenAI, created Nelson Decl. Ex. 171 and testified that this workstream related to late 2023 (after the conclusion of Project Taxi). Hurst Decl. Ex. 359 (J. Usdan 30(b)(6) Tr.) at 147:13-149:10; *see also* Hurst Decl. Ex. 360 (Sept. 12, 2025 Microsoft Ltr. to Counsel Re 30(b)(6) Notices); Hurst Decl. Ex. 361 (J. Huynh 30(b)(6) Tr.) at 125:2-126:3, 129:10-20.<br><br>Microsoft further disputes the implication that any "[redacted]" in the Bing Index equate to copies of books. Record evidence establishes that the Bing Index does not store books for all [redacted] Ms. Gaggara, Microsoft's non-retained rebuttal expert witness, testified, "we did find that most of the web pages in that domain were empty or had not-- a trivial amount of content in them. It was not truly representative of any pirated book." Hurst Decl. Ex. 351 (P. Gaggara (non-retained rebuttal expert witness) Tr. (Jul. 28, 2026)) at 42:19-43:3; *see also* Blythe Opp. Decl. Ex. 63 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) at 28:15–31:8; Blythe Opp. Decl. Ex. 85 (F. Canel 30(b)(6) Tr. (Jan. 22, 2026)) at 68:20-69:5. |
| 27. Testifying as Microsoft's corporate designee, Huynh stated that each of the [redacted] | 27. **Disputed – Not Supported by Admissible Evidence; Incomplete.** Microsoft disputes the assertion |

| | |
|---|---|
| contained in the Bing Index denoted "books, individual books." Nelson Decl. Ex. 873 at 85:11–17. Huynh further testified that [redacted] *Id.* at 111:12–16. | in the first sentence that "each of the [redacted] contained in the Bing Index denoted 'books, individual books.'" The mere existence of a URL does not mean that there is meaningful content available on that webpage to be indexed or that Microsoft's Bingbot crawler can access the contents that may exist on a given webpage. *See* ECF 1705 (Gaggara Decl.) ¶¶ 20-22. In particular, record evidence establishes that the Bing Index does not store books for all [redacted] Ms. Gaggara, Microsoft's non-retained rebuttal expert witness, testified, "we did find that most of the web pages in that domain were empty or had not-- a trivial amount of content in them. It was not truly representative of any pirated book." Hurst Decl. Ex. 351 (P. Gaggara (non-retained rebuttal expert witness) Tr. (Jul. 28, 2026)) at 42:19-43:3; *see also* Blythe Opp. Decl. Ex. 63 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) at 28:15–31:8. Additionally, Canel testified that there was "100 percent no" chance that "[t]here were [redacted] Library Genesis URLs in Microsoft's Bing index that contain[ed] data crawled from the Internet." Blythe Opp. Decl. Ex. 85 (F. Canel 30(b)(6) Tr.) at 68:20-69:5.<br><br>Microsoft further responds that the facts stated in Paragraph 27 are disputed because they are not supported by admissible evidence. Mr. Huynh's statements were not provided in Mr. Huynh's capacity as "Microsoft's corporate designee" because such statements were elicited concerning matters outside the scope of topics for which Microsoft designated this witness, and Books Plaintiffs have not otherwise established that the witness had personal |

| | |
|---|---|
| | knowledge sufficient to testify on this matter in his individual capacity. Nelson Decl. Ex. 873 (J. Hyunh 30(b)(6) Tr.) at 85:6-15, 111:15. When Mr. Huynh was presented with Nelson Decl. Ex. 171 during his deposition, Mr. Huynh testified that that the slide deck "was created by Jordan [Usdan]" and that he was "not part of the discussion" concerning the subject matter of the presentation. Hurst Decl. Ex. 361 (J. Huynh 30(b)(6) Tr.) at 129:10-20, 131:3-6. Pursuant to Fed. R. Evid. 106, Mr. Huynh also testified: "It is unclear what the metric is here. It could be books. URLs could map directly to a number of books." Nelson Decl. Ex. 873 (J. Hyunh 30(b)(6) Tr.) at 85:7-9. When asked whether "the blocked URL [would] still show up in the – in the Bing Index in some form," Mr. Huynh answered, "I'm unsure. I would – I would have to speculate, be speculating." *Id.* at 86:14-18. When asked how he would "go about figuring out whether the Bing Index included books data from Internet Archive as of October 2023," Mr. Huynh responded, "I would reach out to Padma and team." Hurst Decl. Ex. 361 (J. Huynh 30(b)(6) Tr.) at 105:3-6.<br><br>As to the second sentence, Microsoft disputes that the quoted statement reflects Microsoft's "underst[anding]" because topics related to [redacted] were not in the scope of the 30(b)(6) topics for which Mr. Huynh was designated. Blythe Opp. Decl. Ex. 61 (J. Hyunh 30(b)(6) Tr.) at 111:15. Additionally, pursuant to Fed. R. Evid. 106, Mr. Huynh testified: "I don't know what our [Microsoft's] formal position was on Library Genesis." *Id.* at 111:6–7. |

| | |
|---|---|
| 28. In 2022, Microsoft distributed full copies of the Bing Index to OpenAI through "Project Taxi." *See* Nelson Decl. Ex. 874 at 59:10–59:25; Shan Decl. Ex. A at ¶ 127. | 28. **Disputed in Part – Not Supported by Cited Evidence; Incomplete.** Microsoft does not dispute that it provided OpenAI samples of Bing Index data in 2022 as part of the effort to develop LLMs under the Joint Development and Collaboration Agreement (JDCA). But Microsoft disputes that Microsoft provided OpenAI "full copies of the Bing Index" in 2022. While the quoted statement cited as Nelson Decl. Ex. 874 at 59:13-25 reflects Ms. Gaggara's testimony that the offline version of the Bing Index was shared with OpenAI in 2022, pursuant to Fed. R. Evid. 106, Ms. Gaggara later corrected her testimony and clarified that Microsoft shared small samples of Bing Index data beginning in around 2022 and did not provide an offline version of the Bing Index with OpenAI until early 2023. Nelson Decl. Ex. 874 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 229:13-230:10; *see also* Nelson Decl. Ex. 875 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) at 69:10-13. Microsoft also disputes the assertion that Microsoft provided OpenAI "full copies of the Bing Index." The Bing Index data that Microsoft provided to OpenAI excluded webpages applying the NOARCHIVE and/or NOCACHE meta tag directives, and Microsoft removed any web content subject to DMCA takedown protocols. Nelson Decl. Ex. 874 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 230:22-231:8 ("We removed anything which was 'noarchive/nocache' from them. We removed anything which was DMCA removed from them."); Blythe Opp. Decl. Ex. 53 (M. Parakhin 30(b)(1) Tr.) at 101:19–102:16 ("[A]ll the known copyrighted books with all the known copyrighted claims of people were removed from index; not only from the subset that sent to OpenAI, but even from the index that Microsoft had on -- on its -- Bing website."); *see also* ECF 1705 (Gaggara Decl.) ¶¶ 20–23. |

| | |
|---|---|
| 29. Padma Gaggara, Microsoft's corporate representative, testified that OpenAI was "not supposed to use [the Bing Index] for training" because Microsoft contractually restricted OpenAI's use of this data to "computational analysis only." Nelson Decl. Ex. 875 at 89:16–90:11; 93:15-23. According to Gaggara, "the intent of every . . . document that we wrote" in relation to the Bing Index data was "that it was supposed to be only for experimental purposes" as opposed to "training." *Id.* at 127:21–128:24. | 29. **Disputed in Part – Incomplete.** Microsoft does not dispute that Nelson Decl. Ex. 875 contains the quoted language. Microsoft disputes the assertion in Paragraph 29 that the contractual provision limiting OpenAI's use of the Bing Index data to "computational analysis" precluded OpenAI from using the Bing Index data for training writ large. The "computational analysis" provision only [redacted] *See* Nelson Decl. Ex. 161. Pursuant to FRE 106, Gaggara testified that "computational analysis" included using the Bing Index data [redacted] Simpson Decl. Ex. 309 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) at 101:16-102:7, and [redacted] Nelson Decl. Ex. 879 (P. Gaggara (non-retained rebuttal expert witness) Tr. (Jul. 28, 2026)) at 30:18-31:13. Gaggara further testified that [redacted] Nelson Decl. Ex. 875 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) at 48:20-49:24, 94:24-95:2. OpenAI's corporate designee confirmed that OpenAI used the Bing Index data "to train several internal-only research models for evaluation purposes" and again testified that "Project Taxi was used for training, but not training a production model." Nelson Decl. Ex. 57(a) (I. Sohl 30(b)(6) Tr.) at 345:10-13, 445:14-18; *see also* Nelson Decl. Ex. 960 (N. Ryder 30(b)(6) Tr.) at 68:10-25 ([redacted]).<br><br>Microsoft further disputes the characterization in the last sentence that using the Bing Index data for |

| | |
|---|---|
| | "experimental purposes" was "opposed to" and thus not part of "training." As detailed above, OpenAI used the Bing Index data to experiment with whether it made for good training data, including by training research-only models. |
| 30. Gaggara further testified that Microsoft "never gave [Bing Index] data for training to OpenAI." *Id.* at 127:21–128:1. According to Gaggara, Microsoft imposed this kind of restriction because, in "Microsoft's mind," it "wasn't right for us to give the data for them to use it for training." *See id.* at 47:11–48:19. | 30. **Disputed in Part – Incomplete.** Microsoft does not dispute that Ms. Gaggara made the statements quoted in Paragraph 30 at her deposition. But Microsoft disputes the first sentence of Paragraph 30 on the grounds set forth in its response to Paragraph 29.<br><br>Microsoft disputes the characterization in the second sentence that Microsoft believed it "wasn't right for [Microsoft] to give the data for [OpenAI] to use it for training" writ large. Pursuant to FRE 106, Ms. Gaggara explained that Microsoft restricted OpenAI from using the Bing Index data to train *production* LLMs because Microsoft collected the data using the identity of its own Bingbot crawler, rather than of OpenAI's GPTBot and so did not properly signal to webmasters any potential use of that data by OpenAI to train *commercial* LLMs. *See* Nelson Decl. Ex. 875 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) at 48:6-19; *id* at 128:6-15. |
| 31. When Gaggara was specifically asked, in her role as Microsoft's corporate designee, whether Microsoft shared the full Bing Index with OpenAI for the purpose of training large language models, she testified that that was not the case. Nelson Decl. Ex. 874 at 60:20–60:24. | 31. **Disputed in Part – Incomplete; Not Supported by Cited Evidence.** Microsoft does not dispute that it did not share the Bing Index data with OpenAI for the purpose of training <u>*commercial*</u> LLMs. But, pursuant to FRE 106, Ms. Gaggara's complete testimony is as follows: "Q. ... the purpose of doing that was for training large language models, is that correct?" "A. That's not correct. It was for OpenAI to assess the value of Web data and data at that scale to be valuable for pushing the training to further quality than what they already had with the |

| | |
|---|---|
| | limited data they had already trained with." Nelson Decl. Ex. 874 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 60:20-61:5; *see also* Nelson Decl. Ex. 875 at (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) 48:20-49:24, 94:24-95:2 (Ms. Gaggara testifying that Microsoft's "intention was to give it [the Bing Index data] to them [OpenAI] for experimenting with it" and explaining that Microsoft expected OpenAI would perform such experiments by "train[ing] a smaller model, just to directionally see where things are going."). Microsoft further disputes Paragraph 31 on the grounds set forth in its response to Paragraph 29.<br><br>Microsoft further responds that Paragraph 31 is disputed as to the claim that Microsoft shared "the full Bing Index" with OpenAI. Microsoft incorporates by reference its response to Paragraph 28 regarding its dispute that Microsoft provided OpenAI "full copies of the Bing Index." |
| 32. Gaggara further explained that OpenAI was "not supposed to use [the Bing Index] for the training. I cannot tell what they did" and that OpenAI was contractually restricted from using the Bing Index copy to train LLMs. Nelson Decl. Ex. 875 at 89:16–90:11; 93:10–23; 127:21–128:24. | 32. **Disputed in Part – Incomplete.** Microsoft does not dispute that Ms. Gaggara made the statement quoted in Paragraph 32 at her deposition. But Microsoft disputes Paragraph 32 on the grounds set forth in its response to Paragraph 29. |
| 33. To obtain the Bing Index data, OpenAI also made a payment of [redacted] to Microsoft. Nelson Decl. Ex. 874 at 97:12–98:21. | 33. **Disputed in Part – Incomplete.** Microsoft disputes the implication that the [redacted] payment was paid "[t]o obtain the Bing Index data." The [redacted] was purely to [redacted] *See* Nelson Decl. Ex. 874 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 98:2-24; *see also id.* at 195:14-17 ([redacted] |

| | |
|---|---|
| | [redacted]); Hurst Decl. Ex. 362 (M. Parakhin 30(b)(1) Tr.) at 84:20-22 ("[redacted]); Nelson Decl. Ex. 59(c) (D. Templeton 30(b)(1) Tr.) at 57:8-25 [redacted]); Hurst Decl. Ex. 363 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 92:23-93:4 [redacted]).<br><br>Microsoft further disputes any implication that OpenAI made such payment "[t]o obtain the Bing Index data" to the extent it suggests that OpenAI's receipt of the data was conditioned its payment. Microsoft had already provided the Bing Index data to OpenAI and only later requested reimbursement from OAI [redacted]. Hurst Decl. Ex. 362 (M. Parakhin 30(b)(1) Tr.) at 84:14-19, 111:3-13, 317:2-10; *see also* Hurst Decl. Ex. 363 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026) Ex. 17) (memorializing [redacted] cost reimbursement agreement in July 2023, *i.e.*, after Microsoft had completed transferring Bing Index data to OpenAI); Nelson Decl. Ex. 876 at -376 [redacted] |
| 34. [redacted] | 34. **Disputed in Part – Incomplete.** Microsoft does not dispute that Nelson Decl. Exs. 876, 874, and 978 contain the quoted language in Paragraph 34. Microsoft |

| | |
|---|---|
| [redacted] Nelson Decl. Ex. 876 at -375, -377; Nelson Decl. Ex. 874 at 97:12–98:24; Nelson Decl. 978 at 23:10–17. | disputes any implication that OpenAI paid the [redacted] as consideration for the Bing Index data for the reasons stated in its response to Paragraph 33. Pursuant to FRE 106, Ms. Gaggara testified she estimated an [redacted] a year" for Microsoft to share the Bing Index data with OpenAI and "OpenAI agreed to pay" that [redacted] Nelson Decl. Ex. 874 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 97:12-98:19 (emphasis added).<br><br>Microsoft further disputes Paragraph 34 on the grounds set forth in its response to Paragraph 33. |
| 35. [redacted] Nelson Decl. Ex. 877 at -440. | 35. **Disputed in Part – Incomplete.** Microsoft does not dispute that Nelson Decl. Ex. 877 contains that quoted language in Paragraph 35. But Microsoft disputes any inference from Ms. Allison's statement in an internal email exchange that Microsoft actually conditioned sharing Bing Index data with OpenAI upon receipt of [redacted]. Pursuant to FRE 106, Karmel Allison also testified: "[t]here's no implication of causality" between Microsoft providing OpenAI a portion of the Bing Index data and OpenAI providing Microsoft [redacted] Nelson Decl. Ex. 1 (K. Allison 30(b)(1) Tr.) at 72:1-8. |
| 36. [redacted] Nelson Decl. Ex. 875 at 44:25–48:19. | 36. **Disputed in Part – Incomplete; Immaterial.** Microsoft does not dispute that [redacted] But Microsoft disputes any implication in Paragraph 36 that Microsoft [redacted] Pursuant to FRE 106, Ms. Gaggara testified, [redacted] Nelson Decl. Ex. 875 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025) at 45:19-20. |

| | |
|---|---|
| | Microsoft disputes Paragraph 36 to the extent that Books Plaintiffs include it in Section D which is titled "Project Taxi," as this statement does not relate in any way to "Project Taxi."<br><br>Microsoft further responds that Paragraph 36 is immaterial because it concerns activities with a non-party and is not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment and should be disregarded. Additionally, Books Plaintiffs have not presented any evidence suggesting that the Asserted Works were [redacted]. |
| 37. Microsoft's corporate designee, Gaggara, testified that [redacted] *Id.* at 46:21–47:10. | 37. **Disputed in Part – Incomplete; Immaterial.** Microsoft does not dispute that Nelson Decl. Ex. 875 contains the quoted language. Microsoft disputes any implication that [redacted] Pursuant to FRE 106, Ms. Gaggara testified that [redacted] Nelson Decl. Ex. 875 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025) at 45:13-16. *See also* Microsoft's Response to Paragraph 29.<br><br>Microsoft disputes Paragraph 37 to the extent that Books Plaintiffs include it in Section D which is titled "Project Taxi," as this statement does not relate in any way to "Project Taxi."<br><br>Microsoft further responds that Paragraph 37 is immaterial for the reasons stated in its response to Paragraph 36. |

## E. Project Mango

| | |
|---|---|
| 38. Mango was Microsoft's solution to reduce the legal risk associated with sharing the Bing Index. Nelson Decl. Ex. 878 at 355:15–20. | 38. **Disputed in Part – Not Supported by Cited Evidence; Improper Legal Argument.** Microsoft does not dispute that Microsoft agreed to collect data for OpenAI to use in training commercial LLMs in connection with a project named "Mango." Microsoft disputes the characterization that Project Mango was a "solution to reduce the legal risk associated with sharing the Bing Index" because it is not supported by the cited evidence. Rather, Ms. Templeton testified that Project Mango was "the solution that Microsoft and OpenAI worked out" to "help[] OpenAI [] create their own web crawl of web data to use for LLM training." Nelson Decl. Ex. 878 (D. Templeton 30(b)(6) Tr.) at 355:15-20.<br><br>Microsoft also responds that the Court should disregard Plaintiffs' statement regarding "legal risk" as it is a legal conclusion that constitutes improper attorney argument and/or is conclusory. |
| 39. As Canel, Microsoft's corporate designee, admitted: "Project Mango plan was designed to reduce risk for Microsoft, so that [Microsoft] would have both companies crawl the web and use that data as opposed to having Microsoft sharing the whole Bing Index with OpenAI." Nelson Decl. Ex. 867 at 75:5–10. | 39. **Disputed in Part – Incomplete.** Microsoft does not dispute that Mr. Canel agreed with the quoted statement at his deposition. But, pursuant to FRE 106, Mr. Canel testified: "Rather than provide the Bing web index to OpenAI for training, we would instead provide OpenAI with a service to crawl web URLs. WebXT would set up a separate user agent crawler for OpenAI so it is apparent that OpenAI is crawling sites, and sites would have an opportunity to block the OpenAI agent if desired via robots.txt." Nelson Decl. Ex. 867 (F. Canel 30(b)(6) Tr.) at 74:12-22. |

| | |
|---|---|
| 40. Microsoft instructed its employees to keep Project Mango a secret. *Id.* at 84:1–3. | 40. **Disputed – Incomplete.** Microsoft disputes any implication that it kept Project Mango a "secret" for improper reasons. Microsoft does not disclose the activities of its customers, consistent with typical business practices. *See* Blythe Opp. Decl. Ex. 65 (P. Gaggara 30(b)(6) Tr.) at 142:10–145:11 ("There was no attempt to keep it [Project Mango] secret or make it public. It was a technology we were offering OpenAI, and OpenAI was using it."). |
| 41. Microsoft described its role in Project Mango as a "service provider" rendering "purely a crawling service." Nelson Decl. Ex. 875 at 148:7–14. | 41. **Disputed in Part – Not Supported by Cited Evidence; Incomplete.** Microsoft does not dispute that Nelson Decl. Ex. 875 contains the quoted language. Microsoft disputes any implication that its *only* role in Project Mango was a "service provider." Pursuant to FRE 106, Ms. Gaggara further testified that the "purpose" of Microsoft collecting "Bing web data for OpenAI was to improve the next generation of GPT models" and that Microsoft provided its "expertise" to "expedite [OpenAI's] ability to crawl" to that collective end. Nelson Decl. Ex. 875 (P. Gaggara 30(b)(6) Tr. (Aug. 20, 2025)) at 131:4-132:24, 146:12-23; *see also* Hurst Decl. Ex. 363 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 156:17-157:2 ("We were interested in taking the LLMs forward. And … Microsoft is a technology company. We always want to push the technology forward. And if we have the ability to do so, we will participate in it."); Blythe Opp. Decl. Ex. 8 (J. Tinter 30(b)(6) Tr.) at 184:3-185:10 ("[O]ne of the theoretical benefits of the collaboration was that … we would work together [to] find efficiency … so it was beneficial to OpenAI to not have to develop their own technology but take advantage of technology that Microsoft had invested in considerably. [And] it was beneficial to us to make that |

| | |
|---|---|
| | technology available to OpenAI to the extent that they believed it would potentially make the IP that they were creating for us more valuable.”). |
| 42. To complete Project Mango, Microsoft received payment from OpenAI of over [redacted]. Nelson Decl. Ex. 874 at 196:23–197:19. | 42. **Disputed in Part – Incomplete.** Microsoft does not dispute that OpenAI provided periodic payments to Microsoft in connection with Project Mango. But Microsoft disputes any implication that the payments were consideration for the data that Microsoft crawled. Pursuant to FRE 106, Ms. Gaggara testified, “[I]t is not revenue in layman terms because we are not making a profit here. It is pure cost.” Nelson Decl. Ex. 874 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 198:19–199:2. As with the Bing Index data, the Mango payments were pure cost accounting. *See* Nelson Decl. Ex. 57(a) (I. Sohl 30(b)(6) Tr.) at 343:24–344:1 (“the agreement is more about the operational burden of running a web-crawling service rather than paying for content.”); Nelson Decl. Ex. 875 (P. Gaggara 30(b(6) Tr. (Aug. 20, 2025)) at 146:3-7 (“This was for the service -- the crawler service that we were running. That is what they paid for, because we were hosting the -- their service, and there was a compute cost. There was a temporary storage cost associated with it.”); Hurst Decl. Ex. 363 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 183:20-24 (“There was no revenue recognized.”); Hurst Decl. Ex. 363 (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026) Ex. 18) at -344 (“It is purely recovery of expenses. There is no revenue involved.”). |
| 43. In his capacity as Microsoft’s corporate representative, Fabrice Canel testified to sending Project Mango data to OpenAI but did not know whether OpenAI | 43. **Disputed in Part – Incomplete.** Microsoft does not dispute Nelson Decl. Ex. 867 reflects Mr. Canel’s testimony stating that he did not have visibility into how *OpenAI* intended to use this data to train models. Pursuant |

| | |
|---|---|
| intended to use this data to train models. Nelson Decl. Ex. 867 at 81:1–23. | to FRE 106, Mr. Canel testified: “Again, I don’t know the usage of the data by OpenAI. I provided the data to OpenAI.” Nelson Decl. Ex. 867 (F. Canel 30(b)(6) Tr.) at 81:22-23.<br><br>Microsoft further disputes any implication in Paragraph 43 that Microsoft did not intend for OpenAI to use the data that Microsoft crawled during Project Mango for training its LLMs. *See id.* at 81:15-21; *see also* Nelson Decl. Ex. 19(b) (P. Gaggara 30(b)(6) Tr. (Jan. 27, 2026)) at 140:10-13 (“Project Mango was an effort to help OpenAI bootstrap ability to collect as many of the documents as possible for their training – training the large language models.”); BP SUMF ¶ 601. |
| 44. Microsoft received copies of LibGen1 and LibGen2 from OpenAI both in 2020 and again in early 2021. *See* Nelson Decl. Ex. 777 at -379-80; Nelson Decl. Ex. 882 at 41:2-47:11. | 44. **Disputed.** Microsoft disputes that “Microsoft received copies of LibGen1 and LibGen2 from OpenAI … in 2020.” The record evidence establishes that OpenAI provided Microsoft a subset of the GPT-3 pre-training data in a tokenized format so Microsoft could perform one of the necessary evaluations involved in model training, *i.e.*, verifying/evaluating the GPT-3 model’s training curves. *See* Nelson Decl. Ex. 158 at -967 (contractual acceptance criteria were that Microsoft “is able to validate the ability to build and verify GPT-3,” including “the ability to … [r]eproduce associated GPT-3 training curves … through access to G[PT]-3 training data sets and their pre-processing”); ECF 1748 (Callison-Burch Decl.) Ex. B ¶ 62.a (“[V]alidating the construction of a language model by inspecting its pre-training data is part and parcel of the pre-training process, which includes steps after the model run.”); Blythe Opp. Decl. Ex. 61 (J. Huynh 30(b)(6) Tr.) at 237:9–15 (“[The datasets that we did receive were only partial [for] … the evaluations of the training curves … [T]he training datasets were tokenized, so not in natural language for a human to |

| | |
|---|---|
| | look at. So you need to be able to feed … the same data to be able to track the same training curve."); Blythe Opp. Decl. Ex. 60 (X. Song 30(b)(1) Tr.) at 83:5–13 ("One-third of the data was in the tokenized format [and] was transferred for the only purpose of evaluation."). These subsets of training data are needed to evaluate the model's training curves and training loss before evaluating the model's test loss. ECF 1723 (Lafferty Decl.) ¶¶ 69-71, 103, 149–150.<br><br>Microsoft further disputes the assertion that "Microsoft received copies of LibGen1 and LibGen2 from OpenAI … again in early 2021" because it is not supported by the cited evidence. Nelson Decl. Ex. 777 reflects that OpenAI provided Microsoft access to portions of the GPT-3 training data on November 3, 2020, in connection with Microsoft's evaluations of the GPT-3 model, and Nelson Decl. Ex. 882 is the deposition testimony of Brandon Norick discussing that same document and the GPT-3 training datasets Microsoft received on that same day.<br><br>Microsoft also disputes Paragraph 44 to the extent that Books Plaintiffs include it in Section E which is titled "Project Mango," as this statement does not relate in any way to "Project Mango." |
| 45. Satya Nadella testified that Microsoft does not train models using data obtained from domains identified by the Office of the United States Trade Representative Notorious Markets for Counterfeiting and Piracy Report because "it's not legal." Nelson Decl. Ex. 883 at 188:1–7. | 45. **Disputed in Part – Incomplete; Immaterial.** Microsoft does not dispute that Nelson Decl. Ex. 883 reflects Mr. Nadella's deposition testimony. But Microsoft responds that the fact set forth in Paragraph 45 is disputed because pursuant to FRE 106, Mr. Nadella expressly disclaimed his qualifications to provide testimony concerning legal conclusions: "Q. Would you agree that you should not train on copyrighted books' content without |

| | |
|---|---|
| | paying for the right to do so?" "A. The -- the norm at least -- I don't have the legal definitions of all of this, but the way I -- again, I'll just go back to if there is open web content. To use the open web content to be able to create an AI model that is not a regurgitation machine but an AI model, then I think that that is fair use in my opinion, not a legal term, but how I think about the only way you can build a new general purpose technology like AI." Hurst Decl. Ex. 366 (S. Nadella 30(b)(1) Tr.) at 102:11-103:3.<br><br>Microsoft further responds that Microsoft's training practices for its own LLMs and the bases for its policies are immaterial and therefore disputed because these facts are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 46. On January 31, 2025 the shadow library, Anna's Archive, released a blog post stating that: "[n]ot too long ago, 'shadow-libraries' were dying. . . . Then came AI. Virtually all major companies building LLMs contacted us to train on our data." Nelson Decl. Ex. 884. | 46. **Disputed in Part – Not Supported by Admissible Evidence.** Microsoft does not dispute that Nelson Decl. Ex. 884 contains the quoted language. But Microsoft responds that the fact set forth in Paragraph 46 is disputed because it is not supported by admissible evidence. Specifically, the cited evidence is inadmissible hearsay and lacks foundation because it is an unauthenticated non-party publication offered for the truth of its contents. It therefore may not be considered in the context of summary judgment. |
| 47. [redacted] Nelson Decl. Ex. 204 at -006; Nelson Decl. Ex. 885 at 255:18-22. | 47. **Disputed in Part – Incomplete; Immaterial.** Microsoft does not dispute that Nelson Decl. Ex. 885 at 255:18-22 contains the quoted language. But Microsoft disputes that Nelson Decl. Ex. 204 at -006 reflects [redacted] because the cited evidence does not discuss licensing content. To the extent the cited evidence concerns only Microsoft's LLMs, |

| | |
|---|---|
| | Paragraph 47 is immaterial because Microsoft's LLMs are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment.. |
| 48. [redacted] Nelson Decl. Ex. 204 at -006. | 48. **Undisputed – Not Supported by Cited Evidence; Immaterial.** While Microsoft does not dispute that Nelson Decl. Ex. 204 contains the quoted language, Microsoft responds that the quoted language is contained in Nelson Decl. Ex. 204 at -007, not -006 as cited in Paragraph 48. To the extent the cited evidence concerns only Microsoft's LLMs, Paragraph 48 is immaterial because Microsoft's LLMs are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 49. [redacted] *Id.* | 49. **Undisputed – Not Supported by Cited Evidence, Immaterial.** While Microsoft does not dispute that Books Ex. 204 contains the quoted language, Microsoft responds that the quoted language is contained on Books Ex. 204 at -007, not -006 as cited in Paragraph 49. Microsoft also incorporates its response to Paragraph 48 above. To the extent the cited evidence concerns only Microsoft's LLMs, Paragraph 49 is immaterial because Microsoft's LLMs are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |
| 50. The Microsoft employee who created the [redacted] slide confirmed that the books Microsoft already had would have included books from the "Bing Index or open source book repositories." Nelson Decl. Ex. 885 at 259:1-7. | 50. **Disputed in Part – Incomplete; Immaterial.** Microsoft does not dispute that Nelson Decl. Ex. 885 at 259:1-7 contains the quoted language. But Microsoft disputes any implication that Jordan Usdan's deposition testimony establishes that this presentation reflects Microsoft's efforts obtain "books" from the Bing Index for training its LLMs. Pursuant to FRE 106, Mr. Usdan explained that this presentation was merely exploratory and did not reflect Microsoft's actual data |

| | |
|---|---|
| | acquisition efforts with respect to the Bing Index: "[A]t this point, we were so nascent, we didn't even have a data pipeline to get any data out of the Bing index at all for Microsoft's model training." Nelson Decl. Ex. 885 (J. Usdan 30(b)(6) Tr.) at 260:10-14; *see also* Hurst Decl. Ex. 359 (J. Usdan 30(b)(6) Tr.) at 294:8-22 ("Q. Well, you had access to books data in the Bing index, correct?" "A. No, not at that time. It was -- I was probing around, but there's no, like, set of books we got ever from Bing. ... I'm saying there was never an effort to go into Bing and get all the books in Bing."). <br><br> To the extent the cited evidence concerns only Microsoft's LLMs, Paragraph 50 is immaterial because Microsoft's LLMs are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. |

## F. Harm

| | |
|---|---|
| 51. Former VP of AI at Microsoft, Luis Vargas, testified that he "think[s] that book authors are justified in filing a class action to try to seek compensation from LLM developers who downloaded and/or used their copyrighted books without paying for those books or asking permission." Nelson Decl. Ex. 886 at 89:23–90:7. | 51. **Undisputed – Incomplete; Immaterial.** Microsoft does not dispute that Mr. Vargas gave the quoted testimony at his deposition. But, pursuant to FRE 106, when first asked this question, Mr. Vargas testified: "Yeah, I'm not a lawyer, so I should not try to come with some legal perspective on these things. I don't know" and repeatedly clarified that his answer was just a "personal perspective." Nelson Decl. Ex. 886 (L. Vargas Tr.) at 89:10–91-11. <br> Microsoft further responds that the facts stated in paragraph 51 are immaterial and therefore disputed because these facts are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. A Microsoft employee's personal views on whether authors are justified in bringing litigation have no |

| | |
|---|---|
| | bearing on Microsoft's motion, and Mr. Vargas's personal perspective cannot be attributed to Microsoft. Mr. Vargas confirmed that he gave his opinions in "[m]y personal capacity. I cannot speak on behalf of Microsoft. Neither do I have all of the information and facts to be able to elicit a complete companywide perspective. The view is personal." Hurst Decl. Ex. 367 (L. Vargas Tr.) at 117:17–118:1. |
| 52. Vargas further testified that he thought it was "the right thing for AI companies to compensate book authors in exchange for using any of their copyrighted books for training LLMs," stating that he "believe[s] if they are using books, they should compensate the authors of books, yes." *Id.* at 91:3–11. | 52. **Undisputed – Incomplete; Immaterial.** Microsoft does not dispute that Mr. Vargas testified, "[a]gain, not a legal opinion obviously, but yes, I believe if they are using books, they should compensate the authors of books, yes." Nelson Decl. Ex. 886 (L. Vargas Tr.) at 91:8–11. But, pursuant to FRE 106, Mr. Vargas described his answers in this line of questioning as his "personal perspective." *Id.* at 91:1. And when asked whether AI companies threaten the livelihood of authors by training on their works, Mr. Vargas testified: "I don't have enough understanding of the direct or indirect implications here to be able to elicit a valuable, a valuable perspective. I don't know." *Id.* at 91:24–92:8.<br><br>Microsoft further responds that the facts stated in paragraph 52 are immaterial and therefore disputed because these facts are not relevant to the determination of the merits Microsoft's Motion for Summary Judgment. A Microsoft employee's personal views on any hypothetical compensation practices for the use of books in LLM development have no bearing on Microsoft's motion, and Mr. Vargas's personal perspective cannot be attributed to Microsoft. Mr. Vargas confirmed that he gave his opinions in "[m]y personal capacity. I cannot speak on behalf of Microsoft. Neither do I have all of the information and facts |

| | |
|---|---|
| | to be able to elicit a complete companywide perspective. The view is personal." Hurst Decl. Ex. 367 (L. Vargas Tr.) at 117:17–118:1. |
| 53. Vargas also confirmed that "as an engineer," he felt it was "ethically dubious" to use "copyrighted books to train LLMs without asking permission." *Id.* at 94:5–14. | 53. **Undisputed – Incomplete; Immaterial.** Microsoft does not dispute that in response to counsel's question, Mr. Vargas testified that his "answer was yes." Nelson Decl. Ex. 886 (L. Vargas Tr.) at 94:14. But pursuant to FRE 106, when first asked this question, Mr. Vargas testified "this seems to be a legal question. We're not lawyers, we're engineers." *Id.* at 93:22-24.<br>Microsoft further responds that the facts stated in paragraph 53 are immaterial and therefore disputed because these facts are not relevant to the determination of the merits of Microsoft's Motion for Summary Judgment. A Microsoft employee's personal views on the ethics of training LLMs on copyrighted books have no bearing on Microsoft's motion, and Mr. Vargas's personal perspective cannot be attributed to Microsoft. Mr. Vargas confirmed that he gave his opinions in "[m]y personal capacity. I cannot speak on behalf of Microsoft. Neither do I have all of the information and facts to be able to elicit a complete companywide perspective. The view is personal." Hurst Decl. Ex. 367 (L. Vargas Tr.) at 117:17–118:1. |

## G. Books4

| | |
|---|---|
| 54. [redacted] Nelson Decl. Ex. 878 [Templeton 30(b)(6) deposition, Vol. 2 (Jan. 21, 2026),] 417:13–419:8. | 54. **Disputed in Part – Immaterial.** Microsoft responds that, to the extent that the facts set forth in Paragraph 54 are cited in support of Plaintiffs' unfounded assertion in their Opposition Brief that Microsoft has allegedly "engaged in its own separate mass piracy," or to |

| | |
|---|---|
| | the extent this fact has anything to do with Books4 (per the heading G), these facts are improper because these facts, by Books Plaintiffs' own admission, are "the subject of a different case" that is "currently stayed" pending the resolution of the issues in the instant action. *See* ECF 2268 (Books Plaintiffs' Opp. to MSFT's MSJ) at 18 n. 4; MDL Dkt. 538 (order to stay the action captioned *Bird v. Microsoft*, 1:25-cv-05282 (S.D.N.Y.)). Books Plaintiffs' submission of these facts is in violation of this Court's Order staying the action for which these facts allegedly pertain. Accordingly, these facts are neither admissible in this action nor do they bear any relevance to the issues before the Court and are therefore immaterial. The Court should therefore disregard Paragraph 54 in its entirety.<br><br>Without waiving the foregoing, Microsoft does not dispute that [redacted] Nelson Decl. Ex. 158 at -967; *see also* Nelson Decl. Ex. 346 at -421 [redacted] (emphasis added); Blythe Opp. Decl. Ex. 60 (X. Song 30(b)(1) Tr.) at 84:23–85:5 (testifying that the goal of the evaluations was "to make sure when OpenAI agreed to transfer these GPT-3 assets to Microsoft, we, as a recipient of the assets, we actually received what they were claimed to be. We are receiving functional things, functional assets, so we had to run an evaluation on top of the assets we received to make sure they work as expected."). |
| 55. [redacted] | 55. **Disputed – Immaterial; Not Supported by Admissible Evidence.** Microsoft responds that, to the extent that the facts set forth in Paragraph 55 are cited in |

| | |
|---|---|
| [redacted] Nelson Decl. Ex. 987 at 11-12. [redacted] *Id.* | support of Plaintiffs' unfounded assertion in their Opposition Brief that Microsoft has allegedly "engaged in its own separate mass piracy," or to the extent this fact has anything to do with Books4 (per the heading G), these facts are improper and immaterial for the reasons stated in Paragraph 54.<br><br>Without waiving the foregoing, Microsoft does not dispute that the evidence cited as Nelson Decl. Ex. 987 contains the quoted language. But Microsoft also responds that Paragraph 55 is disputed because it is not supported by admissible evidence. Specifically, the document cited as Nelson Decl. Ex. 987 is unauthenticated because Mr. Tiwary testified that he did not recognize the document and would be speculating as to the meaning of its contents. Hurst Decl. Ex. 368 (S. Tiwary 30(b)(1) Tr.) at 74:5-76:24. Plaintiffs have not presented any evidence that any other witness provided testimony about Nelson Decl. Ex. 987. To the extent that Books Plaintiffs purport to establish that Microsoft obtained and/or used the "data" referenced in Nelson Decl. Ex. 987, Microsoft further disputes Paragraph 55 as not supported by admissible evidence because Ex. 987 is inadmissible hearsay. |
| 56. When OpenAI published the GPT-3 paper in May 2020, OpenAI called the LibGen1 and LibGen2 datasets "Books1" and "Books2" respectively. *See generally* Nelson Decl. Ex. 162; Nelson Decl. Ex. 45 at 210:14–211:24; Nelson Decl. Ex. 371; Nelson Decl. Ex. 45 at 211:11–24. | 56. **Disputed in Part – Immaterial.** Microsoft responds that, to the extent that the facts set forth in Paragraph 56 are cited in support of Plaintiffs' unfounded assertion in their Opposition Brief that Microsoft has allegedly "engaged in its own separate mass piracy," or to the extent this fact has anything to do with Books4 (per the heading G), these facts are improper and immaterial for the reasons stated in Paragraph 54. |

| | |
|---|---|
| | Without waiving the foregoing, Microsoft does not dispute that the GPT-3 paper refers to datasets named "Books1" and "Books2". |
| 57. The Pile is a dataset that includes a component called "Books3," which Shawn Presser and Leo Gao assembled from the shadow library Bibliotik and announced in October 2020. Nelson Decl. Ex. 307; Nelson Decl. Ex. 730, at -621 § 3.3; Nelson Decl. Ex. 672, at 3–4 § 2.3; Nelson Decl. Ex. 784, at 1. Gao testified that naming the dataset "Books3" was "certainly" a reference to the "shady 'Books1' corpus" that OpenAI had identified as training data for GPT-3. Nelson Decl. Ex. 730; Nelson Decl. Ex. 20 at 83:18–23, 133:15–22. | 57. **Disputed – Immaterial; Not Supported by Admissible Evidence.** Microsoft responds that, to the extent that the facts set forth in Paragraph 57 are cited in support of Plaintiffs' unfounded assertion in their Opposition Brief that Microsoft has allegedly "engaged in its own separate mass piracy," or to the extent this fact has anything to do with Books4 (per the heading G), these facts are improper and immaterial for the reasons stated in Paragraph 54.<br><br>Without waiving the foregoing, Microsoft does not dispute that the evidence cited as Nelson Decl. Exs. 730 and 672 appear to reflect publicly available papers published by EleutherAI discussing a dataset called "The Pile" and contains references to a "Books3" dataset. But Microsoft disputes the facts stated in Paragraph 57 because they are not supported by admissible evidence. Specifically, the evidence cited as Nelson Decl. Exs. 730 and 672 are inadmissible hearsay because these are third-party publications offered against Microsoft for the truth of its contents. Additionally, the evidence cited as Nelson Decl. Exs. 307, 784, and 20 are also hearsay and lack foundation as to Microsoft because they are statements by OpenAI witnesses and/or third parties as to actions taken by EleutherAI, a nonparty in this action. |

## H. Microsoft's Board of Directors Approved Microsoft's 2019 Investment in OpenAI[3]

| | |
|---|---|
| 58. In June 2019, Bill Gates had exchange with Satya Nadella and Kevin Scott "about whether to go forward with the OpenAI deal[.]" Nelson Decl. Ex. 997 at 131:1–131:13 The Microsoft board had a meeting in June of 2019. Nelson Decl. Ex. 997 at 131:11–131:13. Bill Gates agreed that Microsoft's board of directors "approve[d] the investment in OpenAI." Nelson Decl. Ex. 997 at 133:13–16. | 58. **Disputed in Part.** Microsoft does not dispute that Bill Gates had the discussed exchange and that the Microsoft board had a meeting in June 2019, at which they approved the initial investment in OpenAI.<br><br>But Microsoft disputes that Gates agreed with the decision to invest in OpenAI, or any causal relationship between the June 2019 exchange and Microsoft's decision to invest in OpenAI. Indeed, Gates testified that he "advised Satya against doing the deal" and stated, "if I was in charge, I would go the internal route." Blythe Opp. Decl. Ex. 14 (W. Gates 30(b)(1) Tr.) at 109:10-13. Gates further testified that "Satya made the choice to do a deal with OpenAI, which I, without trying to be too tough about it, said was not a deal that I would do." *Id.* at 94:10-12. Microsoft further disputes any implication that Gates was a Microsoft executive with decision-making authority over Microsoft's decision to invest in OpenAI. Mr. Gates did not have authority over Microsoft's decision to invest in OpenAI. *See id.* at 109:3-110:2. |

[3] **Disputed – Not Supported by Cited Evidence.** Microsoft disputes Heading (H) because it contains a factual assertion without any citation to supporting evidence. To the extent that Books Plaintiffs rely on Paragraph 58 *infra* to support this assertion, Microsoft incorporates its responses and objections to that same paragraph.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Annette L. Hurst*

ORRICK, HERRINGTON & SUTCLIFFE LLP
Annette L. Hurst (admitted pro hac vice)
Daniel Justice (admitted pro hac vice)
Robert Scott Shwarts
Catherine Lui (admitted pro hac vice)
Amanda H. Schwartz (admitted pro hac vice)
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
ahurst@orrick.com
djustice@orrick.com
aschwartz@orrick.com

Christopher J. Cariello
Lisa T. Simpson
Marc Shapiro
Vanessa Sorrentino
Hilda Obeng
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
ccariello@orrick.com
lsimpson@orrick.com
mrshapiro@orrick.com
vsorrentino@orrick.com
hobeng@orrick.com

Sheryl Koval Garko (admitted pro hac vice)
Laura Brooks Najemy (admitted pro hac vice)
222 Berkeley Street
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 880-1801
sgarko@orrick.com
lnajemy@orrick.com

Isaac Sawlih Behnawa (admitted pro hac vice)
Johnathan Vaknin (admitted pro hac vice)
355 S. Grand Ave. Suite 2700
Los Angeles, CA 90071
Telephone: (213) 612-2179
Facsimile: (213) 612-2499
ibehnawa@orrick.com
jvaknin@orrick.com

Monica Svetoslavov (admitted pro hac vice)
Louis Andrew Schreiber
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
msvetoslavov@orrick.com
aschreiber@orrick.com

FAEGRE DRINKER BIDDLE & REATH LLP
Jeffrey S. Jacobson
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 248-3191
jeffrey.jacobson@faegredrinker.com

Jared B. Briant (admitted pro hac vice)
Kirstin L. Stoll-DeBell (admitted pro hac vice)
Timothy Scull (admitted pro hac vice)
Shelby Pickar-Dennis (admitted pro hac vice)
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 607-3588
jared.briant@faegredrinker.com
kirstin.stolldebell@faegredrinker.com
timothy.scull@faegredrinker.com
shelby.pickar-dennis@faegredrinker.com

Lora A. Brzezynski (admitted pro hac vice)
Brianna Lynn Silverstein (admitted pro hac vice)
Faith Maggard (admitted pro hac vice)
1500 K Street NW, Suite 1100
Washington, DC 20005
Telephone: (202) 230-5000
Facsimile: (202) 842-8465
lora.brzezynski@faegredrinker.com

brianna.silverstein@faegredrinker.com
faith.maggard@faegredrinker.com

Carrie A. Beyer (admitted pro hac vice)
320 South Canal Street, Suite 3300
Chicago, IL 60606-5707
Telephone: (312) 569-1000
Facsimile: (312) 569-3000
carrie.beyer@faegredrinker.com

Elizabeth M.C. Scheibel (admitted pro hac vice)
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
elizabeth.scheibel@faegredrinker.com

Andrew Lawrence Van Houter
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7018
Facsimile: (973) 360-9831
Andrew.vanhouter@faegredrinker.com

*Attorneys for Defendant Microsoft Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2026, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Southern District of New York using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Annette L. Hurst*
Annette L. Hurst
*Attorney for Defendant*
*Microsoft Corporation*